1

```
 1                UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF TEXAS
 2                       TYLER DIVISION

 3

    ERIC ALBRITTON            :      DOCKET NO. 6:08CV89
 4                            :
    VS.                       :      TYLER, TEXAS
 5                            :      JUNE 5, 2008
    CISCO, ET AL             :      1:35 P.M.
 6

 7                    SCHEDULING CONFERENCE
          BEFORE THE HONORABLE MICHAEL H. SCHNEIDER,
 8               UNITED STATES DISTRICT JUDGE

 9   APPEARANCES:

10   FOR THE PLAINTIFF:        MR. JAMES ANDREW HOLMES
                               ATTORNEY AT LAW
11                             605 S. MAIN SUITE 203
                               HENDERSON, TEXAS   75654

12

13

14   FOR DEFENDANT CISCO:      MR. CHARLES L. BABCOCK
                               MS. CRYSTAL J. PARKER
15                             JACKSON WALKER
                               1401 MCKINNEY STREET,
16                             SUITE 1900
                               HOUSTON, TEXAS   77010

17

18   FOR DEFENDANT FRENKEL:    MR. GEORGE L. MCWILLIAMS
                               ATTORNEY AT LAW
19                             P.O. BOX 58
                               TEXARKANA, TEXAS   75504

20

21
     COURT REPORTER:           MS. JAN MASON
22                             CERTIFIED SHORTHAND REPORTER
                               221 W. FERGUSON #100
23                             TYLER, TEXAS   75702

24
     PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
25   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

1          THE COURT:  All right.  We have a Scheduling

2    Conference scheduled next.  This is Case Number 6:08cv89.  The

3    matter is styled Eric Albritton versus Cisco Systems, Inc. and

4    Richard -- it looks like Frenkel.

5        I'm going to ask that we get started here by having the

6    parties make an announcement as to your being prepared for

7    this hearing, and we'll begin with the Plaintiff.

8          MR. HOLMES:  Good morning, Your Honor.  James Holmes

9    for the Plaintiff Eric Albritton.  We're ready to proceed.

10          THE COURT:  Good afternoon.  How are you doing?

11          MR. HOLMES:  Thank you, sir.

12          MR. BABCOCK:  Your Honor, Charles Babcock with

13   Crystal Parker, my colleague, and we're prepared to go forward.

14          THE COURT:  Nice to see you again, sir.

15          MR. BABCOCK:  Nice to see you, Judge.  Here for

16   Cisco.

17          THE COURT:  All right.

18          MR. MCWILLIAMS:  Your Honor, George McWilliams for

19   Richard Frenkel and we're ready to proceed.

20          THE COURT:  Good afternoon, Mr. McWilliams.  Mr.

21   McWilliams, I like the way you draw up your answer.  That's a

22   nice way.  I wish everybody would do that in federal court.  It

23   would sure make it easier to compare what -- who's answered.

24          MR. MCWILLIAMS:  Your Honor, I have to give

25   Mr. Babcock credit for that because I followed his example on

1    that.

2           THE COURT:  I see.

3           MR. BABCOCK:  And I'll have to defer to Ms. Parker on

4    that.

5           THE COURT:  All right.  And, Ms. Parker, you're going

6    to defer to Mr. Holmes, is that right?  That way we just spread

7    it all the way around.

8           MR. HOLMES:  I hope I get some credit somewhere as

9    the guy that started all this.

10          THE COURT:  Yeah.  Okay.  I have received your

11    proposed Scheduling Order and I'll talk about that in just a

12    minute, but I want to talk about a few things, mainly get you

13    to talk about a few things to help me get oriented on the case

14    and so forth.

15      Let me just check here.  First of all, as far as

16    procedure goes in here or etiquette or whatever, this is an

17    informal conference, although we want it to be productive.

18    You're not required to stand at all, and in fact, it doesn't

19    make me any difference here in this proceeding.  If I tell

20    you don't stand, some lawyers get real uncomfortable, so you

21    can stand if you want to but you don't have to.

22      But the main thing we have to kind of keep in mind,

23    since we have more people than the normal two that we have

24    here, is that when we do talk sitting down, there's a

25    tendency sometimes to talk over some way or else at the same

1   time.  So if we can -- as long as we can keep the

2   conversation separate, we'll go ahead and try that.  And if

3   you want to stand, you can stand.

4        Now, the first thing I want to get clear here

5   procedurally is the operative pleadings.  My information is,

6   and you can correct me on this, but the operative pleading

7   for the Plaintiff is your first -- is your petition, is that

8   correct, that you filed?

9             MR. HOLMES:  It is, Your Honor.

10            THE COURT:  All right, sir.

11            MR. HOLMES:  I anticipate us filing a federal

12  complaint since we have now been removed.

13            THE COURT:  All right.  I was going to ask you to do

14  that but we'll get to that in just a second.

15       All right.  Then I see we have the answer by Cisco but

16  that was the answer that was filed in the state court.  I

17  don't have, I don't think, a federal answer, right?

18            MR. BABCOCK:  That's correct, Your Honor.

19            THE COURT:  All right.  Then, of course, I've already

20  acknowledged Mr. McWilliams' answer in the federal suit.  So

21  what I would like to request, if you would be so courteous to

22  do, is to go ahead and file another one, Mr. Holmes.  How much

23  time is a reasonable time to do that for you?  I mean, five

24  o'clock or --

25            MR. HOLMES:  Today is Thursday, Your Honor?

1          THE COURT:  Yeah.

2          MR. HOLMES:  Until the end of next week.

3          THE COURT:  Let's say -- what is today in numbers?

4   The 5th?  Can you get it in by the 15th?

5          MR. HOLMES:  Yes, sir.

6          THE COURT:  All right.  Then will the Defendants

7   waive service on that and he can just send it through normal

8   courses?

