IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | NO. 6:08-CV-00089 |
| (1)CISCO SYSTEMS, INC., (2)RICHARD | § | |
| FRENKEL, (3)MALLUN YEN & (4)JOHN | § | |
| NOH, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, *ERIC M. ALBRITTON*, Plaintiff, and complains of *CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN & JOHN NOH*, Defendants, and would respectfully show unto the Court as follows:

*I.*

*PARTIES*

1. *ERIC M. ALBRITTON ("ALBRITTON")* is an individual residing in Gregg County, Texas.

2. *CISCO SYSTEMS, INC. ("CISCO")* is a corporation organized and existing under the laws of the State of California with its principal place of business in San Jose, California. CISCO has been duly served and has placed itself before this Court for all purposes.

3. *RICHARD FRENKEL ("FRENKEL")* is an individual who, upon information and belief, resides in the State of California. FRENKEL has been duly served with process and has placed himself before this Court for all purposes.

4. *MALLUN YEN ("YEN")* is an individual who, upon information and belief, resides in the State of California. She may be served with process by delivering a copy of the petition and a citation to her at her usual place of business located at 170 West Tasman Drive, M/S SJC-10/2/1, San Jose, California 95134-1700.

5. *JOHN NOH ("NOH")* is an individual who, upon information and belief, resides in the State of California. He may be served with process by delivering a copy of the petition and a citation to him at his place of business located at 170 West Tasman Drive, M/S SJC-10/2/1, San Jose, California 95134-1700.

## *II.*

## *VENUE & JURISDICTION*

6. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 (West 2008), in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

7. Venue is proper in the Eastern District of Texas in that all or a substantial portion of the occurrences giving rise to Plaintiff's claims occurred in the Eastern District of Texas.

## *III.*

## *FACTUAL BACKGROUND*

8. ALBRITTON is a licensed attorney representing clients in the United States District Courts for the Eastern District of Texas since 1996. Since 1998, he has practiced law, almost exclusively, in the Eastern District of Texas. In addition, he has resided in and been licensed to practice law in the State of Texas since November 4, 1994.

9. Throughout his professional career, ALBRITTON has enjoyed a sterling reputation for ethical and responsible legal representation. Neither the State Bar of Texas nor any state or federal court has ever issued any sanctions against ALBRITTON. Likewise, his law license has never been suspended or revoked for any reason. As a result of this reputation, Plaintiff has developed a successful law practice concentrated largely in intellectual property disputes in the Eastern District of Texas.

10. In furtherance of this practice, ALBRITTON filed a patent infringement suit against CISCO on behalf of ESN, LLC on October 16, 2007.

11. FRENKEL is an attorney licensed to practice law in the State of California. He is employed by CISCO as Director, Intellectual Property – Consumer & Emerging Technologies.

12. YEN is an attorney licensed to practice law in the State of California. She is employed by CISCO as Vice President, Worldwide Intellectual Property.

13. NOH is Senior Public Relations Manager for CISCO.

14. In October of 2007 and for a number of months prior thereto, FRENKEL published an internet "blog" purporting to cover patent litigation, particularly in what FRENKEL and CISCO termed the "Banana Republic of East Texas." At that time, FRENKEL's postings could be found at http://trolltracker.blogspot.com. Until shortly before the filing of this suit, FRENKEL purposefully published his comments anonymously.

15. In October of 2007, while still publishing anonymously, FRENKEL posted scandalous and defamatory allegations about ALBRITTON. As set forth in more detail below, FRENKEL's statements constitute libel and libel per se.

16. In particular, on October 17, 2007, FRENKEL posted a blog entitled "Troll Jumps the Gun, Sues Cisco Too Early." In that post, FRENKEL identifies ALBRITTON and "T. Johnny Ward" as local counsel for ESN. Further, in that post FRENKEL claims that ESN filed suit on October 15, 2007, instead of on October 16, 2007. Finally, FRENKEL in this post falsely asserts that ESN subsequently filed an amended complaint "to change absolutely nothing at all, by the way, expect for the filing date of the complaint." In fact, the amended complaint incorporated by reference the patent whereas the original complaint did not.

17. On October 18, 2007, FRENKEL stated as fact that ALBRITTON had "conspired" with the Clerk of the United States District Court for the Eastern District of Texas to "alter documents to try to manufacture subject matter jurisdiction where none existed." FRENKEL further stated as fact that ALBRITTON's misconduct was simply "another example of the abusive nature of litigation in the Banana Republic of East Texas."

