IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON | § | |
| | § | |
| v. | § | |
| | § | C. A. NO. 6:08-CV-00089 |
| CISCO SYSTEMS, INC., | § | |
| RICK FRENKEL, MALLUN YEN & | § | |
| JOHN NOH | § | |

**DEFENDANTS' REPLY ("REPLY") TO PLAINTIFF'S RESPONSE ("RESPONSE")[1]
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ("MOTION")**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Cisco Systems, Inc. ("Cisco"), Richard Frenkel ("Frenkel"), Mallun Yen[2] ("Yen") and John Noh[3] ("Noh"), (collectively "Defendants") reply to Plaintiff's Response to Defendants' Motion for Summary Judgment as follows:

## I. INTRODUCTION

A federal docket entry was changed after Eric Albritton's paralegal (Amie Mathis ("Mathis")) had five conversations with the United States District Clerk's office seeking that result. As the chief clerk, David Maland, wrote in a memo and later substantiated in his deposition, "(Amie) wanted the clerk's office to change the date to October 16th...the Texarkana deputy clerk was reluctant to change the date...and referred Amy to the Tyler clerk's office.

---

[1] This is a reply to Plaintiff's response of December 15, 2008 (the date it was due after Defendants agreed to an extension) and not the untimely amended response which was filed after hours on December 19, 2008 without leave of court or prior notice to defendants. Defendants have separately moved to strike that response.

[2] Subject to her Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 37.

[3] Subject to his Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 35.

Amy made the same request of the Tyler Deputy clerk."[4] Mathis confirmed the accuracy of Maland's account in an email to Albritton.[5] There is no dispute about these material facts.

The October 17, 2007 Patent Troll Tracker article did not comment on the docket change at all and summary judgment should be granted as to that article. There is nothing materially false about the October 17 article, nor is there any summary judgment evidence of "fault," be it "negligence" or constitutional "actual malice." Nor has the Plaintiff shown damages. Indeed, the Response barely mentions the October 17 article although it claims (wrongly) that the October 17 (posting) "accused Albritton of conspiring with an administrative court clerk to alter government documents...."[6]

The October 18 article reported on a matter of public concern (the integrity of the court's electronic filing system and the clerk's stewardship of that system)[7] and on an already existing public controversy (the abuse of the patent system by non-practicing entities in the Eastern District of Texas), which had generated news articles, law review commentary and remarks from the bench, including one by a United States Supreme Court justice.

The speech at issue in this case is important, no matter that some lawyers in the Eastern District find it offensive. The Patent Troll Tracker is entitled to full constitutional protection (both state and federal) just as was the news letter of the John Birch Society in *Gertz v. Robert Welch, Inc.*[8] or the volunteer host of the public access television program in *Bentley v. Bunton.*[9]

---

[4] Ex. 3 to Defendants' Motion, Maland Deposition at 55:11-12 and 57:7-10.

[5] Ex. 5 to Defendants' Motion.

[6] Response at p. 1.

[7] *See also In re Dowell*, 82 B.R. 998, 1010 n. 8a (W.D. Mo. 1987) (noting that the clerk's changing of the docketed date and filing stamp on a final judgment "where the clerk actually determines that another date, later entered on the docket, should control, obviously leaves the process subject to many imaginable abuses.").

[8] 418 U.S. 323 (1974).

[9] 94 S.W.3d 561 (Tex. 2003).

DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Page 2**

When these constitutionally mandated principles are properly applied in accordance with Texas law, the court should find that: (i) a reader of ordinary intelligence would not place the construction advanced by Plaintiff on the Articles and that under a proper construction they are literally or substantially true or nonactionable rhetoric, hyperbole or opinion; (ii) the plaintiff is a limited purpose public figure and no actual malice has been shown; and (iii) there is no summary judgment evidence of the only claimed damages (that being emotional distress). We address these points below.

## II. THERE IS NO EVIDENCE OF DAMAGES
### (In Reply to Response at Pages 41-42 and 19-23)

Plaintiff's Disclosures regarding damages (*Ex.* 21C) state, as required by Rule 26(a)(1)(A)(iii), F.R.C.P.,[10] in its entirety: "Plaintiff does not seek any economic damages. Plaintiff seeks only an appropriate award of damages for mental anguish and punitive damages sufficient to deter Defendants from future misconduct. The amounts of these awards are soundly in the discretion of the jury." The Motion challenged Plaintiff's right to recover for mental anguish damages in this case under applicable Texas law.[11] Plaintiff offers two responses: (i) Plaintiff says this is a libel *per se* case and, therefore, he does not have to show any damages because the law presumes them; and (ii) "the record contains evidence that Albritton was harmed."[12]

There are several complete answers to Plaintiff's response. First, neither the October 17 nor the October 18 articles are *per se* libels such that damages are presumed. Second, even if they are, presumed damages are unconstitutional and not recoverable under the state and federal constitutions, at least where there is no clear and convincing showing of knowledge of falsity or

---

[10] "A party must…provide to the other parties…a computation of each category of damages claimed by the disclosing party…."

[11] Motion at 27-29.

