IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ERIC M. ALBRITTON, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | No. 6:08cv00089 |
| § | |
| CISCO SYSTEMS, INC. RICHARD § | |
| FRENKEL, MAULLUN YEN and § | |
| JOHN NOH, § | |
| § | |
| Defendants § | |

**PLAINTIFF'S REPLY REGARDING HIS EVIDENTIARY OBJECTIONS
AND MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE**

Instead of defending the objectionable content in paragraphs 9-12 of Frenkel's declaration, Cisco generically argues that Frenkel's subjective view of the beliefs he purports to have held in October of 2007 is proper summary judgment evidence. While Frenkel's testimony that he believed "every statement of fact contained" in the postings may be relevant to the issue of malice, it is not relevant to whether the postings are actionable statements of fact. And, contrary to Cisco's argument, Frenkel's self-serving statements of good faith are not dispositive of whether he acted with malice. *Brown v. Petrolite, Corp.*, 965 F.2d 38, 47 (5th Cir. 1992) ("Nonetheless, Petrolite cannot automatically insure a favorable verdict by maintaining that it published the report in good faith…. the subjective determination of whether [a defendant] in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts.") (internal quotations and citations omitted).

To read Cisco's response, one would think that Frenkel testified <u>only</u> as to his belief in the veracity of his blog postings. Indeed, Cisco's response and the authorities cited in it relate to the subjective component of the actual malice inquiry. The reality is that only one statement in paragraphs 9-12 relate to whether Frenkel acted with good faith in accusing Albritton of

1

conspiring to alter court documents. *See* first sentence of Para 12 of Ex. 1, Frenkel Decl. The balance of the testimony is littered with Frenkel's subjective characterization of his postings as rhetorical or hyperbolic expressions of opinion. *See e.g. id.* at Para 9, "I did express my opinion …. My opinion has not changed …."; Para 10, "I also included a rhetorical, hyperbolic phrase …."; Para 11, "I used the word 'conspiracy' which was my rhetorical or hyperbolic way …."; Para 12, "I expressed my opinions which I believe ….". These statements are improper conclusions on issues of law which the Court must determine from an objective standard. *See Gateway Logistics Group, Inc. v. Dangerous Goods Mgmt. Austl. Pty, Ltd*., 2008 U.S. Dist. LEXIS 34246 at *20 (S.D. Tex. Apr. 25, 2008) (finding that a statement is defamatory *per se* is a legal question to be resolved by the Court); *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1163 (5th Cir. 2006) ("'In answering this question, the court must construe [each] statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement.'") (quoting *Gray v. HEB Food Store #4*, 941 S.W.2d 327, 329 (Tex.App.—Corpus Christi 1997 writ denied). Frenkel's attempt to characterize his statements as inactionable speech in hindsight is simply not relevant to the Court's consideration of how the reader of ordinary intelligence would interpret the postings. Accordingly, they should not be considered for summary judgment purposes.

The articles and internet postings that comprise exhibits 26-38 and 40-41 are not probative of Albritton's status as a private or public figure or any other fact in issue for a number of independent reasons. First, Frenkel's defamatory postings have nothing to do with reforming the patent system. Instead they are directed to a single piece of litigation, *ESN v. Cisco*, and the very specific and unique circumstances surrounding the timing of its filing. Second, the articles have nothing to do with the role Cisco alleges Albritton plays in the patent reform debate. In the single instance that Albritton is mentioned (Ex. 31), the article is about the Troll Tracker controversy and this lawsuit. The law is clear that Cisco's defamation of Albritton cannot convert him to a public figure. *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979). Third, most of the articles at exhibits 26-38 and 40-41 post-date the defamatory postings – only five predate

October 17, 2007 – and are not probative of the existence of a public controversy at the time of Frenkel's defamatory postings. Moreover, most of the articles discuss patent litigation in the Eastern District with no mention of reform or change – whether to the venue rules or otherwise.

Finally, contrary to Cisco's argument, Albritton's objections to third-party deposition testimony are anything but "boilerplate." Albritton has articulated objections to specifically designated deposition testimony. Aside from one excerpt of Cynthia Paar's testimony (Ex. 9, 7:20-21) and one excerpt of David Maland's testimony (Ex. 3, 42:16-19), Cisco has failed to specifically respond to the objections or otherwise demonstrate that the testimony is competent summary judgment proof. In the case of Maland's testimony at Ex. 3, Cisco seeks to admit Maland's recollection of a conversation he had with a reporter. The testimony purportedly accounts both sides of the conversation. Maland testifies about what the reporter said and what he said during the conversation. In other words, the testimony contains out of court statements which are apparently offered for their truth for purposes of summary judgment. The testimony is blatant hearsay. Fed. R. Evid. 802.

Though Cisco failed to identify the specific testimony it was defending, Cisco makes a similar response with regard to conversations discussed in Parr's testimony at Ex 9. *See* DE #124 at 8-9. Parr's testimony about a conversation she had with a fellow clerk contains hearsay – including Paar's side of the conversation – to the extent that Cisco offers the substance of the conversation for its truth. In the case of Lafitte's testimony, Albritton objected to the exchange at Ex. 13, 16:11-24 in which counsel for Cisco asked Lafitte why Shelly Moore would not agree to a request. Cisco has failed to demonstrate that Lafitte has the personal knowledge to testify to Moore's reasons for agreeing or not to any request. With regard to Mathis's testimony at Ex 4, Albritton objected to the exchange at 43:3-18 where Mathis testified about a conversation with Albritton in which she relayed a prior conversation with Shelly Moore. The testimony (aside from Albritton's statements) contains hearsay (in some cases hearsay within hearsay) because the out of court statements are apparently offered for their truth. This is true even in the case of Mathis's side of the conversation. Because Cisco bears the burden to demonstrate the propriety

or competence of its summary judgment evidence in the face of a specific and valid objection, the Court should grant each of Albritton's objections to which Cisco has failed to properly respond.

Albritton respectfully requests the Court grant his evidentiary objections and motion to strike Cisco's improper summary judgment evidence.

Respectfully submitted,

Nicholas H. Patton
State Bar No. 15631000
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 5th day of January, 2009.

_____
Nicholas H. Patton