IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 6:08cv00089 |
| | § | |
| CISCO SYSTEMS, INC. RICHARD | § | |
| FRENKEL, MAULLUN YEN and | § | |
| JOHN NOH, | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S SURREPLY IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Dockets.Justia.com

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT .....................................................................................................1

    A.  Albritton is a Private Figure.........................................................................1

        1.  The ESN Filing Was a Private Dispute Until
            Cisco Defamed Albritton .................................................................1

        2.  Albritton Has Held No Public Role in Cisco's
            Alleged Controversy .......................................................................3

    B.  Cisco's Posts Are False and Create A False, Defamatory
       Impression.....................................................................................................5

    C.  Material Fact Issues Preclude Summary Judgment on the
       Issue of Fault................................................................................................8

    D.  Material Fact Issues Surround Yen and Noh's Culpability ......................10

    E.  Albritton is Entitled to Damages As A Matter Of Law ...........................10

        1.  Albritton is Entitled to Recover Damages ....................................10

        2.  There is Sufficient Record Evidence to Permit the
            Jury to Determine Damages...........................................................14

III.  CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Bentley v. Bunton,*
   94 S.W.3d 561 (Tex. 2002)........................................................6, 7, 11, 12, 15

*Braun v. Flynt,*
   726 F.2d 245, 250 (5th Cir. 1984) ..................................................................2

*Brown v. Petrolite Corp.,*
   965 F.2d 38, 44 (5th Cir. 1992) ........................................................1,7, 9, 11

*Celle v. Filipino Reporter Enters.,*
   209 F.3d 163 (2d Cir. N.Y. 2000).........................................................12, 13

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).......................................................................................1

*Contemporary Mission v. New York Times Co.,* 842 F.2d 612
   (2d Cir. N.Y. 1988)....................................................................................2, 3

*DeWald v. Home Depot,* No. 05-98-00013-CV,
   2000 Tex. App. LEXIS 5757, at *12 (Tex. App.—Dallas Aug. 25, 2000) ...................11

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
   472 U.S. 749 (1985).............................................................................6, 9, 11

*Fiber Sys. Int'l v. Roehrs,*
   470 F.3d 1150 (5th Cir. 2006) .......................................................11, 12, 13

*Forbes, Inc. v Granada Sciences, Inc.,*
   124 S.W.3d 167 (Tex. 2003).......................................................................10

*Gatheright v. Swindle,* no. 6:06-CV-487,
   2007 U.S. Dist. LEXIS 57587, at *16 (E.D.Tex., Aug. 7, 2007) ...............8, 15

*Gateway Logistics Group, Inc. v. Dangerous Goods Mgm't Australia Ltd.,*
   No. H-05-2742, 2008 U.S. Dist. LEXIS 34246, at *23 (S.D. Tex. Apr. 25, 2008)...11, 12

*Gertz v. Robert Welch, Inc.,*
   418 U.S. 323 (1974)..................................................1, 2, 3, 4, 5, 9, 11, 15

*Golden Bear Dist. Sys. v. Chase Revel, Inc.,*
   708 F.2d 944 (5th Cir. 1983) ....................................................................7, 8

*Grass v. News Group Publications, Inc.*,
    570 F. Supp. 178 (S.D.N.Y. 1983)...................................................................... 4

*Huckabee v. Time Warner Enter. Co.*,
    19 S.W.3d 413 (Tex. 2000)............................................................................... 9

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979).................................................................................. 2, 3, 5

*In re Dowell*,
    82 B.R. 998, 1010 n.8a (W.D. Mo. 1987)........................................................ 6

*Inside Radio v. Clear Channel Comms.*,
    209 F. Supp. 2d 302 (S.D.N.Y. 2002).............................................................. 14

*Marcone v. Penthouse Inter'l Magazine for Men*,
    754 F.2d 1072 (3rd Cir. 1984) ......................................................................... 4

*Migis v. Pearle Vision, Inc.*,
    135 F.3d 1041 (5th Cir. 1998) ........................................................................ 15

*Milkovich v. Lorain Journal*,
    497 U.S. 1 (1990)............................................................................................. 6

*Moore v. Waldrop*,
    166 S.W.3d 380, (Tex. App.—Waco, 2005) ................................................... 12

*Mullen v. Solber*,
    952 N.E.2d 950, 952 (Ill. App. 1995) .............................................................. 6

*Musser v. Smith*,
    723 S.W. 2d 653 (Tex. 1987)......................................................................... 14

*Mustang Athletic Corp. v. Monroe*,
    137 S.W.3d 336 (Tex. App. Beaumont [9th Dist.] 2004)........................ 11, 12, 14, 15

*November v. Time, Inc.*
    194 N.E.2d 126 (N.Y. 1963).................................................................... 12, 13

*Peshak v. Greer*,
    13 S.W.3d 421 (Tex. App.—Corpus Christi [13th Dis.] 2000) ........................ 15

*Philadelphia Newspapers, Inc. v. Hepps*
    475 U.S. 767 (U.S. 1986)................................................................................ 6

*Randall's Food Markets, Inc. v. Johnson*,
    891 S.W.2d 640, (Tex. 1995)........................................................................... 7

*Resolution Trust Corp. v. Camp*,
    965 F.2d 25 (5th Cir. 1992) ........................................................................ 1

*Rosanova v. Playboy Enters.*,
    411 F. Supp. 440 (S.D.Ga. 1976)............................................................... 2, 3

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
    553 F. Supp. 2d 680 (N.D. Tex. 2008) ..................................................... 2, 3, 6

*Suriano v. Gaughan,*
    480 S.E.2d at 458 (W. Va. 1996)............................................................... 3, 5

*Swate v. Schiffers,*
    975 S.W.2d 70 (Tex. App.—San Antonio 1998, pet. denied) ....................... 15

*Taylor v. Charter Med. Corp.,*
    162 F.3d 827 (5th Cir. 1998) ....................................................................... 4

*Tex. Disposal Sys. Landfill, Inc., v.Waste Mgm't Holdings, Inc.,*
    219 S.W.3d 563 (Tex. App.--Austin 2007) ................................................ 11

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976)...................................................................................... 2

*Trotter v. Jack Anderson Enter., Inc.,*
    818 F.2d 431 (5th Cir. 1987) .................................................................... 2, 3

