# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 6:08cv00089 |
| | § | |
| **CISCO SYSTEMS, INC. RICHARD** | § | |
| **FRENKEL, MAULLUN YEN and** | § | |
| **JOHN NOH,** | § | |
| | § | |
| Defendant | § | |

# PLAINTIFF'S RESPONSE TO
# DEFENDANTS' MOTION TO STRIKE
# PLAINTIFF'S AMENDED (CORRECTED) RESPONSE
# TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. Introduction**

Cisco's Motion to Strike is an attempt to obtain summary judgment on a technical foul (one it created) rather than on the merits. Since November 10, 2008, Albritton has been seeking documents from Cisco that identify the timing of several key events in this case. After Albritton's response was timely filed, Cisco finally produced those documents. Because Cisco's belated production changed some of the timing information previously provided to Albritton and cited to the Court, he was forced to file a corrected response. Without acknowledging its delay, Cisco asks the Court to prevent Albritton from fully responding to Cisco's motion for summary judgment on the issue of malice.

Cisco seeks this draconian result without citing a single authority supporting the relief it seeks. As the moving party, Cisco bears the burden of proving its motion should be granted. Here, not only does Cisco fail to demonstrate that it has made the required legal showing, it doesn't even tell the Court or Albritton what the required showing is. Cisco's motion should be denied for failure to brief the issue for the Court.

On the merits Cisco's motion should be denied because the delay Cisco complains of is the result of Cisco's own dilatory conduct, Albritton did not act in bad faith in serving a corrected response, Cisco has not been prejudiced, and the relief Cisco seeks is overly-harsh in precluding Albritton from responding to a potentially case dispositive motion.

**II. Argument**

**A. Cisco's Motion Should Be Denied For Failure To Identify The Legal Basis For The Relief It Seeks**

Without citing any legal authority to support its request, Cisco's motion seeks to strike Albritton's corrected response. It is not the Court's job, or that of Albritton's counsel, to identify the applicable law for Cisco.[1] *See e.g., Spencer v. Texaco, Inc.*, 1996 U.S. Dist. LEXIS 9305 (E.D. La. June 26, 1996) ("It is not the court's job to divine the applicable law for the parties."). "A legal brief should contain legal arguments, analysis, and authority . . ." *Buckley v. Garland*

---

[1] Cisco is represented by Jackson Walker, a reputable law firm. It is inconceivable that Jackson Walker is not aware of the need to cite legal authority in motions filed with the Court.

*Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 43456 (N.D. Tex. Aug. 23, 2005). Where a party fails to cite any legal argument or evidence in support thereof, the Court may deny the party's motion. *See Natural State Resorts, Inc. v. Dke Entm't, Inc.*, 2002 U.S. Dist. LEXIS 3820, 11-12 (N.D. Tex. Mar. 7, 2002.).

Cisco's motion could be based on any number of rules or on the Court's inherit authority to sanction a party for failure to comply with a Court order. Each legal argument has its own elements of proof, none of which have been cited by Cisco. Cisco's failure to identify the legal basis of its argument is a deliberate attempt to leave its options open. Cisco hopes that the Court will scour the rules and cases to find every possible basis supporting Cisco's motion. But Albritton cannot meaningfully respond to every authority that may be uncovered through the Court's diligent efforts. Cisco's failure to identify the basis of its request is tantamount to a failure to brief the issue and the Court should deny its motion on that basis alone. *See id.*

Albritton's best guess is that Cisco moves to strike Albritton's evidence and argument as a sanction for failing to timely comply with a Court order. *See* Mot. at 3 (claiming Albritton's brief and disclosure of evidence were "untimely"). If Cisco meant to advance some other legal argument, it should be precluded from doing so by not citing anything other than "the interest of justice" in its motion. *See* Mot. at ¶ 7.

**B. Cisco's Motion Should be Denied Because Albritton Acted In Good Faith, Because There Is No Prejudice To Cisco But The Prejudice To Albritton Is Great Given The Potentially Dispositive Nature Of The Issue, And Because Any Delay Can be Remedied With An Extension**

The Fifth Circuit has stated four factors a trial court must carefully weigh when considering the imposition of sanctions: (1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance; and (4) any other relevant circumstances. *See U.S. v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).[2] "In fashioning any such sanction, the district court should impose only that

---

[2] Cisco's failure to set out the legal test for sanctions is even more egregious given controlling authority in this Circuit that requires the Court to "fully and thoughtfully" address each of these factors before imposing a discovery

3

sanction which is the least severe way to effect compliance with the court's discovery orders." *Id.*

Cisco's motion argues that two things in Albritton's corrected response should be stricken from the record; (1) arguments made in the malice section of his response, and (2) all references to Plaintiff's Exh. 13. *See* Mot. at ¶ 5-6. As fully discussed below, Cisco's requests are meritless and should be denied.

