# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | NO. 6:08-CV-00089 |
| (1) CISCO SYSTEMS, INC., | § | |
| (2) RICHARD FRENKEL, a/k/a | § | |
| "TROLL TRACKER," | § | |
| (3) JOHN NOH and | § | |
| (4) MALLUN YEN, | § | |
| | § | |
| **Defendants.** | § | |

### PLAINTIFF'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION FOR DISTRICT JUDGE TO RECONSIDER MAGISTRATE JUDGE'S ORDER <u>DENYING CISCO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

In October of 2007 Richard Frenkel, acting in the course and scope of his employment with Cisco Systems, Inc. and in concert with Defendants Yen and Noh, published outrageous and patently false statements against Eric Albritton. Frenkel and his cohorts continuously published the statements until Plaintiff filed this action for defamation in March of 2008. Albritton sued Cisco, Frenkel, Yen and Noh, seeking to recover damages for his shame, embarrassment, humiliation, mental pain and anguish; damage to his reputation, good name and standing in the community; and exemplary damages.

Albritton claims no damages for lost earnings, lost earning capacity or medical expenses resulting from Defendants' tortious conduct. To the contrary, in response to Cisco's request for Albritton's medical and financial records, Albritton repeatedly told Cisco that (1) he has not sought any medical treatment because of Defendants' conduct; and (2) cannot identify any specific lost employment or income attributable to the conduct. Despite a complete lack of relevance to the issues in dispute, Cisco moved to compel Albritton's most confidential and sensitive medical and financial records. Specifically, Cisco moved to compel Albritton to sign a broad waiver giving Cisco unlimited access to his entire medical history, his firm's balance sheets, income statements and statements of cash flows for every year since 2002, all engagement letters executed by the firm since October of 2007, and both his and his firm's federal tax returns since 2002. Magistrate Judge Bush considered the parties' arguments and briefs and agreed with Albritton. Cisco's motion to compel was denied.[1] DE# 74.

Cisco now seeks the Court's reconsideration, contending that Judge Bush's ruling is wrong. Yet to support its motion, Cisco does no more than disagree with his decision. Cisco fails entirely to meet the exceptionally high standard imposed by 28 U.S.C. § 636(b)(1)(A). ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been

---

[1] *See* DE#s 55, 74, 72 and 78. Albritton incorporates by reference his response (DE# 74) and sur-reply (DE# 78) in opposition to Cisco's motion to compel in support of this response to Cisco's motion for reconsideration.

2

shown that the magistrate's order is *clearly erroneous or contrary to law*.") (emphasis added); Fed. R. Civ. P. 72(a). Rather than demonstrate how Judge Bush clearly erred, Cisco merely restates its same arguments with a new piece of evidence that it did not bother to present to the Court with its underlying motion to compel.[2]

In the underlying motion, Cisco failed to meet its burden to show that the documents it seeks are relevant, and that any minimum relevance associated with those documents justifies the invasive disclosure of Albritton's most sensitive documents. In the instant motion, Cisco's burden is even greater. Cisco's motion, simply rearguing its failed argument below, cannot withstand the heightened burden it must meet to overturn this Court's prior order. That is, Cisco has failed to demonstrate that Judge Bush's ruling is clearly erroneous or contrary to law. 28 USC 636(b)(1)(A); Fed. R. Civ. P 72(a). For the reasons that follow and those set out in his briefing on the underlying motion to compel, Albritton respectfully requests that Cisco's motion for reconsideration be denied in full.

## I. Legal Standards

### A. Reconsideration under 28 USC 636(b)

"Section 636(b)(1)(A) specifically requires the district court to apply a 'clearly erroneous' standard when reviewing a magistrate judge's ruling on a non-dispositive, pretrial motion such as a discovery motion." *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995); *see Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992) ("An order issued by a magistrate acting under [Section 636(b)(1)(A)] is reviewed by the district court under the clearly erroneous standard.").

---

[2] *See* Ex. C to DE# 152, Stress in America, American Psychological Association. In other words, Cisco implicitly argues that Judge Bush somehow clearly erred in denying its motion to compel despite Cisco's failure to provide him with the evidence that, for the first time, it contends demonstrates the merits of its motion. What's more, though the report studies various aspects of "stress," Cisco contends that Judge Bush's "[o]rder prevents discovery of … eight of the ten top causes for **mental anguish**…." Mot. at 4 (emphasis added). To be clear, the publication does not report on "mental anguish" as an element of legal damages under Texas law. The APA report should not be considered as part of the motion for reconsideration.

