# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 6:08cv00089 |
| | § | |
| CISCO SYSTEMS, INC. RICHARD | § | |
| FRENKEL, MAULLUN YEN and | § | |
| JOHN NOH, | § | |
| | § | |
| Defendant | § | |

## JOINT[1] FINAL PRE-TRIAL ORDER

This case will come before the Court at a pre-trial conference on March 2, 2009, pursuant to the Court's Amended Scheduling Order (DE #139). While the parties have agreed on many of the matters set forth herein, there are some issues as to which the parties cannot reach agreement. For those matters, the parties' positions are separately indicated below:

## A.    COUNSEL FOR THE PARTIES

Plaintiffs:

Nicholas H. Patton (SBN 15631000)          James A. Holmes (SBN 00784290)
Patton, Tidwell & Schroeder, LLP           The Law Offices of James Holmes, P.C.
4605 Texas Boulevard                       605 South Main, Suite 203
Texarkana, Texas 75503                     Henderson, TX 75657
903.792.7080 / 903.792.8233 (Fax)          903.657.2800 / 903.657.2855 (Fax)

Patricia L. Peden
Law Office of Patricia L. Peden
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510-268-8033

---

[1] Defendants do not agree with certain portions of this Joint Pretrial Order as set forth in their Motion to Strike Portions of the Pretrial Order. Plaintiff does not agree with certain portions of this Joint Pretrial Order either, but believes that the parties' disputes are best resolved by the Court during pretrial motions rather than by having Defendants file a fourth motion to strike.

Defendants:

Charles L. Babcock                    George McWilliams
Federal Bar No. 10982                 TX Bar No. 13877000
Crystal Parker                        George L. McWilliams, P.C.
Federal Bar No. 621142                406 Walnut
1401 McKinney                         P.O. Box 5398
Suite 1900                            Texarkana, TX 75504-0058
Houston, Texas 77010                  903.277.0098 / 870.773.2967 (Fax)
713.752.4200 / 713.752.4221 (Fax)

## B.     STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332, in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00. Defendants Cisco and Frenkel are subject to personal jurisdiction in this Court. Defendants Mallun Yen ("Yen") and John Noh ("Noh") deny that the court has personal jurisdiction over them and have filed motions to dismiss on that basis (Docket Nos. 35 and 37). Those motions are pending. Plaintiff contends that personal jurisdiction over Yen and Noh is proper.

## C.     NATURE OF ACTION

This case presents a cause of action for defamation.

## D.     CONTENTIONS OF THE PARTIES

### Plaintiff's Contentions

Albritton contends that in three internet blog posts dated October 17, 2007 and October 18, 2007 (one of which was posted on October 19, 2007), Defendants Cisco, Frenkel, Noh and Yen published statements about Eric Albritton that are false and defamatory. Albritton contends that the articles published by Defendants accused him of conspiring with the Eastern District of Texas court clerk to alter governmental records to create subject matter jurisdiction where none otherwise existed to benefit his client at Cisco's expense. Albritton contends that the articles accuse him of engaging in criminal and unethical conduct and are defamatory *per se*. Albritton also contends that the accused articles accuse him of criminal and unethical conduct by omitting

2

or juxtaposing material facts, which conveying a substantially false and *per se* defamatory impression of Albritton.

Albritton contends that the statements made in Defendants' articles are false statements of fact that are not true and are not substantially true. Instead, Albritton contends that the statements contained in the accused articles are false and that they create a false and defamatory impression of him. He asserts that Defendants' statements tend to injury him in his trade or profession as an attorney at law. Albritton contends that Defendants acted with [insert the required degree of fault (common law, negligence, or actual malice)][2] in defaming him and that Defendants' statements are not privileged.

Albritton contends that Defendant Cisco is liable for Frenkel's posts because Cisco has admitted that Frenkel acted within the course and scope of his employment at Cisco when he posted the articles about Albritton. Albritton contends that Defendants Yen and Noh are liable for defamation because they each individually disseminated the articles and because they acted in concert with Defendants Cisco and Frenkel by directing, advising, encouraging, ratifying, adopting, and aiding and abetting Cisco and Frenkel's tortious conduct.

