IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| ERIC M. ALBRITTON | § | |
|---|---|---|
| | § | |
| | § | |
| v. | § | |
| | § | C. A. NO. 6:08-CV-00089 |
| CISCO SYSTEMS, INC., | § | JURY |
| RICK FRENKEL, MALLUN YEN & | § | |
| JOHN NOH | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE

TO THE HONORABLE COURT:

Defendants Cisco Systems, Inc. ("Cisco"), Richard Frenkel ("Frenkel"), Mallun Yen ("Yen")[1] and John Noh ("Noh")[2] (collectively, "Defendants") hereby file this Motion in Limine, and respectfully show the court:

**1. Appropriate standard for a motion in limine.**

Plaintiff seeks to impose an incorrect standard in his Motion. Plaintiff states that if his Motion in Limine is granted, Defendants' evidence is "inadmissible for any purpose" and that if Plaintiff's Motion is denied, Defendants should be "ordered to approach the bench and explain the relevancy of those statements before introducing evidence, testimony, or argument in front of the jury."

However, this is not the standard for a motion in limine, which asks the court to require opposing counsel to approach the bench. *See West v. Perry*, No. 2:07CV200, 2008 WL 5071109, at *3 (E.D. Tex. Nov. 25, 2008) (in granting motions *in limine*, the court noted that "these are only rulings on motions *in limine* and not evidentiary determinations. The parties may approach

---

[1] Subject to her Motion to Dismiss.
[2] Subject to his Motion to Dismiss

the bench if they would like the Court to consider allowing the evidence."); *see also Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) (noting that a trial court's grant or denial of a motion *in limine* is not a ruling that admits or excludes evidence), *superceded by rule on other grounds, Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002); *see generally Collins*, 621 F.2d at 784 ("Motions *in limine* are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial. When a party files numerous motions *in limine*, the trial court may not pay close attention to each one, believing that many of them are purely hypothetical. Thus, a party whose motion *in limine* has been overruled must object when the error he sought to prevent with his motion is about to occur at trial. This will give the trial court an opportunity to reconsider the grounds of the motion in light of the actual instead of hypothetical circumstances at trial.").

With respect to any of the portions of the Motion that are denied, Defendants should be permitted to address the issues freely before the jury. Plaintiff cannot create an affirmative order out of an order <u>denying</u> Plaintiff's Motion as he alleges. Instead, only if the Court grants Plaintiff's Motion in Limine should Defendants be required to approach the bench to address the subject matter before addressing the jury.

2. **Response to Motion in Limine No. 1.**

Plaintiff seeks to exclude evidence concerning Albritton's representations of persons who were convicted of crimes, arguing that it is not probative of any issue. In his deposition, Albritton testified that he was currently defending a person on death row who was convicted of murdering a police officer, and that he had represented accused rapists and accused child molesters. (Exhibit 1 to the Motion at pp. 136-137).

This evidence is certainly relevant to this case and therefore not inadmissible under Rules 401 and 402 of the Federal Rules of Evidence as Plaintiff alleges. Albritton claims that he has suffered mental anguish as a result of the allegedly defamatory articles at issue in this lawsuit. Certainly other sources of mental anguish, such as defending a convicted murderer, are relevant as an alternative source of his mental anguish. *See McCarthy v. Se. Pa. Transp. Auth.*, No. CIV. A. 92-7188, 1993 WL 409858, at *2 (E.D.Pa. Oct. 13, 1993, no pet.) (allowing discovery of evidence of alternative sources of mental anguish).

This is also relevant to Rick's exercise of his First Amendment right through his publication in the complained-of article. Albritton alleged in his deposition that he has represented convicted murders, rapists and child molesters because he believed in their constitutional right to representation, yet he seeks to deprive Rick of his constitutional rights.

Moreover, to the extent the Court permits Albritton to allege that his reputation has been harmed by the articles even though Plaintiff's disclosures alleged that he did not have any such damages,[3] Defendants are entitled to introduce evidence of other possible causes of harm to his reputation, such as the fact that he defends accused murders, rapists, and child molesters. If this does not hold him up to more public ridicule than the complained-of articles, why does Albritton not want the jury to hear this as a part of his professional reputation as a lawyer?

### 3. Response to Motion in Limine No. 2.

Defendants should also be permitted to freely introduce evidence of Albritton's medical records, financial records and expected income. Plaintiff argues that this evidence is not probative of any issue in this case and therefore is inadmissible. However, as set forth fully in Defendants' Motion to Compel and Motion for District Judge to Reconsider Magistrate Judge's

---

[3] Defendants contend that Albritton should not be permitted to reference any harm to his reputation for the reasons stated in its Motion in Limine. (Docket No. 191).

