# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

ERIC M. ALBRITTON,                        §
                                          §
   Plaintiff,                             §
                                          §
v.                                        §
                                          §        NO.  6:08-CV-00089
(1) CISCO SYSTEMS, INC., (2) RICHARD      §
FRENKEL, (3) MALLUN YEN and               §
(4) JOHN NOH,                             §
                                          §
   Defendants.                            §


**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE***

Dockets.Justia.com

<u>**Response to Motion *in Limine* No. 1**</u>

To support their first motion *in limine*, Defendants make the incredible assertion that they learned that Albritton seeks reputational damages for the first time during the parties' discussions regarding the pre-trial order. The record defies this claim of surprise. First, Albritton's Complaint pleads facts related to Albritton's reputation and specifically alleges harm and resulting damages to Albritton's reputation. *See* Docket Entry No. 17 at ¶¶ 9, 33, 37, 39, 40 & 44. Second, the Complaint specifically alleges that the defamation at issue constitutes libel *per se*. Defendants and their counsel are well aware that the law presumes general damages – including mental anguish and reputational damages in *per se* cases. *Peshak v. Greer*, 13 S.W.3d 421, 427-28 (Tex.App.—Corpus Christ, 2000 no pet.). Third, Albritton specifically testified that he was claiming harm to his reputation and the associated damages that are presumed under the law. *See* Ex. 1 (Albritton Dep. 75:22 – 79:3). Finally, the topic of reputational damages has been the subject of extensive briefing to the Court. Indeed, Defendants filed a motion to compel in which they expressly acknowledge that Albritton is seeking reputational damages. *See* Docket Entry No. 55 at pp. 1, 3, 5 & 6; Docket Entry No. 76 at pp. 2. Albritton's responsive briefing also addressed the issue of reputational damages and the fact that such damages are presumed in *per se* cases. *See* Docket Entry No. 74 at pp. 1, 4, 5, & 8; Docket Entry No. 78 at pp. 3, 5 & 6. Similarly, reputational damages were the subject of the parties' summary judgment briefing. *See* Docket Entry No. 97 at pp. 2 & 10; Docket Entry No. 115 at pp. 13, 21, 23, 43 & 44; Docket Entry No. 125 at p. 6; Docket Entry No. 6, 11, 14 & 15.

Defendants' claim of surprise is disingenuous at best. Their Motion *in limine* No. 1 should be denied in full.

**Response to Motion *in Limine* No. 2**:

It its Motion *in limine* No. 2, Defendants seek the blanket exclusion of the trial testimony of Plaintiff's witnesses Michelle Albritton, John Albritton and Scott Stevens. Defendants first claim that these witnesses should be excluded because they were not identified in Plaintiff's initial disclosures on June 2, 2008. Remarkably, Defendants ignore Rule 26(e)(1) which allows supplementation of disclosures. Plaintiff has not violated any discovery rule in this regard. In fact, the rule allows Plaintiff to supplement his disclosures when he learns that the disclosure is incomplete or incorrect and if the supplementation takes place during the discovery period. Both requirements were met in Plaintiff's supplemental disclosures of these witnesses. In this case, discovery closed on November 24, 2008. *See* Docket Entry No. 95. Plaintiff's supplemental disclosures were served on November 11, 2008. *See* Docket Entry No. 77. After receiving the disclosures which included the names of the witnesses they seek to strike, Defendants never requested the deposition testimony of any of the three witnesses. Defendants cannot claim any prejudice since they did not seek the depositions of these witnesses that were disclosed during discovery.

Defendants also incorrectly characterize the Advisory Committee Notes to Rule 37(c)(1) as an "automatic sanction." Although the 1993 Notes used the term "automatic sanction", arguing to the Court that exclusion of this testimony is mandatory is misleading, at best. The Note Defendants cite states clearly that "[p]aragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)." Rule 26 (e)(1) is the rule discussed above that specifically allows Plaintiff to supplement his disclosures as he did properly in this case.

Because Defendants cannot claim (and do not claim) that the supplementation rule was violated, Rule 37(c)(1) provides no grounds to exclude the testimony of Michelle Albritton, John Albritton and Scott Stevens. Defendants' Motion *in limine* No. 2 should be denied.

