IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| ERIC M. ALBRITTON, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 6:08cv00089 |
| | § | JURY |
| CISCO SYSTEMS, INC. and | § | |
| RICHARD FRENKEL | § | |
| | § | |
| Defendants | § | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE

5445553v.1

TO THE HONORABLE COURT:

Defendants Cisco Systems, Inc. ("Cisco"), Richard Frenkel ("Frenkel") (collectively, "Defendants") hereby file this Reply to Plaintiff's Response to Defendants' Motion in Limine, (the "Motion") and respectfully show the Court:

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 1: EVIDENCE OF DAMAGES NOT DISCLOSED UNDER RULE 26(a)

Albritton attempts to alter the standard for refusal to comply with discovery because it cannot meet the standard set forth in the rules. Rule 37(c) of the FED. R. CIV. P. does not state that parties are limited to claims that might surprise the other side. Instead, the rule provides that information that is withheld from discovery may not be used at trial "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(C). Albritton has not shown that his refusal to provide discovery on his recently alleged reputational harm is either substantially justified or harmless.

Defendants have pointed out that Albritton's disclosures do not allege reputational harm on several occasions, and Albritton never amended them. (*See* Exhibit 1 to the Response at 75:11-21; Docket No. 76 at p. 1). Instead, Plaintiff continued to instruct Defendants that he was seeking "**only** an appropriate award of damages for mental anguish and punitive damages" (Disclosures at Exhibit A to the Motion) and continued to intentionally avoid discovery regarding his reputation. Plaintiff has refused to produce a single document relating to reputational damages and refused to testify regarding these damages. Nor did Albritton testify that he was claiming reputational damages as alleged in the Response. In response to Defendants' reading of his damage disclosures, which did not include reputational damages, he stated as follows:

Q: Is that the damages you're seeking in this case?

A: Yes, sir.

(Exhibit 1 to the Response at 75:19-21.) He further testified:

Q: So you are going to claim reputational damages?

A: Well, Mr. Babcock, you're a lot smarter than me about First Amendment law. I don't—I don't know exactly what you mean. I'm not claiming lost wages or money damages, economic damages, as a result of lost business. But has my reputation being harmed—

Q: Yes.

A: --I believe that it has. Can I—can I quantify that monetarily? No, I cannot. And I don't intent to tell the jury that I should be paid "X" dollars because my—my reputation has been diminished by "X" dollars.

(Exhibit 1 to the Response at 76:19-77:5.) When asked again, he still refused to testify regarding whether he was seeking reputational damages:

Q: Is that all you're seeking: mental anguish damages and punitive damages?

A: All I can tell you is I'm not seeking economic damages...

Q: Will you rule out presumed reputational damages or are you seeking that?

A: I don't know what a presumed—I don't know what the meaning of that word is or that phrase "reputational damages."

(Exhibit 1 to the Response at 77:19-23; 78:6-10).

Plaintiff has failed to produce any legal authority to support his argument that he may now claim reputational damages. As set forth in the Motion, Plaintiff foreclosed his right to claim reputational harm by failing to disclose it and by refusing discovery concerning reputational harm. *See* FED. R. CIV. P. 37(c)(1), 26(a), (e), 16(f); *Edmonds v. Beneficial Mississippi, Inc.*, 212 Fed. Appx. 334, 338 (5th Cir. 2007) (affirming trial court's order excluding evidence that plaintiff failed to disclose to defendant); *24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F. Supp. 2d 305, 317-18 (S.D.N.Y. 2008) (precluding evidence

5445553v.1

on plaintiff's damages theory under Rule 37(c) because plaintiff failed to disclose existence of such damages or evidence of such damages) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (affirming exclusion of lost profits theory of damages that was first introduced in a proposed pre-trial order). Therefore, Motion No. 1 should be granted.

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 2: LATE DISCLOSURE OF WITNESSES

Plaintiff claims that he should be permitted to use Michelle Albritton, John Albritton and Scott Stevens at trial pursuant to Rule 26(e)(1) because he disclosed them at the last minute. Rule 26(e)(1) requires that the disclosures be made "in a timely manner." However, Plaintiff makes no explanation for why these witnesses were not disclosed in accordance with the Federal Rules of Civil Procedure. Plaintiff claimed mental anguish in his initial disclosures and makes no explanation why these witnesses were not disclosed. Disclosing such witnesses just days before the discovery period closed and more than eight months after the case was first filed certainly does not comply with the Rules. Defendants could not depose these witnesses because, as Plaintiff is well aware, the parties were rushing to complete depositions noticed by Plaintiff at the last minute and were faced with the motions deadline just one day later.

