### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § | |
| | § | |
|     **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | NO. 6:08-CV-00089 |
| (1) CISCO SYSTEMS, INC., | § | |
| (2) RICHARD FRENKEL, a/k/a | § | |
| "TROLL TRACKER," | § | |
| (3) JOHN NOH and | § | |
| (4) MALLUN YEN, | § | |
| | § | |
|     **Defendants.** | § | |

### *PLAINTIFF'S OPPOSITION TO CISCO'S MOTION FOR ENTRY OF NON-WAIVER ORDER*

### I.   INTRODUCTION

Plaintiff Eric M. Albritton requests that the Court deny Cisco's motion for the entry of a non-waiver order in its entirety, for the following reasons.

First, Cisco has voluntarily produced certain allegedly privileged documents per the parties' agreement. Thus the privilege as to those documents is waived, at least for the purposes of trial. FRE 502 allows for an order of non-waiver in the event of *inadvertent* disclosure, but not for intentional disclosure. Consequently, an order of non-waiver under FRE 502 would be inappropriate.

Second, Cisco has not and can not overcome the strong presumption in favor of the public's common law and First Amendment right of access to judicial records and proceedings. While it is one thing for the parties to agree to blanket designations and protection of discovery documents under a pre-trial protective order, it is quite another for the court to close its doors and seal judicial records. To justify sealing, the proponent must make a particularized showing that

the evidence at issue, if made public, would cause grievous harm to it or others. Cisco has not even attempted to make such a showing here, having provided *no affidavits or evidence concerning harm*. Rather, Cisco asks the Court to abdicate its role and simply adopt Cisco's blanket designations under a pre-trial protective order. Such drastic measures are not called for and would be a clear violation of the public's right of access. This is particularly true here, where the principle claim is defamation and where an airing of the truth to the public is paramount.

## II. STATEMENT OF FACTS

Early in discovery, the parties agreed that each could produce those privileged documents that it wished to produce, without subject matter waiver as to any other privileged documents. The parties memorialized this agreement by letter and in the pre-trial Protective Order. *See* Attachment A (June 12, 2008 Letter Agreement) and Attachment B (Protective Order), at ¶ 5 ("Highly Confidential" material to include privileged documents). By its terms, the Protective Order applies only to pre-trial discovery and pre-trial motion practice, not to any procedures at trial. *See* Attachment B at ¶ 11 ("This Order governs discovery and the pretrial stage of this litigation. The use at trial of 'Confidential' information shall be subject to further order of the Court…").

Of the privileged documents that Cisco chose to produce, Albritton has placed fifty on his trial exhibit list and Cisco has placed eight on theirs. Albritton intends to extensively cross-examine several of Defendants' witnesses with these exhibits and about their content.

## III. LEGAL ARGUMENT

### A. An Order Of "Non-Waiver" Is Inappropriate Because Cisco Deliberately Produced The "Privileged" Documents At Issue

Rule 502 of the Federal Rules of Evidence was recently enacted to alleviate the overwhelming costs of pre-production privilege review by bringing some certainty to any waiver associated with the production of privileged documents. *See* Advisory Committee Notes to FRE 502, Explanatory Note (Revised 11/28/2007) (describing two major purposes as resolving

longstanding disputes regarding the effect of disclosing privileged documents and responding to the problem of high litigation costs to protect against waiver). Rule 502 also allows a Court to issue an order reflecting the agreement of the parties concerning the scope of waiver in connection with the disclosure of privileged materials. *See* FRE 502(d). Such an order protects a party against a collateral attack by a non-party who would argue that an inadvertent disclosure in the subject case triggered a waiver in some other forum.

What Rule 502 cannot do, however, is convert a document that is no longer privileged by virtue of a party's deliberate and knowing production into one that is privileged. Indeed, the only place where Rule 502 expressly deals with purposefully produced documents is in connection with whether the Court should compel production of even more materials (the sword/shield issue). *See* FRE 502(a). In that regard, Rule 502 undermines Cisco's motion because in this case Cisco has used its claims of privilege as both a shield and a sword.

Cisco voluntarily produced the documents it now seeks to hide from the public. During discovery, the parties agreed that each could produce whatever "privileged" documents it wished without fear that the other party would argue that production triggered a subject matter waiver. This agreement is memorialized in the parties' June 18, 2008 Letter. *See* Attachment A. However, once a party deliberately shares with its adversary the contents of a once-privileged document, that party cannot be heard to argue that the document retained its privileged nature. The very cornerstone of the attorney-client privilege is confidentiality. A communication must be maintained in confidence for privilege to adhere. Once confidentiality has been intentionally breached, then the communication can no longer be said to be privileged. *See, e.g., In re Santa Fe Intern. Corp.*, 272 F.3d 705, 713 (5th Cir. 2001); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) ("[Defendant] waived the attorney-client privilege by selectively disclosing confidential communications. When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege.").

