IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON | § | |
| | § | |
| | § | |
| v. | § | C. A. NO. 6:08-CV-00089 |
| | § | JURY |
| CISCO SYSTEMS, INC. and | § | |
| RICK FRENKEL | § | |

**DEFENDANTS' SUR-REPLY TO PLAINTIFF'S REPLY TO DEFENDANTS'
RESPONSE TO PLAINTIFF'S MOTION IN LIMINE**

TO THE HONORABLE COURT:

Defendants Cisco Systems, Inc. ("Cisco"), Richard Frenkel ("Frenkel"), (collectively, "Defendants") hereby file this Sur-Reply to Plaintiff's Reply (the "Reply") to Defendants' Response (the "Response") to Plaintiff's Motion in Limine (the "Motion"), and respectfully show the court:

**1.     Appropriate standard for a motion in limine.**

Plaintiff does not dispute that the law requires that in the event the Court denies his Motion, Defendants are not required to approach the bench to address the issue; and that in the event the Court grants the motion, Defendants must merely approach the bench to request permission to discuss the topic at issue. (*See* Response at p. 1)  Therefore, the Court should modify the Plaintiff's order accordingly if the Court grants any of Plaintiff's Motions in Limine.

**2.     Response to Motion in Limine No. 1.**

Plaintiff claims that his representation of individuals accused of heinous crimes is irrelevant as an alternative source of mental anguish because "Defendants have cited absolutely no evidence that Albritton's representation of criminal defendants has caused him mental

anguish." Yet Albritton candidly admits that he has refused any discovery on this issue. (Reply at p. 1). Nor are Defendants required to produce "evidence" on this issue in order to ask witnesses about this issue at trial. Nor is it a "gross overreach" as Plaintiff alleges to introduce evidence of alternative sources of Albritton's mental anguish. *See* TEX. CIV. PRAC. & REM. C. § 73.003. Plaintiff put his mental state at issue in this case, and Defendants should be permitted to address any other possible causes of his anguish. Albritton testified that he was <u>currently</u> defending a person on death row who was convicted of murdering a police officer, and that he had represented accused rapists and accused child molesters. (Exhibit 1 to the Motion at pp. 136-137). This stress could certainly affect Albritton mentally and cause him anguish. Defendants are entitled to present this evidence to the jury.

Nor is the Constitutional right to free speech irrelevant as Albritton alleges. Although the Court has ruled that Albritton is a private figure, that does not mean that Defendants have no First Amendment rights. *See Cain v. Chronicle Publishing Co.*, 878 S.W.2d 577, 582 (Tex. 1994) (stating that "every defamation action that the law permits necessarily inhibits free speech... these same considerations are also at play in private, non-political expression").

Moreover, to the extent the Court permits Albritton to argue to the jury that his reputation has been harmed, despite his failure to disclose or produce discovery on this issue, the fact that Albritton represents accused criminals is certainly relevant to his reputation. Texas has long held that evidence of other events affecting one's reputation is relevant when the plaintiff puts his reputation at issue. *See McBride v. New Braunfels Herlad-Zeitung*, 894 S.W.2d 6, 9 (Tex. App.—Austin 1994) ("In Texas, evidence of a libel plaintiff's diminished reputation has traditionally been allowed in mitigation of actual damage"); *Bell Publishing co. v. Garrett Eng'g Co.*, 170 S.W.2d 197, 203 (Tex. 1943) ("The testimony that plaintiff's reputation was bad... was

proper to be considered by the jury in mitigation of damages"); *Swate v. Schiffers*, 975 S.W.2d 70, 74 (Tex. App.—San Antonio 1998, pet. denied) (granting summary judgment in a case involving *per se* defamation because "Swate's reputation was so deplorable prior to the publication of Schiffers's article that the three statements could not have further injured Swate's reputation").