9          MR. BABCOCK:  Just send it to me would be fine, Your

10  Honor.

11         MR. MCWILLIAMS:  Yes, sir.

12         THE COURT:  And to you, Mr. McWilliams?

13         MR. MCWILLIAMS:  Yes, sir.

14         THE COURT:  Okay.  Then we'll do that and ask that

15  you respond to that, and how much time do you need to get back

16  with him?

17         MR. BABCOCK:  I think a week would be sufficient.

18         THE COURT:  Okay.  We'll round that off and give that

19  another ten days, so that would be what, the 25th?

20         MR. BABCOCK:  Yes, Your Honor.

21         THE COURT:  Okay.  That would help me and I think

22  we can make some progress there.

23      Okay.  What I want to do is to go over and just go down

24  some questions here.  You've obviously had some type of

25  conference or you wouldn't have been able to put together

1   this Proposed Scheduling Order.  Tell me, if there's anyone

2   who would volunteer the information, who had a meeting or

3   discussion and when was that and where?

4           MR. HOLMES:  Your Honor, James Holmes.  It was more a

5   series of meetings and discussions.

6           THE COURT:  All right.

7           MR. HOLMES:  Mr. Babcock and I particularly have been

8   on the phone I know six, eight times perhaps discussing

9   everything from the schedule to scope of discovery and

10  privilege and logistics.  Mr. McWilliams and I have not had as

11  extensive discussions because he's been detained in a three

12  week trial.

13          THE COURT:  I see.

14          MR. HOLMES:  And he has leaned I think largely on Mr.

15  Babcock, so we have done the very best we could to accommodate

16  his schedule, but we have had extensive meet and confers.

17          THE COURT:  Okay.  Well, that's encouraging.  Let me

18  ask you this, have any of you ever worked together on a

19  lawsuit?  And that can be Defendants and Defendants.

20          MR. HOLMES:  I have never worked with either of these

21  gentlemen.

22          MR. BABCOCK:  I have worked with Mr. McWilliams

23  before but not Mr. Holmes.

24          THE COURT:  All right.  Mr. McWilliams, you say that

25  you haven't worked with Mr. Babcock, right?

1    MR. MCWILLIAMS:  Your Honor, Mr. Babcock and I have

2 worked together for many years, and I have not with Mr. Holmes.

3 And I apologize for being tied up in trial the last three

4 weeks, but we do have a joint defense agreement so Mr. Babcock

5 carried the water for me very well.

6    THE COURT:  Where were you in trial?

7    MR. MCWILLIAMS:  In Bowie County.

8    THE COURT:  Are you in trial right now?

9    MR. MCWILLIAMS:  We're done.

10    THE COURT:  I see.  All right.  Thank you.

11    Well, hopefully, since it's the first time that each of

12 you have worked with Mr. Holmes, that can develop into a

13 foxhole friendship or whatever you call it when you're under

14 the same pressures sometimes, and what's better than that,

15 though, I think is some type of a good professional

16 experience in working together.  And from your reputations

17 and my personal knowledge of some of you here, I don't think

18 that's going to be an issue, that you will work hard to make

19 sure that we keep our eye on the ball, and that is to get

20 around to the issues that will decide the lawsuit.

21    Now, are each of you -- I'm going to go ahead and show

22 you here, your presence.  Are you going to be the lead

23 counsel in this as best you can see?

24    MR. HOLMES:  Yes, Your Honor.

25    MR. BABCOCK:  And I will be for Cisco, Your Honor,

1  Babcock.

2          THE COURT:  All right.  Good.

3          MR. MCWILLIAMS:  And I will for Mr. Frenkel.

4          THE COURT:  All right.  Good.  Now, do we have any

5  pending cases pending in this matter?  I say pending cases,

6  similar cases or related cases pending?

7          MR. HOLMES:  Your Honor, there is -- I don't know if

8  I would call it a related case, but Johnny Ward has a suit

9  pending against these same Defendants.

10          THE COURT:  Where is that case?

11          MR. HOLMES:  I think that case is still in Arkansas.

12          MR. BABCOCK:  Arkansas, right.

13          THE COURT:  How did it get in Arkansas?  I'm sorry.

14  For some reason I was thinking it was filed in your -- in Gregg

15  County.

16          MR. HOLMES:  I'm not involved in that case, Your

17  Honor.  My understanding is there was an initial pleading filed

18  somewhere in Texas that was dismissed and the case was refiled

19  in Arkansas.  I really don't know much about it beyond that.

20          THE COURT:  I see, but there is a -- does it grow out

21  of the same incident?

22          MR. HOLMES:  It does.

23          THE COURT:  All right.  Then there's an underlying

24  lawsuit from which the subject of the --

25          MR. HOLMES:  Exactly.

1          THE COURT:  -- liable or whatever, the conversation

2     or the publication in issue.

3          MR. HOLMES:  Yes, sir.

4          THE COURT:  There is another lawsuit on that.

5          MR. HOLMES:  And that suit is pending in federal

6     court in Texarkana.

7          THE COURT:  Okay.  That is in Texarkana?

8          MR. HOLMES:  Yes, sir.

9          THE COURT:  Okay.  Who will volunteer to get me the

10    information on those suits, the numbers and so forth?

11         MR. BABCOCK:  Your Honor, I know a little bit more

12    about the Arkansas case.

13         THE COURT:  All right.

14         MR. BABCOCK:  Because I am counsel in that one.  What

15    happened was John Ward filed a lawsuit in Gregg County

16    substantially similar, if not identical, to the case that Mr.

17    Albritton filed also in Gregg County.

18        The day before we removed this case to this court, Mr.

19    Ward, through his counsel, non-suited the Gregg County case

20    and obtained an order from the Court granting non-suit.  And

21    that same day of the non-suit, Mr. Ward filed a lawsuit in

22    the Western District of Arkansas, Texarkana Division.

23        The Defendants were the same and the publication was

24    the same publication that has been complained about here, or

25    one of the two publications that has been complained about

here.

The Defendant Frenkel, also represented by Mr. McWilliams, filed a motion to dismiss for lack of personal jurisdiction. The Defendant Cisco filed a motion to dismiss for improper venue, and alternatively, for discretionary transfer of venue to this court.