18. A true and correct copy of the defamatory writings distributed by FRENKEL is attached hereto as Exhibit A.

19. It is a felony offense to alter court documents.

20. FRENKEL amended his post to delete the comments concerning the "Banana Republic of East Texas," but did not withdraw his allegation that ALBRITTON engaged in a crime until the blog was taken off line in February 2008; as such, FRENKEL continuously published the libelous statements concerning ALBRITTON from October 2007 until February 2008.

4

21. At the time he made these statements, FRENKEL was acting in the course and scope of his employment with CISCO and in his official capacity as Director, Intellectual Property – Consumer & Emerging Technologies for CISCO.

22. In fact, FRENKEL had been charged by CISCO with responsibility for management of the very case in which he alleged ALBRITTON had conspired with the Clerk to feloniously alter official documents.

23. FRENKEL published the blog with the knowledge and consent of CISCO, including NOH, Senior Public Relations Manager, Corporate Communications and YEN, Vice President Worldwide Intellectual Property.

24. In fact, FRENKEL published the libelous statements on October 18, 2007, at the express request and direction of NOH, CISCO's Senior Public Relations Manager and YEN, CISCO's Vice President, Worldwide Intellectual Property

25. After publishing the libelous statements on October 18, 2007, NOH, Senior Public Relations Manager, Corporate Communications, with the knowledge of YEN, congratulated FRENKEL for making the libelous statements and describing them as "brilliant."

26. FRENKEL published the libelous statements about ALBRITTON and referred to the United States District Court for the Eastern District of Texas as the "Banana Republic of East Texas" despite the fact that CISCO has availed itself of the United States District Court for the Eastern District of Texas by filing an intellectual property lawsuit in this very same district against a foreign competitor.

27. Before FRENKEL published his false and defamatory statements regarding ALBRITTON, FRENKEL and his supervisors, including YEN, had actual knowledge

that the statements were false, entertained serious doubts as to the truth of the statements, possessed obvious reasons to doubt the veracity of the statements and/or purposefully avoided the truth in publishing the statements.

28. After FRENKEL published his false and defamatory statements regarding ALBRITTON, he and YEN obtained additional information from various sources, which confirmed that the statements were false or, at a minimum raised a reasonable doubt as to the accuracy of the statements; nevertheless, FRENKEL, YEN and NOH did nothing to correct or retract the libelous statements.

29. FRENKEL, YEN, NOH and CISCO have purposefully maximized the dissemination of the libelous statements and the damage inflicted upon ALBRITTON by, among other things, continuously publishing the libelous statements until the blog was taken off line in February 2008, by providing links to the libelous statements including a link entitled "Eric Albritton" and by directly disseminating the blog to reporters and other members of the media.

30. FRENKEL, YEN, NOH and CISCO purposely elected to publish the statements on a web site devoted to intellectual property litigation and focused on the Eastern District of Texas. In so doing, Defendants knew that ALBRITTON concentrated his practice on patent litigation in the Eastern District of Texas and intended that litigants and attorneys would have ready access to the libelous representations.

31. On information and belief, FRENKEL further employed search engine optimization tools and techniques to direct individuals and entities seeking information about ALBRITTON through popular search engines such as "Google" to the defamatory statements. FRENKEL, YEN, NOH and CISCO have continuously published the libelous statements

from at least October 18, 2007 through February 2008. On January 30, 2008, FRENKEL boasted that his site had hosted its one hundred thousandth (100,000th) visitor.

## IV.

## *CAUSES OF ACTION*

### *A.*

### *DEFAMATION*

32. In publishing the false and libelous statements described above, FRENKEL, YEN, NOH and CISCO have defamed ALBRITTON in direct violation of Texas law. In particular, FRENKEL, YEN, NOH and CISCO published—either directly or through their agents—false and defamatory statements of "fact" referring directly to ALBRITTON that caused actual damages to ALBRITTON. In so doing, FRENKEL, YEN, NOH and CISCO acted with actual malice, gross negligence, reckless disregard and/ or in the absence of ordinary care for the truth of the statement and ALBRITTON's reputation.

33. Further, Defendants' wholly false statement that ALBRITTON "conspired" with the officials of the United States District Court to feloniously alter official documents is libelous per se. More particularly, such an outrageous and unsubstantiated statement invariably tends to injure ALBRITTON's reputation and to expose him to public hatred, contempt, or ridicule; expose ALBRITTON to financial injury; and impeach ALBRITTON's honesty, integrity, virtue or reputation thus exposing him to public hatred and ridicule. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2008).

34. Likewise, Defendants' statements are libelous per se in that they are of such a character as to injure ALBRITTON in his office, profession or occupation and directly accuse him of the commission of a crime.