[12] Response at 42.

reckless disregard for the truth.[13] Third, even if one or both of the articles are *per se* libels and even if knowledge of falsity or reckless disregard for the truth were shown (which they are not, *see infra.*, pp. 19-21), Texas common law does not permit presumed mental anguish damages and precludes the award of mental anguish damages under these facts. Fourth, the only "record cite" Plaintiff makes to support his damage claim is incomplete (no page is cited). Fifth, even if the Plaintiff's damage evidence is credited, it does not meet the Texas standard because, as the court pointed out in *Bentley*, "[c]ompensation can only be for mental anguish that causes 'substantial disruption in...daily routine' or 'a high degree of mental pain and distress.'"[14] There is no such evidence in this record.

A.     **Libel Per Se (In Reply to Response at Pages 19-23)**

There are two separate and distinct consequences of a publication being labeled "*per se.*" The first is that if an article is libelous *per se* then the Plaintiff may have satisfied one element of his claim, that is, the article may be defamatory as a matter of law. The defamatory element is distinct from whether the Plaintiff can show falsity.[15] Defendants did not move for summary judgment on the defamatory meaning element.

The second way "*per se*" can impact a libel case is by what the U.S. Supreme Court in *Gertz* described as "an oddity of tort law,"[16] that is, the ability for a Plaintiff to recover damages without pleading or proof. This oddity creates an obvious tension with the constitutional right to free speech as the Court in *Gertz* wrote: "The largely uncontrolled discretion of juries to award

---

[13] Reckless disregard means that the person responsible for the publication in fact entertained serious doubt as to the truth. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Huckabee v. Time Warner*, 19 S.W.3d 413, 420 (Tex. 2000). ("Reckless disregard is also a term of art." It means "the publisher entertained serious doubts as to the truth of his publication.")

[14] *Id.* at 606 (quoting *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)).

[15] *See Gateway Logistic Groups, Inc. v. Dangerous Goods Management Australia PTY, Ltd.*, No. H-05-2742, 2008 U.S. Dist. LEXIS 34246 at *29 (S.D. Tex. 2008). ("Whether a statement is reasonably capable of the defamatory meaning alleged is distinct from whether it is false.")

[16] 418 U.S. at 349.

damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms."[17]

For that reason the court held that "it is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury."[18] Thus, the plaintiff Elmer Gertz, a lawyer like Albritton, was required to present proof of damages even though the court found him to be a private and not public figure and even though the libel was *per se*. Justice White, in dissent, noted that the Court had "federalized major aspects of libel law" and wrote that "[n]o longer will the plaintiff be able to rest his case with proof of a libel defamatory on its face...." Recovery will henceforth, as a matter of constitutional law, Justice White wrote, be "conditioned upon 'competent' proof of actual injury" and it will not matter "the nature of the defamation."[19]

The Texas Supreme Court, citing *Gertz* with approval, took this one step further in *Bentley* where the publication was a *per se* libel and where the jury found that the statements were made with constitutional "actual malice."[20] *Bentley* presented a case where, under *Gertz*, presumed damages might be permissible. The *Bentley* Court first noted that *Gertz* "did not consider whether limitations should be placed on damage awards when a defendant is shown to have acted with actual malice...."[21] But, as Bentley had published with actual malice, that issue was before the Texas Supreme Court, which said that even though there was a *per se* libel made with "actual malice" the case raised "similar" free speech concerns as *Gertz*. The *Bentley* Court, relying on Texas common law, reversed a $7,000,000 mental anguish jury award holding that

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at 376. (White, J. dissenting.)

[20] *Bentley*, 94 S.W.3d at 605.

[21] *Id.*

"no evidence permitted the jury to make the findings it did"[22] and "[n]ot only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded."[23]  So plaintiff's position that he does not have to offer proof of damage has been rejected by both the United States and Texas Supreme Courts in *per se* libel cases and, in Texas, even when actual malice has been shown.

Of course, applicability of these constitutional and common law protections of free speech are not at issue and the "oddity" of presumed damages is avoided if the publication is not *per se* in the first place.  Neither the October 17 nor the October 18 articles are defamatory *per se*.  The rules on whether a publication is *per se* are familiar.  "Libel *per se* means the written or printed words are so obviously hurtful to the person aggrieved that they require no proof of their injurious character to make them actionable."[24]  We pause here to note that there is no evidence that the complained of Articles were "obviously hurtful" to Plaintiff.  His practice has thrived (more money in 2008 than in 2007), he has, subsequent to October 18, 2007, received the coveted appointment by Judge Davis to the local rules committee and all of his damage witnesses think he's a great guy and have no evidence that his reputation has suffered.[25]  Nevertheless, Plaintiff says that he has been accused of a crime and that he has been injured in his business or occupation because of this allegation of criminal misconduct.  An accusation of criminality is one "specifically defined category"[26] of *per se* libel.[27]

---

[22] *Id.* at 607.

[23] *Id.* at 606.

[24] *Clark v. Jenkins,* 248 S.W. 3d 418, 437 (Tex. App.--Amarillo 2008, pet. denied).

[25] Ex. 2 to Defendants' Motion, Albritton Deposition at 132:23-133:1, 134:2-3, 117:8-20, 126:18-21; Ex. 3 to Defendants' Motion, Maland Deposition at 131:4-18; Ex. 15 to Defendants' Motion, Carroll Deposition at 6:14-19, 13:23-14:4; Ex. 16 to Defendants' Motion, DeRieux Deposition at 9:8-10:4, 14:1-8; Ex. 17 to Defendants' Motion, Brucceleri Deposition at 21:5-22:5; Ex. 18 to Defendants' Motion, McAndrews Deposition at 81:5-9; Ex. 19 to Defendants' Motion, Williams Deposition at 9:18-11:5, 12:8-13:1; Ex. 20 to Defendants' Motion, Smith Deposition at 12:13-13:1.