*Turner v. KTRK Television, Inc.,*
    38 S.W.3d 103 (Tex. 2000)........................................................................ 7, 8

*Williams v. Trader Publ'g Co.,*
    218 F.3d 481 (5th Cir. 2000) ................................................................ 14, 15

*Wilson v. Daily Gazette Co.,*
    214 W. Va. 208 (W. Va. 2003)..................................................................... 3

*Wolston v. Reader's Digest Assoc. Inc.,*
    443 U.S. 157 (1979)................................................................................... 2, 3

## I. Introduction

Albritton's response to Cisco's motion for summary judgment ("response") highlighted the false statements made in Cisco's motion.[1] *See* Response at 1-7. Cisco's Reply does nothing to defend its disingenuous portrayal of the facts. Nor does Cisco dispute that its "undisputed facts" have been shown to be either false, or in dispute. Instead, Cisco's Reply clings to the one fact that it says entitles it to summary judgment; that Albritton's assistant, Amie Mathis, asked the court clerk to change the filing date of the ESN complaint. *See* Reply at 1-2. But as Albritton documented with volumes of record evidence,[2] Mathis did no such thing. Both Mathis and the court clerks testified that Mathis called the clerk to find out why the docket entry reflected the wrong date.[3] Thus, Cisco's one remaining "undisputed" fact falls by the wayside, and so does its argument that the statements made by Frenkel were true.

Other arguments made in the Reply are equally weak. The Reply cannot change the inescapable conclusion that Albritton is a private figure, that Frenkel's comments are *per se* defamatory, or that disputed facts preclude summary judgment on Cisco's fault and Noh and Yen's liability. The record either supports Albritton's positions or is replete with factual disputes to be resolved by the jury. Therefore, Cisco's motion should be denied.[4]

## II. Argument

We start with the private figure issue because if the Court finds in Albritton's favor on that issue, it also disposes of Cisco's motion on the issue of malice.[5]

### A. Albritton Is A Private Figure[6]

#### 1. The ESN Filing Was A Private Dispute Until Cisco Defamed Albritton

Cisco bears the burden of proving a public controversy.[7] The Reply argues that because

---

[1] All references in this sur-reply are to Albritton's Corrected Response. *See* Docket Entry ("D.E.") 115.

[2] *See* Response at 3, 10-11 (facts 14-16). There is also no dispute that the ESN complaint was filed on Oct. 16, 2007. *See* Response at 1-2, 9-13 (facts 5-8, 11-1217-18, 26).

[3] *See id.*

[4] Albritton also requests that the court *sua sponte* grant his cross-motions. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (District courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*); *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 28 (5th Cir. 1992) (same).

[5] A private figure can prevail upon his defamation claim with proof of the defendants' negligence. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974); *Brown v. Petrolite Corp.*, 965 F.2d 38, 44-45 (5th Cir. 1992).

[6] In sur-reply to Cisco's Reply at 15-19.

Cisco's accusations were posted on a site that discussed issues of public interest, it necessarily follows that the posts must discuss a public controversy.  *See* Reply at 15-17.  But it is not the medium through which the defamatory comments are made that dictates the nature of the controversy.  The existence of the Troll Tracker Blog is not sufficient to turn Albritton, a private figure, into a limited-purpose public figure.[8]

Instead, the court must look to "the particular controversy giving rise to <u>the defamation</u>."[9] Frenkel's accusations arose from Cisco's efforts to defame opposing counsel in connection with a private lawsuit filed against Cisco.  The Reply ignores the strong showing in Albritton's response demonstrating the private impetus for Frenkel's accusations.  Cisco asked Frenkel to post to raise awareness about "<u>the ESN matter</u>," that Cisco's communications leading to (and asking for) the post were regarding the <u>ESN case</u>, and that although Cisco had never before asked Frenkel to author a post on its behalf, it did so in the <u>ESN case</u>.  *See* Response at 14-16. The Reply offers no rebuttal to these facts.[10]  Nor does the Reply present anything other than conclusory argument to show that Frenkel's posts concerned any of the patent reform issues that were the subject of public discourse.[11]  Reply at 18-19.  Cisco has admitted that prior to Frenkel's posts there was no public debate about the ESN case, Eric Albritton, or any alleged improprieties in the Eastern District of Texas clerk's office.[12]  That is why Cisco asked Frenkel

---

[7] *Trotter v. Jack Anderson Enter., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 553 F. Supp. 2d 680, 689 (N.D. Tex. 2008) (libel defendant bears the burden of proof).
[8] *See Wolston v. Reader's Digest Assoc. Inc.*, 443 U.S. 157, 167-168 (1979) ("A liable defendant must show more than mere newsworthiness to justify application of the demanding burden of *New York Times*."); *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (general public concerns are not a sufficient basis upon which to classify a defamation plaintiff as a limited-public figure); *Time, Inc. v. Firestone*, 424 U.S. 448,454 (1976) (publicized court proceedings of private litigants are not the sort of "public controversy" referred to in *Gertz.*); *Braun v. Flynt*, 726 F.2d 245, 250 (5th Cir. 1984) (same).
[9] *Gertz*, 418 U.S. at 352 (emphasis added); *see also Contemporary Mission v. New York Times Co.*, 842 F.2d 612, 618 (2d Cir. N.Y. 1988) (determining nature of the controversy in relation to the subject matter of the challenged statements); *Rosanova v. Playboy Enters.*, 411 F. Supp. 440, 444 (S.D. Ga. 1976) (same).
[10] Cisco's proffered articles discuss the Eastern District of Texas <u>generally</u>, and not the *ESN v. Cisco* case, Albritton, or alleged improprieties in the Eastern District of Texas clerk's office.
[11] Cisco has consistently taken the position in this case that its defamatory statements were not a reflection of its opinion of the Eastern District of Texas.  *See* Response at 15-16.  The only statement that an even remotely be considered to be about the Eastern District of Texas—referring to the Banana Republic of East Texas—Frenkel doesn't remember making and later deleted from his post.  Exh. 1 (Frenkel Depo. at 27:23-28:23).
[12] *See* Exh. 1 (Frenkel Depo) at 158:3-7.

to *create* public interest.[13]  That Cisco could easily do so because it controlled the Troll Tracker does not transform a private litigation into a public controversy.