1. <u>The Reasons For Albritton's Corrected Response Weigh Against Granting Cisco's Motion</u>

This court's consideration of the "reasons for delay" factor must focus on whether Albritton acted in bad faith in serving his corrected response. *See Garrett*, 238 F.3d at 299. Absent a showing of bad faith by Albritton, Cisco's motion should be denied. *See id., EEOC v. General Dynamics Corp.*, 999 F.2d 113, 117 (5th Cir. 1993); *U.S. v. Ortiz*, No. 05-10574, 2007 U.S. App. LEXIS 584, at *8-9 (5th Cir. Jan. 11, 2007) ("Without an improper motive, it is rare to sanction a party in a method as draconian as suppressing the evidence."). Here, there is no evidence of bad faith. Instead the record demonstrates the good faith and diligence with which Albritton filed the corrected brief necessitated by Cisco's delay in producing documents.

   a. *Albritton Acted In Good Faith In Correcting The Arguments Made In The Malice Section Of His Response*

First, Albritton did not deliberately miss the Court's deadline. He filed his response on December 15th as required by the Court's Order.

Second, Albritton acted in good faith to timely correct his response after receiving discovery from Cisco that he had been requesting since November 10, 2008. *See* Exh. A at 2, ¶ 2. During discovery, Cisco produced a stack of email correspondence without any indication of the actual custodian of the email. *See* Exh. A. at 1, ¶ 4. Because some of the documents were generated on the west coast, others generated in Texas, and still others generated on the east

---

sanction that excludes evidence. *See Garrett*, 238 F.3d at 298. Cisco's invitation to strike Albritton's evidence upon the Court's conclusion that the "interest of justice" so requires invites the Court to commit reversible error. *See id.*

4

coast, without knowing whose files the documents were produced from, Albritton could not determine the precise sequence of events culminating in Frenkel's defamatory statements. *See* Exh. B, at ¶ 2.

On November 10, 2008—before the close of fact discovery—Albritton's counsel complained that Cisco's production made it impossible to determine the correct times referenced in the emails.[3] *See* Exh. A at 1, ¶ 4 and 2, ¶ 2. Albritton's counsel repeatedly requested that Cisco identify the custodians of each email and produce the internet header information embedded in each email. On December 10, 2008, Albritton's counsel threatened to file a motion with the Court if that information was not produced immediately. *See* Exh. C. Cisco promised prompt production but then requested that Albritton narrow his request. *See* Exh. D. Cisco did not produce the header information until two days before Plaintiff's response was due, and even then only produced a subset of the information requested. *See* Mot. at ¶ 3; Exh. E.

The header information produced by Cisco did not contain all of the information needed to ascertain the timing of events. An email header only identifies the time information for the last email in the chain. *See* Szymanski Decl., attached hereto as Exh. F at ¶¶ 1-6. So, as Albritton's counsel reviewed the header information finally provided by Cisco, more header information was required to ascertain the timing of emails drafted earlier in the email strings. *Id.* at ¶¶ 6-7. Albritton's counsel was forced to ask Cisco to produce additional header information. *See* Exh. G. Albritton's counsel worked with its IT professional to ascertain the timing of the emails and to cross reference emails with headers provided for other email correspondence to construct a timeline of events. *See* Exh. F at ¶¶ 1-10. That process was not (and could have been) completed until late afternoon on December 18, 2007. *See id.* at ¶¶ 10-11. After reviewing the information produced by Cisco, Albritton realized that some of the date and time information he provided in his response—which was timely filed with the Court despite Cisco's

---

[3] Cisco's motion carefully parses words to say that no email header information was produced by either party during the discovery phase of this case. Mot. at ¶ 3. What Cisco doesn't tell the Court is that Albritton repeatedly requested that information but Cisco did not produce it. No similar request was made by Cisco because none of Albritton's documents contained the type of mixed up time zones and lack of custodian information contained in Cisco's production.

lack of diligence in producing header information—was inaccurate. Albritton's counsel worked around the clock to have a corrected response on file the following day.

Albritton had a duty to the Court to correct the inaccuracies contained in his response. Wanting to be fully truthful and candid with the Court, Albritton had no choice but to file a corrected brief to include what he now believes to be the correct timing of events (although Cisco has not yet produced all headers and there is some possibility that additional discrepancies may be found). Far from sanctionable conduct, Albritton's candor to the court is admirable.[4]

Cisco does not take issue with Albritton's correction of the date and times set forth in his corrected response, nor can it on this record. Nonetheless, Cisco seeks to gain the benefit of its conduct by arguing that Albritton is not permitted to correct his arguments based on the corrected timeline. Albritton's originally-filed response set forth the operable timeline and then argued from the facts established therein. In is common sense that when the timeline changed, so too would counsel's arguments. Albritton's arguments were changed to highlight information in the revised timeline that was identifiable only after Cisco finally produced the long-requested email header information. Cisco's insistence that Albritton can revise the timeline but not his arguments based on that timeline would result in a disjointed response that made no sense to the Court. That is precisely the "gottcha" result Cisco hopes to achieve through its delay and this motion.