3

### B. Relevance and the bounds of discovery

To prevail on its motion for reconsideration, Cisco must demonstrate that Judge Bush's ruling on the motion to compel is clearly erroneous in light of controlling authorities on discovery. It is axiomatic that discovery is limited to those matters that are relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). As the party seeking discovery, Cisco must establish the relevance of the documents it seeks. *See Choate v. Potter*, 2008 U.S. Dist. LEXIS 27209, at *2 (N.D. Tex. Apr. 3, 2008) (internal citation omitted) ("To place the burden of proving that the evidence sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery is to ask that party to prove a negative. This is an unfair burden, as it would require a party to refute all possible alternative uses of the evidence, possibly including some never imagined by the proponent."). Only if Cisco is able to demonstrate that its requests fall within the permissible scope of discovery does the burden shift back to Albritton to show why discovery should not be permitted. *See id.*

All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)(i)-(iii). *See Walker v. Rent-a-Center, Inc.*, 2006 U.S. Dist. LEXIS 72232, at *4 (E.D. Tex. Oct. 3, 2006). The rules expressly provide that the court "must" limit the frequency or extent of discovery when "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Further, upon a showing of good cause, courts may issue orders necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). Although the discovery rules are given liberal treatment to effect their purpose of informing litigants, those rules have "ultimate and necessary boundaries." *Garcel, Inc. v. Hibernia Nat'l Bank*, 2002 U.S. Dist. LEXIS 2390, at *6 (E. D. La. Jan. 24, 2002). The

discovery sought must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue. *Id.* at *7 Courts have likewise recognized the legal tenet that the rules should not be misapplied so as to allow "fishing expeditions in discovery." *Id.* In such circumstances, courts will enter a protective order preventing the propounding party from abusing the discovery process. *See id.* at *8.

## II. Argument

Cisco cannot demonstrate that Judge Bush's ruling is clearly erroneous or contrary to law because the documents Cisco seeks are not relevant to Albritton's claim for damages. Cisco first argues that Albritton's private medical and financial records must be produced because in order to recover for mental anguish, Albritton must offer (1) evidence of compensable mental anguish and (2) evidence to justify the amount awarded. *See* Mot. at 5. According to Cisco, because Albritton must put on some evidence of his mental anguish to support his allegations, all documents remotely concerning his health or financial position are relevant. Cisco next contends that it is entitled to Albritton's complete medical history and seven years of financial records to rebut his claim of damages. Cisco's arguments lack merit. Albritton has not put his medical or financial history at issue in this case and seeks only general damages that are presumed under Texas law. Cisco fails to demonstrate that it is entitled to rebut a claim for damages with medical and financial records that are not relevant to any element of damages that Albritton claims. This motion is another attempt by Cisco to manufacture relevance where none exists so that it can undertake an unlimited search through Albritton's most sensitive documents. Judge Bush rejected those efforts once already. Because Cisco cannot demonstrate that Judge Bush clearly erred, so should this Court.

### A. The documents Cisco seeks are not relevant

The documents Cisco seeks are not relevant to Albritton's claim for damages. Under Texas law, compensatory damages allowable for defamation are divided into two categories: general and specific. *See Peshak v. Greer,* 13 S.W.3d 421, 427 (Tex. App.—Corpus Christi 2000, no pet.). General damages include compensation for "loss of reputation and mental

5

anguish." *Bentley v. Bunton,* 94 S.W.3d 561, 604 (Tex. 2002). A plaintiff may also elect to recover additional, "special damages" that flow from the libel including loss of earning capacity, *Peshak,* 13 S.W.3d at 427, loss of past and future income, *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 922 (Tex. App.—Corpus Christi 1991, writ dism'd), and loss of employment, *Houston Belt & Terminal Ry. v. Wherry,* 548 S.W.2d 743, 753 (Tex. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.).