Albritton contends that he has been damaged by the Defendants' false and defamatory allegations about him and that Albritton is entitled to recover damages from Defendants in an amount to be determined by proof at trial. Albritton says that he had a right to respond to Defendants' public accusations about him and doing so did not contribute to the harm caused by Defendants accusations that had already been publically disseminated. Albritton also contends that Defendants acted with malice and their conduct collectively and individually merits the award of punitive damages.

---

2 Albritton asserts that because he is a private figure and the articles at issue concern a matter of private concern, the Constitution imposes no minimum standard of fault in this case. Alternatively, Albritton contends that because he is a private figure, the applicable standard of fault is negligence. If, however, the standard of fault is actual malice as defendants contend, Albritton asserts that Defendants acted with actual malice in publishing false and defamatory statements that Defendants knew were untrue or in acting with reckless disregard of the falsity of the accusations made about Albritton. After the Court has resolved the legal issues upon which the standard of fault depends, the applicable standard of fault should be inserted here before Albritton's contentions are read to the jury.

**Defendants' Contentions**

Defendants contend that there was nothing false or defamatory about the articles and that they did not accuse him of engaging in criminal or unethical conduct. Defendants contend that the articles did not injure Plaintiff in his trade or profession as an attorney at law and that he has suffered no damages at all. Further, Defendants Yen and Noh say they had nothing to do with the writing, editing or publishing of the articles as the articles were solely written and published by Frenkel.

Defendants contend that the articles were published without "actual malice" that is, none of the Defendants published anything they knew to be false nor did they, in fact, entertain any serious doubt about the truth of the articles. The Defendants further assert that the Plaintiff has suffered no compensable damage. The Defendants say that Plaintiff failed to mitigate his damages, if any, and his own acts and those of his agents contributed to the widespread dissemination of the allegedly defamatory articles. Finally, Defendants say that there are factors mitigating plaintiff's damages, if any, and that the articles are privileged.

## E.    STIPULATIONS AND UNCONTESTED FACTS

1.    Plaintiff Albritton is an attorney who has been licensed to practice law since November 4, 1994.

2.    Throughout his professional career, Albritton has enjoyed a sterling reputation for ethical and responsible legal representation of his clients.

3.    Albritton's law license has never been suspended or revoked for any reason.

4.    Defendant Frenkel was employed by Cisco as one of its Directors, Intellectual Property—Consumer & Emerging Technologies.

5.    Frenkel is no longer employed at Cisco.

6.    Frenkel published the Troll Tracker Blog.

7.    On October 17, 2007 Richard Frenkel published the internet post or article attached as Ex. A to this Pretrial Order.

8. On October 18, 2007 Richard Frenkel published the internet post or article attached as Ex. B to this Pretrial Order.

9. On October 19, 2007 Richard Frenkel published the internet post or article (an amended version of the October 18, 2007 post or article) attached as Ex. C to this Pretrial Order.

10. Frenkel posted the October 17 and both versions of the October 18 articles or posts while operating within the course and scope of his employment at Cisco.

11. On November 7, 2007 Richard Frenkel published the internet post or article attached as Ex. D to this Pretrial Order.

12. Defendant Mallun Yen is employed by Cisco as Vice President, Worldwide Intellectual Property.

13. Mallun Yen has been employed by Cisco at all times between the dates of October 15, 2007 and March 6, 2008.

14. Mallun Yen is still employed by Cisco.

15. Defendant John Noh was employed by Cisco as one of Cisco's Senior Public Relations Managers.

16. John Noh was employed by Cisco at all times between the dates of October 15, 2007 and March 6, 2008.

17. John Noh is no longer employed at Cisco.

18. Plaintiff Albritton has developed a successful law practice, including representation of clients in intellectual property disputes in the Eastern District of Texas.

19. In furtherance of that practice, Albritton and others filed a patent infringement suit against Cisco on behalf of ESN, LLC.