Order Denying Cisco's Motion to Compel Production of Documents ("Motion for Reconsideration) (Docket Nos. 55, 152) and supporting briefing (Docket No. 197, 76), which are incorporated herein by reference, both Plaintiff's medical and financial records are relevant and therefore are admissible at trail.

According to the American Psychological Association's report on Stress in America for 2008[4], the top ten causes of stress include money, work, health problems affecting one's family, relationships, personal health concerns, and job stability. Notably, issues related to one's job (money, economy, work, and job stability) occupy four of the top ten causes of stress. Health and relationship issues (health problems affecting the family, family responsibilities, relationships, personal health concerns) also occupy four of the top ten causes of stress. The Plaintiff's proposed motion in limine seeks to prevent the jury from hearing eight of the ten top causes for mental anguish and thus attempts to deprive Defendants of powerful, probative evidence in their defense.[5]

Texas Courts have historically been hesitant to allow recovery for mental anguish, noting the difficulty of distinguishing "between shades and degrees of emotion," some of which allow for recovery, and others of which do not. *See, e.g., Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995) (holding that the disruption caused by the flooding of the plaintiff's home disrupted the plaintiff's lives temporarily but that "this type of disruption will not support an inference that compensable mental anguish occurred.") The Texas Supreme Court has acknowledged that "direct evidence of the nature, duration and severity of mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine" is relevant to show mental

---

[4] A true and correct copy of the American Psychological Association's report on Stress in America is attached as Exhibit A

[5] Plaintiff refused to answer questions at his deposition on damages but agreed to be re-deposed if Defendants' Motion to Compel is granted. Exhibit D at p. 133, 156.

anguish and "can be readily supplied or procured by the plaintiff." *Id.* For this reason, to recover damages for mental anguish, the plaintiff must show both (1) evidence of compensable mental anguish and (2) evidence to justify the amount awarded. *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

Albritton's medical records are relevant and therefore admissible because they would show whether he met with medical professionals concerning his alleged mental anguish and other factors that could have led to his alleged mental anguish, such as money, health or family issues as discussed above—evidence that is directly relevant to the nature, duration and severity of his mental anguish. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006), *cert. denied* 456 F.3d 704 (2006); 127 S.Ct. 1828 (2007) (holding that all documents concerning emotional distress are relevant when a plaintiff seeks damages for emotional distress)[6]; *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) *cert. denied*, 519 U.S. 1091 (1997) (holding that evidence of mental anguish "may include corroborating testimony or medical or psychological evidence"); *Montemayor v. Ortiz*, 208 S.W.3d 627, 719 (Tex. App.—Corpus Christi 2006, pet. denied) (noting as a reason for holding that there was insufficient evidence of mental anguish that "[r]emarkably, in this case not one plaintiff presented medical or psychological expert testimony as to the emotional harm that was purportedly suffered.") Mental health information is certainly critical when Plaintiff is seeking mental anguish damages. *See Garrett v. Sprint PCS*, 2002 WL 181364 at *2 (D. Kan. 2002, no pet.) (When a plaintiff seeks damages for mental anguish, "[t]he medical and psychological information... are relevant as to both causation and the extent of plaintiff's alleged injuries and damages"); *McCarthy v. Se. Pa. Transp. Auth.*, No. CIV. A. 92-7188, 1993 WL 409858, at *2 (E.D.Pa. Oct. 13, 1993, no pet.)

---

[6] The Plaintiff certainly puts his psychological state at issue saying he suffered extreme trauma. Exhibit B, Albritton Deposition at p. 79.

("the medical records sought by Defendants are relevant and may provide evidence concerning whether marital problems were the source of or contributed to Plaintiff's stress which she attributed to the unlawful conduct of Defendants... When she put her stress at issue in this law suit, however, she abandoned whatever privacy interest she had in keeping these records confidential"). Defendants are entitled to present to the jury evidence that any alleged mental anguish is unrelated to these two articles and to present other possible sources of Plaintiff's alleged mental anguish.