**<u>Response to Motion *in Limine* No. 3</u>**

Cisco's motion *in limine* No. 3 seeks to prevent Albritton's counsel from arguing that a particular dollar figure would be an appropriate award of mental anguish, reputational or punitive damages. In support, Defendants cite a case involving a commercial dispute where Microsoft alleged patent infringement, breach of contract and breach of good faith and fair dealing but failed to disclose either the categories of damages it sought or the computation of those damages. *See Veritas Operating Corp. v. Microsoft Corp.*, 2008 U.S. Dist LEXIS 35627 at *22-24 (W.D. Wash. Jan.17, 2008). Of course in this case Albritton has clearly identified the category of damages he seeks. *See supra*, response re: MIL #1. Moreover, unlike damages for mental anguish and harm to reputation, patent damages are susceptible to ready computation in the form of lost profits or a reasonable royalty. Texas law recognizes that the general damages that Albritton seeks are difficult to quantify and not susceptible to ready computation. *See e.g. Peshak v. Greer*, 13 S.W.3d 421, 427 (Tex. App. Corpus Christi 2000, no pet.) ("The amount of general damages is very difficult to determine, and the jury is given wide discretion in its estimation of them."). For that reason, they are presumed in cases of *per se* defamation. "If the statement is slander *per se*, no independent proof of damage to the plaintiff's reputation or of mental anguish is required, as the slander itself gives rise to a presumption of these damages." *Moore v. Waldrop*, 166 S.W.3d 380, (Tex.App—Waco 2005, no pet.) (citing *Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 339 (Tex.App.—Beaumont 2004, no pet.) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374, (Tex. 1984) (op. on reh'g))).

Albritton testified that he is not going to attempt to quantify his damages for the jury. *See* Ex. 1 (Albritton Depo at 76:2 – 78:11). However, that does not preclude his counsel from arguing to the jury in support of a specific damages award. It is entirely proper for Albritton's counsel to suggest and argue for a particular measure of damages at trial, particularly in a case such as this where Texas law recognizes the inherent difficulties that exist in quantifying the damages at issue. Defendants' Motion *in limine* No. 3 should be denied in full.

**Response to Motion *in Limine* No. 4**

Cisco's motion *in limine* number 4 asks the Court for a "limitation of the use of privileged documents."  Albritton is not entirely sure the nature of the relief sought in Cisco's motion.  Is Cisco seeking to preclude Albritton from using documents that Cisco produced in this case that it claims are privileged?  Or is Cisco asking that the Court close the courtroom to the public?  Either way, because the documents are relevant, Cisco has not demonstrated substantial prejudice, and the law does not support excluding the public from the trial, Cisco's motion should be denied.

    A.   *Albritton Is Entitled To Use Cisco's "Privileged" Documents As Evidence At Trial*

The Court should deny any attempt by Cisco to limit Albritton's use at trial of documents that Cisco produced in this case.  Albritton is entitled to introduce that evidence because it is relevant and no rule of evidence precludes its admissibility.

Cisco's motion *in limine* does not argue that the "privileged" documents are not relevant—nor can it.  One of the key issues in this case is whether Cisco violated the applicable standard of care in publishing the false and defamatory statements about Albritton.  If this Court rules that Albritton is a private figure and that the accused posts discuss an issue of private concern, then the Constitution imposes no minimum standard of fault in this case.  *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325-1330 (5th Cir. 1993).  If, however, the Court rules either that Albritton is a limited-purpose public figure or that the accused articles discuss an issue of general public concern, the Constitution requires that Albritton prove at least that Defendants were negligent in publishing the accused articles.  *See id.* (citing *Gertz v. Robert Welch, Inc*. 418 U.S. 323, 344-35).  Cisco has argued that the "actual malice" standard applies, which would heighten Albritton's required showing of fault.  Additionally, Albritton seeks punitive damages in this case, which requires at least a showing of common law malice.  *See Snead*, 3998 F.2d at 1333.  Thus, documents concerning Cisco's state of mind at the time it defamed Albritton are highly relevant to the issues to be decided by the jury.

Relevance evidence is presumed admissible and should only be excluded upon a showing or substantial prejudice. Cisco's motion offers only conclusory attorney argument that Cisco will be "prejudiced," without explaining why Cisco's allegations trump Albritton's right to introduce relevant and highly probative evidence at trial. Cisco's attorney argument does not constitute the type of prejudice required to keep relevant evidence from the jury. *See* Fed. R. Evid. 403.

Cisco suggests that it will be prejudiced by a violation of an agreement between Albritton and Cisco whereby Cisco obtained the right to not publicly disclose documents at trial. Cisco's argument is disingenuous. During discovery, Albritton sought email communications between Cisco employees, Cisco and its outside counsel Baker Botts, and Cisco and other counsel with whom it had communications about the events surrounding the filing of the ESN complaint. Cisco originally withheld those documents under a claim of privilege and only agreed to produce them after Albritton filed a motion with the Court. Cisco produced the documents upon the condition that Albritton withdraw his motion (which may have resulted in public disclosure of those documents), that Albritton agree not to seek to de-designate Cisco documents (including documents that Albritton believes are not covered by the claimed privileges) and that Albritton not argue that Cisco's document production constituted a subject-matter waiver. While Albritton agreed to Cisco's terms for the purpose of discovery and to avoid motion practice before the Court, nothing in the parties' agreement controls the use of the Cisco documents <u>at trial</u>. *See* Exh. 2.