Because Plaintiff failed to comply with his disclosure requirements, the Court should not permit Plaintiff to use these witnesses at trial. Indeed, exclusion is the proper remedy for failure to comply with Rule 26(e)(2). *See* Advisory Committee Notes to Rule 27(c)(1). This certainly applies here where Plaintiff has not made a "substantial justification" (nor any attempt at a justification) for failing to disclose the witnesses until the last minute. *See* FED. R. CIV. P. 37(c). Therefore, Motion No. 2 should be granted.

PAGE 4 OF 18
5445553v.1

# REPLY TO RESPONSE TO MOTION IN LIMINE NO. 3: COMPUTATION OF DAMAGES

Defendants do not dispute that damages such as mental anguish are difficult to quantify. Indeed this is why Rule 26(a)(1)(A)(iii) is so important in this case, since it requires parties to provide "a computation of each category of damages claimed by the disclosing party—who must also make available… the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of the injuries suffered…" In this case, Plaintiff has <u>never provided any range or basis for computing his damages</u>. Instead, he specifically testified that he would <u>not</u> ask for a specific amount of damages:

> A: And I don't intent to tell the jury that I should be paid "X" dollars because of my—my reputation has been diminished by "X" dollars. **I'm not going to quantify that at all**.

(Exhibit 1 to the Response at 77:3-6.) (emphasis added). Instead, he said that "a jury ought to be able to award, you know, the damages it believes are appropriate…" (Exhibit 1 to the Response at p. 79.) Even to this day, Plaintiff has not provided a computation nor provided discovery regarding his computation.

Plaintiff should not be permitted to claim throughout discovery that he will not ask for a specific amount from the jury and avoid discovery regarding that computation, then surprise Defendants at trial by arguing a range or method of computing damages to the jury. FED. R. EVID. 37(c)(1). This is the exact trial-by-ambush theory that the rules are intended to prevent. *See* FED. R. EVID. 37(c)(1); *see also Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*, No. CV 00-1801, 2002 WL 1489543, *6 (N.D. Tex. July 10, 2002) (granting a motion in limine for failure to provide damages computation in disclosures even where amount of damages was disclosed); *Francois v. Colonial Freight Systems, Inc.*, 2007 WL 4564866 (S.D. Miss. 2007)

(excluding evidence of medical records and bills in support of damages for failure to disclose); *Estate of Gonzales v. Hickman*, 2007 WL 3237635 (C.D. Cal. 2007) (granting a motion in limine excluding evidence of damages where, even if the damage claim was clear from the pleading, "plaintiffs did not disclose a computation of these damages as required by Rule 26(a)(1)(C)"); *Austrian Airlines Oesterreichische Lufverkehrs AG v. UT Finance Corp.*, No. Civ. 04-3854 RCC (AJP), 2005 WL 977850, *2 (S.D.N.Y. Apr.28, 2005) ("[E]ven if plaintiff could not calculate its ... damages at the time of its initial disclosure ..., there is no reason that it did not disclose its [ ] damage theory). For these reasons, Motion No. 3 should be granted.

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 4: LIMITATION OF USE OF PRIVILEGED DOCUMENTS

Amazingly, Plaintiff argues that the Protective Order entered in this case and the non-waiver agreement between the parties ceases to bind him during trial. Throughout this litigation, the parties have agreed to strict limits on the use of materials protected by the attorney-client privilege and the work product doctrine (*see* Exhibit 2 to the Response), and further agreed that the production of such privileged materials did not waive the privilege as to those materials or as to the subject matter discussed in those materials. Based on this understanding, Defendants agreed to produce privileged documents in discovery. Now, Plaintiff contends that the use of Defendants' privileged documents in open court or in any public document operates as a waiver of the privilege. In effect, Plaintiff hopes that the Court will allow him to ignore the protective order and the non-waiver agreement. The Court should not allow him to do so.

Defendants do not seek to preclude Plaintiff from using at trial materials produced in discovery. Rather, Defendants ask the Court to order that the use of privileged materials at trial will not result in any waiver of the privilege attaching to such materials or of the subject matter covered therein. The Court may do so through a non-waiver order pursuant to Rule 502(d) of the

Federal Rules of Evidence (which would be binding on third parties), or through closing the courtroom during any testimony about the contents of privileged materials.