Fifth Circuit cases clearly hold that the privilege claimant's burden extends to proof of

3

preliminary facts showing that the matter is eligible for protection. *See, e.g., United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir.1991) ("The burden of establishing privilege rests on the party who invokes it."). Purposeful disclosure of a privileged communication to an adversary is antithetical to any claim of privilege. Cisco can not establish that any of the documents that it intentionally produced to Albritton remain privileged. Albritton agreed not to argue subject matter waiver during discovery, and agreed not to publically disclose Cisco's documents. He did not agree to sign-off on Cisco's self-serving assertions of privilege at trial. Discovery is closed and trial is at hand. Cisco's documents have been stripped of their privilege protection for trial and nothing in the parties' discovery agreement can revive their lost protection.

The discovery agreement between the parties cannot be leveraged by Cisco as justification for closing the courtroom at trial. To the extent that Cisco's documents have been categorized as "privileged" and were permitted to remain so during discovery that agreement is not binding on the Court. Nor does the parties' discovery agreement relieve the Court of its own independent obligation to ensure Cisco's documents are in fact privileged,[1] to determine for itself whether Cisco would be severely harmed by public disclosure of those documents, and to weigh those considerations against the public's First Amendment right to attend judicial proceedings. Here, the documents that Cisco produced where disclosed under the terms of a blanket protective order, permitting Cisco to designate materials it produced as confidential and requiring the filing under seal of any paper that contains information from any confidential materials (without any requirement of court approval of the sealing of the filing). That order cannot provide cover for Cisco at trial where the standard for excluding the public is exceedingly high.

Moreover, after Cisco produced the documents, it waived any privilege it may have had by affirmatively relying on those documents in its defense. *See* Attachment C (Declaration of Rick Frenkel in support of Cisco's motion for summary judgment at ¶ 8 asserting a good faith

---

[1] Albritton submits that if the Court were to undertake an *in camera* review of the documents for which Cisco has claimed privilege, it would discover that many of those documents are not attorney-client communications or work product.

4

reliance on advice of counsel); Attachment D (Frenkel Depo. at 71:13-72:21, Rule 30(b)(6) testimony stating that Cisco's reliance on advice of counsel is evidence of lack of malice); Attachment E (docket entry No. 189 at 263, 265-274, Cisco's exhibit list demonstrating that it plans to use "privileged" documents affirmatively at trial). Cisco's post discovery decision to affirmatively rely on advice it received from counsel in its defense means that those communications are no longer privileged. *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989); *United States v. Wells*, 600 F.2d 498, 501-502 (5th Cir. 1979); *Wells v. Liddy*, 37 Fed. Appx. 53, 67 (4th Cir. 2002).

Cisco's documents are no longer privileged and Cisco has no valid basis upon which to conceal them from public view. Thus, Cisco's request for an order of non-waiver extending beyond the parties' agreement to not seek subject matter waiver is untenable and unsupportable, and should be denied.

**B.      Cisco Has Provided No Evidence Of Potential Harm, Much Less Any Quantum Sufficient To Overcome The Public's Common Law And First Amendment Right Of Access To Judicial Proceedings And Records.**

Cisco has asked the Court to order the courtroom closed and to have all of the "privileged" trial exhibits placed under seal. This is an extraordinary remedy that is made all the more inappropriate here because Cisco has provided *no* evidentiary basis (or even argument) that it would be harmed should the public have access to the trial and its exhibits. Cisco did not so much as provide the Court with copies of the exhibits it seeks to seal, let alone demonstrate a compelling need for closed judicial proceedings. Cisco's request that this Court order the record in this case sealed without a particular finding as to the contents of the trial exhibits and without a particularized showing of harm to Cisco invites legal error. *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 894 (S.D. Tex. 2008), citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008).

It is undisputed that judicial proceedings are generally open to the public and that the public has a right to access judicial records and documents. *See Richmond Newspapers, Inc. v.*

*Virginia*, 448 U.S. 555 (1980) (plurality opinion); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). The public's right of access to judicial proceedings is protected both the common law and the First Amendment.

The common law presumes a right to inspect and copy all judicial records and documents, *Nixon,* 435 U.S. at 597. The First Amendment guarantees a public's right of access to civil trials. *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir.1984). *See also Doe v. Stegall*, 653 F.2d 180, 185 and n.10 (5th Cir. 1981) (acknowledging the public's First Amendment right of access to civil proceedings).