Plaintiff's argument that Albritton's reputation could not be affected by his representation of defendants accused of "heinous crimes" also fails.[1] The inconsistency in Plaintiff's argument in the Response demonstrates the very relevance of this evidence. Plaintiff claims that this "inflammatory evidence" would prejudice him in the eyes of a jury of his peers, yet conversely he argues that the same evidence is not relevant to his reputation in that <u>same community</u>. If this evidence is indeed inflammatory in Albritton's community, it cannot be said that the same evidence would not affect Albritton's reputation, which he put at issue in this lawsuit. While it may be unfortunate that representing a murderer or child molester affects one's reputation, it would be just as unfair to require a company who has nothing to do with that representation to pay damages caused by Albritton's choice. Cisco should not have to pay the price for any effects of Albritton's choice to represent these individuals on his reputation.

3.    **Response to Motion in Limine No. 2.**

Plaintiff's entire relevance argument, and Judge Bush's order regarding the relevance of medical records and financial records, are both premised on a finding that the articles at issue are *per se* defamatory. This Court has denied Plaintiff's summary judgment motion on that issue. Therefore, Plaintiff cannot claim that this evidence is irrelevant. For the reasons stated in the

---

[1] Plaintiff's argument that such a ruling would make any criminal attorney subject to cross examination concerning his clients is unfounded. Plaintiff put his reputation and mental state at issue when he brought this lawsuit. The relevance of this information is directly related to both.

---

Response, as well as Defendants' Motion to Compel and Motion for District Judge to Reconsider Magistrate Judge's Order Denying Cisco's Motion to Compel Production of Documents ("Motion for Reconsideration) (Docket Nos. 55, 152) and supporting briefing (Docket No. 197, 76), which are incorporated herein by reference, the Court should deny the Motion. Even if the Court denies Defendants' Motion for Reconsideration and does not require Plaintiff to produce evidence of his damages, Defendants should be permitted to offer evidence of Albritton's failure to produce medical evidence and his failure to produce financial records to demonstrate his lack of damages. Albritton should not be permitted to hide behind his nebulous damage claims and yet shield from the jury all evidence showing the lack of any real damages, especially in light of the fact that the jury may have to determine whether Albritton suffered any actual damages in the event the jury finds that the articles are not defamatory *per se*.

**4.      Response to Motion in Limine No. 3.**

Plaintiff claims that Defendants should be precluded from introducing evidence that Albritton caused the very publicity he complains of because Defendants did not specifically plead mitigation. However, Defendants did specifically plead mitigation. Paragraphs 51-53 of Cisco and Frenkel's answers (Docket Nos. 19 and 20) specifically allege that Plaintiff failed to mitigate damages, that Plaintiff's damages were mitigated pursuant to the very statute relied on by Plaintiff, and that Plaintiff's own acts or omissions contributed to his injury. Therefore, Plaintiff's argument fails.

Plaintiff then misconstrues Defendants' Response by claiming that the issue is whether Plaintiff's counsel "attempted to poison the jury pool." That is not the issue here. The issue is whether Albritton caused damage to his own reputation by his own comments and comments through his lawyer to the press and by encouraging public attention to the complained-of articles.

As stated in the Response, Albritton's own allegations that the articles accused him of a crime are more damaging to his reputation than the actual complained-of articles and are certainly relevant and admissible. *See* TEX. CIV. PRAC. & REM. C. § 73.003 ("To determine the extent and source of actual damages and to mitigate exemplary damages, the defendant in a libel action may give evidence of the following matters… (1) all material facts and circumstances surrounding the claim for damages and defenses to the claim…"). Albritton also attempts to distract from the issue by claiming that the jury has probably not read the articles at issue. However, whether the jury in this case has actually read the articles or where they were published is irrelevant; Albritton claims that his reputation across the nation has been damaged, so Albritton's own acts to tarnish his reputation across the nation are certainly relevant to his damages. *Id.; See McBride*, 894 S.W.2d at 9; *Bell Publishing*, 170 S.W.2d at 203.

Plaintiff's claim that Nick Patton made the comments at issue before becoming counsel for Plaintiff also fails.[2] As can be seen by the articles themselves, Albritton's attorney James Holmes made comments to the press while acting as Albritton's attorney, and Mr. Patton continued making comments to the press after he began acting as Albritton's attorney. Moreover, Patton has not disclaimed that he was acting as Albritton's attorney at the time he made any of the statements at issue; the fact that he didn't enter an appearance in this lawsuit until later in the lawsuit does not mean that he did not have an attorney-client relationship with Albritton.