Then Mr. Ward non-suited or has attempted to non-suit Mr. Frenkel from the case. Mr. Frenkel, who had answered, filed an objection to that and said that I've been sued twice now and non-suited apparently twice, and either the dismissal should be with prejudice so I don't have to keep hiring lawyers to defend me, or my attorney's fees should be compensated by Mr. Ward.

The Judge -- Judge Barnes was originally assigned to the case and he recused himself and the new judge has scheduled oral argument on the objection to the non-suit, and that's scheduled for August 4th in Texarkana.

Once that's out of the way, then I presume that Judge Hendren will rule on the motion to transfer. And our intent would be, if it's transferred to this court, would be to seek to consolidate that case into this one since it involves the same fact witnesses, same discovery and the same publication, or one of the same publications.

THE COURT: Okay. Well, I guess that kind of gives me enough information to get started on. Anything you would

1  add, Mr. Holmes?

2      MR. HOLMES:  All I would add, Your Honor, is that

3  obviously, because of Mr. Ward's relationship with -- family

4  relationships, we're going to have some real concerns -- I have

5  real concerns for my client about those two cases being

6  consolidated and eventually perhaps tried together.  We will

7  flesh all those out for the Court at the appropriate time, but

8  just as a heads-up, we are not going to be amenable to having

9  those cases consolidated and tried together.

10      THE COURT:  All right.

11      MR. BABCOCK:  And I might add, Your Honor, that I

12  have not talked to Mr. Holmes about it and he may convince me

13  that he's right about that, so -- but if you talk about present

14  intention, that is our present intent.  But we haven't filed

15  anything yet and maybe we won't, as eloquent as he sounded.

16      THE COURT:  All right.  Well, let's do talk about

17  something.  That brings up something that, frankly, I guess I

18  haven't really thought about.  One of the allegations or part

19  of the fact pattern here talks about the Eastern District of

20  Texas itself as an identifiable -- I guess we'll call it an

21  entity, for lack of a better word.  And the allegation in there

22  is that the clerk of the District Court here conspired with

23  the -- with the Plaintiff or Plaintiffs, I guess the Plaintiff

24  in this case.  I'll leave it limited to my case.

25      Now, in one way the clerk is -- I don't employ him but

1    I certainly could vote on his retention or hiring him.  And,

2    believe me, I'm not -- this suit has tremendous interest

3    just academically, if I can be academic, to me and it is

4    something that I would enjoy, but I'm just -- I want people

5    to be real honest about how you feel about all that.  And it

6    doesn't -- it doesn't -- I wouldn't take it as flattery if

7    you said well, I'm going to leave it here, and I wouldn't

8    take it the other way either.  You have your clients to deal

9    with on these issues.  Then I guess I just have to take a

10   look at it myself.  But I think we ought to not dodge it and

11   talk about it a little bit.

12           MR. HOLMES:  And, Your Honor, if I may, the parties

13   have done exactly that.  Mr. Babcock and I discussed this very

14   early on after the removal and we were still in the throws of

15   discussions on my side about potential motions for remand.  And

16   I don't want to speak too much for Mr. Babcock, but I believe

17   we reached a consensus that both parties were comfortable

18   having this case proceed in this court and in Your Honor's

19   court.  There's certainly no concern on our part.

20           MR. BABCOCK:  Yes, Your Honor, that is consistent.

21   We did talk about it early on, and from Cisco's standpoint we

22   are delighted to be in the Eastern District of Texas and

23   specifically in your court.  There is no thought of recusal,

24   and in fact, I think I said in writing that we are not going to

25   move to recuse.

1    THE COURT:  And I wouldn't take it -- I mean, I hope

2    y'all know that I would not be insulted by that at all.  I can

3    understand.  You have your clients to worry about and -- but I

4    can tell you right now from my point of view, it's just a very

5    interesting case, you know, so we can go from there.

6      If I get to the point where I see that it is not or

7    something, I'll be -- I'm going to do my best to make sure

8    that I bring that up in a timely manner, but right now it's

9    not a problem with me.

10    MR. BABCOCK:  Thank you, Your Honor.

11    THE COURT:  Go ahead, Mr. McWilliams.

12    MR. MCWILLIAMS:  Your Honor, I just wanted to

13    underscore that for Mr. Frenkel.  We have a consensus among all

14    counsel that we are all very comfortable here.

15    THE COURT:  Okay.  We're past step one then.  Now,

16    the second of 97 questions I have here -- I don't have that

17    many, but we've got a fence around those cases that are related

18    and so far -- is that case in Judge Folsom's court with Cisco,

19    is that progressing toward trial?  Anybody know that?

20    MR. HOLMES:  I think that it is, Your Honor.

21    THE COURT:  All right.

22    MR. HOLMES:  My client could probably --

23    MR. ALBRITTON:  I'm probably the person who knows the

24    most about that, Your Honor, and it is progressing.  It has

25    been set for -- it has a Markman Hearing set and a trial date

1   set.

2           THE COURT:  Is that Mr. Albritton?

3           MR. ALBRITTON:  Yes, sir.

4           THE COURT:  I didn't recognize you out there.  All

5   right.  That's Eric Albritton.

6           MR. ALBRITTON:  Thank you, Your Honor.

7           THE COURT:  All right.  So we're not getting in each

8   other's way on that so far.  So I think I have a pretty good

9   idea of the facts in the case just from reading the petition,

10  but I'll let you go ahead and make any kind of opening

11  statements you would like to make here and then we'll move

12  along right after that.  Any observations you would like to

13  make from the start?

14          MR. HOLMES:  I don't think so, Your Honor.  I

15  think -- no, sir.

16          THE COURT:  Anything generally?

17          MR. BABCOCK:  The only thing I wanted to point out,

18  and again, this is something Mr. Holmes and I -- you would

19  think we talk to each other every day but not quite that often.