### B.

### NEGLIGENCE

35. Both FRENKEL and CISCO failed to use ordinary care in the representation that ALBRITTON had conspired with federal officials to alter official court documents. In particular, neither Defendant used ordinary care to ensure that their statements were true or acted with reckless disregard for the truth of their allegations. Likewise, it was foreseeable to Defendants that their statements, if false, would reasonably be expected to injure ALBRITTON in his reputation and business relations.

### C.

### GROSS NEGLIGENCE

36. ALBRITTON would show the Court that the conduct of CISCO, FRENKEL, YEN and NOH rises to the level of gross negligence in this State. In particular, CISCO, FRENKEL, YEN and NOH acted with the specific intent to injure ALBRITTON in his reputation and business.

37. At a minimum, CISCO, FRENKEL, YEN and NOH acted with conscious indifference to ALBRITTON's rights, safety or welfare despite an actual, subjective awareness that such conduct posed an extreme degree of risk of harm to ALBRITTON's reputation and business relations.

38. Likewise, CISCO directed, authorized, approved and/or ratified the conduct of FRENKEL, YEN and NOH. Moreover, at the time of the defamation, CISCO employed FRENKEL, YEN and NOH in a managerial capacity, and each of them acted in the course and scope of their employment. CISCO, YEN and NOH have done nothing since the publication of the statements to disclaim them or distance themselves from them..

## *V.*

### *DAMAGES*

39. As a direct and proximate result of the conduct of FRENKEL, YEN, NOH and CISCO, ALBRITTON has endured shame, embarrassment, humiliation, mental pain and anguish. Additionally, ALBRITTON has and will in the future be seriously injured in his business reputation, good name and standing in the community. He will, in all likelihood, be exposed to the hatred, contempt, and ridicule of the public in the general as well as of his business associates, clients, friends and relatives. Consequently, ALBRITTON seeks actual damages in a sum within the jurisdictional limits of this Court.

40. Furthermore, ALBRITTON is entitled to exemplary damages from FRENKEL, YEN, NOH and CISCO. ALBRITTON would show the Court that FRENKEL, YEN, NOH and CISCO acted with the specific intent to injure ALBRITTON in his reputation and business. At a minimum, they acted with conscious indifference to the rights, safety or welfare of ALBRITTON with actual, subjective awareness that such conduct posed an extreme degree of risk of harm to the reputation and well-being of ALBRITTON.

41. Likewise, CISCO is vicariously liable for the outrageous conduct of FRENKEL, YEN and NOH in that it directed, authorized, approved and/or ratified the libelous statements. In like fashion, CISCO has done nothing since the publication of the statements to disclaim them or distance itself from the conduct of FRENKEL, YEN and NOH.

42. Moreover, at the time of the defamation, CISCO employed FRENKEL as Director, Intellectual Property – Consumer & Emerging Technologies and gave him specific responsibility for the ESN litigation. As a result, FRENKEL was employed in a managerial capacity and acted in the course and scope of his employment at the time he published the defamatory statements.

43. Likewise, both YEN and NOH acted at all times in the course and scope of their professional employment with CISCO in directing the libelous postings. As CISCO's Vice President of Intellectual Property Worldwide and its Senior Public Relations Manager, respectively, both YEN and NOH at all times acted as vice-principals of the corporation.

## *VI.*

## ***CONCLUSION & PRAYER FOR RELIEF***

44. It has long been said in this State that "libel is the sword of the coward" and "anonymity the shield of a dastard." Having anonymously attacked the integrity and reputation of ALBRITTON and impugned the dignity of the United States District Court for the Eastern District of Texas, FRENKEL, YEN, NOH and CISCO should now be called to account for their conduct.

***WHEREFORE, PREMISES CONSIDERED,*** ERIC M. ALBRITTON respectfully prays that CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN and JOHN NOH be cited to appear and answer for their actions and that, upon final trial of this cause, he have Judgment against them for the full amount of his actual damages together with such punitive damages as may be necessary to deter Defendants from similar outrage in the future, pre-judgment and post-judgment interest at the highest lawful rate and all costs of this proceeding.

Respectfully Submitted,

***THE LAW OFFICE OF JAMES HOLMES, P.C.***

By: /s/
James A. Holmes
State Bar No. 00784290

605 SOUTH MAIN, STE. 203
HENDERSON, TEXAS 75654
(903) 657-2800
(903) 657-2855 (fax)
jh@jamesholmeslaw.com

***ATTORNEY FOR PLAINTIFF***



## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing Original Complaint has been duly served on all parties via the electronic filing system of the Eastern District of Texas on this, the 16th day of June 2008.

_____/s/_____
James A. Holmes