[26] *Gateway,* 2008 U.S. Dist. LEXIS at *18.

To determine whether an accusation of criminality has been made the "statement (must) **unambiguously** and falsely impute criminal conduct **to plaintiff**."[28]  In addition, the imputation of criminal conduct by the plaintiff must be "contained in the statement itself" because "the very definition of '*per se*,' 'in and of itself' precludes the use of innuendo."[29]  Innuendo is "extrinsic evidence used to prove a statement's defamatory nature" and "includes the aid of inducements, colloquialisms, and explanatory circumstances."[30]  It has long been the law in Texas that "words which are libelous *per se* do not need an innuendo, and conversely, words which need an innuendo are not libelous *per se*."[31]

With these rules in mind, we examine the two articles to determine whether they are *per se* libels:

October 17, 2007 Patent Troll Tracker Article.  We start with Plaintiff's complaint[32] which in paragraph 16 discusses this article and alleges it "falsely asserts that ESN subsequently filed an amended complaint "to change absolutely nothing at all, by the way, except for the filing date of the complaint."  The complaint notes (correctly) that the amended complaint incorporated by reference the patent "whereas the original complaint did not."[33]  It also alleges that this article "claims that ESN filed suit on October 15, 2007, instead of October 16, 2007."[34]  There is no allegation that this article accused plaintiff of a crime and neither of the two complained-of statements do so.  As the court will recall, Defendants asked in interrogatories whether there

---

[27] *Christy v. Stauffer Publications, Inc.,* 437 S.W.2d 814, 815 (Tex. 1969).

[28] *Moore v. Waldrop,* 166 S.W.3d 380, 386 (Tex. App.--Waco, 2005) ("To charge one falsely with the commission of any crime for which he may be punished by imprisonment is slander or libel *per se*.")

[29] *Id.*

[30] *Id.* at 385.

[31] *Montgomery Ward & Co. v. Peaster,* 178 S.W.2d 302, 305 (Tex. App.--Eastland, 1944, no writ).

[32] Docket No. 17.

[33] *Id.* at ¶16.

[34] *Id.*

were any other statements in this article of which the Plaintiff complained. The interrogatories were objected to although we were referred back to the complaint and the article itself.

The response barely mentions the October 17 article although it does say this article "accused Albritton of conspiring (with the clerk)…for the fraudulent purpose of manufacturing subject matter jurisdiction where none existed…."[35] In fairness we think Plaintiff is either confusing the October 17 article with his allegations regarding the 18th or attempting to collapse the two into one. In any event, the October 17 article does not **"unambiguously"** accuse **"the plaintiff"** of having committed a crime. Certainly accusing someone of not amending a pleading when there was in fact a minor change, does not amount to an accusation of criminal conduct. Nor does the article even state that it was the plaintiff who amended the complaint. The article says only that ESN amended and noted the company was represented by Peter McAndrew (of Chicago), and "local counsel" John Ward Jr. **and** Albritton. The article does not say who made the amendment. One would need extrinsic evidence for that and, as we all know as lawyers, lead counsel (McAndrews) is typically in charge of amendments. Even if, as Plaintiff insists, the complaint was filed on the 16th, it is no crime to prematurely file a complaint. This article is not *per se* defamatory.

October 18, 2007 Patent Troll Tracker. This article is not *per se* defamatory either. It does not use the type of language which, in prior cases, including those cited by Plaintiff, has supported a finding of *per se*. For example, Plaintiff cites *Fiber Sys. Int'l, Inc. v. Roehrs*[36] but there the defendant said the plaintiffs "are thieves or have stolen property."[37] In *Gateway*

---

[35] Response at p. 1.
[36] 470 F.3d 1150 (5th Cir. 2006).
[37] *Id.* at 1161.

*Logistics Group, Inc. v. Dangerous Goods Mgmt. Australia Pty, Ltd.,*[38] the court was presented with a number of statements including that plaintiff's conduct "was unlawful,"[39] "there must be some sort of cash back arrangement,"[40] and that plaintiff "intentionally violated" an export license regulating the shipment of hazardous materials as the result of a "greedy, deceitful and very stupid plan."[41] The court, however, refused to categorize as *per se* the statements "the lying, cheating con-man from Texas" or the "'Crooks' and 'very good con men."[42] In *Mustang Athletic Club v. Monroe*, the only other case Plaintiff cites on the *per se* question, the court found a statement that the plaintiff "vandalized (defendant's) property" defamatory *per se* although there was dissent on this issue.[43]

Plaintiff claims use of the word "altered" means that he was being accused of criminality. But the Oct. 18 Article, when construed as a whole, used the words "altered" and "changed" interchangeably. For example, the Article starts by saying that Frenkel had received information (by email) that the docket had been "altered." The next sentence uses the word "change"; "ESN's local counsel called the EDTX court clerk and convinced him/her to **change** the docket...." We know the Plaintiff is dictionary averse[44] (Response at pp. 22-23) but Webster's

---

[38] 2008 U.S. Dist. Lexis at *34246 (S.D. Tex. 2008). This unpublished opinion may be persuasive but it is is not precedent. *See* FED. R. APP. P. 32.1; TEX. R. APP. P. 47.7.

[39] *Id.* at *6.

[40] *Id.* at *8.