    2.  Albritton Has Had No Public Role In Cisco's Alleged Controversy

Cisco must also show that Albritton had more than a tangential role in Cisco's defined public controversy, and that there is a connection between Albritton's public activities and Cisco's defamation.[14]  Cisco cannot meet its burden of proof because Albritton has not been at the forefront of any controversy, other than the one of Cisco's making.[15]  Response at 16-19.

    The Reply tries to make up lost ground by arguing that Albritton can be elevated to public figure status because he engaged in a course of conduct that was bound to invite attention and comment.[16]  Reply at 17.  Cisco ignores the teaching of *Gertz*, that "instances of truly involuntary public figures must be exceeding rare."[17]  Only a handful of courts have ever found a plaintiff to be an involuntary public figure under *Gertz*.[18]  On the three occasions since *Gertz* where the Supreme Court has squarely addressed the status of a defamation plaintiff, on each occasion the Court reversed or vacated the lower court's judgment and held that the plaintiff was a private individual rather than a limited-purpose public figure.[19]  Cisco ask this Court to make a rare finding of limited-public figure status in this case because Albritton (1) attracted attention for his role in patent litigation in the Eastern District of Texas; (2) was "publicized" as a top filer of "troll" cases in the Eastern District of Texas; (3) has a website saying he has authored law

---

[13] Cisco cites *Contemporary Mission*, 842 F.2d at 602.  *See* Reply at 16, fn 76.  *Contemporary Mission* applies a different test than the one used in the Fifth Circuit.  *Compare id.* with *Trotter.*, 818 F.2d at 433-34.  It is also factually distinguishable.  The *Contemporary Mission* Court looked at the thrust of the story at issue and determined that because plaintiffs were already limited public figures with respect to their religious practices, they were also limited public figures for their related business practices.  *See id*. at 620.  In contrast, Albritton has never been at the forefront of any public controversy.  *See* Response at 15-18.

[14] *See Trotter*, 818 F.2d at 433-34; *Super Future Equities,* 553 F. Supp. 2d at 689.

[15] *Hutchinson*, 443 U.S. at 135 ("those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.") (cited in Response at 14, 16 but not addressed in the Reply).

[16] Cisco's reliance on *Rosanova v. Playboy Enters*., 580 F.2d 859, 861 (5th Cir. 1978) and *Suriano v. Gaughan,* 480 S.E.2d at 458, 561 (W. Va. 1996), for this point is misplaced.  In *Rosanova*, the plaintiff was a known member of organized crime identified by the Senate and law enforcement officials.  He had been the subject of over forty articles relating to his criminal contacts.  *See Rosanova v. Playboy Enters*., 411 F. Supp. 440, 444 (S.D. Ga. 1976 ).  In *Suriano*, the plaintiff interjected himself into the public debate by writing fifty plus letters to various news organizations.  480 S.E.2d at 561.  Albritton has no such record of prior public notoriety or letter writing campaigns.

[17] 418 U.S. at 345.

[18] *See Wilson v. Daily Gazette Co*., 214 W. Va. 208, 219 (W. Va. 2003).

[19] *See Firestone*, 424 U.S. at 453-55, (1976); *Hutchinson*, 443 U.S. at 135; *Wolston*, 443 U.S. at 166-69.

journal articles; and (4) has publically spoken at seminars and on Court TV.  Reply at 17-18.  The Reply fails to provide a single piece of evidence supporting Cisco's alleged facts.

Cisco's "facts" utterly fail to prove Albritton is a public figure.  Albritton has done nothing more to attract attention to his representation of patent clients than has any other lawyer who files cases in this district, or any other.[20]  Lawyers are not public figures by virtue of representing their clients.[21]  Cisco has offered no evidence to the contrary.  Although Cisco claims Albritton was "publicized" as a top filer of troll cases, it doesn't cite any such publication.  Albritton has certainly not publicized any such statements.[22]  Here, Cisco simply asks the Court to take judicial notice of its nonexistent evidence.  Cisco's request that the Court assume evidence needed to make its burden of proof is improper under Fed. R. Evid. 201.[23]  Moreover, although Albritton has authored two law journal articles, those are insufficient to elevate him to public figure status.[24]  Albritton's first law journal article, written while in law school, deals with the Endangered Species Act, and the other, written while in private practice, deals with <u>criminal law</u>, not patent litigation.[25]  Nor does the fact that Albritton spoke at a couple of criminal law seminars and once commented about a criminal trial in Tyler, Texas on Court TV[26] make him a public figure.[27]  These activities do not tie Albritton to Cisco's alleged controversy.

Cisco clearly recognizes the hurdle to its argument posed by *Gertz*.  Reply at 18.  In one

---

[20] The cases cited by Cisco for this proposition are inapposite.  In *Grass v. News Group Publications, Inc.,* 570 F. Supp. 178 (S.D.N.Y. 1983), the court focused on the plaintiff's *deliberate* attempt *to influence* the media through sending a number of letters to various publications.  *Id*. at 183 (emphasis added).  In *Marcone v. Penthouse Inter'l Magazine for Men*, 754 F.2d 1072, 1086 (3rd Cir. 1984), plaintiff had been indicted in connection with the largest drug smuggling operation in U.S. history. *Id.*

[21] *Gertz*, 418 U.S. at 351 (Categorizing a lawyer who enters a public appearance on behalf of a client as a public figure "would sweep all lawyers under the *New York Times* rule as officers of the court and distort the plain meaning of the 'public official' category beyond all recognition.").

[22] *See* Albritton Decl. at ¶ 9.

[23] *See Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830 (5th Cir. 1998).  To make the factual finding Cisco seeks, the Court would have to define a "troll" case.  Not even the Troll Tracker has a conclusive definition.  *See* Exh. 2 (Frenkel2.000323-324).  Then the Court would have to apply its definition to cases filed over an undefined period of time to arrive at a list of "troll" cases.  From that list the Court would have to subjectively decide who is at the "top."  This is not the type of "self-evident truth that no reasonable person could question, a truism that approaches platitude or banality as required to be eligible for judicial notice under Rule 201." *Id*. (internal citation omitted).

[24] *See Gertz*, 418 U.S. at 351-52.

[25] *See* Albritton Decl. at ¶ 6.

[26] *See id*. at ¶ 7.