                        b. *Albritton Acted In Good Faith In Correcting A Typographical Error Regarding Exh. 13.*

Albritton acted in good faith in correcting a typographical error contained in his original response when he filed his corrected response. In his originally-filed response Albritton had two set of documents originating from the deposition of David Maland. *See* Long Decl., attached hereto as Exh. H at ¶ 4. The first set of documents contained testimony from Maland's

---

[4] It is worth noting that Albritton did not correct his brief because Cisco pointed out something was wrong. In fact, given Cisco's failure to obtain the email headers it is altogether possible that Cisco would not have known whether all of the dates and times contained in Albritton's brief were correct. Setting aside whether the inaccuracies would have ever been discovered, Albritton filed a corrected brief because <u>he</u> knew that information contained in his brief was inaccurate and he knew that he had an obligation to this Court to do so.

6

deposition. *Id*. The second set of documents included exhibits used during Maland's deposition. *Id*.

When the paralegals working on Albritton's response assigned exhibit numbers to the record cites, one paralegal considered the Maland documents to be a single two-part exhibit (Exh. 12, part 1 and part 2). *Id*. at ¶¶ 1-5. The other paralegal considered the Maland documents to be two separate exhibits (Exhs. 12 and 13). *Id*. at ¶ 6. The record cites in the response were entered by the paralegal who considered the Maland evidence to be a single exhibit. *Id.* at ¶ 5. In all the record cites referencing Maland, she cited Exhibit 12. *Id*. When the original response was filed with the Court, the Maland exhibits were identified as Exhibits 12 and 13. *See id*. at ¶ 7; Exh J. Albritton's counsel emailed Cisco a list of exhibits showing that all the Maland evidence was contained in Exhibits 12 (Maland part 1) and 13 (Maland part 2). *See id*. at ¶ 8; Exh. I. The paralegal working on Albritton's corrected response changed the typographical error referencing Exhibit 12 (part 2) to Exhibit 13, so as to eliminate any confusion to the Court. *See* Exh. H at ¶¶ 9-12.

To be clear: Exhibit 13 did not add "additional evidence" as Cisco claims. *See* Mot. at ¶ 6. The evidence was at all times attached to the response and identifiable by Cisco. *See* Exh. H at ¶ 9. In fact, the paralegal's list of exhibits emailed to Cisco makes perfectly clear that Exhibit 12 part 2 and Exhibit 13 are the same. *See id*. at ¶ 8; Exh. I. There is no doubt on this record that Cisco could identify the evidence cited in Albritton's response. More importantly, the paralegal's typo does not demonstrate the kind of bad faith required to strike critical evidence from the record. *See id.* at ¶¶ 1-12; *Garrett*, 238 F.3d at 299.

 2. <u>The Lack of Prejudice To Cisco Weighs Against Granting Cisco's Motion</u>

The second factor the Court must consider is whether Cisco was unduly prejudiced by the filing of Albritton's corrected response. *See Garrett*, 238 F.3d at 299. Here, Cisco must demonstrate that its "substantial rights" have been prejudiced, which requires more than putting its ability to respond into minor disarray. *See id*. "The question of prejudice is whether the

defendant had time to put the information to use, not whether some extra effort was required by defense counsel." *Id*.

> a. *Cisco Has Not Been Prejudiced By Arguments Made In The Malice Section Of Albritton's Corrected Response*

Cisco's motion does not argue that it has been prejudiced at all and, in fact, concedes that it doesn't really object to Albritton correcting the information contained in his response. *See* Mot. at ¶ 4. Instead, Cisco argues because Albritton filed a corrected response four days after his original response was due he has committed a technical foul requiring that his corrected response be stricken, and consequently that Cisco be permitted to win its malice argument by default. Cisco's cries of injustice are astonishing given that the delay was the result of Cisco's failure to timely produce documents. Cisco takes no responsibility for its delay and ignores that its conduct placed a heavy burden on Albritton by requiring him to devote substantial efforts to re-file his response.

The only statement made in Cisco's brief that remotely resembles a prejudice argument is that Albritton's corrected response was filed after Cisco began working on its reply. Mot. at ¶ 2. But Albritton's originally-filed response was accompanied by a motion to exceed the page limit, which was not granted by the Court until December 17, 2008. *See* D.E. No. 114. Under Local Rule CV-7(k)(1), the clock for Cisco's reply did not start to tick until December 18th—the day before Cisco received Albritton's corrected response.