When the actionable statements injure the plaintiff in his office, profession or occupation, *Knox v. Taylor,* 992 S.W.2d 40, 50 (Tex. App. — Houston [14th Dist.] 1999, no pet.), or charge him with the commission of a crime, *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex. 1984), they are defamatory *per se*. *See e.g., Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581(Tex. App.—Austin 2007, pet. denied). In such cases, Texas law presumes that the plaintiff is entitled to recover general damages even in the absence of specific evidence of harm to the plaintiff's reputation. *Id.* at 580 ("statements that are defamatory *per se* are actionable without proof of injury."); *see also Peshak,* 13 S.W.3d at 427 ("In actions of libel *per se,* the law presumes the existence of some actual damages, requiring no independent proof of general damages."). In fact, the Texas Supreme Court has held that a plaintiff injured in his office or profession is entitled to recover general damages for injury to his reputation and for mental anguish as a matter of law. *See Bentley,* 94 S.W.3d at 604 ("Our law presumes that statements that are defamatory *per se* injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish."); *see also Smith v. Lowe's Home Ctrs, Inc.*, 2005 U.S. Dist. LEXIS 12812, at *12 (W.D. Tex. June 29, 2005) (citing *Bentley* and holding "statements which are defamatory *per se* entitle a plaintiff, as a matter of law, to recover actual damages for injury to reputation.").

In this case, Defendants attacked Albritton in his profession. The false statement that Albritton had "conspired" with the clerk of the court to falsify official documents is so outrageous and undeniably harmful that Texas law presumes that Albritton has suffered damage to his reputation and mental anguish. Further, **Albritton has expressly disclaimed any recovery**

6

**for special damages attributable to loss of income, loss of earning capacity or medical expenses.** Because Texas law entitles Albritton to an award of damages for reputational injury and mental anguish as a matter of law, there is no need or requirement that Albritton introduce specific evidence in support of these damages. *See Peshak,* 13 S.W.3d at 427 ("In actions of libel *per se,* the law presumes the existence of some actual damages, requiring no independent proof of general damages."); *see e.g., Parkway Co. v. Woodruff* 901 S.W.2d 434, 444 (Tex. 1995)(a plaintiff may recover damages for mental anguish based on evidence sufficient to establish a "substantial disruption in the plaintiff's daily routine."). Here, Albritton need not offer any evidence other than his own testimony to prove the extent and nature of his damages. *See Williams v. Trader Publ'g Co.,* 218 F.3d 481, 486 (5th Cir. 2000)(holding that plaintiff's testimony alone was sufficient to support the jury's award for mental anguish damages); *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1046 – 47 (5th Cir. 1998) (same); *Smith,* 2005 U.S. Dist. LEXIS 12812, at *16 (evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses).

Because Albritton's general damages are presumed, and the extent of those damages can be supported by his own testimony at trial, his medical and financial records are not relevant to the damages issues in this case. The Magistrate Judge's order was correct. Cisco has not, and cannot, demonstrate that the Court clearly erred in denying Cisco's irrelevant and invasive discovery.

    **B.**    **Cisco is not entitled to Albritton's medical records**

Judge Bush ruled that Cisco is not entitled to Albritton's medical records.[3] Cisco incorrectly argues that the very fact that Albritton has claimed he suffered mental anguish is enough to require production of his medical records. In support of its position, Cisco cites to *Patterson* v. *P.H.P. Healthcare Corp.,* 90 F.3d 927, 940 (5th Cir. 1996). *See* Mot. at 5. But as

---

[3] See DE# 143, finding that "[a]ny marginal relevance that could be demonstrated is far outweighed by privacy consideration, especially in light of Albritton's binding admissions that he has not sought such treatment and is not making a claim for medical expenses."

this Court has previously held in an opinion omitted from Cisco's initial briefing on the underlying motion, *Patterson* does not address the relevance question. *See Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 381 (E.D. Tex. 1997)(*Patterson* does not give specific instructions on which evidence is subject to disclosure, or even what evidence may or may not be relevant). Instead, the holding in that case is directed to the *amount of proof* needed to recover mental anguish damages. *Id.* Moreover, *Patterson* does not hold that medical evidence or corroborating testimony is required for an award of mental anguish damages, as argued by Cisco. *See Migis*, 135 F.3d at 1047. Far from requiring medical evidence, this Circuit has specifically held that no such evidence is required and that a plaintiff's own testimony, if sufficiently detailed, is sufficient to prove the extent and nature of the plaintiff's damages. *See id.*; *Williams,* 218 F.3d at 486.