20. The patent asserted by ESN against Cisco issued on October 16, 2007.

21. ESN sued Cisco for patent infringement

22. Eric Albritton, Peter McAndrews and John Ward, Jr. were counsel for ESN in the ESN v. Cisco Litigation.

23. Cisco was served a copy of the ESN complaint and the ESN Amended Complaint.

24. The Notice of Electronic Filing of the Complaint contains the words "entered on 10/16/2007 at 0:01 AM CDT" and "Filed 10/15/07."

25. Cisco filed a declaratory judgment action in the District of Connecticut on October 16, 2007 at 11:32 a.m. Eastern.

26. Albritton assisted ESN in filing an Amended Complaint, which was only changed to state that it was attaching the patent as an exhibit.

27. Albritton is not claiming lost wages or economic damages as a result of the complained-of statements.

28. Albritton's family thinks no differently of him because of the Articles.

29. Since the Articles were published, Albritton has been appointed to the Local Rules Committee by Judge Davis in the Eastern District of Texas.

30. Eric Albritton is currently a member of the Inns of Court in the Eastern District of Texas.

31. Cisco has been a plaintiff in cases filed in the Eastern District of Texas, including a case it filed against Huawei Technologies Co. Ltd.

## F.    CONTESTED ISSUES OF FACT AND LAW

### Contested Issues of Fact

1. Whether or not or not the ESN v. Cisco complaint in case number 5:07-CV-00156 in the Eastern District of Texas was filed on October 16, 2007 or October 15, 2007.

2. Whether or not, on October 15, 2007, Albritton signed a Civil Cover Sheet and emailed it to the court clerk for the purpose of initiating the civil docket sheet and whether or not this is required under the court's local rules.

3.      Whether or not the opening of the civil docket sheet creates a "shell" file into which pleadings can then be filed within the next 24 hours.

4.      Whether or not Amie Mathis, logged into the court's electronic filing ("ECF") system and began uploading the complaint on the ECF system on October 15, 2007.

5.      Whether or not the ECF system contained a computer glitch that incorrectly used the log-in time to generate one of the dates used in the optional banner or header placed across the top of the ESN Complaint.

6.      Whether or not the Electronic Document Stamp used in filings in the Eastern District of Texas is the computer-encrypted stamp that records the exact date and time a document is received by the Court.

7.      Whether or not pursuant to the Local Rules of the Eastern District of Texas, the computer-encrypted Electronic Document Stamp is the official record of the time a complaint if filed with the Court.

8.      Whether or not pursuant to the Local Rules of the Eastern District of Texas and the Federal Rules of Civil Procedure, a complaint is deemed filed when it is received by the Court as reflected in the computer-encrypted Electronic Document Stamp.

9.      Whether or not the Electronic Document Stamp can be altered.

10.     Whether or not there is an Electronic Document Stamp used in the Eastern District of Texas that electronically records that date and time of filing.

11.      Whether or not a document filed electronically is deemed filed on the date and time of filing as reflected on the Electronic Document Stamp from the Court.

12.     Whether or not a document filed electronically is deemed filed on the date and time of filing as reflected on the Notice of Electronic Filing from the Court.

13.     Whether or not the Electronic Document Stamp on the ESN complaint filed in case number 5:07-CV-00156 shows that ESN's Complaint was filed on October 16, 2007.

14.     Whether or not a copy of the Notice of Electronic Filing showing the Electronic Document Stamp was available to any party who contacted the Eastern District of Texas's clerk's office and requested it.

15.     Whether or not Cisco ever requested a copy of the Notice of Electronic Filing containing the Electronic Document Stamp for the ESN Complaint from either the Eastern District of Texas's clerk's office or ESN's counsel.

16.     Whether or not the date on the header and the docket should have reflected the official date of filing as reflected on the Electronic Document Stamp, and whether or not in the ESN case the Court's electronic filing system didn't do what it was suppose to do.

17.     Whether or not the ECF system is designed to provide the file date as the date when one begins uploading the complaint.