Similarly records of Albritton's personal and business finances are direct evidence of whether his alleged mental anguish disrupted his daily routine because they would show whether Albritton's alleged mental anguish took any toll on his work life and whether his alleged mental anguish was caused by or related to financial distress. According to the American Psychological Association's report on Stress in America for 2008, four of the top ten causes of stress are related to one's finances and job.[7]

Allowing Albritton to shield this evidence not only cripples Defendants' defense, but also omits from the record evidence that must be evaluated on appeal. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997) ("concerned with the subjective nature of mental anguish damages, we have admonished courts to closely scrutinize [mental anguish] awards"; evidence is required because it "ensures that fact-finders are provided with adequate details to assess mental anguish claims"); *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996 ("the law requires appellate courts to conduct a meaningful evidentiary review" of the amount of mental anguish damage awards); *Bentley v. Bunton*, 94 S.W.3d 561, 604-07 (Tex.

---

[7] Exhibit A.

2002) (reversing an award of mental anguish damages in a *per se* defamation case where the evidence did not support the amount of the award).

Because Albritton's medical records, financial records and expected income are relevant, such evidence is admissible, and the motion in limine should be denied. *See* FED. R. EVID. 402. Albritton makes conclusory allegations that this evidence would be prejudicial but offers no support or authority for this argument. The fact that this evidence will likely show that Albritton has not suffered any damages or that his alleged mental anguish was caused by things unrelated to the complained-of articles does not make the evidence prejudicial, and certainly the probative value is not *substantially* outweighed by probative value as required by Rule 403. FED. R. EVID. 403; *see also U.S. v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) ("we have recognized that Rule 403's scope is narrow... application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citations omitted). The Defendants are entitled to introduce to the jury evidence that shows whether Albritton suffered damages and the amount of any damages. Even in a *per se* defamation case (which this is not), the jury may award nominal damages if it finds that there is insufficient proof of damages. *Texas Disposal Systems Landfill, Inc. v. Waste Management Holdings, Inc.*, 219 S.W.3d 563, 584 (Tex. App.—Austin, 2007, pet. denied).

Even if the Court denies Defendants' Motion for Reconsideration and does not require Plaintiff to produce evidence of his damages, Defendants should be permitted to offer evidence of Albritton's <u>failure</u> to produce medical evidence and his <u>failure</u> to produce financial records to demonstrate his lack of damages. Albritton should not be able to hide behind his nebulous damage claims and yet shield from the jury all evidence showing the lack of any real damages.

4.  **Response to Motion in Limine No. 3.**

Defendants should be permitted to offer evidence, testimony and statements regarding Albritton and his attorneys' statements to the press concerning this litigation. Albritton alleges that his damages were caused by the complained-of articles, yet Defendants have pleaded and maintained in this lawsuit that Albritton failed to mitigate his damages, to the extent there are any, and even caused his own damages by seeking attention in the press about the lawsuit and the articles themselves. Albritton and his lawyers attempted to shape the press', readers', and potential jurors' views about the complained-of articles. For instance, Albritton's lawyers stated to the press that the articles accused Albritton of "intentionally conspir[ing] to commit a felonious act,"[8] when the articles themselves do not even contain the words intentional or felony. Albritton's lawyer was certainly acting as Albritton's agent when he was making these statements. *See Eng v. Cooley*, 552 F.3d 1062, 1069-1070 (9th Cir. 2009) (holding that because plaintiff's attorney spoke to the press on plaintiff's behalf in his capacity as the plaintiff's attorney, "[the attorney's] words were [the plaintiff's] words"); *Fram v. Yellow Cab Co. of Pittsburgh*, 380 F. Supp. 1314, 1318 (W.D. Pa. 1974) (in defamation action brought by president of taxicab company, statements to the press by attorney for the defendant, a rival taxicab company, were imputed to the defendant because the attorney spoke on the defendant's behalf).

Moreover, Albritton and his lawyers' name calling is relevant to the context in which attorneys operate, where accusations and name calling commonly occur and attorneys recognize that such accusations are protected speech. Albritton, his lead counsel in the ESN case Peter McAndrews, and his trial counsel in this case Nick Patton certainly recognize that sharp language and name calling are protected speech. Otherwise, Patton would not have called

---

[8] *See* Exhibit C.