Albritton did not agree, and would not have agreed to limit his use of Cisco documents at trial. Use of Cisco's documents at trial implicates considerations far greater than those associated with production of documents during discovery. *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008). Albritton strongly objects to Cisco hiding behind the parties' <u>discovery</u> agreement in an attempt to limit his use of relevant and probative evidence of Cisco's bad faith <u>at trial</u>. And, even if the Court were to find that the parties' agreement somehow applied to trial—and it doesn't—that agreement cannot bind the Court, which has an

independent duty to protect the public's access to trial. *See Prater v. Commerce Equities Mgmt. Co.*, 2008 U.S. Dist. LEXIS 98795 (S.D. Tex. Dec. 8, 2008) (the fact that an agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that a judicial record should be open to the public.).

### B. Cisco Is Not Entitled To Have The Public Excluded From The Trial

The other possible reading of Cisco's motion *in limine* is that Cisco is asking the Court to close the trial in this case to the public. Cisco's request that its documents be shown only in a closed courtroom should be denied because Cisco's claims of prejudice are overblown, Cisco has failed to identify documents with particularity and therefore its request is fatally overbroad, and because Cisco's documents are not the type of highly-sensitive information that warrants excluding the public from the trial.

Courts are public institutions that serve a public purpose. *See Victoria W. v. Larpenter*, 2001 U.S. Dist. LEXIS 5072 (E.D. La. Apr. 17, 2001). "There is, therefore, a strong presumption that the proceedings and records should be subject to public scrutiny." (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)). "Public access serves important interests, such as to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993). Accordingly, a district court's discretion to seal the record of judicial proceedings is to be exercised "charily." *Id*. at 848. Several circuit courts, including the Fifth Circuit, have recognized the public's broad First Amendment right of access to court proceedings also applies in civil cases. *Larpenter*, 2001 U.S. Dist. LEXIS 5072 (citing *Doe v. Stegall*, 653 F.2d 180 (5th. Cir. 1981).[1] Cisco, as the party seeking to overcome the presumption of access, bears the burden

---

[1] *See also Doe v. Madison School Dist. No*. 321, 147 F.3d 832, 833 n.1 (9th Cir. 1998), vacated on other grounds, 177 F.3d 789 (9th Cir. 1999) (en banc); *Westmoreland v. CBS, Inc*., 752 F.2d 16, 23 (2d Cir. 1984); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984); *In re Continental Ill. Secs. Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983).

of showing that its interest in secrecy outweighs the presumption of an open trial. *See United States v. Patel*, 2008 U.S. Dist. LEXIS 105243 (W.D. La. Dec. 24, 2008).

Cisco's only justification for keeping its documents concealed is that it they are "privileged" and protected by the Protective Order in this case. Cisco's reliance on the Protective Order is misplaced. A blanket protective order cannot be used to resist public disclosure of documents. Instead, Cisco must make a particularized showing as to why each document should be afforded protection from public view. *See San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. Cal. 1999); *Doe v. Exxon Mobil Corp.*, 570 F. Supp.2d 49, 52 (2008) (protective order allowing the parties to file under seal is not determinative of redaction of judicial record). Cisco fails to identify for the Court the documents it believes must be sheltered from public disclosure. Nor does Cisco identify the documents that it asserts are so sensitive to Cisco as to justify sealing public trial proceedings. Instead, Cisco has sought the same blanket-type protection of its documents that is provided in the Protective Order. But, while the scope of the protective order is fine for discovery, there is a heightened showing required for keeping documents sequestered during trial. Cisco has utterly failed to make the latter showing.

Even if the Court were to consider Cisco's assertions of prejudice resulting from public disclosure of its documents, the Court should consider Cisco's claims of privilege cautiously. The discovery agreement between the parties prevented Albritton from challenging Cisco's claims of privilege. Before this Court can order the courtroom closed to the public, it must discern for itself whether Cisco's claims of privilege are valid. Albritton suggests that if the Court were to review Cisco's assertions, it would find more than one document for which Cisco's claim of privilege is unwarranted. For example, Cisco has claimed privilege for a document authored by a Baker Botts paralegal, Jillian Powell, wherein she memorialized her conversation with an Eastern District of Texas Court Clerk about the filing of the ESN complaint. The communication between Powell and the court clerk is not privileged and neither is the document memorializing that conversation, but it has been designated as such by Cisco.