Contrary to Plaintiff's assertions, the relief Defendants seek is not extraordinary. In fact, Rule 502(d) was amended in 2008 to provide a solution for this very problem. Rule 502 allows a court to order that "the privilege or protection is not waived by disclosure connected with the litigation pending before the court." FED. R. EVID. 502(d). Defendants have requested that the Court enter a non-waiver order in this case. (Docket Entry No. 186.) Through the entry of a non-waiver order that is binding on the parties and third parties, the privileges attaching to materials used at trial will be maintained. FED. R. EVID. 502(d).

Nor is this a matter of use of the documents as "a sword and a shield" as alleged by Plaintiff. Defendants have not disputed that Plaintiff may use the documents at trial; it only seeks to protect the privilege. Moreover, Plaintiff's argument is disingenuous because Defendants have not sought to use only the documents that support their case. Instead, Defendants produced under the agreements the privileged documents that relate to this lawsuit. Indeed, almost every document that Plaintiff has argued supports his actual malice claim is a privileged document. (*See* Docket No. 115 at pp. 30-41).

This Court has recognized the importance of protecting privilege, noting that the public has an interest in preventing the public disclosure of privileged information. *See Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-CV-131, 2003 WL 25778434, at *2 (E.D. Tex. June 6, 2003) (holding that party's interest in nondisclosure of privileged material outweighed public's right to access, and ordering that court record containing privileged material be sealed) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) ("The privilege is intended to encourage full

and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.")).

Defendants are not asking that the entire trial be closed to the public, as Plaintiff seems to believe. Defendants simply ask the Court to order that if either party plans to use privileged material during trial, the party must provide prior notice so that the Court can evaluate any privilege claim and, if necessary, clear the courtroom during testimony about the privileged material as courts routinely do to protect trade secrets. *See, e.g., In re Iowa Freedom of Information Council*, 724 F.2d 658, 661, 664 (8th Cir. 1983) (holding that trial court did not abuse discretion by closing courtroom during testimony about trade secrets because "substantial damage to P&G's property rights in these secrets would have occurred had the hearing not been closed"); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("Potential damage from release of trade secrets is a legitimate basis for sealing documents and restricting public access during trial."); *Uniroyal Goodrich Tire Co. v. Hudson*, 873 F. Supp. 1037, 1040 (E.D. Mich. 1994) (granting plaintiff's request to close the courtroom during a trade secret misappropriation trial), *aff'd*, 97 F.3d 1452 (6th Cir. 1996); *Standard & Poor's Corp., Inc. v. Commodity Exch., Inc.*, 541 F. Supp. 1273, 1278 (S.D.N.Y. 1982) ("To have refused to close the proceedings during the testimony concerning the trade secrets would have ... put S&P to the Hobson's choice of not suing Comex ... or suing and losing forever all the proprietary value ..."); *Sperry Rand Corp. v. Rothlein*, 241 F. Supp. 549, 566 (D. Conn. 1964) (stating that the courtroom was closed so as "not to disclose to the general public the trade secrets concerning which testimony was given in the course of the trial").

Nor has Plaintiff shown any public interest that should override the privilege. By granting Defendants' Motion *in Limine* No. 4, the Court can enforce the parties' agreements and

protect and maintain the strong interest in the confidentiality of privileged information of not only the parties, but also "of the general public collectively." *See Motorola, Inc.*, 2003 WL 25778434, at *2. Accordingly, Motion No. 4 should be granted.

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 5:
## CLAIMS FOR DEFAMATION WITH RESPECT TO THE OCTOBER 19 ARTICLE

Plaintiff argues that "there was no October 19 Troll Tracker article" yet admits that there are two versions of the October 18 article, one of which was posted on October 19. Plaintiff also misleadingly claims that the parties have discussed the October 19 article throughout discovery, and thus it is no surprise that Plaintiff is claiming it is defamatory. In truth, the October 19 Article was never plead and was discussed because the Defendants alleged that the article was a mitigation of damages. Nor do Plaintiff's interrogatory responses support Plaintiff's argument, as they were not served until January 22, after the discovery cut-off and the deadline for motions requiring a hearing. The Court should grant Motion No. 5 for the reasons stated in the Motion.