Unlike the common law right, which extends to all judicial records and documents, the First Amendment guarantee of access extends only to particular judicial records and documents—specifically those that are implicated in the court's adjudication of substantive rights.[2] *See, e.g., Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988) (documents filed in connection with summary judgment motion in civil case); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986) (recognizing that documents submitted as a part of motions for summary judgment are subject to public right of access); *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982) ("documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"). Under the First Amendment, the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest. *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982).

Cisco has asked the Court to order its courtroom closed and several of its trial exhibits sealed. There can be no proceeding more dispositive of substantive rights than a trial. Consequently, both the common law and the First Amendment guarantees of access are implicated by Cisco's request, and the higher First Amendment standard should be applied.

The public can be denied access to judicial proceedings, but only upon a showing that

---

[2] Many of the documents at issue were exhibits to the summary judgment motions filed in this case.

countervailing interests heavily outweigh the public interest in access. *Nixon*, 435 U.S. at 598. Exceptions to the rule are narrow and require a showing of compelling harm to the moving party. For example, an exception to the public's right of access has been recognized where a case involves trade secrets. *See e.g., Woven Electronics Corp. v. Advance Group, Inc.*, 1991 U.S. App. LEXIS 6004, 16-17 (4th Cir. 1991). Other exceptions exist to protect minor children giving difficult testimony at trial, *see Geise v. United States*, 262 F.2d 151, 154 (9th Cir. 1958), and where public testimony may jeopardize an ongoing government investigation, *see United States v. Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993). Recently, the Fifth Circuit reiterated the high standard a party must meet to deprive the public of access to judicial proceedings. In *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, the Court affirmed that cases ought to be litigated openly. 517 F.3d at 230. The Court articulated the type of showing required to seal judicial proceedings, stating that in that case, the records ought to have be made public because "after all, [they] ***are not state secrets that will jeopardize national security if they are released to the public***." *Id.*

Cisco has utterly failed to meet the high standard required to compel secret judicial proceedings. This is not a case involving state secrets, national security, trade secrets or embarrassing testimony offered by a minor. There is nothing about Cisco's documents that demands a closed courtroom. Cisco has not identified a single compelling interest that would justify overriding the public's First Amendment right of access. Cisco has provided ***no*** evidence or affidavit describing with any particularity the harm it believes it would suffer. *See Carnaby v. City of Houston*, 2008 U.S. Dist. LEXIS 80356 (S.D. Tex. Oct. 10, 2008) (denying motion to seal where defendant failed to offer facts regarding documents to be sealed). Cisco's ***only*** argument is its naked assertion that it would not have produced its privileged documents had it known that the documents would be used in open court. This type of unsupported assertion, without any specific articulation of harm, does not satisfy even the Rule 26 test for issuance of a

7

protective order for discovery documents,[3] much less the First Amendment test for materials to be used at trial.

The fact that the parties agreed in their Protective Order that "privileged" documents could be designed as "Highly Confidential" should be accorded little, if any, weight. First, the Protective Order by its own terms governs use of documents in only to pre-trial proceedings and does **not** purport to govern use at trial. *See* Attachment B at ¶ 11. Second, when confronted with an opposed request to file a document under seal, the requesting party must show "by particular and specific demonstration of fact," *In re: Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir.1998), that it would be harmed by disclosure, and the court must independently assess the merits of the party's request and rule accordingly. *See San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999). Cisco has done none of that here. Rather, it has asked the Court to adopt Cisco's blanket designations under the Protective Order.

Nor should Cisco's reliance on the Protective Order's confidentiality provisions in connection with its document production carry any weight. A party can not reasonably rely on a blanket protective order that does not require good cause be shown for any individual document as a basis for the court sealing those documents. *See, e.g., Prater v. Commerce Equities Mgmt. Co.*, 2008 U.S. Dist. LEXIS 98795 (S.D. Tex. Dec. 8, 2008) (the fact that an agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that a judicial record should be open to the public); *Foltz v. State Farm Mut. Automobile Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003) ("Because [defendant] obtained the blanket protective order without making a particularized showing of good cause with respect to any individual document, it could

---

[3] To maintain the confidentiality of any document produced in a case, a party must show "good cause" as to why a protective order should issue. Fed. R. Civ. P. 26(c). Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re: Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir.1998). For good cause to exist, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *See, e.g., Phillips ex rel. Estates of Byrd v.General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (quoting *Beckman Indus., Inc. v. International Ins. Co*., 966 F.2d 470, 476 (9th Cir.1992)); *Accord Cippollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir.1986). Cisco has not made a showing sufficient to justify even the Rule 26 standard for discovery documents, much less materials to be used at a trial.

not reasonably rely on the order to hold these records under seal forever.").