Plaintiff also claims that his name calling in this case is not relevant to the nature of being a litigator. Plaintiff claims that this evidence could "mislead the jury into believing that both

---

[2] Notably, Mr. Patton does not state when he began giving Plaintiff legal advice, but merely refers to the date on which he entered as counsel of record in this case.

parties exchanged jabs in the media, but only Albritton sued."[3] Defendants have no doubt that the jury can understand that Plaintiff's name calling at issue occurred after the complained-of articles. The fact that Albritton's jabs occurred after the articles does not make this probative evidence irrelevant or prejudicial. *See* TEX. CIV. PRAC. & REM. C. § 73.003. Indeed, Plaintiff may make this point to the jury. Albritton alleges that the complained-of articles were aimed at attorneys. The fact that name calling in the legal profession, even Plaintiff's own name calling, occurs frequently is certainly relevant to how the readers perceived the speech at issue and damages in this case, where Albritton alleges that Defendants called him names in a blog read by other lawyers.[4] *Id..* Albritton has certainly not made a showing that the danger of unfair prejudice **substantially** outweighs its probative value as would be required to merit exclusion. FED. R. EVID. 403; *see also U.S. v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) ("we have recognized that Rule 403's scope is narrow... application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citations omitted). Therefore, the Court should deny Motion No. 3.

5.      **Response to Motion in Limine No. 4.**

As this Court is well aware, this case was filed after a clerk of the Eastern District of Texas altered the filing date on the docket for the complaint, which affected subject-matter jurisdiction. Plaintiff argues that the Court should require the parties to use the terminology of the very court clerk who made the decision to change the date of the filing at issue in this lawsuit, which does not comport with any rule, because that terminology benefits Plaintiff. As

---

[3] Indeed this would not be "misleading" because it is true. Defendants have not sued Albritton for his name calling in the press.

[4] Plaintiff's Original Complaint, Docket No. 17 at ¶ 30.

stated in the response, Courts use the term "file stamp" to refer to the stamp placed by the court clerks on court filings or the docket. *See Eavenson v. Amresco, Inc.*, 213 F.3d 639 at *5, n. 15 (5th Cir. 2000); *In re Martin*, 15 F.3d 180, at *1 (5th Cir. 2000); *U.S. v. Doyle*, 854 F.2d 771, 773 (5th Cir. 1988) (The rules contemplate that filing with a district clerk can only be accomplished by proof of the physical delivery of the document. Normally, this is acknowledged by the affixing of the clerk's file stamp thereon."). Because the terminology "file stamp" is commonly used and because this is a fact in dispute in this case (as Plaintiff acknowledges on p. 4 of the Motion), the Court should deny Plaintiff's Motion. To the extent Plaintiff seeks to show that the file stamp and certain dates on the Notice of Electronic Filing are two different things, it can do so without requiring Defendants to resort to artificial terminology rather than the terminology commonly used for the stamp. Certainly, the Court should not allow Plaintiff to leverage some ambiguity in terminology to confuse the jury for Plaintiff's advantage. Instead, both parties should be permitted to argue this fact issue to the jury.

## 6.     Response to Motion in Limine No. 5

Plaintiff agrees that the fact that his attorneys are "local" is not relevant but argues that he should be permitted to introduce to the jury the "location of his office" to determine whether the potential jurors know the attorneys involved in the case. The Court should not allow this backdoor effort to introduce Plaintiff's admittedly irrelevant evidence. If jurors know Plaintiff's counsel they will not need to be told where his office is located to make such a determination. Plaintiff's attorneys should not be permitted to encourage some special favor from the jury by presenting themselves as a local attorneys or by presenting Defendants' attorney as an outsider.

Nor should Plaintiff's counsel be permitted to refer to themselves as local attorneys in remarks in opening statements regarding the "Eastern District of Texas legal market and

practices customary or accepted in the district" as argued by Plaintiff. Plaintiff's attorneys are not permitted to testify to factual matters in this case, so their connection with the district is irrelevant. Therefore, to the extent the Court grants Motion No. 5, the Court should enter a reciprocal order stating that Plaintiff's attorneys may not introduce evidence or comments about their practice in the Eastern District of Texas.