20  But there was an issue or a concern, in any event, early on

21  about whether or not Cisco was going to claim that

22  Mr. Frenkel's postings were outside the course and scope of his

23  employment, and there is no issue on that.  When we file the

24  federal answer, that will be clearer.

25      That does not mean, however, that Cisco was happy about

1   the statement that the Court brought up about how the --

2   that the Eastern District of Texas, either wittingly or

3   unwittingly, may have assisted counsel for a non-practicing

4   entity in manufacturing subject matter jurisdiction and then

5   made the comment about the Banana Republic.  Cisco didn't

6   know about that ahead of time, and if they had, they

7   wouldn't have allowed it.  But in any event, they weren't

8   happy about it.

9        It is true that that particular unfortunate phrase was

10  only up on the Internet for 24 hours and then it was

11  modified and taken away.  But nevertheless, it is what it is

12  and it's there and it's attached to their pleading and

13  that's what it is.  So that's the only thing I wanted to

14  make clear.

15             THE COURT:  All right.  Mr. McWilliams?

16             MR. MCWILLIAMS:  I would have nothing further, Your

17  Honor.

18             THE COURT:  Okay.  Now, let's see here, we have -- we

19  don't have any anticipated -- well, we've talked about the

20  possibility of some other people coming in here.

21       Okay.  What kind of disclosures have you made or do you

22  plan to make, starting out with the Plaintiff?  How are you

23  in that regard?

24             MR. HOLMES:  Your Honor, this is another one of those

25  issues that we've conferred about extensively, because as you

1    can imagine, we not only have lawyer clients in all three

2    corners but we have underlying litigation and then ongoing

3    litigation here.

4              THE COURT:  Right.

5              MR. HOLMES:  And relationships between our lawyer

6    clients and other lawyers.  So the biggest issue we've been

7    working through is how to deal with attorney-client privilege

8    and work product privileges on the underlying documents.

9         We have come a long way, at least in the initial stage,

10   of preparing our respective disclosures.  It will be another

11   week before Mr. Albritton has clearance from his client for

12   a limited waiver of privilege so that we can produce the

13   documents that we know are relevant, and I understand on

14   Cisco and Mr. Frenkel's side, they're in the process of

15   resolving the same issues.

16        We have not actually exchanged much documentation at

17   this point, although I have a few documents from Cisco, but

18   we do anticipate by this time next week or early the

19   following week exchanging most everything that we at this

20   time can identify as being relevant and discoverable.

21             THE COURT:  Okay.  I guess under the rules you have

22   technically 14 days after this hearing or something like that.

23   Do we need to set a time or do you have any feelings on that?

24             MR. HOLMES:  I'm comfortable -- Mr. Babcock told me

25   this morning we'll have them next week and Mr. Albritton is

1    working with his client.  I would feel more comfortable, Your

2    Honor, if we didn't, just in case his client sees a problem

3    that we have not foreseen.  It might avoid us coming back to

4    the Court.  But I think we'll have it done pretty quickly.

5              THE COURT:  All right.  And will there be -- have you

6    talked about any electronic -- any ESI problems, as they call

7    them?

8              MR. HOLMES:  I don't think we're going to have any at

9    this time, Your Honor.  We discussed that and we don't see it

10   coming in.

11             THE COURT:  All right.  Well, we probably need to --

12   well, I didn't have a place for a privilege log on this

13   Scheduling Order, but that's easy for me to put it in there.  I

14   didn't put it in because most of the time it's not an issue.

15             MR. HOLMES:  It will be in this case, Your Honor.

16             THE COURT:  Okay.

17             MR. BABCOCK:  If I could -- if I could elaborate on

18   what Mr. Holmes has said about the privilege issue, the problem

19   is that this posting related or these two postings that are at

20   issue in this lawsuit related to the filing of the ESN lawsuit

21   against Cisco.

22        At least from Cisco's side and Mr. Frenkel's side,

23   there were communications with Baker Botts, which was the

24   law firm that was retained to represent Cisco in that

25   matter.  And as you might imagine, there was -- there was

some back and forth about the issue of subject matter

jurisdiction, whether the case had been filed on

October 15th before the patent issued on the 16th, and

that's clearly privileged.  I mean, Frenkel, the client, a

lawyer for the client in-house communicating with Baker

Botts, but it's also relevant to this lawsuit as to what

Mr. Frenkel knew at the time he made the posting on

October 17th and October 18th.

    And I understand from Mr. Holmes that there's similar

documentation on the other side where Mr. Albritton and Mr.

Ward, who is not a party, were talking to their client ESN

and their lead counsel, which was from Chicago, about these

things.

    So both sides have got things that are relevant, and I

think it's going to be important for us to come up with a --

kind of a fence around what the limited scope of the waiver

is going to be, because Cisco is willing to have a limited

waiver along the lines of communications regarding the

circumstances of the filing of the ESN versus Cisco case and

the communications with the clerk.

    And Mr. Holmes and I have been working on language and

it may be something slightly different than that, but it

would be something like that.  But we would like Your

Honor's approval so that there's no dispute later on about

oh, the waiver is broader than that because there's this

1   other litigation going on, and we don't want -- and other

2   counsel other than Mr. Albritton are involved.  I'm not

3   involved for Cisco in that case.

4         THE COURT:  Why don't we do it this way, let's take a

5   shot at -- or you two take a shot at the language you like and

6   I'll approve it and we'll just see how that works and hope and

7   try our best to make that work.  If it doesn't work, we'll come

8   back and retool.

9         MR. HOLMES:  I think that's going to be what we need

10  to do, Your Honor, because there are simply some of these

11  documents that we're not going to know until we lay hands on

12  them if they're inside the fence, so to speak, or outside.  My

13  guess is there are going to be a number sitting right on top of

14  it, and I'm just not going to be comfortable without guidance

15  from the Court on how to handle this.

16        THE COURT:  You may not be comfortable with the

17  guidance you get from the Court.  You guys are closer to it and

18  you're going to know it, but we'll work it out.