[41] *Id.* at 10.

[42] *Id.* at 13.

[43] 137 S.W.3d 336, 337-340 (Tex. App.-Beaumont 2004, no pet.).

[44] Defendants argue that the Court should ignore the plain dictionary meaning of "conspiracy" as a word meaning two people working together to accomplish a common purpose and instead *assume* that the word meant something more sinister, citing *Fiber Sys. Int'l v. Roehers*, 470 F.3d 1150 (5th Cir. 2006). *Fiber Sys.*, however, involved the use of the word "thief," for which the Court ruled that it would not consider "arcane" definitions like a "kind of wild bee said to rob hives." *Id.* at 1162. In contrast, the use of "conspiracy" to mean something other than committing a criminal act is common in contemporary society. Numerous courts have applied dictionary definitions to determine whether a publication is defamatory. *See, e.g., Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 282-83 (1973) (relying on Merriam Webster's Dictionary to reverse a libel judgment on the basis that the purportedly defamatory term "scab" also means one who refuses to join a union, and it was undisputed that the appellees had in fact refused to join the union); *Knievel v. ESN*, 393 F.3d 1068, 1085 (9th Cir.

New World dictionary defines "alter" as "to change, make or become different." Webster's New World Desk Dictionary Second Edition (2002). The Deputy District Clerk David Provines used the term interchangeably when discussing what happened.[45] Indeed, a few weeks after the October 18 article (and well before this suit in March 2008) Frenkel commented (in the PTT) on his use of the word "altered." He wrote:

> I got some critical emails for using the word "altered" with respect to the Texas docket. Well, let me respond. If a document appears one day with a date stamp, and the next day that date stamp disappears and is replaced with a different stamp, what would *you* call it? To the extent the use of the word "altered" implied that anyone did anything *illegal,* that was not my intent. I'm positive the court clerk was following local custom, as was the ESN Texas lawyer.[46]

Plaintiff next focuses on the word "conspiracy" and alleges that the article said "Albritton conspired with the officials of the United States District Court to <u>feloniously</u> alter official documents."[47] The article does not, of course, say that; Plaintiff has added the innuendo – "feloniously". This is a classic case of innuendo which, under the rules cited above, precludes a *per se* finding. Furthermore, when one considers the article as a whole, it is clear that Frenkel is not alleging a criminal conspiracy or frankly even a civil conspiracy. The clerk, he wrote, is "apparently wittingly or unwittingly conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction." Webster's defines unwitting as "not knowing, unaware, unintentional." A conspiracy can not be unwitting.[48] As we argued in the Motion, the word

---

2005) (holding "pimp" was not capable of a defamatory meaning because a non-defamatory meaning of the word "pimp" was not in the dictionary); *Cram Roofing Co., Inc. v. Parker*, 131 S.W.3d 84, 90 (Tex. App.—San Antonio 2003, no pet.) (using Webster's Dictionary to determine whether a term was defamatory).

[45] Q: [By Mr. Babcock] "Which used to say '10/15'?." A: [By David Provines, Deputy Clerk E.D. Tex.] "It used to say '10/15,' yes." Q: "And now it says '10/16'?" A: "Yes." Q: "Because that – because your office altered that, right?" A: "Yes, yes." (Ex. 7 to Defendants' Motion, Provines Deposition at 13:22-14:2.)

[46] Ex. 1 to Defendants' Motion, Frenkel Declaration Ex. L at Frenkel.000058.

[47] Docket No. 17 at ¶ 33.

[48] *Murdoch v. State*, 460 S.W.2d 423 (Tex. Crim. App. 1970) (Texas Courts require "proof of a criminal intent on the part of the accused in entering into the agreement alleged to constitute the conspiracy."); *see also U.S. v. Ragsdale*, 426 F.3d 765, 778 n. 6 (5th Cir. 2005) ("the mens rea for [a criminal] conspiracy requires that the defendant willfully committed an act, or acts, forbidden by the underlying statute").

"conspire" was a rhetorical, hyperbolic way of describing what indisputably happened: Albritton's paralegal called up the clerk "and wanted the clerk to change the date" and the clerk did so. End of story and, to date, no one has been indicted.

Far from thinking that the article accused Albritton of committing a criminal act, it could just as easily be read to demonstrate what helpful influence the Plaintiff has with the clerk's office, a benefit to his clients. Local counsel, after all, perform their most valuable function by knowing the local rules, as well as the local court staff and judges. Instead of complaining about this article, Albritton should be using it to market how effective he is in the Eastern District of Texas.

Instead, Albritton says that he is "extremely exercised...about the fact that this coward, the Troll Tracker, accused me of a crime."[49] He was asked but could not "tell you right now what the code sections are" of the crime he supposedly committed.[50] But, he said, "there is a statute called tampering with a governmental record...that if you tamper with these records it's a crime...(and) I know in federal court, you know, it's a crime to use the wires in the mail to perpetrate fraud."[51] The response does not recite any federal law purporting to make Albritton's actions criminal. It cites only Texas Penal Code ¶ 37.10,[52] but that law could not possibly apply to this situation. First, it is a state statute that has never been applied to a federal docket entry or a federal pleading and, furthermore, the statute requires knowing or intentional conduct. The *Vasilas* opinion cited by Plaintiff is distinguishable from the facts in this case.[53] In *Vasilas*, an

---

[49] Albritton Dep. at 46:5-7 (Response Ex. 7).