[27] *See Gertz*, 418 U.S. at 351-52.

last ditch effort to save its cause, Cisco newly argues that because Albritton could have defended himself on the Troll Tracker blog, he should be deemed a public figure. *Id*. Setting aside the absurdity of requiring Albritton to defend his reputation on an anonymous blog that had just defamed him, Cisco's argument is not supported by *Gertz* as it claims. In *Gertz*, the Court held that private figures are more deserving of protection, in part, because those already involved in public discourse have greater access to the media.[28] The ability to post on Frenkel's blog is not the type of media access contemplated in *Gertz*.[29] Even if it were, the Court acknowledged that "[a]n opportunity for rebuttal seldom suffices to undo harm of defamatory falsehood."[30] The Court explained that the "<u>more important</u>" consideration is that private figures have not voluntarily assumed the consequences of involvement in public affairs.[31] The Court concluded that Gertz (who was involved in a highly publicized case and could have presumably called a press conference to clear his name) was a private figure.[32]

Gertz was a private figure for the same reasons that Albritton is a private figure in this case. Albritton is not a person of such notoriety as to have preexisting media contacts or to have assumed the risk of false public statements. Albritton has done nothing to thrust himself in to the vortex of "the abuse of the patent system by non-practicing entities" controversy alleged by Cisco. Cisco has failed to meet its burden of proving otherwise.

**B. Cisco's Posts Are False And Create A False And Defamatory Impression**[33]

Cisco has argued itself into a contradiction. On one hand Cisco argued that Frenkel's statements of fact are true. *See* Mot. at 10-13. On the other hand, Cisco argued that Frenkel's

---

[28] In *Hutchinson*, the Court addressed this prong of the *Gertz* analysis. There, the Court refused to find that Hutchinson should be classified as a public figure where he did not have the regular and continuing access to the media that is one of "the accouterments of having become a public figure." 443 U.S. at 136.

[29] The *Suriano* case cited by Cisco is inapposite. There, plaintiff had "voluntarily thrust himself into the debate and sought to influence its outcome" by aggressively writing more than fifty letters to newspapers, professional journals and organizations, fellow physicians, and government officials. 480 S.E.2d at 558-59.

[30] *Gertz,* 418 U.S. at 344, n.9.

[31] *Id*. at 344.

[32] *Id*. at 352. Gertz had long been active in professional affairs, served as an officer of local civic groups and of various professional organizations and had published several books and articles on legal subjects. Nonetheless, the Court determined that Gertz was not a public figure because his participation in the public controversy related solely to his representation of a client. Thus he had not sought to thrust himself into the vortex of a public issue. *Id*.

[33] In sur-reply to Reply at 13-15.

comments weren't facts at all, but rather opinion, hyperbole or rhetoric. *See* Mot. 14-18. The

Reply all but abandons the later argument by failing to discuss *Milkovich v. Lorain Journal*[34] or

the other cases cited by Albritton that gut Cisco's argument. Response at 26-30. Thus, the Court

should rule that Cisco's defamatory statements are not opinion, rhetoric or hyperbole.

Cisco opts instead to stand on its truth defense. Because Albritton is a private figure,

Cisco bears the burden of proving truth unless its posts address a matter of public concern.[35]

Whether speech addresses a matter of public concern must be determined by the content, form

and context of the statement as revealed by the whole record.[36] The speech at issue in this case

does not deal with an issue of public concern but rather a dispute between private litigants, one

of which happened to have access to a website.[37] The posts do not discuss the need for local

rules requiring a motion before a docket entry is corrected. They do not discuss the need for

better oversight at the clerk's office. Instead, they launch a covert attack on the reputation of

Cisco's opposing counsel. Cisco's attacks are not matters of "public concern" simply because

they have some nexus to court proceedings.[38]

Cisco's argument, to the contrary, is similar to that considered and rejected in *Super

Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*[39] There, the defendant argued that

the accused statements were a matter of public concern because they concerned complex

---

[34] 497 U.S. 1 (1990).

[35] Cisco's reliance on *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767 (U.S. 1986), is problematic because Cisco, Yen and Noh are clearly not "media defendants." There the Court held that a private figure plaintiff seeking damages against a *media defendant* involving speech that is a matter of *public concern* bears the burden of proving falsity. *Id.* at 775-77. The Texas Supreme Court seemingly reads the holding of *Philadelphia News* as being limited to cases involving media defendants. *Bentley v. Bunton*, 94 S.W.3d 561, 586 (Tex. 2002). *Philadelphia News* doesn't even apply to Frenkel in this case where Cisco has admitted that he published the posts within the course and scope of his role as Cisco's lawyer. *See* D.E. 19 ¶ 38. But, even if *Philadelphia News* applies, it is not controlling because the posts do not discuss a matter of public concern.

[36] *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985).

[37] Cisco citation to dicta in *In re Dowell*, 82 B.R. 998, 1010 n.8a (W.D. Mo. 1987), a bankruptcy opinion from Missouri, demonstrates the futility of its cause. That case has nothing to do with the constitutional issue presented in this case. The facts of that case do not support Cisco's position because the court was concerned with the clerk's assigning a date of entry contracting the *filing stamp* on the final judgment. Here, the controlling file stamp has always shown that the ESN complaint was filed on Oct. 16th. Finally, that case does not hold that the public has an interest in defamatory comments made in connection with a private litigant's conduct. Albritton's case is more like *Super Future Equities*, 553 F.Supp.2d at 690.

[38] *See Firestone*, 424 U.S. at 455-456, *Mullen v. Solber,* 952 N.E.2d 950, 952 (Ill. App. 1995).

[39] 553 F. Supp. 2d at 690.

schemes affecting untold numbers of borrowers and purchasers of mortgage backed securities.[40]

The court rejected that argument, finding that because the statements made on defendant's website were "unsolicited comment on a lawsuit between private parties" he failed to establish that the speech involved a matter of public concern.[41] Here too Cisco fails to prove its attacks on Albritton, made in the context of a private lawsuit, involve a matter of public concern. Thus, Cisco bears the burden of proving that the defamatory statements were true.[42] Burden of proof aside, Albritton has presented more than enough evidence from which a jury can determine by a preponderance of the evidence that Cisco's accusations are false.[43] *See* Response at 1-13, 23-26.