Moreover, Albritton's corrected response was an "amended filing" entitling Cisco to additional time in which to reply. Cisco is well aware of the additional time provided when a brief is amended because in this very case Cisco filed an amended brief. *See* D.E. 88 & 104. Albritton responded to Cisco's original motion stating that its amended filing gave Albritton additional time in which to respond. *See* D.E. 109. The same events unfolded here. Cisco had until January 5, 2009 to file its reply, but filed it <u>12 days early</u> on December 24, 2008, undermining any assertion of prejudice.

Albritton's brief corrected only one section of his original filing—the section implicated by the header information finally produced by Cisco. Cisco had Albritton's corrected response for 5 days before filing its reply (and had an additional 12 if it had chosen to use it) but still chose to ignore Albritton's corrected response. Cisco opted instead to spend resources that could have been used to reply to Albritton's response to file this motion to strike. All that said, Albritton is not opposed to allowing Cisco additional time to reply and would not have opposed any such request had it been made before Cisco filed this motion.

> b. *Cisco Has Not Been Prejudiced By Albritton's Correction Of The Typographical Error Associated With Exhibit 13.*

Cisco makes no argument that it has been prejudiced by the correction made with respect to Exhibits 12 and 13. Nor can it. Cisco has at all times had access to Exhibit 12 part 1 and part 2, the second part of which became Exhibit 13 in the corrected response. Cisco's only argument is that Exhibit 13 wasn't cited in Albritton's response and is therefore "new evidence." Cisco's argument is disingenuous at best.

There is no doubt that Cisco knew exactly what was being cited in Albritton's response. For example, footnote 13 of Albritton's originally-filed response cites Exhibit 12 (Maland's testimony) instead of Exhibit 13 (Maland's deposition exhibits). But, every one of Albritton's record cites include a description of the document cited. Returning to the example in footnote 13, that footnote contains the following citation: "Exh. 12 (Maland Depo.) Exh 89, Exh. 110." Any one reading this citation can ascertain that what is being cited is exhibits 89 and 100 to the Maland deposition. Cisco knew what was being cited, particularly here where Cisco's counsel was at Maland's deposition and is very familiar with the documents in this case. If there were any doubt, Cisco could have checked both parts of original Exhibit 12, which would have contained the deposition exhibits. Or Cisco could have discerned from the docket sheet that citations to the Maland deposition exhibits were contained in Exhibit 13. *See* Exh. J (D.E. No. 112). Cisco cannot claim—and has not claimed—that it couldn't figure out what evidence Albritton was citing. Cisco's insistence that Exhibit 13 be stricken from the record is petty.

9

Without demonstrating an ounce of prejudice, Cisco insists that the "interest of justice" requires that the Court strike the arguments made in the malice section of Albritton's corrected response as well as evidence provided by the most important witness in this case. Cisco's argument should be rejected because the "interest of justice" favors deciding cases on their merits. *See e.g., General Dynamics*, 999 F.2d at 116 (recognizing that the court must balance sanctions against serving its "truth-seeking" function).

   3. <u>The Availability Of Additional Time To Reply To Albritton's Corrected Response Weighs Against Granting Cisco's Motion</u>

The third factor the Court must consider is whether any prejudice to Cisco could be cured by giving Cisco additional time to reply to Albritton's corrected response. *See Garrett*, 238 F.3d at 300-301. Obviously, that option was, and is, available to Cisco. Cisco could have obtained that relief from Albritton without Court intervention. Nonetheless, the availability of additional time to respond is a factor weighing against Cisco's motion. *See id*.

   4. <u>Other Relevant Factors Weigh Against Granting Cisco's Motion</u>

The fourth factor the Court must consider is any additional matters that are relevant to a determination of whether sanctions are appropriate. *See id.* at 301. Albritton submits that the fact that the pleading and evidence that Cisco seeks to strike is offered in the context of a case-dispositive motion is an additional factor weighing against granting Cisco's motion. If Cisco's motion were to be granted, the result would be to deny Albritton the opportunity to rebut Cisco's motion for summary judgment. Permitting Cisco to obtain such a harsh sanction when the delay at issue falls squarely at Cisco's feet would in effect reward it for failing to produce evidence in a timely manner. Such a harsh result is improper, particularly where lesser alternatives are available to cure Cisco's nonexistent prejudice. *See Id*.

**III. Conclusion**

For all of the forgoing reasons, Albritton respectfully requests that Cisco's Motion to Strike Plaintiff's Amended (Corrected) Response To Defendants' Motion For Summary Judgment (D.E. 121) be DENIED.

Respectfully submitted,

_____
Nicholas H. Patton
SBN: 15631000
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080
(903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

 I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 7th day of January, 2009.

_____
Nicholas H. Patton