The question before this Court is not the sufficiency of Albritton's evidence, but whether the documents Cisco demands are relevant in light of the fact that Albritton has repeatedly stated he will offer no medical evidence or evidence of economic loss in this case. In *Burrell,* this Court answered that question, holding that unless a plaintiff's mental condition is somehow at the "crux of the case," medical records and testimony not relied upon by the plaintiff need not be produced. *See* 177 F.R.D. at 384. This Court was understandably concerned that a "tremendous potential for abuse exists when a defendant has unfettered access to a plaintiff's medical records" and "that potential is even greater where . . . the plaintiffs' physical or mental conditions have not been placed in controversy." *Id.* at 383. In *Burrell,* this Court rejected the relevance arguments presented in Cisco's motion and instead held that "[i]f plaintiffs are not going to use medical records or medical testimony at trial in order to prove up the claims for mental anguish, then the court sees no reason why the records must be disclosed." *Id.* at 384.

In reply to the underlying motion to compel and in the instant motion, Cisco strains to distinguish this Court's opinion in *Burrell*. First, Cisco attempts to distinguish *Burrell* because it arose under federal law. *See* Mot. at 7. But the discovery issues in that case, like this case, required the application of the *Federal* Rules. Second, Cisco deceptively portrays this Court as

8

"noting" that if plaintiffs had sued under state tort law, their mental conditions would be at issue. *Id*. But, that quotation isn't the Court's at all, but rather a statement made by the plaintiffs in that case that cannot be imputed to Albritton in this case. *See Burrell*, 177 F.R.D. at 379. Third, Cisco argues that *Burrell* is distinguishable because it was decided under the mandatory disclosure rule, not Rule 26(b)(1). *See* Mot at 7. But in *Burrell*, this Court considered Rule 26(b)(1) and nonetheless refused to order production where the plaintiffs were not offering medical evidence at trial. *See Burrell*, 177 F.R.D. at 384, citing *Bridges v. Eastman Kodak Co*., 850 F. Supp. 216, 223 (S.D.N.Y. 1994) (discussing Rule 26(b)).

Cisco also relies on *Merrill v. Waffle House, Inc*., 227 F.R.D. 467, 473 (N.D. Tex. 2005) to challenge the holding in *Burrell*. *See* Mot. at 7. *Waffle House* does not compel the result Cisco seeks. In *Waffle House* the magistrate judge recognized that not all medical records are relevant to mental anguish damages but found that the plaintiff in that case failed to demonstrate a lack of relevance, or that the documents were of such marginal relevance that the potential harm occasioned by discovery would outweigh disclosure. *Id.* at 474. Here, Albritton has made the required showing because his damages are presumed, he will offer no medical evidence at trial, and because Cisco's request for unfettered access to his medical records is overly broad.

Cisco argues that even under this Court's holding in *Burrell*, it is entitled to Albritton's medical records to determine his state of mind and whether he had a pre-existing mental condition.[4] *See* Mot. at 8. Most of the information argued by Cisco as relevant is available from other, less intrusive discovery. For example, Cisco was free to question Albritton at his deposition about his state of mind, how he perceived the events, and the impact on his routine. Cisco's remaining "contributing factors" argument is also flawed as demonstrated by the

---

[4] Cisco also cites to *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006), among other cases that are not binding on this Court. That case simply held that where a plaintiff's mental health is in controversy, the court can order that medical records be produced. *Id.* The *Oberweis Dairy* Court went on to state, however, that a court is free to limit access to that information to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records. *See id.* Here, the probative value of Cisco's request is weak, at best, and Albritton's privacy interests are strong, particularly in light of the breadth of documents Cisco seeks.

9

rejection of the same argument by this Court in *Burrell*. There, while the Court found that medical records can be relevant as argued in Cisco's motion, it nonetheless held that a "tremendous potential for abuse" exists when a defendant has unfettered access to a plaintiff's medical records." 177 F.R.D. at 383. That potential is even greater where the plaintiff's physical or mental conditions have not been placed in controversy. *Id*. Although Albritton's case is a cause of action for defamation, the same reasoning applies. Like the plaintiffs in *Burrell*, Albritton's mental anguish damages are premised on other damages he incurred, here damage to his reputation. Like the plaintiffs in *Burrell*, Albritton need not offer medical evidence to support his mental anguish damages.[5] And as in *Burrell*, the opportunity for abuse here is far too great to allow Cisco unfettered access to Albritton's medical records absent a stronger showing of relevance. *See id*.

All of these issues were before the Magistrate Judge. There, Albritton argued that he need not present medical evidence to prove his claim, and has represented that he will not offer any such evidence at trial. Albritton has never asserted any claim for medical expenses. Albritton does not allege that he sought any health care because of Defendants' conduct. He has not designated any physicians or health care providers to corroborate his mental anguish. Indeed, he need not do so since Texas law entitles him to recover such damages as a matter of law upon establishing libel *per se*. As a result, the Court correctly concluded that Cisco's request to rummage through Albritton's medical history should be denied. *See id.* Cisco offers nothing in the instant motion to demonstrate that the Judge Bush's order was clearly erroneous, nor can it on this record.