18.     Whether or not the document header or banner located at the top of documents filed in connection with cases in the Eastern District of Texas is automatically generated by the court's computer system and is an optional feature that users can turn on or off according to preference.

19.     Whether or not users of the Eastern District of Texas's electronic filing system can change the date reflected on the header or banner stamped at the top of pleadings on the court's official website.

20.     Whether or not the Eastern District of Texas Court Clerks are the only ones who could change the official Court's docket date for the ESN Complaint.

21.     Whether or not the Eastern District of Texas Court Clerks are the only ones who could change the header or banner stamped at the top of the official file copy of the ESN Complaint on the court's official website.

22.   Whether or not the date originally stamped on the header or banner of the complaint in the ESN litigation stated that it was filed on 10/15/2007.

23.   Whether or not the court's official docket originally stated the complaint in the ESN litigation was filed on 10/15/07.

24.   Whether or not the Civil Cover Sheet on the ECF system was signed on October 15 and bears a header or banner containing the words "Filed 10/15/07."

25.   Whether or not the Civil Cover Sheet says that the information contained on the Civil Cover Sheet does not replace nor supplement the filing and service of pleadings or other papers as required by law.

26.   Whether or not the Notice of Electronic Filing was electronically delivered to Cisco when the ESN case was filed, and whether or not the Notice of Electronic Filing was available for viewing on the court's electronic filing website.

27.   Whether or not Federal Rule of Civil Procedure 4 and Local Rule 4 govern the service of process.

28.   Whether or not, at the time the ESN original and amended complaints were filed, Cisco had counsel of record in the ESN v. Cisco case.

29.   Whether or not at the time the ESN original and amended complaints were filed, ESN knew or should have known who was acting as Cisco's counsel with respect to the patent that was the subject of the ESN lawsuit.

30.   Whether or not Baker Botts was acting as Cisco's agent when it contacted the clerk's office ex parte to ascertain the facts surrounding the filing of the ESN complaint.

31.   Whether or not the clerk's office told Baker Botts that there had been an error in the docket date and that the complaint had been filed on October 16, 2007.

32.   Whether or not Cisco contacted ESN or its counsel, including Albritton, regarding the facts surrounding the filing of the ESN complaint before it published the accused articles or posts.

33. If the complaint was filed on October 16, 2007, whether or not the Eastern District of Texas had subject-matter jurisdiction over the ESN v. Cisco case.

34. Whether or not the docket was modified to reflect the date of filing as reflected in the Electronic Document Stamp.

35. Whether or not the docket was altered to reflect a filing date of October 16, 2007, and whether or not this change occurred on October 17, 2007.

36. Whether or not on October 17, the header or banner on every page of the Complaint on the ECF system was modified to reflect that it was filed on October 16, 2007 and whether or not this was consistent with the Local Rules and/or the Electronic Document Stamp.

37. Whether or not on October 17, the header or banner on every page of the Complaint on the ECF system was altered to reflect that it was "filed" on October 16, 2007.

38. Whether or not the clerk's office acted within its authority in modifying the docket entry if the Chief Clerk in the Eastern District of Texas was able to determine from the date shown on the Electronic Document Stamp that the ESN complaint was received by the Court on October 16, 2007, and if he made the modification to conform to the date shown on the Electronic Document Stamp.

39. Whether or not the clerk's office acted within its authority in modifying the docket entry.

40. Whether or not the ECF software contained a computer glitch that resulted in an erroneous docket entry in the ESN case.

41. Whether or not the clerk's office made a mistake with respect to the filing, and Whether or not or not the ECF software worked exactly as it is supposed to work.

42. Whether or not Albritton's office learned of an alleged error in the court's docket as a result of Cisco filing a declaratory judgment action in the District of Connecticut on October 16, 2007.

43. Whether or not the Eastern District of Texas's website and Local Rules direct persons who have experienced a problem with the court's electronic filing system to call the court's "help desk" or to call the clerk's office in the division where the case was filed.