Frenkel a "coward" and Cisco a "bully" in an interview with the TEXARKANA GAZETTE.[9] Nor would McAndrews have referred to Frenkel as a "punk" in an email exchange with Albritton and in his deposition.[10] Nor would Albritton have called Frenkel "lots of ugly names" as he admitted in his deposition.[11] This context is certainly relevant to how the readers perceived the speech at issue and damages in this case, where Albritton alleges that Defendants called him names in a blog read by other lawyers.[12]

Albritton states that this evidence may cause confusion or unfairly prejudice him but fails to explain how he would be prejudiced by this evidence. Indeed, the context is an essential and relevant issue that should be considered by the jury. Moreover, Albritton has not even attempted to establish that the danger of unfair prejudice *substantially* outweighs its probative value as would be required to merit exclusion. FED. R. EVID. 403; *see also U.S. v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) ("we have recognized that Rule 403's scope is narrow... application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citations omitted).

5.      **Response to Motion in Limine No. 4.**

Plaintiff also requests that the Court not permit Defendants to refer to the "header or banner across the top of documents" as a "file stamp" even though Defendants acknowledge that this issue is in dispute. Essentially, Plaintiff requests that the Court accept terminology that benefits its case with no authority whatsoever for its argument. Interestingly, the term "file

---

[9] Exhibit D, *Texarkana, Longview lawyers file lawsuit against California blogger, saying he libeled them*, TEXARKANA GAZETTE, June 29, 2008.
[10] Exhibit E, McAndrews Deposition at 60:10-61:11; Exhibit F, Deposition Exhibit 37.
[11] Exhibit B, Albritton Deposition at 59.
[12] Plaintiff's Original Complaint, Docket No. 17 at ¶ 30.

stamp" is not even contained in the Court's Local Rules, and Plaintiff has offered no explanation for why the term cannot be used. It is certainly true that many attorneys and their staff refer to the stamp placed by the court on documents filed with the court a "file stamp," including Albritton's own legal assistant who filed the complaint at issue.[13] Even Courts use the term "file stamp" to refer to the stamp placed by the court clerks on court filings or the docket. *See Eavenson v. Amresco, Inc.*, 213 F.3d 639 at *5, n. 15 (5th Cir. 2000); *In re Martin*, 15 F.3d 180, at *1 (5th Cir. 2000); *U.S. v. Doyle*, 854 F.2d 771, 773 (5th Cir. 1988) (The rules contemplate that filing with a district clerk can only be accomplished by proof of the physical delivery of the document. Normally, this is acknowledged by the affixing of the clerk's file stamp thereon.") Because the terminology "file stamp" is commonly used and because this is a fact in dispute in this case (as Plaintiff acknowledges on p. 4 of the Motion), the Court should deny Plaintiff's Motion. To the extent Plaintiff seeks to show that the file stamp and the date on the Notice of Electronic Filing are two different things, it can do so without requiring Defendants to resort to artificial terminology rather than the terminology commonly used for the stamp.

The case cited by Plaintiff is easily distinguishable. In that case, the Court granted a motion to exclude the use of the word "Blood alley" to refer to a section of rail track because the use of such an inflammatory term was prejudicial. *See Amtrack v. Transwood, Inc.*, Civil Action No. 99-0487, 2001 U.S. Dist. LEXIS 13701 (E.D. La. Aug. 27, 2001). The term "file stamp" certainly has no inherent inflammatory implication. As the *Amtrack* court noted, "evidence should be excluded 'sparingly' and only in those circumstances where the prejudicial effect substantially outweighs the probative value." *Id.* (citing) *United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999); United States v. Leahy, 82 F.3d 624, 637 (5th Cir. 1996).

---

[13] Exhibit G, Mathis Deposition at p. 31, 69.

6. **Response to Motion in Limine No. 5**

Defendants do not object to Motion in Limine No. 5 provided that the Court enter a reciprocal order that (1) Plaintiff's counsel not be permitted to reference Defendants' representation of Oprah or other high profile clients or (2) Plaintiff counsel's experience in the Eastern District of Texas, clerkships for judges in the Eastern District of Texas, or any other reference that they are local attorneys. Evidence regarding their connections with the Eastern District of Texas is not relevant because such evidence does not make the facts at issue more or less probable. *See* Fed. R. Evid. 401, 402. Moreover, such puffery could not be cured from introducing contrary evidence.

7. **Response to Motion in Limine No. 6.**

Defendants should also be permitted to introduce evidence regarding the number of patent cases Albritton has filed in the Eastern District of Texas, making him one of the top filers of such cases (including cases filed on behalf of non-practicing entities), that Albritton lobbied or met with public officials to lobby against patent venue reform legislation, and that he holds himself out as an expert in patent litigation in the Eastern District of Texas.