Even as to those documents that may have been properly claimed as privileged communications, Cisco has triggered an implied waiver preventing it from claiming privilege at trial. For example, Cisco designated deposition testimony from Frenkel (testifying as Cisco's corporate representative) in which he states that Cisco's request that Baker Botts (Jillian Powell) call the court clerk is evidence of lack of malice. *See* Exh. 3 (Frenkel Depo. at 71:13 -72:21); *see also* Exh. 4 (Yen Depo. at 231:20-23). This is the same telephone call between Powell and the court clerk memorialized in a document that Cisco claims is privileged. Additionally, Cisco's trial exhibit list includes other documents marked as Cisco privileged that Cisco hopes to introduce at trial to support its argument that Defendants acted without malice when it defamed Albritton. *See* Docket Entry No. 189, Exh. H at 263, 265 – 274. But Cisco cannot use privilege as both a sword and a shield. Having relied on those documents to support its lack of malice defense both in its summary judgment briefing and for intended use at trial, Cisco has triggered an implied waiver or "testimonial waiver" of its asserted privileges, and documents and testimony regarding Cisco's reliance on communications with counsel are no longer protected privileged communications. *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party"); *United States v. Wells*, 600 F.2d 498, 501-502 (5th Cir. 1979); ("We cannot condone a practice that enables a defendant or any witness, after giving the jury his version of a privileged communication, to prevent the cross-examiner from utilizing the communication itself to get the truth."); *Wells v. Liddy*, 37 Fed. Appx. 53, 67 (4th Cir. 2002) (in defamation case, defendant who claimed to have relied on advice provided to him by counsel in making alleged defamatory statements triggered a waiver of both attorney-client and work product privileges).

Assuming *arguendo* that Cisco could demonstrate that its documents are privileged and that Cisco has not triggered an implied waiver by affirmatively relying on those documents,

Cisco's claims of privilege are simply insufficient to close the courtroom to the public. The disclosure concerns Cisco argues warrants closing the courthouse doors could apply to nearly all cases filed in the federal courts. If the Court were to find in Cisco's favor on the meager showing it has made here, the same argument could successfully be made by countless litigants. Such a result would be contrary to the Fifth Circuit's admonishment that district courts' discretion to seal the record of judicial proceedings "is to be exercised charily." *See Macias v. Aaron Rents, Inc*, 288 Fed. Appx. 913, 915-916 (5th Cir. Tex. 2008).

Cisco has presented no "extraordinary" reason to exclude the public from those portions of the trial that implicate Cisco "privileged" communications. *See Prater*, 2008 U.S. Dist. LEXIS 98795, at *30. There is simply nothing special about Cisco's claims of privilege, especially when as here the documents at issue discuss nothing more than a fight for venue in a private litigation that has since been dismissed, refiled, and to which Cisco stipulated to venue in the Eastern District of Texas. To the extent that the documents at issue here discuss legal strategy at all, they related to a legal issue that has long been resolved and the disclosure of which is of no consequence to the currently pending *ESN v. Cisco* litigation. *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008) (Publicity will not threaten the integrity of a proceeding that is no longer active.). In truth, Cisco seeks to shield its internal communication from the public for public relations considerations. But a "business's general interest in keeping its legal proceedings private does not overcome the presumption of openness" in the circumstances presented here. *See Prater*, 2008 U.S. Dist. LEXIS 98795, at *30.

If this Court were inclined to grant Cisco's motion and close all or part of the trial in this case to the public, the Fifth Circuit requires that the Court balance the interests involved while being mindful of the public's right to view the trial. *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d at 894. Cisco's motion does not provide this Court with the facts necessary to undertake the required balancing of interests and consequently invites legal error. *See id.* (*citing In re High Sulfur Content Gasoline Prods. Liab. Litig*., 517 F.3d 220, 230 (5th Cir. La. 2008) and noting that a district court cannot rubber-stamp a recommendation to seal court records); *see*

*also Carnaby v. City of Houston*, 2008 U.S. Dist. LEXIS 80356 (S.D. Tex. Oct. 10, 2008) (denying motion to seal where Defendant failed to offer facts regarding documents to be sealed).

This is not a case where a trade secret is implicated; there are no state secrets that will jeopardize national security if they are released to the public; nor are there minor children who must be protected during trial. This is a run of the mill defamation case. In this case, the Court should follow standard practice.

Granting Cisco's motion would also create serious practical and logistical problems for the Court. Although Cisco's motion appears at first glance to be limited to the documents that it has designated as privileged, such a narrow reading of Cisco's motion is misleading. Cisco claims privilege over all communications between Cisco counsel, Baker Botts, and other lawyers with whom Cisco was communicating in the hours leading up to the publication of the accused articles. Every key witness in this case was involved in the events leading up to the filing of the ESN complaint and Cisco's subsequent decision to ask Frenkel to post false accusations about Albritton. Most of the witnesses in this case will be asked about communications among Cisco lawyers. The importance of those documents, the number of witnesses who will be asked questions about them, and the breadth of Cisco's claims of privilege will make it logistically impossible for the Court to close selected portions of the trial. Instead, the Court is looking at a trial wherein at least a part of every witnesses' testimony will be closed to the public, resulting in a trial that is closed to the public more than it is open.