## REPLY TO RESPONSE MOTION IN LIMINE NO. 6:
## REFERENCE TO DEFAMATION BY OMISSION OR JUXTAPOSITION

Plaintiff argues that he should be permitted to claim a very specific theory of liability—defamatory impression by omitting material facts or juxtaposing facts in a misleading way—even though Plaintiff never pleaded nor alleged this theory until January 22, 2009, after the discovery period and motions deadline. Albritton alleges that his pleading defect is cured because *Turner* held that this theory did not need to be plead. However, in *Turner*, the Court specifically stated that Turner had pleaded this theory "as a separate theory" by stating that "the gist of the broadcast is substantially false and defamatory." *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 113 (Tex. 2000). Therefore, *Turner* did not hold that omission or juxtaposition did not have to be pleaded.

5445553v.1

Albritton also argues that his late discovery on this issue is cured because <u>Defendants</u> were thereafter permitted to provide additional documents, but this does not cure the defect of Defendants being deprived of <u>any</u> discovery regarding this theory and the opportunity to argue this theory in motions.[1] Plaintiff failed to allege defamatory impression by omitting material facts or juxtaposing facts in a misleading way until <u>after</u> the discovery period ended and is therefore precluded from relying on that theory at trial. FED. R. CIV. PRO. 37(c)(1); 26(e).

Moreover, the January 22, 2008 interrogatory responses do not state any claims that qualify for defamatory impression by omitting material facts or juxtaposing facts in a misleading way under Texas law. The Fifth Circuit has held that when the "gist" of the article is true and the "broadcast as a whole did not misrepresent the story," even though the "inclusion of more facts may have resulted in a more balanced broadcast," the story does not qualify defamatory by omitting material facts or juxtaposing facts in a misleading way. *Green v. CBS, Inc.*, 286 F.3d 281 (5th Cir. 2002) ("Given that CBS accurately reported facts, albeit not all of the facts, whether or not the story painted [the plaintiff] in an attractive light is irrelevant.") The bullet points set forth in Plaintiff's Response and in the Interrogatory responses do no more than argue Plaintiff's interpretations of the statements in the case; they do not set forth an actionable omission of material facts or juxtaposition of facts in a misleading way. *See id.* In *Turner*, the Court described how a plaintiff may show defamation by omitting material facts and juxtaposing facts in a misleading way. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 118 (Tex. 2000). In that case, the Court held the broadcaster had omitted a material fact, for instance, when it claimed that "Despite the signs of something fishy, Sylvester Turner began the legal effort to get millions

---

[1] Plaintiff further argues that Defendants are not even entitled to raise this issue in their Motion because of Magistrate Bush's order, yet Magistrate Judge Bush did not rule that Plaintiff was permitted to raise new theories of liability in his late discovery responses.

in insurance money released and get a mutual friend, Dwight Thomas, appointed as administrator over the estate," suggesting over that Turner abused his position by handpicking his friend when in fact Thomas was named in the will as executor. *Id.* Plaintiff's interrogatories do not set forth any omission or juxtapositions that qualify under this standard.

### REPLY TO RESPONSE TO MOTION IN LIMINE NO. 7: OTHER LAWSUITS AGAINST CISCO OR ALLEGATIONS OF OTHER WRONGS OR MISCONDUCT

Plaintiff argues that he should be permitted to discuss before the jury other lawsuits against Cisco or allegation of other wrongs or misconduct without making any attempt to show that the allegations against Cisco are in any way related to this lawsuit. The Fifth Circuit has held that evidence of conduct regarding other allegations or lawsuits "is not competent to prove the commission of a particular act charged unless the acts are connected in some special way, indicating relevance beyond mere similarity in certain particulars." *See Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453 (5th Cir. 1992) (affirming the lower court's exclusion of a prior judgment because "the possible prejudice of the Colorado judgment outweighed any probative value it might have.") Here, Plaintiff has not shown that the acts are connected in some special way beyond mere similarity in certain particulars. Plaintiff has not shown <u>any</u> similarity beyond the fact that a lawsuit was brought for defamation. Indeed, Plaintiff has not even shown that the same people were involved. Cisco is a company of approximately 65,000 in 75 countries. Nor has Plaintiff shown that the lawsuits were meritorious. The fact that a lawsuit was brought against Cisco does not evidence, as Plaintiff claims, that Defendants "disrespect the law."