Moreover, Cisco's assertion that it would not have produced the documents in question if it had known they would ever see the light of day is disingenuous. Cisco's email communications have been produced by Cisco for use in its own defense. *See* Attachments C, D & E. Cisco cannot now be heard to complain because it cannot pick and choose the documents the public is able to view. Cisco is not concerned with disclosure of the documents in this case because disclosure would result in some compelling harm to Cisco. Cisco's documents relate to facts surrounding the filing of the ESN complaint, Cisco's investigation of those facts, and Cisco's response, including its defamation of Albritton. Those documents arose in the context of a race to the courthouse. Now, over a year later, venue in the ESN v. Cisco case has long been fixed, with Cisco stipulating to subject matter jurisdiction in the Eastern District of Texas. To the extent the documents at issue related to legal strategy at all, they relate to an issue that has long been resolved and for which disclosure is of no consequence. *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d at 895 (publicity will not threaten the integrity of a proceeding that is no longer active).

What is of consequence to Cisco is its public image. Cisco does not want the implicated documents disclosed because they portray Cisco as a bad actor. Thus far, Cisco has succeeded in presenting the media with a one-sided presentation of the facts of this case because, although Cisco can file its pleadings openly, Albritton's responses—which cite to documents designated by Cisco (often improperly) as "Highly Confidential" must be filed under seal. Cisco has exploited Albritton's inability to publically respond to its accusations to launch a one-sided public relations campaign. For example, after Albritton agreed to let Cisco unseal its motion for summary judgment, Cisco denied Albritton's request to do the same. Then, Cisco's counsel told the press that Albritton's case was meritless and was only brought to curry favor with the local judges. *See* Attachment F. Albritton has waited patiently to publically clear his name and to demonstrate Cisco's egregious conduct in defaming him. Cisco cannot use an unsubstantiated and unproven allegation of "harm" to deprive Albritton of public vindication.

9

The Fifth Circuit has stated that a district courts' discretion to seal the record of judicial proceedings "is to be exercised charily." *Macias v. Aaron Rents, Inc*, 288 Fed. Appx. 913, 915-916 (5th Cir. Tex. 2008). That admonition requires the Court to make an independent determination of the merits of Cisco's motion regardless of any party agreement or protective order in this case. Four months ago, Judge Folsom faced a similar issue when litigants in his Court filed a stipulated motion seeking to close the courtroom. Although both parties had agreed to the closed courtroom, Judge Folsom denied their motion finding they had failed to meet their burden of convincing *the Court* that the case involved information of a nature that warranted excluding the public and the press from exercising their First Amendment rights to attend civil trials. *See* Attachment G. Here, Cisco has presented no "extraordinary" reason to exclude the public from those portions of the trial that implicate Cisco's once-privileged communications. *See Prater*, 2008 U.S. Dist. LEXIS 98795, at *30. Its motion should similarly be denied.

### C. Cisco's Request To Open And Close The Courtroom Is Unworkable And Deprives Albritton Of His Right To Be Publicly Vindicated.

This is a defamation case. An important right is that of the defamed litigant to have the truth be aired to the very public who now holds him in lower esteem due to the defendants' libelous statements. Albritton's name has been sullied publicly. He has a strong interest in ensuring that the trial be open and public.

Cisco intends to rely on their communications with counsel as evidence of the reasonableness of their defamatory statements. Albritton anticipates that the documents at issue will be used extensively at trial and to question many of the witnesses. It would be disruptive to both the presentation of Albritton's case and to the understanding by the public of the trial proceedings should the Court have to clear, and subsequently reopen, the courtroom upon the use of each of the once-privileged documents. This would become unwieldy and unmanageable and would deprive Albritton of his right to be vindicated not only in the courtroom but in the eyes of the public.

## IV. CONCLUSION

Cisco made a deliberate and calculated decision to produce certain documents that might otherwise have been privileged. It did so after hammering out an agreement with opposing counsel that no subject matter waiver would be sought and that the documents would be accorded "Highly Confidential" status under a blanket Protective Order. Cisco has waived any privilege as to the produced documents and has shown no reason why according the public its right of access to the documents admitted as trial exhibits or to the questioning at trial about those documents would in any way cause Cisco or anyone else any harm.

Having failed to support its motion by any evidence, much less evidence that would rise to meet the First Amendment standard at play, Cisco's motion should be denied.

Respectfully submitted,

*/s/ Nicholas H. Patton*

Nicholas H. Patton
State Bar No. 15631000
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
nickpatton@texarkanalaw.com

Patricia L. Peden
California Bar No. 206440
LAW OFFICE OF PATRICIA L. PEDEN
5901 Christie Ave, Suite 201
Emeryville, California 94608
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

  I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 5th day of March, 2009.

_____
Nicholas H. Patton