## 7. Response to Motion in Limine No. 6.

Plaintiff also argues that the vast number of Plaintiff's filings in the Eastern District of Texas, that Albritton lobbied or met with public officials to lobby against patent venue reform legislation, and that he holds himself out as an expert in patent litigation in the Eastern District of Texas are not relevant.[5] Even if Albritton is a private figure, the circumstances surrounding the complained-of articles are certainly relevant and admissible. TEX. CIV. PRAC. & REM. C. § 73.003; *San Antonio Exp. News v. Dracos*, 922 S.W.2d 242, 248 ("Statements must be viewed in their context and may even be false, abusive, unpleasant, or objectionable to the plaintiff without being defamatory.").

Plaintiff has consistently argued that Frenkel or Cisco was using the Patent Troll Tracker to further an agenda with respect to patent reform.[6] In the Reply, Plaintiff refers to this as a "public relations campaign instigated by Cisco." (Reply at p. 6). The fact that Albritton was a driving force of patent litigation on the opposing side is certainly relevant to frame the context of this allegation and the complained-of article. Plaintiff cannot argue that the articles were aimed at assisting Cisco's patent reform efforts, but that Albritton's efforts to squelch the same reform

---

[5] Plaintiff misleadingly implies that Defendants have disrespected the Court's ruling on the Motion for Summary Judgment in its Response, yet the Response was filed before the ruling.

[6] Plaintiff disingenuously states that Cisco refused discovery on this issue. Not true. Cisco's corporate representatives testified at length regarding Cisco's patent reform efforts, and Plaintiff never filed a motion to compel any further discovery on this issues.

are not. Indeed, Defendants anticipate that Albritton will argue that Cisco's petitioning of government is evil in itself. That Albritton engaged in the same activity is certainly relevant.

Moreover, there is a fact issue with regard to Albritton's claim that he only lobbied after the articles at issue. Albritton testified at his deposition that he believed his lobbying activities may have begun before the complained-of articles. (Exhibit H, Albritton Depos. at 67-68). Only in response to the Motion for Summary Judgment did Albritton change his story by affidavit. Cisco should be permitted to explore this issue at trial.

Albritton's connections with the Eastern District of Texas are also clearly relevant to the issue of truth. The gist of the article is that Albritton's office convinced the clerk to change an essential file date, and Plaintiff claims that there is an implication that Albritton was asking for some sort of favor. The fact that Albritton has such close connections with the court is certainly relevant to the truth of that allegation. Plaintiff's lofty rhetoric that this "turns logic on its head" is unsupported by any argument at all. The number of cases Albritton has filed is also relevant to the same issue and to Albritton's damage claim. Albritton claims that his reputation has suffered, yet Defendants intend to show that Albritton's reputation and his legal practice is thriving. The number of cases he has filed is directly relevant to this issue.

Plaintiff attempts to explain away the U.S. Supreme Court and the Texas Supreme Court's (as cited in the Response) mandate that the nature and context of the debate is one of the most important parts of a case implicating the First Amendment by alleging that this Court has held that the First Amendment does not apply. This is simply wrong. This Court has not held that the First Amendment or that the Texas Constitution does not apply to this case. Nor has this Court held that the publication was merely a matter of private concern. Plaintiff takes language from the Court's discussion of whether Albritton is a public figure and misleadingly states that it

is a holding regarding a separate issue—whether the article was about a matter of public concern.[7] The Order itself states that "The lawsuit between ESN and Cisco did not involve a public controversy," not that the article was not about a matter of public concern. (Docket No. 217 at p. 10).

Indeed, Plaintiff's own arguments acknowledge that the articles were on a matter of public concern. First, Plaintiff argues that the articles were calculated to assist Cisco in its patent reform effort. Statements advocating for changes in government are the essence of a public concern and of the First Amendment. *See Roth v. U.S.*, 354 U.S. 476, 484 (1957) ("The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.").