19      All right.  What I didn't -- I said I didn't need to

20  get into the facts too much.  I would like to know what you

21  see as the main legal issue in here.  Do we have -- is there

22  a unique issue on the degree to which a blogger has -- a

23  blogger has a First Amendment privilege or what's -- what do

24  you see as being the big issue?

25        MR. HOLMES:  Again, we have discussed this pretty

1  extensively, Your Honor.  I think from my perspective we see

2  the case as a private entity with a claim against a nonmedia

3  defendant.  I think there will be some question about it, to

4  the extent he may wish to be characterized as a media

5  defendant, that the Court is going to have to deal with.

6       I think there will also be legal issues regarding the

7  standard of proof for our case, will it be actual malice,

8  strict liability or negligence, and I think beyond that

9  there will be some issues of actual malice that relate to

10 punitive damages and the calculation of damages.

11      I don't think the facts are going to be much in dispute

12 and I suspect we will ferret out who said what and why they

13 said it pretty thoroughly, but I think the thornier issues

14 will be sort of categorizing the parties and determining

15 what legal standard is applicable.

16           THE COURT:  Well, let me ask you and get your input.

17 When I say yours, I'm talking to anybody here, about how that

18 might influence the scheduling.  Is there -- you know, the

19 traditional way you do a lawsuit is kind of like we're doing

20 now, have a Scheduling Conference, set down your discovery map,

21 where you're going with that.  Then you move for your summary

22 judgment when your discovery is closed and at some point in

23 time you have some type of comprehensive settlement conference

24 or ADR method.  But on this is there -- what is the value, if

25 any, of determining some basic legal issues before we get

1  started on it, or would you rather develop the discovery and

2  then get some rulings from the Court on that?

3          MR. HOLMES:  From the Plaintiff's perspective, Your

4  Honor, I prefer the traditional approach, develop some

5  discovery, frame those issues.  We might even resolve some on

6  our own.

7          THE COURT:  Okay.  I like it when you resolve them on

8  your own.

9          MR. BABCOCK:  It would be nice if we could resolve

10  all the issues, but I anticipate what I'm about to say won't be

11  resolved because it's fundamental to the case.

12      One of the things that the Court can and is instructed

13  to do in the first instance is to determine whether the

14  publication is defamatory in the first instance.  The Texas

15  Supreme Court case of Musser versus Smith sets out the

16  rules.

17      I think that the October 17th blog, in our view, is

18  susceptible to a motion that is not dependent upon discovery

19  that raises the issue of whether or not that first blog is

20  defamatory at all, so that would be something.  There may be

21  other aspects of that that would be susceptible to motion

22  with respect to the October 18th posting, which again raises

23  the issues of is it defamatory in the first instance.  So

24  that's one issue that wouldn't -- that wouldn't require

25  discovery.

1     The other issue, which probably would require a little

2  discovery but not much, and which is an issue of law, is the

3  status of the Plaintiff.  Are they public figures, limited

4  purpose public figures, or are they private plaintiffs under

5  the law?  And in Miller versus TransAmerica Press 621 Fed 2d

6  721, and modified on rehearing, I think 623 Fed 2d

7  something -- I know that only because I argued that case.

8  That's how old I am.  And the Court -- the Fifth Circuit

9  there said the status of the plaintiff is pervasive and

10  should be decided as soon as possible.  So that would be --

11  that would be an early matter.

12     As for the status of the Defendants, the Defendants

13  will contend for sure that they are media Defendants and

14  whatever the First Amendment gives them by way of special

15  dispensation, they are entitled to it.

16     I will tell the Court that one of the things that makes

17  this case interesting is that there is little to no law in

18  Texas on that issue, although there is law favorable to the

19  Defendants in California on that issue.

20     It may not be as important as it would be in other

21  states because in our state, under the Texas Supreme Court

22  decision in Casso versus Bran the status of the Defendant as

23  a media or nonmedia Defendant is unimportant, because in

24  that case the Texas Supreme Court said that the New York

25  Times versus Sullivan actual malice standard applies,

1   whether or not the Defendant is a media Defendant.

2        So it may not be as important as it would be in other

3   states, although one of the defenses that Mr. Frenkel has

4   asserted is a statutory privilege under Texas law, which is

5   restricted to media.  So it is restricted to other

6   periodicals.  So the question is whether he's a periodical

7   within the meaning of the statute, so those issues are

8   there.

9        I don't know that that would be as susceptible to

10  summary judgment without discovery.  I think there will have

11  to be a little bit of discovery on that.

12       Finally, on the scope of discovery, there will be a

13  huge issue I think on damages, but on liability I think

14  there's limited discovery necessary, probably Mr. Albritton

15  and Mr. Ward and then one or two clerks, whoever were

16  involved in the docket entry switching from October 15 to

17  October 16.

18       So that's everything I have to say, probably too much.

19            THE COURT:  That's fine.  Thanks.  Anything anyone

20  wants to add on that?  Mr. McWilliams?

21            MR. MCWILLIAMS:  Your Honor, I would just underscore

22  what Mr. Babcock said.  As the Court can see, there are huge

23  differences between the parties on the law here, and I think as

24  Mr. Babcock has pointed out, there's some very critical issues

25  that do not require extensive discovery for the Court to

1  decide.

2          THE COURT:  All right.

3          MR. BABCOCK:  Judge, I forgot one thing but it is

4  very important.  I should have mentioned it first, and that is

5  this Banana Republic issue, because Mr. Holmes and I have

6  talked about it and it is going to implicate the breadth of

7  discovery and it will implicate it in this way.

8          Our view is that when Mr. Frenkel, however

9  ill-advisedly, talks about the Banana Republic of -- what

10  does he say?  The Banana Republic of East Texas, that is

11  classic opinion, rhetoric or hyperbole, and therefore, not

12  actionable.