[50] *Id.* at 89:22-23.

[51] *Id.* at 89:1-25.

[52] Response at p. 20 at n. 93.

[53] *State v. Vasilas*, 187 S.W.3d 386 (Tex. Crim. App. 2006).

indictment was brought against an attorney for knowingly including false statements in a state court pleading.[54] In this case, there is no allegation about the content of the ESN complaint.

Finally, the Response (but not the Complaint) complains about use of the word "proof." The article said: "There's tons of proof that ESN filed on October 15." Plaintiff confuses the issue of whether the date was changed/altered (which he says means he committed a crime) with whether the complaint was in fact filed on the 15th. The tons of proof statement related to the latter, not the former. It is certainly no crime to file a complaint early, or late for that matter. There may be certain legal consequences to an untimely filing (be it early or late), but they are not criminal.

The Plaintiff submits the identical declarations of four friends who are all lawyers in the Eastern District. Each declaration recites that "when I read the October 17-18, 2007 postings, I understood that the blogger accused Eric Albritton of a crime and unethical conduct."[55] The court should, under Texas law, disregard this testimony. In *Musser v. Smith*,[56] there was testimony from the recipients of a letter that, in their view, the letter implied the Plaintiff "would steal customer lists." The Texas Supreme Court found that the letter was not defamatory as a matter of law dismissing the testimony as "not typical of the meaning an ordinary reader would impute to the statement."[57]

---

[54] *Id.* at 488.

[55] See Response Exs. 2-4, 6. The language in Ex. 4 is slightly altered to reflect that the witness (Otis Carroll) did not read the articles until after his deposition.

[56] 723 S.W. 2d 653, 655 (Tex. 1987).

[57] *Id.*

Here too the declarants are hardly typical of "ordinary readers." They are all lawyers, they are all friends of Albritton[58] and they all practice in the Eastern District of Texas.[59] Their spin on the articles are not typical of the ordinary reader.[60]

## B. The Record Does Not Contain Evidence of "Mental Anguish Damages"

Plaintiff claims "the record contains evidence" of harm.[61] It does not. The record cite for this statement is blank, although it is apparently contained somewhere in the McAndrews deposition.[62] We have reviewed the deposition excerpts provided by Plaintiff and find nothing that would rise to the level of compensable mental anguish damages under the Texas standard. Damage is an essential element of Plaintiff's claim.[63] Without actual damages, punitive damages are not available.[64]

## III. THE ARTICLES ARE TRUE AS A MATTER OF LAW

## A. Albritton bears the burden of proof to show that the Articles were false. (In Reply to Response at Page 19)

Plaintiff says that "because Albritton is a private figure, truth is an affirmative defense for which Cisco bears the burden of proof"[65] citing *dicta* from an unpublished district court opinion. He dismisses the Fifth Circuit opinion, *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 549 (5th Cir. 1994), cited by Defendants, which held that "the plaintiff (who was a private figure) has the burden of proof as to the element of falsity" claiming that the Fifth Circuit was

---

[58] Plaintiff's Ex. 7, Albritton Deposition at 53:1-2; Defendants' Reply Ex. 42, Carroll Deposition at 7:2-4; Defendants' Reply Ex. 43, Williams Deposition at 7:7-11; Defendants' Reply Ex. 44, Brucceleri Deposition at 8:22.

[59] Plaintiff's Exs. 2, 3, 4 and 6.

[60] *See id.*

[61] Response at p. 42.

[62] Response at p. 42 n. 185.

[63] *Swate v. Schiffers*, 975 S.W.2d 70, 75 (Tex. App.-San Antonio,1998) (holding that the trial court's order granting the defendants' motion for summary judgment was proper where there was no evidence of injury.)

[64] *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753-754 (Tex. 1984). *See also Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 564 (5th Cir. 1997).

[65] Response at p. 19.

"citing Mississippi law." This is what comes from reading the headnote instead of the case. While it is true that the West headnote No. 11 in *Burroughs* states that "under Mississippi law, plaintiff has burden of proof as to element of falsity," the Fifth Circuit did not rely upon Mississippi law on this point but rather cited[66] the United States Supreme Court decision in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986), which was decided under the federal constitution.

*Hepps* was a private figure case and established the federal rule regarding burden of proof, applicable in state libel actions (such as *Burroughs*). The Court held that:

> "Here, as in *Gertz*, the plaintiff is a private figure and the newspaper articles are of public concern. In *Gertz*, as in *New York Times*, the common-law rule was superseded by a constitutional rule. We believe that the common law's rule on falsity-that the defendant must bear the burden of proving truth-must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.[67]

**B.     The Articles are Literally or Substantially True as a Matter of Law.**
**(In Reply to Response at Pages 23-26)**

The Articles are either literally true or substantially true and not materially false as a matter of law. Plaintiff's sole argument to the contrary is that "Frenkel accused Albritton of criminal and unethical conduct when no such conduct occurred."[68] As we discussed, *infra* at 12-13, this is not the construction of the articles an ordinary reader would place on them. Plaintiff's reliance on *Turner v. KTRK* is misplaced. In that case, the Texas Supreme Court held that a television broadcast could be false by implication in two circumstances: (i) "omitting material facts" or (ii) "misleadingly juxtaposing events."[69] Conversely, the *Turner* Court held that "a true

---

[66] 28 F.3d at 549.
[67] *Id.*
[68] Response at p. 23.
[69] 38 S.W.3d at 114.

account which does not create a false impression by omitting material facts or suggestively juxtaposing them is not actionable, <u>regardless of the conclusions that people draw from it</u>."[70] There has been no allegation, argument or proof here that Defendants either omitted material facts or juxtaposed events.