Second, contrary to Cisco's argument, the Texas Supreme Court's holding in *Turner v. KTRK Television* defeats its motion for summary judgment regarding truth.[44] In *Turner* the Court held the "substantial truth" doctrine does not inoculate defamatory statements where the publication as a whole creates a false, defamatory impression.[45] Collectively, Frenkel's posts accuse Albritton of conspiring with the court clerk to alter an official record to create subject matter jurisdiction benefitting his client at Cisco's expense.[46] A reasonable interpretation of Frenkel's posts is that Albritton knowingly asked, convinced, or conspired with the clerk to create a false record.[47] Although Frenkel's amended Oct. 18th post softened his comments about the Eastern District of Texas and the court clerks, he continued to accuse Albritton of criminal

---

[40] *See id.*

[41] *See id.*

[42] *See id.*

[43] *See Bentley*, 94 S.W.3d at 587 (preponderance of the evidence standard).

[44] Albritton need not rely on *Turner* because the facts in Frenkel's posts were false, and that is sufficient for a defamation action. *See Brown*, 965 F.2d at 44. However, to the extent that Cisco continues to argue that all Frenkel's posts discussed was Albritton's contacts with the court in order to "convince" the court to change the filing date, that argument too must fail because that is not the false impression created by Frenkel's posts. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114-115 (Tex. 2000).

[45] *Id. See also, Golden Bear Dist. Sys. v. Chase Revel, Inc.*, 708 F.2d 944, 949 (5th Cir. 1983) (applying Texas law).

[46] Cisco argues that this case is more like *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, (Tex. 1995). Reply at 15. But the *Turner* Court distinguished *Randall's*, stating that it did not involve "the omission of material facts or the misleading presentation of true facts, which can render an account just as false as an outright misstatement." *Turner*, 38 S.W.3d at 115. Frenkel's posts are distinguishable for the same reasons. They include false facts, make false accusations and omit relevant facts to create a false impression about Albritton. *Id.* at 119.

[47] Frenkel's readers understood him to accuse Albritton of criminal activity. *See* Response Exh. 30 (Frenkel2.000004); Exh. 23 (Smith Depo.) at 114:16-115:24. Cisco's own expert witness in this case opined after reading the posts that one could conclude that Albritton arguably violated the Texas Disciplinary Rules of Professional Conduct. *See* Response Exh. 36 to Plaintiff's Response at 3 (Expert Report of Charles Herring).

and unethical conduct.[48]  For truth to be a defense, the defamatory interpretation of the posts would have to be true.[49]  Cisco has produced no evidence to support Frenkel's accusations, and none is available because those facts and insinuations are not true.  *See* Response at 1-13.

The Reply seeks to avoid the true facts presented in Albritton's response by not addressing any of those facts except one.[50]  Cisco continues to dogmatically assert that it is "uncontested" that "Albritton, through his paralegal, asked the clerk to change a docket entry, and the clerk complied."  Reply at 15.  That fact is not true and has been rebutted by mounds of record evidence showing that Albritton's office never asked the court clerk to change the docket.[51]  Moreover, that fact is not the smoking gun Cisco needs because the controlling record—the official file stamp—was never changed.[52]  Additionally, Frenkel was also told by Baker Botts that Albritton contacted the clerk's office because he claimed that the docket entry erroneously recorded the filing date as October 15th, when the ESN complaint had been filed on the 16th.  Frenkel's last two posts omitted these facts and continued to portray Albritton's conduct as criminal, unethical and conduct unfitting a member of the bar.[53]

Given these facts, a statement that Albritton conspired with the court clerk to create subject matter jurisdiction where none existed is certainly more damaging than the truth would have been.  Thus, Cisco's statements cannot be substantially true, or at least a genuine issue of fact exists as to whether the statements were true or not.[54]

### C.  Material Fact Issues Preclude Summary Judgment On The Issue Of Fault[55]

Cisco argues that Albritton must demonstrate actual malice to survive summary

---

[48] *See* Response Exh. 3 (amended Oct. 18th post).

[49] *See Golden Bear*, 708 F.2d at 949.

[50] Cisco's argument that the Civil Cover Sheet was signed on October 15, 2007 is misleading.  *See* Reply at 15, fn 73.  Frenkel's post alleges that "Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15."  See Exh. 4 (Oct. 18 post).  Although Albritton signed a Civil Cover Sheet on the 15th, he never signed any document stating that the complaint had been filed on Oct. 15th.  *See* Albritton Decl. at ¶ 5.  This is the type of dishonest juxtaposing of facts prohibited in *Turner*.

[51] *See* Response at 3, 10-11 (facts 14-16).

[52] *See* Response at 1-2, 9-13 (facts 5-8, 11-1217-18, 26).

[53] *See* Response Exh. 4 (Oct. 18 post); Exh. 3 (amended Oct. 18th post); Response at 30-37.

[54] *Gatheright v. Swindle*, no. 6:06-CV-487, 2007 U.S. Dist. LEXIS 57587, at *16 (E.D.Tex., Aug. 7, 2007); *Golden Bear*, 708 F.2d at 949; *Turner*, 38 S.W.3d 103, 114.

[55] In sur-reply to Reply at 19-21.

judgment. Reply at 19. Cisco's hidden premise is that Albritton is a public figure. If the Court concludes that Cisco cannot meet its burden of elevating Albritton to public figure status, the standard of fault in this case is, at the most, negligence and Cisco's motion should be denied.[56]

If the Court concludes that Albritton is a limited-public figure, there is sufficient record evidence of Cisco's malice to deny Cisco's motion.[57] Cisco argues that Albritton admitted that the documents reviewed by Frenkel had a "date stamp" of Oct. 15. Reply at 19-20. Cisco's arguments rest on the same misleading use of the word "stamp" addressed in Albritton's response.[58] Cisco's assertions that Frenkel believed that the ESN complaint had been filed on Oct. 15th and that the court lacked subject matter jurisdiction are belied by his own admission that docket entries are not reliable and that ESN had a "jurisdictional hook," even if the complaint had been filed a day early as he contends.[59] Reply at 19. Cisco claims that the clerk told Baker Botts that Albritton's office asked that the filing date be changed. But Cisco doesn't cite any testimony from Baker Botts for that point, and the overwhelming evidence obtained from the court clerk's demonstrates that no such request was made.[60] Finally, Cisco undertakes the same type of "isolate the evidence" approach to the malice issue it used to argue that Frenkel's posts aren't defamatory. Reply at 19-20. As Albritton discussed in his response, a determination of malice is made on a case by case basis considering a wide range of evidence. Response at 30-31. The Reply does not dispute the standard briefed by Albritton. There is considerable direct and circumstantial record evidence of Cisco's malice. *See* Response at 30-41. Cumulatively, that evidence is clear and convincing.