### C. Cisco is not entitled to Albritton's tax returns or other financial records

Judge Bush ruled that Cisco is not entitled to Albritton's tax returns and financial

---

[5] Cisco again cites to *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex. 1995) as supporting its argument. Mot at 5. *Parkway* is an appellate case in which the plaintiff's mental anguish evidence was reviewed for the *sufficiency of the evidence*. It does not address the relevancy issues that were before Judge Bush or this Court as part of its review of his decision. Cisco also cites *Montemayor v. Ortiz*, 208 S.W.3d 627 (Tex. App.—Corpus Christi 2006, pet. denied). That case does not address the relevancy questions at issue or mental anguish damages.

records. Though Albritton is not seeking economic damages in this case, Cisco contends that Judge Bush was clearly erroneous in denying its motion to compel Albritton's tax returns and other sensitive financial information. Like Albritton's medical records, his tax returns and financial documents are not relevant to the damages issues in this case. The lack of relevance coupled with the highly sensitive nature of those documents weighs heavily against granting Cisco's motion.

Congress has guaranteed that federal income tax returns will be treated as confidential communications between the taxpayer and the government, creating a public policy against the disclosure of those returns. *See* I.R.C. §6103; *Payne v. Howard,* 75 F.R.D. 465, 470 (D.D.C. 1977)(noting that courts have broadly applied a general federal policy against disclosure of tax returns). The Fifth Circuit agrees, stating "[i]ncome tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as part of discovery." *Walker v. Rent-A-Center, Inc.,* 2006 U.S. Dist. LEXIS 72232, at *7 (citing *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1411 (5th Cir. 1993)). "Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system." *Id.* Courts refuse to order production of a plaintiff's tax returns unless the moving party demonstrates <u>both</u> that the returns are relevant to the subject matter of the action and that there is a compelling need for the tax returns because the information contained therein is not otherwise obtainable. *Id.*

Here, Albritton's tax returns are not relevant because Albritton is not seeking lost profits or other economic damages. Changes in Albritton's revenue are not probative of the harm caused by Cisco's defamation because they do not show the opportunities Albritton never received as a result of Cisco's conduct. The law does not require Albritton to prove a negative, which is why damages are presumed. None of the documents Cisco seeks, including Albritton's internal financial documents and client lists are relevant to the damages in this case. Moreover, those documents raise issues concerning protection of attorney-client privileged information and seek

Albritton's proprietary business information for which Cisco has not shown relevance sufficient to warrant disclosure.[6]

Cisco's claimed need for Albritton's confidential tax returns is far too tenuous to demonstrate the type of compelling need required to order their production. Increases or decreases in Albritton's revenue may result from a myriad of reasons unrelated to Cisco's defamation. Thus, Albritton's tax returns and related financial information will provide no additional relevant information. To the extent that Cisco seeks information related to Albritton's damaged reputation, that information is available through witness testimony and/or is otherwise available from other less-sensitive sources. Judge Bush was not clearly erroneous in denying Cisco's motion to compel Albritton's financial documents. *See id.* at *9.

### D. Cisco is not entitled to rebut Albritton's presumed damages

Cisco contends that even if Albritton does not need medical evidence to make his case, it is entitled to Albritton's medical records for purposes of rebutting the doctrine of presumed damages. *See* Mot at 9. Similarly, Cisco now claims for the first time that Albritton's personal and business finances are direct evidence of whether his mental anguish took a toll on his work life and whether it was caused by or related to financial stress. *See* Mot. at 8.[7] Notwithstanding that Cisco cannot demonstrate clear error by raising an argument for the first time in a motion to reconsider, this new theory fails for the same reasons discussed in Albritton's sur-reply to the underlying motion. Specifically, Albritton is entitled to presumed damages and no authority supports Cisco's contention that it is entitled to unfettered access to Albritton's most sensitive documents for purposes of rebutting those presumed damages. *See* DE #78 at 2-3.

Though Cisco has retreated from the position it took in reply to the underlying motion, it now contends that rebuttal evidence is relevant in cases of presumed damages. It attributes this

---

[6] Cisco's request for financial records is egregiously over broad in seeking all financial documents from as far back as five years before Cisco's defamatory statements were published. *See* Mot. at 10.