44. Whether or not Mathis called the court clerk in Texarkana, the division where the ESN v. Cisco case was filed to inquire about why the docket entry was wrong and to determine what she needed to do to have the docket corrected to reflect the actual date the ESN complaint was filed.

45. Whether or not the Local Rules require the filing of a motion to correct the docket or whether the court could modify the docket to reflect the filing date shown on the Electronic Document Stamp.

46. Whether or not Albritton's office conspired with the court clerk's to manufacture subject matter jurisdiction where none otherwise existed in the ESN v. Cisco litigation.

47. Whether or not Ms. Mathis ever requested the court clerk's office to alter the date of the filing of the ESN complaint.

48. Whether or not Mathis had at least five different conversations with the clerk's office regarding why the docket stated that the complaint was filed on October 15 and whether or not the clerks would change the docket to reflect a filing date of October 16.

49. Whether or not one of the clerks, Shelly Moore, gave Ms. Mathis two options for correcting the error: ESN could file a motion with the Court or she could contact the clerk's office in Tyler, Texas.

50.     Whether or not one of the clerks, Shelly Moore, told Mathis to file a motion to change the date on the docket but Mathis said she did not want to file a motion.

51.     Whether or not Albritton's office conspired with the court clerk's to alter governmental records by calling each of the persons to whom Mathis was directed by the clerk's office to contact in order to ascertain why the docket entry was incorrect.

52.     Whether or not Mathis asked the clerks to change the date on the ESN docket or whether or not she inquired as to what needed to be done in order to correct an erroneous date reflected on the court's docket.

53.     Whether or not Albritton was advised that Mathis was making the calls to get the docket changed, told her to "stay on top of it," "fully support[s] everything she did" "without a doubt" and thought she had "done good" and that he "appreciates you."

54.     Whether or not the court clerk's modification of the docket resulted in the software automatically changing the docket entry on the ECF system.

55.     Whether or not the court clerk's modification was noted on the publically available docket sheet.

56.     Whether or not there was a public record of the reason the Court Clerk altered the official court docket.

57.     Whether or not Defendants could have obtained the reason for the Court Clerk's modification of the court docket by contacting the clerk's office and whether or not Defendants actually obtained an explanation from Baker Botts before publishing the accused articles.

58.     Whether or not the court clerk's office has a Transaction Record that reflects all dates and times concerning the filing of documents in the ESN v. Cisco litigation.

59.     Whether or not the Transaction Record is publically available.

60.     Whether or not the docket entry for the complaint of October 15, 2007, has been erased from the ECF system.

61.     Whether or not the Local Rules of the Eastern District of Texas in effect on October 16, 2007 encouraged attorneys to electronically file complaints.

62.     Whether or not in October of 2007, electronic filing of complaints in the Eastern District of Texas was a recent procedure.

63.     Whether or not any of the clerks who spoke with Mathis or were involved had ever been asked to change the date of a complaint on the court's docket.

64.     Whether or not the Chief Clerk of the Eastern District of Texas was able to verify the time and date that the ESN complaint was filed by viewing the Electronic Document Stamp.

65.     Whether or not the Chief Clerk of the Eastern District of Texas had the authority to change the docket date to reflect the filing date shown on the Electronic Document Stamp.

66.     Whether or not the Chief Clerk of the Eastern District of Texas stated that neither he, nor the clerks in his office, or anyone at Albritton's office did anything wrong in connection the filing of the ESN complaint.

67.     Whether or not the Local Rules of the Eastern District of Texas require the filing of a motion before a docket can be corrected or modified.

68.     Whether or not Frenkel has been admitted to practice in the Eastern District of Texas and is presumed to know the Court's Local Rules.

69.     Whether or not the Chief Clerk of the Eastern District of Texas has stated that the changing of the date should have been done by motion and "should have been a judicial determination."

70.     Whether or not Cisco ever filed a motion with the Court in the Eastern District of Texas seeking a judicial determination of the date the ESN complaint was filed.