This issue is clearly relevant to whether Albritton is a limited-purpose public figure, as Plaintiff acknowledges in the Motion. Notwithstanding this, Plaintiff argues that these facts should not be introduced at trial because they are irrelevant. Plaintiff's own argument is contradictory; if it is relevant to the issue of whether Albritton is a public figure, it is relevant. Moreover, Albritton implies that there is a fact issue regarding whether Albritton was indeed a top filer of patent cases, the extent and timing of his lobbying, and whether Albritton holds himself out as an expert in patent litigation. Therefore, these issues should be presented to the jury.

Moreover, whether Albritton lobbied Congress regarding patent reform, is a top filer of patent cases in the Eastern District of Texas, and whether he holds himself out as an expert in patent litigation in the Eastern District of Texas are all relevant to issues other than Albritton's status as a limited-purpose public figure. First, they demonstrate that Albritton voluntarily became part of the public debate that is discussed in the article. There is no doubt that this background information should factor into the jury's consideration of this case. Indeed, Plaintiff has constantly referred throughout this case to his argument that Frenkel or Cisco were using the Patent Troll Tracker to further an agenda with respect to patent reform. The fact that Albritton was a driving force of patent litigation on the opposing side is certainly relevant. Plaintiff cannot argue that Cisco's patent reform efforts are relevant, but Albritton's are not.

Moreover, Albritton alleges that the articles imply that Albritton did something improper with respect to his communications with the clerk's office. Certainly his vast experience with the courts and clerks of the Eastern District of Texas is relevant to this issue.

In a case that implicates the First Amendment such as this one, the nature of the debate is one of the most important aspects. The case must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004), *cert. denied*, 545 U.S. 1105 (2005); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Certainly in cases that involve such important public issues such as the trustworthiness of the Court's clerks and its official records, the context of the debate is essential and therefore should be admitted. Plaintiff's motion should therefore be denied.

Moreover, the context of the debate is relevant to whether the comments were rhetoric, hyperbole or opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (rhetorical

hyperbole is constitutionally protected to provide "assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation"); *See also Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir.1987) ("[c]ontext can be determinative that a statement is opinion and not fact," especially when "the surrounding circumstances of a statement are those of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters"); Robert D. Sack, Sack on Defamation § 2.4.7, p. 2-47 (3d ed. 2005) (Where insults occur in discourse about political issues, courts are particularly likely to dismiss them as nonactionable rhetorical hyperbole or opinion because they will probably be understood that way and to insure protection of vigorous political speech).

The context of the debate is also relevant to Plaintiff's claim for actual malice and punitive damages. Plaintiff has repeatedly referred to an alleged political agenda on Cisco's part as evidence of actual malice and will likely claim the same with respect to punitive damages. The fact that Albritton was lobbying on the same issue in opposition to Cisco is certainly relevant to this issue. For these reasons, the Court should deny the Motion.

### 8. Response to Motion in Limine No. 7.

Albritton argues that Defendants should be required to approach the bench before introducing any evidence concerning Albritton's character. However, if the Court permits Albritton to introduce evidence of Albritton's character and/or reputation, the Court should not prevent the Defendants from introducing opposing evidence. *See* FED. R. EVID. 405, 608.

### 9. Response to Motion in Limine No. 8.

Defendants do not oppose this Motion as long as a reciprocal motion is entered stating that Plaintiff may not refer to Defendants' Motion in Limine.

For these reasons, Defendants request that the Motion in Limine be denied. Defendants do not object to Motion in Limine No. 5 provided that the Court enter a reciprocal order that (1) Plaintiff's counsel not be permitted to reference Defendants' representation of Oprah or other high profile clients or (2) Plaintiff counsel's experience in the Eastern District of Texas, clerkships for judges in the Eastern District of Texas, or any other reference that they are local attorneys.

With respect to Motion in Limine No. 8, Defendants do not oppose the motion so long as the Court grants a reciprocal motion with respect to Defendants' Motion in Limine.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ *Charles L. Babcock*
Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE McWILLIAMS, P.C.

By: /s/ *George L. McWilliams*
*by permission Charles L. Babcock*
George L. McWilliams
Texas Bar No: 13877000
GEORGE L. MCWILLIAMS, P.C.
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
(903) 277-0098
(870) 773-2967—Fax
Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 24th day of February, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
Attorney for Defendant Richard Frenkel

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
Attorney for Plaintiff Eric Albritton

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
Attorney for Plaintiff Eric Albritton

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
Attorney for Plaintiff Eric Albritton

/s/ *Charles L. Babcock*
Charles L. Babcock