Moreover, the disruption to Albritton would be prejudicial, in that his attorneys will have to select all privilege documents to be used at one time with each witness—which may or may not fit with the type of cross-examination he envisioned—or opt for the alternative of having his witness examinations disrupted with continuous back and forth with the Court about whether the courtroom needs to be closed to spectators each time Albritton's counsel takes up another line of

questions. The Court, the public, the media[2] and Albritton have legitimate interests in having this trial proceed with full public scrutiny. Those interests are entitled the great protection, absent some compelling justification to alter the general rule that trials are conducted in the full light of day. Cisco has not offered sufficient justification to close the courtroom or to preclude Albritton from using documents produced by Cisco in open Court. Therefore, its Motion *in limine* No. 4 should be denied.

**Response to Motion *in Limine* No. 5:**

Defendants' motion *in limine* No. 5 argues that the October 19th Troll Tracker article should be excluded. Defendants' argument is disingenuous in several respects.

First, there is no October 19th Troll Tracker article. Frenkel posted three separate articles that serve as the basis of Plaintiff's defamation cause of action: one dated October 17, 2007 and two dated October 18, 2007. The second October 18th article is an amended version of the original October 18th article. The amended October 18th article was posted by Frenkel on October 19th. Frenkel did not change the date of the revised article to reflect the date he actually posted it, and that article has at all times shown an October 18, 2007 date. The second October 18th article has been referred to by the parties by many names, including referring to the October 18th article as containing two different versions, referring to both versions collectively as the October 18th article, referring to it as the "amended" or "revised" October 18 article, or referring to it as the article posted by Frenkel on October 19th. To be clear, it is the second version of the October 18th article that defendants seek to exclude.

Defendants' assertion that they "only became aware of Plaintiff's intentions to claim that the October 18 article was defamatory during lengthy discussions regarding the pretrial order in this case" is patently false. Mot. at 6. The article in question is pleaded in Plaintiff's complaint, which refers to the accused articles by date and specifically identifies Frenkel's amended post.

---

[2] This case has already received much media attention and the media will likely seek to cover the entirety of the trial proceedings. Cisco's motion offers the Court no justification for abridging Albritton's right to publicly clear his name or for limiting the public and the media's right of access to the public trial in this case.

*See* Docket Entry No. 17 at ¶ 20 ("Frenkel amended his post to delete the comments concerning the "Banana Republic of East Texas," but did not withdraw his allegation that Albritton engaged in a crime until the blog was taken off line in February 2008 . . . "). Defendants' assertions that the amended October 18th article must be attached to the complaint or be excluded from the case wholly ignores the notice pleading standard that applies in this case.

The second version of the October 18 article was also included in Plaintiff's interrogatory responses. *See* Exh. 5 at 5-6, 8-9, 11-12, 14-15, 17-18, 23, 27, 30. The second version of the October 18th article was discussed in the summary judgment briefing in this case. During discovery, Cisco deposed Albritton and asked questions about the second version of the October 18, 2007 post. *See* Exh. 1 (Albritton Depo. at 72:18-74:6). Likewise, in deposition Albritton's counsel asked Frenkel several questions about the second version of the October 18th article. *See* Exh. 3 (Frenkel Depo. at 106:6-112:19). There is nothing late, surprising or new about the second version of the October 18th article that Defendants seek to exclude. Defendants' Motion *in limine* No. 5 should be denied.

**Response to Defendants' Motion *in Limine* No. 6**:

Defendants' Motion *in limine* No. 6 seeks to strike Plaintiff's allegations that the accused articles are defamatory because they omit material facts and misleadingly juxtapose other facts. Defendants argue that Albritton should be precluded from making this argument to the jury because (1) he did not plead a defamatory impression theory, (2) the Court entered an Order precluding this theory, and (3) Albritton's interrogatory responses omitted facts regarding this theory of liability. Defendants are wrong on all fronts and the motion should be denied.

Albritton's complaint is more than sufficient to allow evidence of the false and defamatory impression of the accused articles. Federal Rule of Civil Procedure 8 requires only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Here, Albritton pleaded defamation. Defamation by omission or juxtaposition is not a separate and distinct cause of action, and it need not be separately pleaded. Instead, it is subsumed in the cause of action for defamation. *See Turner v.*

*KTRK TV, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) ("a plaintiff can bring <u>a claim for defamation</u> when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.") (emphasis added). Cisco would have the Court require more than notice pleading in this case, and insist that Albritton set forth every possible factual scenario under which Cisco's statements may be found defamatory. There is no basis in the law for requiring a heightened pleading standard in a defamation case, and Cisco has cited none.

Cisco also ignores the requirement that "[p]leadings must be construed so as to do justice." *See* Fed. R. Civ. P. 8 (e). In this case, justice requires that evidence of the false defamatory impression created by the accused posts be permitted because that evidence has been the subject of motion practice, summary judgment briefing, deposition testimony and interrogatory responses.