Plaintiff has taken *BMW* entirely out of context when stating that it supports his argument. In *BMW* the Court held that evidence that the plaintiff had engaged in other tortious

conduct could not support a punitive damage award because there had been no court determination that *BMW* had engaged in other related tortious conduct. *BMW of N. America v. Gore*, 517 U.S. 559, 577-79 (U.S. 1996). The United States Supreme Court further noted that such evidence could not support punitive damages because "it is also significant that there is no evidence that BMW persisted in a course of conduct after it had been adjudged unlawful on even one occasion, let alone repeated occasions." *BMW* therefore supports the Defendants' Motion because it demonstrates the impropriety of the use of mere allegations of other misconduct to support damages. For these reasons, Motion No. 7 should be granted.

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 8: CHARLES SILVER'S TESTIMONY

Plaintiff admits that he is not permitted to call Dr. Silver in his case in chief. Therefore, Motion in Limine No. 8 should be granted to that extent. Moreover, to the extent Defendants' expert testifies within his report, Dr. Silver should not be permitted to testify outside his report, as admitted by Plaintiff. Therefore, the Court should enter a Motion in Limine stating that (1) Dr. Silver may not testify in Plaintiff's case in chief; and (2) to the extent Defendants' expert testifies only to subjects addressed in his report, Dr. Silver may not testify to matters that were not disclosed in his report.

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 9: ANONYMITY OF THE PATENT TROLL TRACKER

Plaintiff acknowledges that Frenkel's speech has no less Constitutional value because it was written anonymously. Nonetheless, Plaintiff argues that Frenkel's anonymity is relevant to "Frenkel's credibility" and to actual malice. Plaintiff's strained relevancy arguments fail.

First, Plaintiff's argument that Frenkel's anonymity is relevant to his "credibility" fails because Frenkel did not purport to be anyone else. He wrote anonymously and was open about

the fact that he was writing anonymously. Plaintiff even acknowledges that Frenkel's website acknowledged that the writer was a lawyer interested in patent law. Frenkel cannot be said to "mislead his readers" because he openly wrote anonymously.

Frenkel's anonymity is also not relevant to actual malice. Plaintiff cites no case law, and Defendants are not aware of any, where anonymity was held to be relevant to actual malice. Indeed, the Supreme Court's holding in *McIntyre v. Ohio Elections Commission* would indicate that this would be a violation of the U.S. Constitution. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341 (1994) (striking down a statute imposing a fine for distributing anonymous leaflets because "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment"). Punishing an anonymous author with punitive damages for writing anonymously out of a desire to preserve his privacy is as unconstitutional as imposing a fine for distributing anonymous leaflets. *See id.*

Because it would be unconstitutional to consider Frenkel's anonymity for the purposes advanced by Plaintiff, it is irrelevant and thus should not be discussed before the jury.

Even if Frenkel's anonymity was relevant, the probative value is substantially outweighed by the danger of unfair prejudice. Plaintiff has argued in his Response that he intends to argue that Frenkel's anonymity amounts to actual malice despite the fact that his anonymity is fully protected by the First Amendment. (*See* p. 19 of the Response). Indeed, Plaintiff's claim that Frenkel's anonymity supports actual malice "because he believed they would never be tied back to him" is one of the very reasons the United States Supreme Court has held that authors should be permitted to write anonymously. *Id.* ("[t]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social

5445553v.1

ostracism, or merely by a desire to preserve as much of one's privacy as possible.") Therefore, Plaintiff is likely to confuse the jury with this issue and unduly prejudice Defendants. The Court should grant Motion No. 9.

### REPLY TO RESPONSE TO MOTION IN LIMINE NO. 10: CLAIMS OF PRIVILEGE

Plaintiff admits that the proper course of action with respect to privilege is that claims of privilege not be mentioned in opening statement and that in other instances, Plaintiff may approach the bench regarding privilege and affirmative use of evidence not disclosed so that these issues are not addressed before the jury. Therefore, the Court should grant Motion No. 10.

### REPLY TO RESPONSE TO MOTION IN LIMINE NO. 11: HEARSAY AFFIDAVITS

Plaintiff agrees that he is not permitted to offer affidavits in contravention of the hearsay rule and therefore should not be opposed to Defendants' Motion in Limine No. 11, requesting that the court not permit Plaintiff to refer to hearsay affidavits that have been produced in this case because such hearsay is inadmissible, irrelevant, and could only be calculated to prejudice the jury. *See* FED. R. EVID. 802. To the extent Plaintiff intends to use such affidavits at trial, Plaintiff should be required to approach the bench and request use of the affidavits so that the jury is not unduly influenced by the affidavits.