Second, Plaintiff claims that Defendants accused him of a "crime" by stating that he conspired with the Court clerk to alter official court documents. As Justices Brennan, Stewart and Marshall stated in their concurring opinion in *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 606 (1976), "commentary on the fact that there is strong evidence implicating a government official in criminal activity goes to the very core of matters of public concern." While Defendants dispute that the articles accused Plaintiff and the clerks of a crime, the articles at issue are about a matter of public concern even in the absence of such all allegation. *See Doe v. Mobile Video Tapes, Inc.*, 443 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001, no pet.) ("The possible commission of a crime and the resulting consequences are events of legitimate public concern"); *see also Gaylord Broadcasting Co., L.P. v. Francis*, 7 S.W.3d 279, 286 (Tex. App.—

---

[7] The public controversy issue that relates to whether a plaintiff is a public figure is an entirely different issue than whether a publication is a matter of public concern (although courts often use the terminology interchangeably). *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) (discussing both). Whether a publication is a matter of public concern does not affect the status of the plaintiff. Many courts have found that a plaintiff is a private figure, and yet found that the publication was about a matter of public concern. *See, e.g., Philadelphia Newspapers, Inc.*, 475 U.S. at 777.

Dallas 1999, pet. denied) (holding that a story criticizing work habits of judges was a matter of public concern); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (holding that article concerning private figure's links to organized crime and allegations that some of those links had been used to influence the State's governmental processes was a matter of public concern). Even a publication concerning a matter of personal concern may also be a matter of public concern. *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 463-65 (5th Cir. 1990) (holding that the speech constituted a matter of public concern because the allegations of police misconduct brought attention to matters beyond purely personal interest); *Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998) (although the publication was a matter of personal interest, "[t]he integrity of and tampering with criminal histories are important to effective law enforcement and certainly a matter of public concern").

Plaintiff also attempts to explain away the United States Supreme Court's mandate that context is essential (regardless of status as a private plaintiff) to determine whether a statement is rhetoric, opinion or hyperbole by diverting attention to whether Cisco's opinion of the Eastern District of Texas is relevant rather than whether Albritton's participation in that debate is relevant. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (rhetorical hyperbole is constitutionally protected to provide "assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation"); *See also Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir.1987) ("[c]ontext can be determinative that a statement is opinion and not fact," especially when "the surrounding circumstances of a statement are those of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters"); Robert D. Sack, Sack on Defamation § 2.4.7, p. 2-47 (3d ed. 2005) (Where

insults occur in discourse about political issues, courts are particularly likely to dismiss them as nonactionable rhetorical hyperbole or opinion because they will probably be understood that way and to insure protection of vigorous political speech).  Albritton's participation in the public debate, even as a private figure, is therefore relevant to whether the complained-of statements are rhetoric or hyperbole.

The context of the debate is also relevant to Plaintiff's claim for actual malice and punitive damages.  Plaintiff has repeatedly referred to an alleged political agenda on Cisco's part as evidence of actual malice and will likely claim the same with respect to punitive damages.  The fact that Albritton was lobbying on the same issue in opposition to Cisco is certainly relevant to this issue.  For these reasons, the Court should deny the Motion.

**8.      Response to Motion in Limine No. 7.**

With respect to Motion No. 7, Defendants would clarify that Defendants should be permitted to offer evidence of truth of the complained-of statements, even if that subject has some relation to Albritton's character, without approaching the bench.  *See* TEX. CIV. PRAC. & REM. C. § 73.005.  Moreover, if the Court permits Albritton to introduce evidence of Albritton's character, the Court should not prevent the Defendants from introducing opposing evidence.  *See* FED. R. EVID. 405, 608.

**9.      Conclusion**

For these reasons, Defendants request that the Court deny Plaintiff's Motions in Limine or modify the order as set forth herein.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ *Charles L. Babcock*
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE MCWILLIAMS, P.C.

    */s/ George L. McWilliams*
By:  *by permission Charles L. Babcock*
    George L. McWilliams
    Texas Bar No: 13877000
    GEORGE L. MCWILLIAMS, P.C.
    406 Walnut
    P.O. Box 58
    Texarkana, Texas 75504-0058
    (903) 277-0098
    (870) 773-2967––Fax
    Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of March, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
Attorney for Defendant Richard Frenkel

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
Attorney for Plaintiff Eric Albritton

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
Attorney for Plaintiff Eric Albritton

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
Attorney for Plaintiff Eric Albritton

*/s/ Charles L. Babcock*
Charles L. Babcock