13          There's a second reason, of course, why these

14  Plaintiffs -- this Plaintiff cannot prevail on that claim,

15  because it doesn't have anything to do with them.  If the

16  Eastern District of Texas is being operated in an improper

17  manner, that's something else, not --

18          THE COURT:  It's just about me, reflects on me.

19          MR. BABCOCK:  It might be about you, but not about

20  him.  And the reason why that's going to impact discovery is

21  that Mr. Holmes is going to send me a list of things that he

22  wants, but one of the things that we talked about is he wants

23  everything where anybody at Cisco was ever talking about the

24  Eastern District of Texas.  And I think what he's hoping is

25  there will be a bunch of critical stuff that says Judge

1    Schneider is a bum and we don't like Judge Ward and Judge

2    Folsom is an idiot, which there isn't any of, I don't think.

3    But still, that's what they would like to see.  We don't think

4    that's part of the case, but if we've got to prove that --

5              THE COURT:  Just remember, it's too late for me to

6    recuse.

7              MR. BABCOCK:  I know.  We're beyond that.  But if

8    that's an issue in the case, in other words, if we're going to

9    have to, on the defense side, try to show that the practices

10   and procedures in the Eastern District of Texas are outside the

11   norm or there are things that certain courts do that are not

12   appropriate or at least other parts of the country might deem

13   inappropriate, then that will impact a lot of discovery that

14   we're going to have to do.

15       To us, that's a nonissue, and if Mr. Holmes and I can't

16   work it out, we may -- I may, on Cisco's behalf, very well

17   may come to you with a limited motion for summary judgment

18   and say, Judge, we don't think that this statement is

19   actionable for these reasons.  It's either opinion, rhetoric

20   or hyperbole, or not of and concerning the Plaintiff, which

21   is an essential element.

22       So as I said, that is an issue that will affect a lot

23   of things, so I'm glad I didn't totally forget it.

24              THE COURT:  All right.

25              MR. HOLMES:  Your Honor, it's sort of like the old

1    joke where the punch line was they have lab rats because there

2    are just some things lawyers won't do.  Well, Mr. Frenkel did

3    not accuse Mr. Albritton of, in isolation, committing some

4    egregious act.  He accused us of conspiring with the clerk of

5    the court.  In our mind, that makes a tremendous difference in

6    the scope of the discovery because if he's not only accused me

7    of an affirmative wrong act but he's also accused me of being

8    in cahoots with a known bad actor, which he is characterizing

9    our clerk's office in the Eastern District to be, then that

10    does reflect on me.

11        We have had discussions about this.  I'm hopeful we'll

12    find some way to work through it.  But Mr. Babcock is

13    correct, it may be a thorny issue because we have a very

14    different view.  We were accused of being a participant in a

15    conspiracy with what they're casting to be a known bad

16    actor, and that all sort of splashes over on my client and

17    we feel like we will have to have some discovery on it.

18            THE COURT:  All right.  Let's try to move along here.

19    I think -- okay.  So you mentioned that you have -- you're in

20    the process of exchanging or making your disclosures.  What

21    would you -- how many depositions are you going to need and how

22    many can you be firm about here today?

23            MR. HOLMES:  In addition to the parties, Your Honor,

24    we propose 40 -- 30 hours of deposition per side.  I think

25    that's more effective than selecting an arbitrary number of

1   witnesses, because many of these depositions may be very, very

2   brief.

3           THE COURT:  You say that's in addition to the

4   parties?

5           MR. HOLMES:  Yes, sir.  And we also agreed between

6   ourselves that no individual deposition would exceed seven

7   hours.

8           THE COURT:  All right.  Any other limitations you can

9   think of that you think in this case is appropriate?  Unlimited

10  interrogatories or written discovery, I'll say, on

11  authenticating documents.  I mean, there's no need to put any

12  limits on those.  We won't count those against you is my point

13  on those, any authentication issues.

14          MR. HOLMES:  Your Honor, on those interrogatories, we

15  had proposed on substantive interrogatories that neither side

16  was particularly interested in more than I think 20, 20

17  interrogatories, 20 requests for admissions.

18          THE COURT:  I'll give you 25 each, okay?  Just to

19  keep it consistent with all my other cases.  And that's a good

20  way to say it, your substantive interrogatories or written

21  requests for admissions, so forth.

22          MR. MCWILLIAMS:  Your Honor, just so we're clear,

23  would that be 25 for Cisco and 25 for Defendant Frenkel?

24          THE COURT:  I pretty much limit that to the side, but

25  you can tell me what the differences would be.  How do you --

1    how do you see it?

2           MR. MCWILLIAMS:  I think we can probably live with 25

3    to the side.  If we have a problem, we can come back to the

4    Court.

5           THE COURT:  Okay.  Why don't we shoot for that, try

6    to put a fence there on that.  And you pretty much have the

7    same interests right now.  We'll wait and see, though,

8    especially if you have a consensus on whether or not he was

9    within the course and scope of his employment, so forth.

10      Okay.  Now, have you done anything to talk about

11   resolving this matter?

12          MR. HOLMES:  We have discussed it, Your Honor.

13   We have made a couple of proposals to the Defendants.  We have

14   not, obviously, had any particular success, but maybe we've got

15   the ball rolling, I hope, in a productive direction.

16          THE COURT:  Well, when I saw this thing filed, I

17   almost called you on the phone and said come on, let's -- let's

18   get together and see what we can do on the case.  But I frankly

19   got busy and it slipped my mind.  You're very important to me,

20   don't get me wrong.  It's just that I just haven't gotten

21   around to it.

22      But is there any value in expanding the scope of that

23   to include maybe a comprehensive discussion?  If you want to

24   keep it separate, that's fine with me, but I just -- just

25   seeking out opportunities here.

1          MR. HOLMES:  We would be happy to sit down with the

2    Court, Your Honor, and discuss resolution.  I think at this

3    point I would prefer if we did it separate from the other case.