This case is closer to the Texas Supreme Court decision in *Randall's Food Markets, Inc. v. Johnson,*[71] where the court held that "a defendant cannot be held liable for presenting a true account of events, regardless of what someone might conclude from this account."[72] Albritton, through his paralegal, asked the clerk to change a docket entry, and the clerk complied. That is the "gist" of what the October 18 article said, and it's true.[73]

## IV. ALBRITTON IS A LIMITED-PURPOSE PUBLIC FIGURE
### (In Reply to Response at Pages 13-19)

**A.** <u>**Albritton's attempts to avoid the public controversy at issue fails.**</u>

The controversy which the Articles addressed is <u>the abuse of the patent system by non-practicing entities in the Eastern District of Texas</u>, not, as Albritton alleges, only the *ESN v. Cisco* litigation. Plaintiff does not refute, or even discuss, the widespread publicity surrounding the Eastern District of Texas cited in the Motion at pp. 18-23, he merely redefines the controversy to be the ESN case.[74]

Albritton has admitted throughout this litigation that Frenkel's website was "devoted to intellectual property litigation, especially in the Eastern District of Texas," that "Frenkel

---

[70] *Id.* at 118.

[71] 891 S.W.2d 640 (Tex. 1995).

[72] *Turner* at 115.

[73] The Response argues that it was false to say the civil cover sheet was signed by Albritton on October 15, indicating the case had been filed on that date. (This matter was not plead.) But the civil cover sheet was indisputably signed on October 15 by Albritton (Ex. 2 to Defendants' Motion, Albritton Deposition at 100:9-10) and on its face it says "Filed 10/15/2007." (Ex. 1 to Defendants' Motion, Declaration of Rick Frenkel, Ex. C). The complaint which accompanies it likewise says "Filed 10/15/2007."

[74] Response at p. 15.

published an internet 'blog' purporting to cover patent litigation, particularly in what Frenkel and Cisco termed the 'Banana Republic of East Texas'" and that Defendants publishes the statements on a "web site devoted to intellectual property litigation and focused on the Eastern District of Texas."[75] Albritton cannot try to narrow the scope of the article to avoid its overall message, which was consistent with the general message Albritton himself attributes to the website.[76]

Like the "litany of articles" in Exhibits 25 through 38 to the Motion, the Articles at issue concerned abuses of the patent system in the Eastern District of Texas, which was of such great public concern and impacted so many people that Justice Scalia, the U.S. House of Representatives, a Yale Law School publication, The Texas Lawyer, as well as numerous others including Frenkel, thought it was worth discussion.[77]

Albritton's argument that the articles concerning the public controversy occurred after the October 18 Articles and are therefore irrelevant also fails. Many of the articles (including Justice Scalia's comment) occurred before the publication of the Articles at issue in this lawsuit.[78] Moreover, even the articles that occurred after the October 18, 2007, are relevant to the public debate surrounding patent litigation in the Eastern District of Texas. "Creating a public issue is not the same as revealing one... the first newspaper to report on a pre-existing public dispute should not be held to a stricter standard of liability than those who follow."[79] Albritton does not allege that these Articles led to or caused the October 18 Article. As in *Trotter*, the October

---

[75] Docket No. 39 at p. 1; Docket No. 17 at ¶14; Docket No. 17 at ¶30.

[76] *See Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 620 (2nd Cir. 1988), cert. denied 488 U.S. 856 (1998)(although the public issue was the priests' religious activities, they were also public figures for a story concerning their business practices because the article at issue encompassed the priests' business activities "as part of a broader examination of the priests' religious status.")

[77] *See* pp. 19-23 of the Motion.

[78] Exs. 25, 32-35 and 41 to Defendants' Motion.

[79] *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 434 (5th Cir. 1987).

Articles demonstrate a public controversy because they "did not cause the later press coverage of the [public issue], the [public issue] itself did."[80]

**B.     Albritton's attempt to diminish his role in the controversy fails.**

Albritton's allegation that he is not a public figure simply because he has not sought out media attention also fails as a matter of law. "The status of [a public figure] does not depend upon the desires of the individual."[81]  Where the plaintiff voluntarily engages in a course that was bound to invite attention and comment, he is a public figure.[82]  Albritton attracted attention for his role in patent litigation in the Eastern District of Texas before the October Articles and has continued his involvement in the issues since that time.  He was publicized as a top filer of "troll" cases in the Eastern District of Texas.[83]  Before the Articles were published, he advertised on his website that he "is the author of two law review articles and is currently working on a third. Additionally, he has spoken at various seminars and has been a guest commentator on Court TV."

It is well established that an otherwise unknown individual may become a public figure with respect to a controversy with which he or she is connected without intentionally becoming a part of the debate.[84]  The Fifth Circuit has held that "an individual cannot erase his public-figure status by limiting public comment and maintaining a low public profile."[85]  Other cases have held that an otherwise unknown critic of a political cause is a public figure with respect to

---

[80] *Id.*

[81] *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978).

[82] *Id.*

[83] Defendants request that the Court take judicial notice of this, as evidenced by publicly available case information from May of 2006 through December of 2007 on the Electronic Filing System.  It is common practice for courts to take judicial notice of filing dates on official court documents, as such records are "not subject to reasonable dispute." *In Re James*, 300 B.R. 890 (W.D. Tex. 2003).