Cisco also argues that none of the evidence of Cisco's post-publication conduct can serve

---

[56] *Gertz*, 418 U.S. 323, 347 (1974); *Brown.*, 965 F.2d at 44-45. *See also Dun & Bradstreet*, 472 U.S. at 762.-763.
[57] Cisco alleges that Albritton acknowledges that he must prove actual malice by clear and convincing evidence. Reply at 19. That is not the law in Texas at the summary judgment stage. *See Huckabee v. Time Warner Enter. Co.*, 19 S.W.3d 413, 421 (Tex. 2000) (no clear and convincing standard at summary judgment.). Even under a clear and convincing standard, there is record evidence from which the jury can make that finding. *See* Response at 30-44.
[58] *See* Response at 2-4, 9 (disputed facts 5-7, 11-12, 17-18, 26).
[59] *See* Response Exh. 25 (Cisco Privileged 000019-20); Exh. 30 (Frenkel2.000320-21).
[60] *See* Response at 3, including footnotes 21-27.

as evidence of malice.[61]  Reply at 21.  But Frenkel published three different posts, one on October 17th, one on October 18th, and an amended posting of the October 18th post on October 19th.  The vast majority of the facts cited by Albritton as proof of Frenkel's malice occurred before Frenkel's Oct. 18th and amended 18th posts.  *See* Response at 30-37.

### D.  Material Fact Issues Surround Yen and Noh's Culpability[62]

Contrary to the Reply's argument, Yen and Noh face liability for assisting, encouraging, participating in and ratifying Frenkel's tort.  Yen, Frenkel's direct supervisor, along with Noh, asked him to post the defamatory comments, to which Noh responded "thank you" and "brilliant."  The record contains evidence that Yen and Noh each requested, encouraged, assisted and participated in Frenkel's creation of the defamatory posts, and then later ratified his tortuous conduct.  These facts are sufficiently set forth in Albritton's response.  *See* Response at 41-43.

### E.  Albritton is Entitled To Damages As A Matter Of Law[63]

Cisco disingenuously argues that Albritton has taken the "position that he does not have to offer proof of damage."  Reply at 6.  Cisco has confused two analytically distinct points; *entitlement* to damages versus *proof* of damages.  Albritton is *entitled* to damages because Cisco's accusations are defamatory *per se*.  The *amount* of the damages awarded him must be determined by the jury based on the evidence presented at trial.

#### 1.  Albritton Is Entitled To Recover Damages

The Reply acknowledges that in *per se* cases damages are presumed, but then goes on to argue that those cases restrict plaintiffs who do not prove actual malice.  Reply at 4-5.  Reading

---

[61] Cisco relies on *Forbes, Inc. v Granada Sciences, Inc*., 124 S.W.3d 167, 173 (Tex. 2003) for the proposition that the single publication rule precludes consideration of Frenkel's post-publishing state of mind.  Reply at 21.  But the single publication rule relates to starting the clock for the statue of limitations.  *Id*.  As *Forbes* makes clear "[d]etermining the date of an article's publication for limitation purposes involves considerations entirely different from those that apply when gauging whether actual malice exists at the time of publication."  *Id*.  In *Forbes*, a book containing the defamatory statements was completely out of the defendant's possession and control before he learned that his statements may be false.  *Id*.  The Court found that although the limitations period had not yet begun to run, a conversation defendant had after he no longer had control over his work was not sufficient evidence of malice.  *Id*.  In contrast, Frenkel learned that his statements were false before his last two posts were published.  Moreover, at no time was Frenkel's ability to access and change his defamatory statements limited as in *Forbes*.

[62] In sur-reply to Reply at 21-23.

[63] In sur-reply to Reply at 3-13.

Cisco's argument one might be confused into believing proof of malice is a prerequisite to damages in this case. Any such understanding is incorrect.[64] Under Texas law, Albritton is entitled to an award of some amount of damages if Cisco's posts are defamatory *per se*.[65]

The test for defamation *per se* is whether the statements are reasonably capable of a defamatory meaning when construed as a whole in light of the surrounding circumstances.[66] Cisco's posts accuse Albritton of conspiring to alter an official governmental record for the express purpose of creating subject matter jurisdiction, thus benefiting his client at Cisco's expense and at the expense of the integrity of the Court. Under Texas law, Cisco's statements are defamatory *per se* because they attack Albritton in his business and occupation and insinuate criminal conduct. *See* Response at 19-23. The Reply attempts to distinguish the cases cited by Albritton but wholly fails to explain why the holdings in those cases don't compel a finding of *per se* defamation in this case. Reply 8-9. The accusations in Cisco's posts are more egregious than other accusations found to be defamatory *per se* under Texas law.[67]

The Reply artificially narrows Albritton's argument to suggest that the only issue is whether Cisco accused Albritton of a crime.[68] *Id*. at 6-7 (acknowledging Albritton's claim of harm to business or occupation but focusing only on criminal misconduct).[69] The Reply therefore fails to rebut Albritton's showing that Cisco's accusations accuse him of conduct that is harmful in his business or profession. It would be virtually impossible for Cisco to claim a reader could not have read Frenkel's comments to attack Albritton in his profession in light of its

---

[64] A private figure may recover general damages upon a finding of negligence. *Gertz*, 418 U.S. at 347; *Brown*, 965 F.2d at 44-45. Where the nature of the controversy is a private dispute, no constitutional hurdle is mandated. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761-62 (1985).

[65] *See Bentley*, 94 S.W.3d at 604; *Gateway Logistics Group, Inc. v. Dangerous Goods Mgm't Australia Ltd.*, No. H-05-2742, 2008 U.S. Dist. LEXIS 34246, at *23 (S.D. Tex. Apr. 25, 2008): *Tex. Disposal Sys. Landfill, Inc., v. Waste Mgm't Holdings, Inc*., 219 S.W.3d 563, 580-581 (Tex. App,—Austin 2007).