[7] Here again Cisco sites to its new and improper evidence, the APA report. *See* Mot. at 8 & Ex. C. Presumably Cisco contends that Judge Bush clearly erred by not thinking of this argument on his own.

12

proposition to *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002), which remanded a punitive damages award on an evidentiary challenge. While Bentley confirms that reputational and mental anguish damages are presumed in *per se* cases, 94 S.W.3d at 604, nothing in the case suggests that the presumption of damages is rebuttable. And Cisco fails to address the Beaumont Court of Appeals decision in *Mustang Ath. Corp. v. Monroe*, which cites *Bentley* for presumed damages in *per se* cases and treats the presumption as irrebuttable. 137 S.W.3d 336, 338 (Tex.App.—Beaumont, 2004, no pet. h.) ("The Supreme Court of Texas has not held that presumption is rebuttable."). Judge Bush was correct in rejecting Cisco's rebuttal-relevance argument.

### E. The discovery Cisco seeks is unnecessary, unreasonably cumulative, overly broad and sought for the purpose of harassing Albritton

To the extent that the documents Cisco seeks have any marginal relevance, they are duplicative of the evidence adduced in Albritton's deposition. *Cf* Fed. R. Civ. P. 26(b)(2)(C)(i). Albritton's testimony that he has not sought any medical treatment because of Defendants' conduct and that he cannot identify any specific lost employment or income attributable to Defendants' conduct eliminates Cisco's claimed need to discover his medical records, client lists, engagement letters, tax returns, and confidential financial statements. To the extent that Albritton's claim for mental anguish entitles Cisco to any discovery, Cisco had access to that discovery during Albritton's deposition. Cisco's demand for additional discovery is unreasonably cumulative and oppressive, especially given the sensitive nature of the documents it seeks.

Additionally, "the burden. . . of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues," *Cf* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Here, Cisco seeks all of Albritton's medical records, whether or not they are related to this case. In fact, Cisco seeks a medical authorization giving it unlimited access to Albritton's medical records without any limit as to time and scope.

*See* Mot. at 10. Cisco's requests are fatally overbroad, and Cisco has offered no explanation for the breadth of its requests. Albritton's medical records are not relevant, and when weighed against the unreasonable scope of Cisco's request and the sensitive nature of the documents requested, Judge Bush ruled correctly.

Cisco also seeks tax returns and a host of financial documents from 2002 forward and all documents evidencing new matters opened in Albritton's law practice, "including but not limited to engagement letters." *See* Mot. at 10. Again, Cisco asks this Court to grant it unfettered access to Albritton's most sensitive information, including documents that would disclose his confidential client lists and potentially privileged client information. Even if the documents Cisco seeks were relevant—and they are not—its relevance argument is outweighed by the over breadth and oppressive nature of requiring Albritton to produce those documents. Because Cisco's requests are not limited to the financial information directly related to this case—and cannot be directly related given that Albritton is seeking general damages—Cisco's requests were properly denied as overly broad. *See Spiegelberg Mfg., Inc. v. Hancock*, 2007 U.S. Dist. LEXIS 88987, at *10 (Dec. 3, 2007).

The discovery Cisco seeks should also be denied because it seeks to annoy, embarrass and harass Albritton. *Cf* Fed. R. Civ. P. 26(c)(1). Under the circumstances presented here, where Albritton has directly testified that he has not sought medical counseling and will not claim a loss in income, Cisco's insistence on unlimited access to Albritton's medical records and seven years of financial records can only be for the purpose of harassing Albritton. Questioning by Defendant Frenkel's attorney during Albritton's deposition demonstrates that defendants have no intention of limiting discovery to that which is relevant, and instead have every intention of harassing Albritton. Frenkel's Counsel, Mr. McWilliams, asked Albritton whether he had ever represented a murderer or a child molester. Obviously, whether or not Mr. Albritton has represented persons charged with a crime—representation that lawyers have an ethical obligation to provide—is completely irrelevant to any of the issues in this case. Cisco's continued use of discovery to harass Albritton must come to an end.

For the reasons stated herein and in his briefing on the underlying motion to compel, Albritton respectfully requests that Cisco's motion for reconsideration be denied in full.

Respectfully submitted,

Nicholas H. Patton
SBN: 15631000
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080      (903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 12th day of February, 2009.

*Nicholas H. Patton*

Nicholas H. Patton