71.    Whether or not in the ESN v. Cisco case, Cisco stipulated that the Eastern District of Texas had subject-matter jurisdiction.

72.    Whether or not the accused articles individually and collectively accuse Albritton of criminal or unethical conduct.

73.    Whether or not the accused articles accuse Albritton of the commission of a crime.

74.    Whether or not Albritton could be disbarred for the conduct alleged in the accused articles.

75.    Whether or not the accused articles are false, not true and not substantially true.

76.    Whether or not Defendants were negligent in publishing the accused statements about Albritton.

77.    Whether or not Defendants acted with actual malice in publishing the accused statements about Albritton.

78.    Whether or not Defendants acted negligently or with actual malice in continuing to publish the accused statements about Albritton until March of 2008.

79.    Whether or not the Troll Tracker Blog has had at least 100,000 visitors.

80.    Whether or not the accused articles are still available to invited readers.

81.    Whether or not Cisco has been sued at least three other times for defamation.

82.    Whether or not Albritton can be considered a limited-purpose public figure by virtue of having spoken to members of Congress on the issue of patent reform after the allegedly defamatory statements were published by Defendants.

83.    Whether or not Albritton has actively spoken to members of Congress on the issue of patent reform, particularly on the issue of venue.

84.    Whether or not Albritton's practice in the Eastern District of Texas is sufficient to make him a public figure.

85.    Whether Albritton holds himself out as an expert on patent litigation in the Eastern District of Texas.

86.     Whether or not Cisco has proof that Albritton is a "top filer" of patent cases on behalf of "non-practicing entities" for the unspecified period of time alleged by Cisco, and whether or not that unproven and ambiguous fact makes Albritton a limited-purpose public figure.

87.     Whether or not Albritton was also one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas from May of 2006 through December of 2007 and if so, whether or not that (in combination with other factors or alone) makes him a limited-purpose public figure.

88.     Whether or not the comments made in the October 17, 2007 post and both of the October 18, 2007 posts (including the one authored on October 19, 2007) must be read together and in context to determine whether Defendants defamed Albritton.

89.     Whether or not the "banana republic" comment, which was allegedly removed from Frenkel's website on October 19, 2007, was of and concerning Albritton.

90.     Whether or not Albritton's reputation is presumed to be damaged as a result of Cisco's accusations because they tend to injure Albritton in his trade and profession and accuse him of criminal or unethical conduct.

91.     Whether or not Albritton has lost any friends because of the Articles.

92.     Whether or not Albritton's reputation has been harmed outside his circle of friends and family.

93.     Whether or not the Troll Tracker has an international reach and whether Albritton's reputation has been harmed coextensively with the international reach of the Troll Tracker Blog.

94.     Whether or not intellectual property lawyers charged with hiring counsel in the Eastern District of Texas have heard about Defendants' accusations about Albritton and have arrived at a negative opinion of Albritton after hearing Defendants' accusations.

95.     Whether or not Albritton has evidence that his reputation with the judiciary in the Eastern District of Texas has been harmed.

96.     Whether or not Albritton believes that he will make more in 2008 than he did in 2007, and that he is not claiming that he has been financially harmed.

97.     Whether or not Albritton's business revenue is evidence that can be considered by the jury in awarding damages.

98.     Whether or not Albritton is entitled to damages to his reputation.

99.     Whether or not Albritton is only claiming damages for mental anguish and punitive damages, and that he is not claiming any damages for lost business or medical expenses.

100.    Whether or not Frenkel continued to publish false and defamatory statements about Albritton after he knew those accusations to be false.

101.    Whether or not on November 7, 2007, Frenkel posted a clarification of the October 18, 2007 posting and whether or not this alleged clarification mitigates Albritton's damages.

102.    Whether or not the accused posts remained available to the general public on the PTT Website until March of 2008.