Defendants next seek to exclude evidence that the accused articles create a false and defamatory impression by claiming that Albritton refused to provide discovery, resulting in an order precluding Albritton from raising the issue at trial. Defendants' motion misstates the facts. First, Albritton did not refuse to provide discovery. Defendants filed a motion to compel before meeting and conferring with Albritton, not once, but twice. *See* Docket Entry 116 at 2-3. Both times Albritton agreed to provide amended interrogatory responses, but Defendants filed their motion anyway. *Id.* Then, before Albritton had an opportunity to respond to Defendants' first motion to compel, Defendants amended their motion to drop their demand for amended interrogatory responses, asking instead that the Court limit Albritton's cause of action to the information provided in his complaint. *See* Docket Entry No. 127 at 2 (arguing that Plaintiff should be limited to statements made in his notice-pleading complaint). Although the court granted Cisco's motion to compel, Judge Bush <u>did not grant</u> Cisco the preclusive relief it sought. Rather, Judge Bush agreed with Albritton that such a harsh sanction-type order was not warranted. Judge Bush ordered Albritton to provide amended responses (which would not have been required if Cisco had prevailed on limiting Albritton's case) and then gave Cisco relief in

the form of an opportunity to produce additional evidence.  *See* Docket Entry No. 104.  Albritton served amended responses and Cisco produced additional documents.  End of story.  Cisco's attempt to portray Judge Bush's order as precluding evidence for failure to amend interrogatory responses—when Judge Bush actually ordered Albritton's responses be amended—is a distortion of the Court's Order.  That Cisco has misread Judge Bush's order is evidenced by its filing of this motion *in limine*.  Judge Bush expressly ruled that no additional briefing on this issue would be permitted.  *See* Docket Entry No. 104.  Undeterred, Cisco's motion *in limine* asks for the same relief that it sought from Judge Bush, and he denied.  Judge Bush's prior Order and his ruling that no additional argument on this issue will be permitted should be respected as law of the case.

Finally, Cisco argues that Albritton should be precluded from offering evidence on this issue because his amended interrogatory responses "never alleged facts that were allegedly omitted or anything that was misleading juxtaposed."  Mot. at 8.  The baselessness of Cisco's argument can easily be shown by reviewing Albritton's interrogatory responses.  Albritton took Judge Bush's admonishment that he fully respond to Cisco's interrogatories to heart, and he provided a detailed thirty-page response to Cisco's interrogatories.  Although Cisco's interrogatories can be literally read to require only that Albritton identify Cisco's affirmative false and defamatory statements, Albritton also included facts that were omitted and misleading.  The following are some examples from Albritton's interrogatory responses:

- The October 18, 2007 post is titled "ESN convinces EDTX Court Clerk to Alter Documents To Try to Manufacture Subject Matter Jurisdiction Where None Existed.". . . "That statement [] gives the defamatory impression that Albritton engaged in criminal, unethical or improper conduct in his business and profession to create subject matter jurisdiction where none existed to benefit his client at Cisco's expense."  *See* Exh. 5 (Albritton's Rog Responses) at 3-4

- The use of the words "conspiracy," "tons of proof" and allegations that "witnesses" and "subpoenas" would be necessary give the false and defamatory impression of criminal activity. *See* Exh. 5 ( Albritton's Rog Responses) at 4.

- "The October 18th post stated that 'ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. That statement is false. That statement is defamatory of Albritton because it insinuates . . . that Albritton knew that the ESN complaint had been filed on October 15 (which is factually incorrect) but nonetheless engaged in criminal, unethical or improper conduct in his business and profession to fraudulently create subject matter jurisdiction . . ." *See* Exh. 5 (Albritton's Rog Responses) at 4.

- "The October 18, 2007 post also stated that 'You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction.' That statement is false. That statement [] gives the defamatory impression that Albritton engaged in criminal, unethical or improper conduct in his business and profession to . . . perpetrate a fraud on the unsuspecting clerk's office to achieve his nefarious purpose." *See* Exh. 5 ( Albritton's Rog Responses) at 5.

- "The revised October 18, 2007 post also added the following statement: 'Even if this was a 'mistake,' which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing this case, the proper course of action should be a motion to correct the docket.' The statement creates the defamatory impression that the correction of the docket in the ESN case could not have been as a result of an error or an honest mistake, but was as previously stated, part of a conspiracy, unethical conduct, or improper conduct undertaken by Albritton. Frenkel omitted from this post the fact that Albritton and ESN claimed that the dated on the docket entry was the result of an error in the court's software. Had Frenkel included that information, the revised Oct. 18th post would have portrayed a far different meaning to the reader than Frenkel's continuing

assertions of criminal and unethical conduct." *See* Exh. 5 (Albritton's Rog Responses) at 6.

- "The revised October 18, 2007 post also stated that a motion to correct the docket should have been filed. . . . The revised post omitted the fact that no such motion is required under the local rules. Instead, Frenkel's inclusion of this statement further reinforced his accusations that Albritton engaged in a course of conduct that was criminal, unethical, improper, corrupt, and in violation of the local rules that he is required to follow as an officer of the court." *See* Exh. 5 ( Albritton's Rog Responses) at 6.