### REPLY TO RESPONSE TO MOTION IN LIMINE NO. 12: WRONGDOINGS OF OTHER PERSONS IN INTERNET BLOGS

Amazingly, Plaintiffs alleged that instances such as teen suicide as a result of internet harassment are relevant to this case. Plaintiff strains to come up with a theory for why such evidence is relevant, claiming that it "demonstrate[s] that posting words on the internet has implications that reach beyond the site they are written on." Plaintiff argues that such examples are relevant to the readership of the complained-of articles and whether Albritton's reputation

has been harmed. (Response at p. 21). Yet, Plaintiff fails to articulate how examples of "internet harassment" make it more or less probable that the articles had few readers or that Plaintiff's reputation has not been harmed. *See* FED. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Indeed, evidence that any internet article had many readers is irrelevant to whether any other internet article had many readers. And whether an internet article aimed at destroying a teenager's self esteem harmed that teenager is irrelevant to whether an internet article that discussed the changing of a docket in a lawsuit affected the reputation of a successful lawyer. Examples of "internet harassment" have no rational relationship to any material fact in dispute, and such evidence falls far short of the relevance standard in Rule 401.

Even if examples of "internet harassment" were relevant (and they are not), whatever minimal relevance such evidence might have is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 401. To the contrary, the effect of such an example and others like it would be the unfair arousal of jurors' sympathies, passions, and prejudices. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 578-81 (5th Cir. 1993) (holding that trial court properly excluded evidence of other accidents and claims when plaintiff failed to show "any recognizable similarity between his claim and those that are the subject of the evidence at issue," as the examples of other accidents were unfairly prejudicial); *United States v. Grimes*, 244 F.3d 375, 384-85 (5th Cir. 2001) (in prosecution for possession of child pornography, narratives depicting violent rape and sexual torture were unduly prejudicial because of their inflammatory nature). Accordingly, Defendants' Motion No. 12 should be granted.

## REPLY TO RESPONSE TO MOTION IN LIMINE NO. 13: INSURANCE

The policies underlying Rule 411 of the Federal Rules of Evidence are (1) to prevent against "the inference of fault from the fact of insurance coverage" and (2) to prohibit a jury's "knowledge of the presence or absence of liability insurance" from causing the jury to "decide cases on improper grounds[,]" such as a jury believing that "some rich insurance company will pay, so we might as well decide for this plaintiff without respect to the law and facts." *DSC Commc'ns Corp. v. Next Level Commc'ns*, 929 F. Supp. 239, 242 (E.D. Tex. 1996) (internal citations omitted). Not only are such references and evidence inadmissible under Rule 411, they are also irrelevant and unfairly prejudicial, and therefore inadmissible under Rules 402 and 403. *See* FED. R. EVID. 402, 403, 411.

Plaintiff agreed with this, but argued that evidence of insurance was admissible to show agency, ownership, or control. However, none of those issues are in dispute here. Cisco has admitted that Frenkel was acting in the course and scope of his employment, therefore agency, ownership and control are not at issue. The presentation of evidence of insurance coverage and references to such coverage in this case would be for no purpose other than to raise an inference of fault and to prompt the jury to decide the case on improper grounds – the very reasons Rule 411 exists. *See DSC Commc'ns Corp.*, 929 F. Supp. at 242. Plaintiff fails to offer any theory whereby the existence of insurance coverage is relevant to this case. (*See* Response at 21-22.) To be sure, references to and evidence of insurance coverage would be inadmissible under Rules 402 and 403 even without Rule 411. *See* FED. R. EVID. 402, 403. For these reasons, Defendants' Motion No. 13 should be granted.

## MOTION IN LIMINE NO. 14:
## THIS MOTION IN LIMINE

Because the parties agree to this Motion, the Court should grant it.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE MCWILLIAMS, P.C.

By: /s/ George L. McWilliams with permission by Charles L. Babcock
    George L. McWilliams
    Texas Bar No: 13877000
    GEORGE L. MCWILLIAMS, P.C.
    406 Walnut
    P.O. Box 58
    Texarkana, Texas 75504-0058
    (903) 277-0098
    (870) 773-2967—Fax
    Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 3rd day of March, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
Attorney for Defendant Richard Frenkel

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
Attorney for Plaintiff Eric Albritton

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
Attorney for Plaintiff Eric Albritton

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
Attorney for Plaintiff Eric Albritton

/s/ *Charles L. Babcock*
Charles L. Babcock