4          THE COURT:  All right.

5          MR. HOLMES:  But I'll visit with Mr. Albritton about

6    that.  As far as our case, we're happy to sit down any time.

7          THE COURT:  Well, of course, that's -- and I

8    appreciate your answer and that's what I would say too, but I'm

9    trying to advance the ball a little bit.  What's the other side

10   say about that?  Do you have any specifics on that?

11         MR. BABCOCK:  Yes, Your Honor.  First of all, in

12   terms of prior efforts, there was a mediation, sort of an

13   informal one, maybe right after the lawsuit was filed before

14   the answers were even filed and before it was removed to your

15   court, presided over by the gentleman back on the wall there,

16   by Judge Parker.

17         THE COURT:  Oh, is that right?

18         MR. BABCOCK:  And it was not successful.  I was,

19   unfortunately, unable to be there because I was on vacation

20   with my family, so that's why it had a chance of success.  If I

21   had been there, it definitely would have fallen apart.  Then

22   Mr. Holmes and I have had some talks but they haven't gone

23   anywhere.

24      From Cisco's standpoint, if there's going to be

25   resolution, it makes total sense to us to resolve both cases

1    and we -- I don't know if we all have to be in the same room

2    hugging each other, but in terms of temporal sequence and

3    getting it all resolved at one time, Cisco doesn't see much

4    advantage in getting this one resolved and still having to

5    fight the Ward case, particularly if it's coming, as we

6    expect, down here anyway.  So from our view, we would like

7    to connect them in some way.  Maybe if we get four rooms

8    instead of three rooms, but we would like to link them up

9    somehow.

10              THE COURT:  I see.  Yes, sir.

11              MR. MCWILLIAMS:  Your Honor, I might add, I had sort

12   of the same thought you had.  I've practiced law in the Eastern

13   District for nearly 42 years and my first inclination was to

14   pick up the phone and say isn't there some way to resolve this.

15   These guys are my friends and I hope they'll be friends after

16   this.

17        And I really underscore what the Court said that if

18   there is any way possible that we could resolve this, I

19   think my client and I think Cisco would make every effort

20   possible.

21        And I agree with Mr. Babcock, I would hate to try to

22   resolve this and then have the same litigation and the same

23   parties and the same issues have to be fully developed, and

24   that's why I would like, if at all possible, to get us all

25   under the same roof.

1          THE COURT:  Well, let me ask you this, if I were to

2   take just a few minutes -- how is everybody's time here?

3   Anybody have to be home before midnight tonight?

4          MR. HOLMES:  Not me, Your Honor.

5          THE COURT:  I would like permission just to talk with

6   each of you separately, not about the case itself, about the

7   settlement here.  I mean about the terms of the -- not even the

8   terms of the settlement, about the possibility of meeting for

9   settlement.  How does that grab you?  Does that grab anybody?

10          MR. HOLMES:  I think that's a good idea, Your Honor.

11          MR. BABCOCK:  It's fine with us, Your Honor.

12          MR. MCWILLIAMS:  Yes, sir.

13          THE COURT:  Who wants to go first?

14          MR. HOLMES:  Since it's usually our burden, we will,

15   Your Honor.

16          THE COURT:  Why don't you meet me around at the

17   office around there and the staff here can take a break.  It's

18   about time to take a break.  And we'll, over a bottle of water

19   or something, sit down and talk just a few minutes about what

20   some of your concerns are, not about the -- again, I represent

21   that I am not going to get into the facts of the case.  I just

22   basically want to see what your ideas are about how we move

23   this forward to talk, okay?

24          MR. HOLMES:  Yes, sir.

25          THE COURT:  All right.  Thanks.

1          (Recess.

2          THE COURT:  All right.  Let's see, this was a 30

3   minute hearing, is that right?

4          MR. BABCOCK:  That's what you told us, Judge.

5          THE COURT:  That's great.  I'm keeping my schedule.

6      Okay.  Let's get back to your schedule here.  We had

7   talked about -- I had mentioned a privilege log, and do you

8   have a date that you would like to have each side present

9   their privilege log?  Let me throw out September 1.  Is that

10  too far or too close?

11         MR. BABCOCK:  I think that's fine, Judge.

12         THE COURT:  All right.  September 1, 2008.  All

13  right.  And then the next thing is the deadline to join

14  parties.  I'm going to leave that, okay?  Look at your list

15  there and see if there's anything else I need to change down

16  here.

17         MR. BABCOCK:  Judge, all these dates I think are fine

18  with the parties.  I think we -- Mr. Holmes and I went through

19  them fairly -- in a fair amount of detail.

20         THE COURT:  Let me add one or two here then.  On your

21  last page over there where you have motions in limine due --

22         MR. BABCOCK:  Yes, Your Honor.

23         THE COURT:  Okay.  Well, I've got a confusing note

24  here.  I can't read my own notes.  Let's move that up a week to

25  the 16th and then have your objections to the motions in limine

1   filed on the 23rd.

2       Then down here where it says mediation date, I'm going

3   to leave that blank right now because I want to talk to you

4   about that.  From my talks with you, it's my opinion that I

5   think that you need to talk and I think you need to talk

6   right now, and I would be remiss if I -- if we miss this

7   opportunity.

8       I'm going to say that I would like for you to mediate

9   within the next two weeks, and I would like for you to -- I

10  have a mediator in mind that has helped me a lot, especially

11  on the very few patent cases I have.  I mean, he's no

12  nonsense, understands the courtroom.  It's Judge Faulkner

13  out of Dallas.  Anybody have a problem with that?

14          MR. HOLMES:  No, sir.  In fact, that was our

15  recommendation.