[84] *See Rosanova, 580 F.2d at 86*; *Suriano v. Gaughan* 480 S.E.2d 548, 560 (Vir. 1996) ("when a citizen commits a controversial act to protest a governmental decision, he should not be surprised when that act becomes a matter of public attention and criticism.")

[85] *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431 (5th Cir. 1987).

publications concerning issues surrounding the political cause.[86] It is also well established that an attorney may become a public figure with respect to his representation where the attorney goes beyond his representation of his client in a way that relates to the public controversy.[87] Unlike *Gertz*, where the lawyer's role "related solely to his representation of a private client," Albritton has thrust himself into the public debate.

Albritton had access to the very same media outlet that he claims defamed him. One of the two rationale articulated by the U.S. Supreme Court for the limited-purpose public figure status is that a limited-purpose public figure presumably has media access.[88] Here, Albritton could have posted his own explanation or comment to the October Articles on the Patent Troll Tracker itself, which allowed readers to make comments. His comments could have been seen alongside the very articles he complains about. As *Gertz* made clear, public figures are given less protection because "the first remedy of any victim of defamation is self-help—using available opportunities to contradict the lie or correct the error and thereby minimize its adverse impact on reputation."[89]

C.     **Albritton cannot claim that the Articles were not related to patent reform.**

Albritton cannot allege that patent reform which purported to reform the very abuses Frenkel discussed in his blog generally and in the October Articles do not relate to Albritton's efforts to stall that very same reform. The Articles, which discuss an example of the need for

---

[86] *Grass v. News Groups Publ'ns, Inc.*, 570 F. Supp. 178 (S.D.N.Y. 1983) (otherwise private individual held to be a limited-purpose public figure by virtue of a letter-writing campaign and comments made concerning a hotly-contested political issue). *See also Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451, cert denied 454 U.S. 999.

[87] *See Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1086 (3rd Cir. 1984) (holding that even though the plaintiff lawyer's associations with his client were not intended to attract attention, but nevertheless were sufficient to render him a limited-purpose public figure regarding his connection to the gang's drug trafficking).

[88] *See, e.g., Suriano*, 480 S.E.2d at 561 (noting in support of its finding that the plaintiff was a limited-purpose public figure that the plaintiff could have responded in the same forum that was used to make the allegedly defamatory statement).

[89] *Gertz v. Robert Welch, Inc.*, 418 U.S. at 344.

patent reform, clearly relate to patent reform. For these reasons as well as the reasons stated in the Motion, Albritton is a limited-purpose public figure.

## V. ACTUAL MALICE
### (In Reply to Response at Pages 30-37)

Plaintiff must demonstrate actual malice by clear and convincing evidence even at the summary judgment stage.[90] Plaintiff appears to be unaware of this requirement but in any event, his evidence of "actual malice" is insufficient as a matter of law and frankly supports rather than refutes Frenkel's declaration that he believed the Articles were true and that he had no substantial doubt about the truth of what he wrote.[91]

The Plaintiff's actual malice evidence appears directed at two claimed falsities: (i) whether the *ESN* case was filed on the 15th (October 17 Article); and (ii) whether Albritton convinced the clerk to change the docket sheet (October 18 Article). The evidence which is summarized in 19 bullet points at pages 31-34 demonstrates the opposite of actual malice. It shows that Frenkel believed that the *ESN* case had been filed on the 15th and further, he believed that the court lacked subject matter jurisdiction. All of the documents he reviewed prior to the October 17 Article supported this conclusion, including the civil cover sheet (signed by Albritton on the 15th and bearing a stamp or header saying "filed October 15, 2007), the docket sheet which showed the complaint was filed on the 15th, and the complaint where each and every page was stamped "filed October 15, 2007." Albritton admitted that the complaint was stamped in this way:

---

[90] *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

[91] Albritton purports to state the test for actual malice as "knowledge of falsity or reckless disregard for the truth or falsity" but tellingly avoids the definition of the term "reckless disregard," which the U.S. Supreme Court has held to mean that the publisher "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005).

Q: [By Mr. Babcock] Okay. And getting back to the - the thing – you called it a stamp at the top of the complaint. It says filed 10/15/2007. That's what it says, right?

A: [By Eric Albritton] It does say that.

Q: And that is a stamp, right?

A: That is a stamp of some sort generated by the software, yes.

Q: And the software is – belongs to the United States District Clerk for the Eastern District of Texas, right?

A: I believe so.[92]

The evidence on Albritton changing the date is similarly supportive of an absence of actual malice. The clerk told a Baker Botts paralegal that Albritton's office asked the clerk to change the date. The clerk's testimony in this case is consistent with what Frenkel was told. (Q: [By Mr. Babcock] "All right. And did she [Albritton's paralegal, Amie] ask the clerk's office to change the date from October 15th to October 16th?" A: [By Shelley Moore, Deputy Clerk] "Let's see. I'm going to make sure of my dates. Yes."[93] That the clerk altered the docket is not in dispute.

After reviewing this evidence Plaintiff claims that he shows Frenkel and Cisco "knew that the criminal and unethical accusations contained in his post were false," (Response at 34) but saying it does not make it so. It certainly does not create actual malice by clear and convincing evidence.