[66] *See Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1163 (5th Cir. 2006).

[67] *See id.* (thievery); *Gateway*, 2008 U.S. Dist. LEXIS 34246, at *23 (lying and potentially subjecting client to legal penalties); *Bentley*, 94 S.W.3d at 587, 604 (corruption); *Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 339-340 (Tex. App. Beaumont [9th Dist.] 2004) (vandalism); *DeWald v. Home Depot*, No. 05-98-00013-CV, 2000 Tex. App. LEXIS 5757, at *12 (Tex. App.—Dallas Aug. 25, 2000) (insinuation of stealing).

[68] We address Cisco's "definition of conspiracy" argument in the response. *See* Response at 22-23.

[69] Albritton has repeatedly asserted that Cisco's accusations are defamatory *per se* because they insinuate that he has engaged in unethical conduct impugning him in is occupation and have otherwise harmed him in his profession and occupation. *See* Response at 19-23; D.E. No. 74 at 4-5.

own expert's opinion that one reading Frenkel's posts could conclude that Albritton engaged in unethical conduct.[70] Cisco's accusations harm Albritton in his profession and are enough for a *per se* finding, irrespective of whether the alleged conduct would have led to criminal charges.[71]

Having misleadingly characterized Albritton's position as exclusively related to accusations of criminal conduct, the Reply argues that Cisco's criminal accusations are ambiguous. Reply at 7-8. Cisco goes through Frenkel's accusations plucking each word out of context and arguing that, in isolation, there is no allegation of criminal conduct. But Cisco's statements must be considered as a whole.[72] Given the temporal proximity of the posts, an average reader would not evaluate them in isolation, but would consider them together.[73] Cisco's accusations appeared in consecutive posts. The October 17 post identifies the factual predicate, including identifying Albritton, stating that the complaint was filed on October 15th and that an amended complaint was filed that changed nothing other than the filing date, that sets the stage for the October 18th post. The October 18th post does not rehash the facts of the prior post, but builds upon them to accuse Albritton of conspiring to alter official governmental records for the express purpose of manufacturing subject matter jurisdiction. The modified October 18th post was likewise read in connection with the post of October 17th. Collectively, the posts are defamatory *per se*.

The Reply also argues that if any additional information is considered in evaluating Cisco's words, its statements cannot be defamatory *per se*.[74] Reply at 7. When as here, harmful

---

[70] *See* Response Exh. 36 (Expert Report of Charles Herring) at 3.
[71] *Gateway*, 2008 U.S. Dist. LEXIS 34246, at *26-30. *Mustang*, 137 S.W.3d at 340.
[72] *Bentley*, 94 S.W.3d at 581 (considering defendant's characterization of plaintiff's conduct as criminal in the context of defendants efforts over many months to prove plaintiff corrupt.)
[73] *See Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 185 (2d Cir. N.Y. 2000) (considering multiple articles together, in context, to test their effect on the average reader); *November v. Time, Inc.,* 194 N.E.2d 126, 128 (N.Y.1963) (rejecting defendants attempt to parse statement and stating that if "every paragraph had to be read separately and off by itself plaintiff would fare pretty well. But such utterances are not so closely parsed by their readers or by the courts and their meaning depends not on isolated or detached statements but on the whole apparent scope and intent.").
[74] Cisco cites *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco, 2005), for the proposition that resort to extrinsic evidence defeats a finding of defamation *per se*. In *Moore*, the statement that plaintiff was a "crook" was made without any context or statement of facts. That is not the case here where Frenkel's accusations were made alongside his recitation of false facts. *See Fiber Sys.,* 470 F.3d at 1162 (distinguishing *Moore*).

accusations are used in a context that ties them to specific acts they are defamatory *per se*.[75]

That is true even where the court considers the surrounding circumstances.[76] Frenkel's statements alone are defamatory *per se* and the surrounding circumstances confirm that conclusion. The posts assert that Albritton "altered documents to try to manufacture subject matter jurisdiction where none existed," described a "conspiracy" to "alter" an official filing, stated that he had "proof," that there was key "evidence" and that "witnesses" may need to be "subpoenaed." Although Cisco is correct that the filing of a complaint a day early is not criminal, that is not a fair recitation of the posts.[77] Rather, Cisco's posts set forth specific facts and then accuse Albritton of engaging in criminal, unethical or improper conduct in his role as an officer of the court to benefit his client at Cisco's detriment. The accusations that Albritton dishonestly altered the record—not the references to filing the complaint a day early that Cisco suggests are so innocuous—harm Albritton in his profession and occupation and question his veracity as a lawyer. They are *per se* defamatory.

Moreover, Frenkel's statements were understood by his readers, his own lawyers and others to accuse Albritton of a crime.[78] The fact that Frenkel's readers weren't provided with a federal or state statutes identifying the specific law under which Albritton could be charged is of no import to the *per se* determination. Clearly no citation was necessary for Frenkel's readers to understand his accusations.[79] Proof of specific instances of readers interpreting the accused statements as alleging criminal conduct is not required for a *per se* determination. However, the presence of that evidence it in this case is compelling.

Cisco seeks to undermine Albritton's strong showing of defamation *per se* by suggesting that the declarations offered in support of his response are from biased sources that cannot be

---

[75] *Fiber Sys.*, 470 F.3d at 1163.

[76] *See id.* at 1163, n. 9 ("considering the surrounding circumstances does not necessarily require the use of extrinsic evidence as court must consider the context in which the statement was made . . . .").

[77] *Celle*, 209 F.3d at 181 (statements reviewed for effect on the average reader); *November*, 194 N.E.2d at 128 ("The casual reader might not stop to analyze, but could readily conclude that plaintiff is a crook and let it go at that.")

[78] *See* Response Exhs. 30 (Frenkel2.0000004); Exh. 23 (Smith Depo.) at 114:16-115:24; Exh. 9 (Carroll Depo) at 9:11-11:15. *See* Response Baxter Decl. at ¶ 3; Carroll Dec. at ¶ 3; Williams Decl. at ¶ 3; Brucceleri Decl. at ¶ 3; Response Exh. 35 (Expert Report of Dr. Charles Silver) at ¶ 35.