103.    Whether or not in March of 2008, the PTT Website was made inaccessible to the public.

104.    Whether or not the complained-of statements are false or materially false.

105.    Whether or not the complained-of statements are verifiable statements of fact that are false.

106.    Whether or not the complained-of statements are rhetoric, opinion or hyperbole.

107.    Whether or not the accused Articles are defamatory *per se*.

108.    Whether or not the accused Articles are capable of a defamatory meaning.

109.    Whether or not the accused Articles create a false and defamatory impression that Albritton engaged in criminal or unethical behavior.

110. Whether or not Mallun Yen published or disseminated the articles.

111. Whether or not Mallun Yen acted in concert with Defendants and whether or not shedirected, advised, encouraged, ratified, adopted, or aided and abetted Cisco and Frenkel's tortious conduct.

112. Whether or not John Noh published or disseminated the articles.

113. Whether or not John Noh acted in concert with Defendants and whether or not he directed, advised, encouraged, ratified, adopted, or aided and abetted Cisco and Frenkel's tortious conduct.

114. Whether or not Albritton can prove that Cisco acted with the appropriate common law standard of fault in publishing the accused articles.

115. Whether or not Albritton can prove that each individual Defendant acted with negligence in publishing the accused articles.

116. Whether or not Albritton can prove that each individual Defendant acted with constitutional actual malice in publishing the accused articles.

117. Whether or not Albritton can prove by clear and convincing evidence that each individual defendant acted with constitutional actual malice in publishing the accused articles.

118. What type and amount of damages is Albritton entitled to if the jury finds that the accused articles are defamatory?

119. Whether or not there is evidence of damages and or there is record evidence with respect to the amount of damages.

120. Whether or not Albritton's response to Cisco's public accusations can be considered a failure to mitigate damages.

121. Whether or not public statements concerning this case were made by Albritton and whether those statements are evidence that Albritton contributed to his own harm or failed to mitigate his damages.

122. Whether or not Albritton's damages are mitigated.

123.    Whether or not Albritton failed to mitigate his damages, if any.

124.    Whether or not Albritton's own acts or omissions contributed to his damages, if any.

125.    Whether or not Albritton may recover punitive damages.

126.    Whether or not the complained-of statements are privileged.

## Contested Issues of Law

1.    Is Albritton is a private or public figure?

2.    Are the complained-of articles a matter of private or public concern?  Albritton contends the articles reported on a private intellectual property dispute between ESN and Cisco, which is a matter of private concern.  Defendants contend that the articles reported on a matter of public concern including the integrity of the court's electronic filing system and the clerk's stewardship of that system.

3.    Do Defendants bear the burden of proving the accused statements are true or substantially true or does the Plaintiff bear the burden of proving material falsity?

4.    If the complaint was filed on October 16, 2007, whether or not the Eastern District of Texas had subject-matter jurisdiction over the ESN v. Cisco case?

5.    If the complaint was filed on October 15, whether or not the Eastern District of Texas had subject-matter jurisdiction over the ESN v. Cisco case?

6.    Are the accused articles per se defamatory?

7.    Are the accused articles statements defamatory?

8.    Are the accused articles statements defamatory because they create a false impression?

9.    Should the liability theory of defamatory impression by omission or juxtaposing material facts be permitted?

10.   What is the applicable standard of fault:  common law principles, negligence, or actual malice?

11.   Is the complained of language actionable as verifiable false statements of fact?

12.     Is some of the complained of language nonactionable rhetoric, hyperbole or opinion?

13.     Are the complained of statements of fact literally or substantially true as a matter of law?

14.     Are the accused Articles individually and collectively "of and concerning" Albritton or are some of the complained of statements "not of and concerning" Plaintiff?

15.     Are some or all of the complained of statements privileged under common law and Texas statutory law?

16.     Are Noh and Yen liable for defamation if they assisted, encouraged and participated and/or ratified the articles?

17.     Where some or all of the complained-of statements defamatory?

18.     Were the complained of statements invited by Plaintiff?

19.     Is Plaintiff entitled to presumed damages?

20.     Are punitive damages available for the violation of a statute?

21.     Is any award of punitive damages capped under Texas law?

22.     Should the "Revised October 18 article" be considered as part of the alleged defamatory statements?

23.     Is the assertion that the "Revised October 18 article" is defamatory barred by limitations?

24.     Are Defendants entitled to First Amendment protection?

25.     Whether or not the single publication rule applies with respect to publication and damages.

26.     Whether or not or not Albritton's revenue is relevant given that he is seeking only general damages he incurred as a result of Cisco's per se defamation.