The examples above are from Albritton's response to Cisco's Interrogatory No. 1. There are twenty-one more pages of responses that identify misleading and omitted facts contained in the accused posts. Cisco's insistence that Albritton failed to provide adequate interrogatory responses lacks credibility. Albritton sufficiently pleaded defamation and included defamation via a false and defamatory impression in his interrogatory responses. Judge Bush's Order already denied Cisco the relief it seeks in this motion. Thus, Cisco's Motion *in limine* No. 6 should be denied.

## Response to Motion *in Limine* No. 7

Defendants' Motion *in limine* No. 7 seeks to exclude "other lawsuits against Cisco or allegations of other wrongs or misconduct." Because Defendants' request is overly broad and seeks to exclude conduct that is relevant, Defendants' request should be denied.

Plaintiff has pleaded for punitive damages in this case and anticipates that such will be submitted to the jury. One factor to be considered in the decision to assess punitive damages or not is the extent to which Defendants have engaged in this type of conduct before. The Supreme Court has stated that "[o]ur holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance." *BMW of N. America v. Gore*, 517 U.S. 559 at 577 (1996). Plaintiff intends to show that Defendants have engaged in acts of misconduct that are relevant to the Plaintiff's claims. "Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while

17

knowing or suspecting that it was unlawful would provide **relevant** support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Id*. at 576-577 (citing *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, at 462, n. 28 (1993)).

Defendant Cisco has been sued in the past and some of these suits are pending. There is an unmistakable theme in these lawsuits. They all deal with specific conduct committed by Cisco and its agents in an attempt to defame individuals and certain entities that Cisco deems as adverse to its own interests. In the present case, Plaintiff filed a patent case against Cisco and then the defamation began. Cisco and its agents have utilized this model against perceived adversaries other than Plaintiff. This common plan shows that Cisco has repeatedly engaged in similar, prohibited conduct. Because of Cisco's repeated misconduct, these acts are precisely the type of behavior the Supreme Court described in *Gore* as being relevant support for Plaintiff's claim for punitive damages. Any prejudice to Defendants can be cured with a limiting instruction directing the jury to consider facts demonstrating Cisco's pattern of conduct for the purpose of assessing punitive damages only. Thus, Defendants' Motion *in limine* No. 7 should be denied.

**<u>Response to Motion *in Limine* No. 8</u>**

In Motion *in limine* No. 8, Defendants seek to limit Plaintiff's expert, Dr. Charles Silver, to testify in rebuttal to Defendant's expert. Plaintiff does not plan on calling Dr. Silver in the presentation of his case-in-chief. However, Plaintiff properly disclosed Dr. Silver as a rebuttal expert in this case, after Defendants disclosed Charles Herring as its expert to be used in trial. Because Plaintiff properly disclosed Dr. Silver as a rebuttal witness, Dr. Silver should be allowed to testify in Plaintiff's rebuttal, should Plaintiff choose to call him as a rebuttal witness. Although Plaintiff expects to limit Dr. Silver's testimony to the subjects discussed in his report, the extent of Dr. Silver's testimony should not be limited at this time because it will depend on the evidence offered at trial by the Defendants. Defendants may offer evidence in its case that may be within Mr. Herring's original report, or they may attempt to offer other evidence that was not disclosed in Mr. Herring's report. To the extent this occurs, Plaintiff's expert should be

allowed to testify to those matters. Defendants' Motion *in limine* No. 8 should be denied at this time.

## Response to Motion *in Limine* No. 9

In support of its ninth motion *in limine*, Defendants argue the Constitutional value of anonymous speech. Albritton does not contest the notion that anonymous speech enjoys certain protections under the Constitution. But Cisco's recitation of First Amendment law is immaterial to the admissibility question before the Court. The question for the Court is whether in this case, on these facts, the fact that Frenkel posted the accused statements anonymously is admissible. Defendants contend that the fact is both irrelevant and prejudicial. They are wrong with regard to the relevance question and fail to raise a proper Rule 403 challenge.[3]

The fact that the accused statements were anonymously posted is relevant to a number of issues in dispute. For example, the fact is relevant to Frenkel's credibility. As the Court will recall, the Troll Tracker claimed to be just a lawyer interested in patent law, not publicity. In accessing Frenkel's credibility as a witness, the jury is entitled to consider his lack of candor and the efforts he took to mislead his readers into believing that he was not associated with the *ESN v. Cisco* case. Similarly, the fact is relevant to the actual malice standard that Defendants contend applies to the case.[4] The jury is entitled to consider the circumstances surrounding Frenkel's publication and draw an inference that Frenkel acted with reckless disregard for the truth of his anonymous postings because he believed they would never be tied back to him. Introduction of Frenkel's anonymity is, in any event, unavoidable given the number of documents and the amount of testimony referencing the fact that the Troll Tracker posted anonymously. Moreover, the jury is entitled to hear the true facts – including the fact that Frenkel anonymously posted the accused statements. Defendants' motion *in limine* does not present a serious argument to the

---

[3]     The question is not whether challenged evidence is prejudicial, but whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403.