16          THE COURT:  All right.

17          MR. HOLMES:  We're very comfortable with Judge

18  Faulkner.

19          THE COURT:  Can the Defendants live with that?

20          MR. MCWILLIAMS:  Your Honor, I think that's fine.  I

21  think Mr. Babcock might want to check with --

22          MR. BABCOCK:  I don't have any problem with it.

23          THE COURT:  Now, we'll need somebody there -- let me

24  just get this clear with the Defendants.  We need somebody

25  there at a high level.  I mean ready to walk in and call the

1    shots, not having to call back and get on the phone to somebody

2    junior.  And so I don't want -- Judge Faulkner can tell me

3    whether or not somebody came there with authority.  I mean,

4    that's legal for him to tell me that and I will find out.

5    Sometimes it doesn't do good to bring the top person in because

6    they're not really the person that makes the decision.  But,

7    Mr. Babcock, I want you to bring somebody in that will and can

8    make the decision.  Can you represent that you can do that?

9            MR. BABCOCK:  Yes, Your Honor, we will for sure do

10   that.

11           THE COURT:  All right.  Now, obviously it depends on

12   Judge Faulkner's schedule.  He's a very busy man.  I would say

13   that -- who will take the rowing oar, the lead oar in going out

14   and contacting him?

15           MR. HOLMES:  Your Honor, I would be glad to.  I will

16   actually see him on Monday at another mediation, a case I'm

17   just tangentially involved in.

18           THE COURT:  Can you try to reach him this afternoon?

19           MR. HOLMES:  Yes, sir.

20           THE COURT:  All right.  If you can reach him this

21   afternoon and find out if he can do it within ten days, and if

22   not, the closest he can do it to ten days, not in July though.

23   It has to be before July.

24           MR. MCWILLIAMS:  Your Honor, I might throw my hat in

25   the ring for August too.  I've got a vacation scheduled, so if

1  we can do it before July or August, I would appreciate it.

2          THE COURT:  That's right.  Mr. McWilliams and I are

3  going on vacation together.  We're going fishing up in Canada

4  at that time.  But anyway, so July is really important.  I mean

5  June is.

6          MR. HOLMES:  I'm sorry, Your Honor.  In the event

7  that Judge Faulkner can't see us in that time frame, is there

8  someone else I should contact or do we need to report that to

9  you?

10          THE COURT:  Why don't you report that to me and then

11  we'll get on the phone with the two -- not two, the three

12  parties, but do that right away.  And I'll leave you my cell

13  phone number here.  Call me.  And I'm not going to say that on

14  the record here, but anyway, I'll give it to you and you can

15  call me and we'll find somebody.  Be thinking as a backup who

16  you would want and I'll be thinking of somebody too.

17      But I hope we can do that, and I'll call him this

18  afternoon too but I won't follow up with a call to either of

19  y'all on it.  I'll just talk with him about it.  All right.

20  I will sign that order.

21      Now, you did mention something about you were working

22  on a Protective Order.  I do have an order that's just a

23  standard order but that's not -- that's just a suggestion.

24  If you have your own separate order that you agree on, I'll

25  sign that.

1          MR. BABCOCK:  Yes, Your Honor, we have talked about

2    it and I think it's your order with a couple of wrinkles that

3    we have agreed to.  So if I can approach the bench and tender

4    that to the clerk.

5          THE COURT:  Please.  Thank you.

6      All right.  I'll go ahead and sign this now and I'll

7    get you a copy over the ECMF.  What is it?

8          THE CLERK:  ECF.

9          THE COURT:  ECF, okay.  June 5, 2008.

10      Now, let's do this.  Let's review what all we've

11   accomplished today or what we've gone over today.  Anybody

12   make any notes on it so we can make sure we have a pretty

13   clear understanding of where we are?

14          MR. HOLMES:  Yes, sir.

15          THE COURT:  I did not make any notes so -- I mean, I

16   made some and once you say them --

17          MR. HOLMES:  I have my homework, Your Honor, to be

18   Plaintiffs are to file an amended complaint by June the 15th.

19   There will be no formal service.  Defendants will answer by

20   June 25th.

21      I will contact Judge Faulkner this afternoon and report

22   back to you on his availability for some date in the next

23   ten days, but at a minimum, some date in June so we can meet

24   before July 1st.

25      The parties will exchange initial disclosures.  We left

1    the deadline for that open, but under the rules it would be

2    14 days from today.  I think we'll probably be able to meet

3    that, barring some problem.

4         We will continue to work together to submit to the

5    Court a proposed order on the scope of the waiver of the

6    attorney-client privilege that we agree is going to guide

7    our production of documents in this case.

8         Each side will receive 25 interrogatories, requests for

9    admissions, 30 hours of deposition time in addition to

10   depositions of the parties, and unlimited interrogatories

11   and depositions on written questions to authenticate

12   documents.

13        We also discussed a number of issues, such as the

14   involvement of the Court, parallel litigation, fundamental

15   issues of the case and the Protective Order.

16             MR. BABCOCK:  Privilege log.

17             MR. HOLMES:  And privilege log by September 1, yes.

18             MR. BABCOCK:  And motions in limine.

19             MR. HOLMES:  Yes, motions in limine to be filed by

20   January 16, 2009.  Objections by January 23rd, 2009.

21        Yes, the Court also inquired about the cause number and

22   identifying information on the parallel litigation.  That is

23   included in the Defendants' filing, so it should be in the

24   record.

25             THE COURT:  Fair enough.

1          MR. HOLMES:  That's all I have, Your Honor.

2          THE COURT:  All right.  Anything else to add?

3          MR. BABCOCK:  Nothing further, Your Honor.

4          THE COURT:  All right.  We'll see you and good luck

5  on your discovery and we will then -- I'll be in touch with

6  Judge Faulkner as well.  And if you'll check up here, I can --

7  as soon as we go off the record here, I'll give you my cell

8  phone number, okay?

9          MR. HOLMES:  Yes, sir.

10         THE COURT:  Thank you.

11         MR. BABCOCK:  Thank you, Your Honor.

12

13

14

15

16

17

18

19

20

21  I certify that the foregoing is a correct transcript from

22  the record of proceedings in the above-entitled matter.

23

24  _____     _____

    Jan Mason                    Date

25