Plaintiff claims that "reckless disregard" is shown because Frenkel didn't "call Albritton to ascertain the true facts" or call "his own Texas counsel." But if he had, Albritton and Sam

---

[92] Ex. 2 to Defendants' Motion, Albritton Deposition at 26:5-15.
[93] Ex. 8 to Defendants' Motion, Moore Deposition at 8:8-11.

Baxter would have presumably testified as they did in this case, which Frenkel believes supports what he said. In any event, failure to investigate is not evidence of actual malice.[94]

Plaintiff next says that post-publication evidence can show actual malice and lists nine bullet points, none of which evidence Frenkel's state of mind at the time of publication, which is the test.[95] To the extent that Plaintiff says failure to retract is evidence of actual malice, it is not, especially where, as here, Frenkel and Cisco believe what was published, as properly read by an ordinary reader, was true.[96] Finally, the fact that Frenkel wrote the Articles anonymously is not evidence of actual malice.[97]

It appears that even Plaintiff does not believe the actual malice theory he presents in the response since he has largely abandoned it in his "corrected" response.

## VI. YEN AND NOH SHOULD BE GRANTED SUMMARY JUDGMENT (SUBJECT TO THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION) (In Reply to Response at Pages 38-41)

Albritton has failed to produce any evidence that Yen or Noh published the Articles he complains of or that Noh and Yen acted with actual malice or negligence for that matter.

In *New York Times v. Sullivan*, the plaintiff brought a libel action against the publisher of the newspaper and clergymen whose names appeared in the advertisement. The Supreme Court,

---

[94] *New York Times v. Sullivan*, 376 U.S. 254, 287-88 (1964); *Handlin v. Northwestern Resources Co.*, 999 F.2d 1580, *3 (5th Cir. 1993) ("failure to investigate the truth or falsity of a statement before it is published has been held insufficient to show actual malice"); *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403 (Tex. 1969). Failure to call Albritton is not evidence of actual malice. *See Freedom Newspapers of Texas v. Cantu*, 168 S.W.3d at 858 (Tex. 2005) (such denials are so commonplace, they hardly alert the conscientious reporter to the likelihood of error); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 639 (Tex.2005).

[95] *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984); *Forbes, Inc. v. Granada Sciences, Inc.*, 124 S.W.3d 167, 173 (Tex. 2003).

[96] *See Forbes*, 124 S.W.3d at 173. Under the single publication rule, an internet article is only published at the time it is first placed on the internet. *See id.*; *Nationwide Bi-Weekly Administration, Inc. v. Belo Corp.*, 512 F.3d 137, 146 (5th Cir. 2007) (adopting the rule "based on the near unanimity of the large number of courts to apply the single publication rule to Internet publication.")

[97] *See McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341 (1995) (noting the importance of anonymous speech in the history of the country and holding that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment").

in reversing the judgment against the defendants, stated "[t]he case of the individual petitioners requires little discussion. Even assuming that they could constitutionally be found to have authorized use of their names on the advertisement, there was no evidence whatever that they were aware of any erroneous statements or were in any way reckless in that regard. The judgment against them is thus without constitutional support."[98] The U.S. Supreme Court therefore made clear that evidence of a subjective state of mind must be shown for each individual defendant.[99]

As in *New York Times*, Albritton cannot meet his Constitutional burden of showing fault on the part of Yen and Noh because there is no evidence that Yen or Noh were aware of any false statements or that they entertained serious doubts about the statements in the Articles, which the summary judgment evidence establishes they did not write, edit, review prior to publication, or circulate.[100] The allegations that Yen or Noh failed to retract the Article (which they had no power to do) is not evidence of fault, especially where there is no evidence that Yen or Noh ever came to believe the Articles to be false or came to have serious doubt about their accuracy.[101] Nor can Yen's suggestion that Frenkel "reference an anonymous tip" (which Frenkel received) support a defamation claim as it is not defamatory and is not of and concerning Albritton. Therefore, the facts alleged by Albritton are irrelevant and do not raise a fact issue as he alleges.

Even if the finding of fault required was negligence, Albritton's claims against Yen and Noh would still be constitutionally deficient. Yen and Noh cannot be found negligent under

---

[98] 376 U.S. 254, 286 (1964).

[99] *See also St. Amant v. Thompson*, 390 U.S. 727 (1968).

[100] Declaration of John Noh, Docket No. 35, Attachment No. 1; Declaration of Mallun Yen, Docket No. 37, Attachment No. 1, Ex. A.

[101] *See Forbes, Inv.*, 124 S.W.3d at 173.

Texas law where (1) they did not know the defamatory character of the communication; (2) they did not know the content of the communication; and (3) they did not know the communication would reference the Plaintiff.[102]

## VII. CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

---

[102] *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex. 1976).

GEORGE McWILLIAMS, P.C.

By: /s/ George L. McWilliams with permission by Charles L. Babcock
George L. McWilliams
Texas Bar No: 13877000
GEORGE L. McWILLIAMS, P.C.
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
(903) 277-0098
(870) 773-2967—Fax
Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 24th day of December, 2008, a true and correct copy of the foregoing was served via electronic mail upon:

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
*Attorney for Defendant Richard Frenkel*

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
*Attorney for Plaintiff Eric Albritton*

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
*Attorney for Plaintiff Eric Albritton*

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
*Attorney for Plaintiff Eric Albritton*

/s/ *Charles L. Babcock*
Charles L. Babcock