[79] *See Id.*

considered "ordinary readers."[80]  Reply at 13.  Cisco's biased argument ignores that two of the declarants are Cisco's own attorneys.[81]  Moreover, any argument of bias goes to the weight of the evidence, and is not properly before the court on summary judgment.  Cisco's suggestion that the declarants are not ordinary readers of Frenkel's blog falls flat when one considers the blog was targeted to patent lawyers.  Cisco simply ignores other evidence, including the report of Albritton's expert witness who opined that Frenkel's posts accuse Albritton of a crime.[82]

Finally, Cisco takes issue with Albritton's citation to a Texas Penal Code section and says the Code section cannot apply to its accusations.  But a stated above, Albritton need not prove that he could have been convicted of a crime for the statement to be *per se* defamatory.[83]  That said, there can be little doubt that had Albritton actually conspired with the court clerk to "alter" the complaint to reflect the October 16th filing date in order to falsify jurisdiction—or duped the clerk into assisting him in perpetrating that fraud—as alleged by Frenkel, he would be guilty of a crime.[84]  Albritton has made a strong showing of *per se* defamation entitling him to damages.  Nothing in the Reply undermines that showing.

2.  <u>There Is Sufficient Record Evidence To Permit The Jury To Determine Damages</u>

We turn now to Albritton's ability to prove the *amount* of his damages.[85]  In this case, because Texas law entitles Albritton to an award of damages for reputational injury and mental anguish as a matter of law, there is no need that Albritton introduce specific evidence in support

---

[80] Cisco relies on *Musser v. Smith*, 723 S.W. 2d 653, 655 (Tex. 1987), for the proposition that the declarants are not ordinary readers.  The reasoning in *Musser* does not apply here.  In *Musser* the court found that nobody could possibly consider the statements at issue to be defamatory, including the two witnesses offered by plaintiff.  *Id*.  Here, Cisco's posts are much more egregious and many readers did consider them to be accusations of criminal and unethical conduct.  *See also Inside Radio v. Clear Channel Comms.*, 209 F. Supp. 2d 302, 307 (S.D.N.Y. 2002) (distinguishing *Musser*).

[81] Both Baxter and Carroll represent Cisco.  *See* 2:07-CV-00223-DF-CE, D.E. 43 (Carroll); Mot. at 2 (Baxter).

[82] *See* Response Exh. 35 (Expert Report of Dr. Charles Silver) at ¶ 22.

[83] *See Mustang*, 137 S.W.3d at 340.

[84] There are numerous statutes that could be violated if Albritton had conspired to alter a governmental record as Cisco claimed.  Albritton identified statutes in his response and during discovery.  *See* Response at 20-30; Exh. 5 (*Yen Depo.*) at 139:18-22:142 and Yen Exh. 6 (18 U.S.C. § 1512).

[85] The Reply suggests that Albritton must disclose the dollar amount of his damages to Defendants.  *See* Reply at 3.  But Albritton's damages are not the kind of damages amendable to the calculation disclosure contemplated by Rule 26.  *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 487, n. 3 (5th Cir. 2000).

of the amount of his damages.[86]  Albritton need offer no evidence other than his own

testimony,[87] which he expects to give at trial.[88]  However, there is already evidence of

Albritton's damages in the record.[89]  Additionally, Albritton's family and friends will testify

about his mental anguish.  Cisco's claims that the evidence is not "sufficient" ignores that it is

the jury, not Cisco, who makes that determination.[90]

      The Reply offers the holding in *Bentley*, reversing an award of damages, as authority that

proof as to the *amount* of Albritton's damages is required on summary judgment.  Reply at 5-6.

Cisco confuses the summary judgment standard with the appellate standard used by the *Bentley*

Court.[91]  The *Bentley* Court was tasked with reviewing the record after trial for the sufficiency of

the evidence.  *Bentley* does not stand for the proposition that such a showing is required at the

summary judgment stage.  Likewise Cisco's reliance on *Gertz* is misplaced.  While *Gertz*

requires that jury verdicts be supported by competent evidence, the Court specifically stated that

"there need be no evidence which assigns an actual dollar value to the injury."[92]  The jury must

award the appropriate amount of damages in this case.  Cisco's attempt to leverage appellate

review cases to create a heightened burden of proof on summary judgment should be rejected as

putting the cart before the horse.

## I.    Conclusion

      For all of the forgoing reasons, Albritton respectfully requests Cisco's Motion (D.E. 97)

be DENIED, and that the Court grant his Cross-Motions for Summary Judgment (D.E. 115).

---

[86] *See Peshak v. Greer*, 13 S.W.3d 421, 427 (Tex. App.—Corpus Christi [13th Dis.] 2000) ("In actions of libel *per se*, the law presumes the existence of some actual damages, requiring no independent proof of general damages.").

[87] *See Williams*, 218 F.3d at 486 (holding that plaintiff's testimony alone was sufficient to support the jury's award for mental anguish damages); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (same).

[88] *See* Albritton Decl. at ¶ 10.  *See also* Response Exh. 7 (Albritton Depo.) at 79:15-22; 83:15-84:16.

[89] *See* Response Exh. 15 (McAndrews Depo.) at 79:4-81:2, 89:1-91:15.

[90] Cisco's citation to *Swate v. Schiffers*, 975 S.W.2d 70, 74 (Tex. App.—San Antonio 1998, pet. denied) is flawed. In *Swate*, the Court specifically acknowledged that injury to reputation as the result of libel *per se* is <u>presumed</u>.  *See id.*  However, in that case the court found Swate's reputation was so deplorable prior to the publication of the alleged defamatory statements defendants could not have further injured his reputation.  *See id.*  "Other courts have refused to follow *Swate* because it is at odds with the doctrine of presumed damages.  *Mustang*, 137 S.W.3d at 339. *See also Gatheright*, 2007 U.S. Dist. LEXIS 57587, at *19.

[91] *Bentley*, 94 S.W.3d at 605-606 (the jury is provided the necessary latitude to award damages which are then reviewed for sufficiency the evidence supporting their conclusion).

[92] 418 U.S. at 350.

Respectfully submitted,

_____
Nicholas H. Patton
State Bar No. 15631000
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 6th day of January, 2009.

_____
Nicholas H. Patton