27.     Whether or not Albritton's financial information and medical information are relevant to his damage claims of mental anguish and punitive damages.

28.     Whether or not Plaintiff's damages, if any, are mitigated by factors under § 73.003 of the Texas Civil Practices and Remedies Code?

## G.     LIST OF WITNESSES

1.     Plaintiff's Second Corrected Designation of Trial Witnesses is attached as Ex. E.

2.     Defendants' Designation of Trial Witnesses is attached as Ex. F.

## H.     LIST OF EXHIBITS

1.     Plaintiff's Exhibit List is attached as Ex. G.

2.     Defendant's Exhibit List is attached as Ex. H.

## I.     LIST OF ANY PENDING MOTIONS

There are several motions pending before the Court.

Plaintiffs have filed the following pending motion:

1.     Plaintiff's Objections and Motion to Strike Summary Judgment Evidence (DE #111)

Defendants have filed the following pending motions:

1.     Motion to Dismiss for Lack of Jurisdiction by John Noh. (DE #35)

2.     Motion to Dismiss for Lack of Jurisdiction by Mallun Yen (DE #37)

3.     Motion for Summary Judgment (DE #97)

4.     Defendant John Noh's Motion for Hearing re: Motion to Dismiss for Lack of Jurisdiction (DE #118)

5.     Defendant Mallun Yen's Motion for Hearing re: Motion to Dismiss for Lack of Jurisdiction (DE #119)

6.     Motion to Strike Plaintiff's Sealed Corrected Response to Defendants' Motion for Summary Judgment (DE #121)

7.     Motion to Strike Plaintiff's Sealed Response to Motion for Summary Judgment (DE #122)

8.     Objections and Motion to Strike Plaintiff's Evidence Cited in Response to Defendants' Motion for Summary Judgment (DE #123)

9.     Motion for Reconsideration of Magistrate Judge's Order Denying Motion to Compel Production of Documents (DE #152)

10. Motion to Strike Sur-Reply to Defendants' Motion for Summary Judgment (DE #154)

11. Motion to Strike Portions of Joint Pre-Trial Order (DE # 186)

12. Motion to Impanel a Twelve Person Jury (DE# 185)

13. Motion for Entry of a Non-Waiver Order (DE# ____)

14. Motions in Limine (to be filed in accordance with the Court's Scheduling Order)

## J.    PROBABLE LENGTH OF TRIAL

The probable length of trial is 18 hours per side.

## K.    MANAGEMENT CONFERENCE LIMITATIONS

Plaintiff believes that the court's scheduling order provides that documents produced by a party under disclosure requirements or any other method of discovery in this case are presumed to have satisfied the authentication requirement of Fed. R. Evid. 901. *See* Docket Entry No. 6 at 5.

Defendants believe that there are no management conference limitations.

## L.    CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2. Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with and not altered by agreement or otherwise;

3. Each exhibit in the List of Exhibits herein:
   a. Is in existence;
   b. Is numbered; and
   c. Has been disclosed and shown to opposing counsel.

APPROVED AS TO FORM AND SUBSTANCE:


*/s/ Nicholas H. Patton*_____
Attorneys for Plaintiffs


*/s/ Crystal Parker*_____
Attorney for Defendants[3]



This Joint Final Pre-Trial Order is hereby approved this _____ day of _____, 2009.

---

[3] Defendants do not agree with certain portions of this Joint Pretrial Order as set forth in their Motion to Strike Portions of the Pretrial Order. Plaintiff does not agree with certain portions of the this Joint Pretrial Order either but believes that complete agreement on contested issues of law and fact is not required or practical, and that the better approach is to have the Court resolve the issues in the context of pretrial motions.