[4]     It is also relevant to the common law malice standard that actually applies to the issue of exemplary damages.

contrary. Defendants' Motion *in limine* No. 9 should be denied in full.

**Response to Motion *in Limine* No. 10.**

Defendants' Motion *in limine* No. 10 asks the Court to preclude evidence and argument concerning the fact that Defendants have prevented Albritton from obtaining documents and testimony in this case under claims of privilege. Defendants' motion is based on Federal Rule of Evidence 104 (the existence of a privilege is a preliminary question for the Court.) Obviously, Albritton agrees with Defendants that the Court is entrusted with making a preliminary determination of privilege. It doesn't necessarily follow, however, that the Court should grant Cisco's motion *in limine* granting blanket protection concerning all claims of privilege for all purposes at trial.

During trial, the Court will be called upon to make rulings regarding the validity of Cisco's claims of privilege, and whether Cisco has triggered an implied waiver or testimonial waiver of privilege by affirmatively offering privileged communications to defend itself in this lawsuit. Albritton contends that Cisco has already waived privilege by affirmatively asserting that Frenkel acted in good faith reliance on the advice of counsel. *See* Plaintiff's Response to Motion *in limine* No. 4 above. The validity of Cisco's claims of privilege and the scope of Cisco's waiver are determinations that must be made by the Court on a case by case basis at trial.

Additionally, to the extent that any witness for or on behalf of Cisco takes the stand and offers testimony that Defendants prevented Albritton from obtaining during discovery, cross-examination on Defendants' refusal to produce that evidence to Albritton should be permitted. Cross-examination regarding a prior claim of privilege is relevant to the veracity of the witness, the motives behind the witness's testimony at trial, and would be necessary to cure any prejudice to Albritton resulting from Defendants' refusal to produce the evidence during discovery.

Therefore, Albritton proposes that rather than granting Cisco's Motion *in limine* No. 10 which provides a blanket protection for all claims of privilege, the better approach is to preclude evidence and argument concerning Cisco's assertions of privilege for the purposes of opening statement. Thereafter, Plaintiff's counsel can approach the bench and take up issues regarding

Cisco's claims of privilege, waivers, and affirmative use of evidence not disclosed to Albritton as it becomes necessary.

**Response to Defendants' Motion *in Limine* No. 11**

Defendants move to prohibit reference to "hearsay affidavits." Plaintiff does not intend to offer affidavits in contravention of the hearsay rule but reserves the right to offer affidavits for non hearsay purposes or for purposes falling under the exception to the hearsay rule.

**Response to Defendants' Motion *in Limine* No. 12**

Plaintiff opposes Defendants' motion to exclude references to other instances of internet harassment. Such information is probative and relevant in order to demonstrate that the action of posting words on the internet has implications that reach beyond the site they are written on. In this case, Defendants have argued that the accused posts were not widely read, and have argued that Albritton's reputation has not been harmed. Plaintiff should be allowed to make references, by way of example, to the reach that statements on the internet have, and the impact that internet postings may have on individuals.

FED. R. CIV. P. 403 requires that the probative value of the evidence must be, "***substantially*** outweighed by the danger of ***unfair*** prejudice." (emphasis added). "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative values, which permits exclusion of relevant matter under Rule 403." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). Defendants have not demonstrated that the probative value of referencing the impact of words published on the internet is substantially outweighed by the danger of unfair prejudice. In fact, Defendants have cited no legal authority at all in support of their position.

**Response to Defendant's Motion *in Limine* No. 13**

Defendants seek to exclude, "whether or not there was any investigation of the claims made the basis of this libel suit by an insurance adjuster, agent or, similar term or whether or not Defendants are or are not covered by insurance." FED. R. EVID. 411 precludes references to liability insurance, "upon the issue whether the person acted negligently or otherwise

wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

Plaintiff does not seek, in contravention of Rule 411, to offer evidence of insurance, "upon the issue whether the person acted negligently or otherwise wrongfully;" however, Plaintiff reserves the right to offer evidence of insurance for any permissible purpose including, but not limited to those listed in Rule 411.

**Response to Defendant's Motion _in Limine_ No. 14**

Defendant moves that no mention of Motions _in limine_ or the resulting rulings be made. Plaintiffs do not object to said motion and request that the same ruling be in place regarding both Plaintiff's and Defendants' Motions _in limine_.

Respectfully submitted,

Nicholas H. Patton
Texas Bar No.: 15631000
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard – P.O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080          (903) 792-8233 (fax)
_nickpatton@texarkanalaw.com_

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 24th day of February, 2009.

_____
Nicholas H. Patton