IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON | § § § | |
| v. | § § | C. A. NO. 6:08-CV-00089<br>JURY |
| CISCO SYSTEMS, INC. and<br>RICK FRENKEL | § § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
CISCO'S MOTION FOR ENTRY OF NON-WAIVER ORDER**

TO THE HONORABLE COURT:

Defendants Cisco Systems, Inc. ("Cisco") and Richard Frenkel ("Frenkel"), (collectively, "Defendants") hereby file this Reply to Plaintiff's Opposition to Cisco's Motion for Entry of Non-Waiver Order and respectfully show the Court:

## I. INTRODUCTION

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law" and "promote[s] the broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). In an effort to cooperate in discovery in this matter, Defendants agreed to produce privileged documents provided that the privilege and confidentiality of the documents be protected. Plaintiff agreed and signed three separate agreements to that effect.

Cisco's desire to keep these documents privileged and confidential is simply to prevent a waiver of privilege in the ongoing ESN litigation.

Despite having explicitly agreed to maintain the strictest of confidentiality with respect to Cisco's privileged documents and despite having entered into **two** separate non-waiver

agreements all in order to induce Cisco to produce its privileged documents concerning a pending lawsuit, Plaintiff now argues that this Court should ignore the parties' agreements.

Plaintiff's arguments fail for several reasons. First, the Court should enter the Non-Waiver Order simply to effectuate the parties' agreement. *See* FED. R. EVID. 502(d), (e). Moreover, there is no countervailing reason not to enforce the parties' agreement. Plaintiff has not cited and Defendants cannot locate any case since the amendment of Rule 502 that has held a non-waiver agreement between parties to be unenforceable or that would provide any reason for the Court not to enter such an order. Rule 502 is intended to apply to just this situation: "Parties need to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable." Advisory Committee Notes to Rule 502.

For these reasons and the reasons set forth below, the Court should grant Defendants' Motion.

## II. ARGUMENT AND AUTHORITIES

### A. Rule 502 of the Federal Rules of Evidence is intended to apply to exactly this situation (Reply to Response at pp. 2-5).

Plaintiff incorrectly states that the Court may not enter an order protecting the privileged documents because "FRE 502 allows for an order of non-waiver in the event of *inadvertent* disclosure, but not for intentional disclosure," citing no law for this position. In fact, Rule 502(d) specifically provides that "A Federal Court may order that the privilege or protection is not waived *by disclosure* connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other Federal or State proceeding." FED. R. EVID. 502(d) (emphasis added). Rule 502(e) further states that an agreement on the "effect of disclosure" in a

Federal Proceeding is binding on the parties to the agreement. Unlike 502(a), neither 502(d) nor 502(e) is limited to "inadvertent" disclosure. The Advisory Committee notes state that the rule "seeks to provide a predicable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection. Parties need to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable."

This is exactly what Defendants sought to do in this case. Plaintiff's response reveals its intent to cause a wide-reaching subject-matter waiver concerning privileged matters in the ESN litigation, which is still pending, despite the fact that Plaintiff explicitly agreed not to do so. Nor does Rule 502 require a "showing of harm" to Defendants as alleged by Plaintiff. Quite simply, the Rule permits the Court to bind others to the same agreements that Plaintiff and Defendants have already agreed to.

**B.    The parties agreed that there would be no waiver in exactly this situation (Reply to Response at pp. 2-5).**

Plaintiff misrepresents the parties' non-waiver agreements as relating only to discovery. In fact, the agreements themselves demonstrate that Defendants were making every effort to protect the privilege while still being cooperative in discovery.

Plaintiff agreed that, with respect to the documents at issue:

> The parties agree that the production of documents does not constitute a subject matter or other waiver of privilege or work product protection as to other documents or information, and further the parties agree that they will not argue waiver of privilege or work product protection of other documents or information based on documents produced.

(Exhibit A). Plaintiff further agreed:

> Eric Albritton **agrees… not to move to de-designate [as Highly Confidential under the Protective Order]** (1) any documents that were the subject of

Plaintiff's Motion Challenging Designation of Certain Documents as Confidential or to Modify the Protective Order ("the Motion") and (2) any documents that are the subject of this agreement. In exchange, Cisco agrees to produce the following documents within three business days with the redactions indicated below. Eric Albritton expressly agrees that all of **the following documents will be treated as privileged and are being produced as Highly Confidential documents pursuant to the Protective Order** entered in this case because of the unique nature of this case.

(Exhibit B) (emphasis added). Neither of these agreements is limited to discovery as alleged by Plaintiff.

Plaintiff's attempt to now allege waiver after explicitly agreeing not to do so to induce Defendants to produce privileged documents is egregious and a contravention of Rule 11. Plaintiff cannot argue that the production of the documents at issue waived the privilege because Plaintiff explicitly agreed that production would not cause a waiver. *See* FED. R. EVID. 502(e) (an agreement on the effect of disclosure is binding on the parties). Plaintiff's citations to case law before Rule 502 was enacted are irrelevant. Plaintiff is estopped from claiming waiver because he expressly agreed not to. *Id.*[1]

**C.  The Protective Order in this case is tailored specifically to address privileged documents (Reply to Response at pp. 8-9).**

Defendants did not rely on a "blanket" protective order as alleged in the Response (p. 8-9), but rather entered into a protective order that was specifically designed to protect the privileged documents at issue. The parties specifically addressed the need for a protective order to protect the privilege at issue in this case in the initial hearing before Judge Schneider. (Transcript, Docket No. 15 at p. 16-19). In response to the parties' concerns, Judge Schneider entered a protective order specifically tailored to this issue that same day. (Docket No. 13). The

---

[1] Plaintiff's claim that the documents Defendants seek to remain confidential are "unspecified," yet the privileged documents have been clearly logged and/or produced with a stamp identifying privilege. To the extent the Court desires clarification of which documents are at issue, Defendants are happy to do so.

order specifically states that "the parties may designate extremely sensitive proprietary "Confidential" information as "Highly Confidential," including "privileged documents." (Docket No. 13 at p. 3). Pursuant to the Protective Order, Highly Confidential documents may only be viewed by a party's counsel of record (including their staff), Eric Albritton, and in-house attorneys and a few other limited individuals. (Docket No. 13 at p. 3-4). This is a far cry from the inapposite cases relied on by Plaintiff.

## D. Plaintiff would not be harmed by an entry of the order.

Plaintiff relies on case law holding that a party may not use privilege as a sword and a shield; it may not produce the privileged documents that support its case while hiding the ones that don't support its case. Yet none of these cases deal with maintaining confidentiality of documents, which is what Defendants seek to do here. These cases simply don't apply in this case where the issue is protecting the confidentiality and privilege of documents that have already been produced and that may be used at trial.[2]

Plaintiff implies that an entry of a non-waiver order would prevent him from using relevant documents in this case. That is simply untrue. As Plaintiff admits, Defendants have produced the relevant, privileged documents (including the relevant documents that Plaintiff claims support his position) in this matter pursuant to agreements and have not sought to prevent Plaintiff from using those documents in Plaintiff's case; Defendants merely seek an order that would prevent waiver of the privilege that Plaintiff has already agreed to maintain. The jury would be permitted to review the documents at issue and testimony related to those documents.

---

[2] Even if on point, the cases would not apply. Defendants did not merely produce documents that support its position, but also produced documents (pursuant to the same non-waiver agreements and Protective Order) that Plaintiff claims support his position. Indeed, Plaintiff's actual malice argument in its motion for summary judgment relied heavily on privileged documents. (Docket No. 112 at pp. 31-36).

Plaintiff's allegations of any harm are mere sophistry. Such allegations are not even a proper consideration. Neither the case law cited nor Rule 502 mention the Plaintiff's publicity concerns as a factor for the Court to consider. Plaintiff <u>agreed</u> on <u>multiple occasions</u> to maintain the privilege and confidentiality of the documents at issue to induce Defendants to produce them. Tellingly, Plaintiff doesn't argue how it seeks to use the privileged documents at trial and why public disclosure of the privileged documents is important (other than the impermissible uses stated below).

E. **Plaintiff has made no showing to overcome his own agreements in this case.**

Plaintiff's only argument that the documents should be disclosed[3] is that the public has a right of access to the records. Plaintiff has made no showing that the public should have any right to access the privileged documents in this case. Judge Schneider has already recognized that there is a sufficient interest to maintain the confidentiality of this case; he entered the Protective Order in this case that specifically protects privileged documents. Similarly, this Court issued its order on the parties' Motion for Summary Judgment under seal even though it did not reference privileged matters.

Plaintiff cites to no case law holding that the public's desire for access (which Plaintiff has offered no evidence of) should override the parties' express agreements to maintain the privilege and confidentiality of documents. Instead, Plaintiff relies on inapposite case law. Plaintiff relies chiefly on *In re Sealing and Non-Disclosure of Pen/Trap/2703(D) Orders*, 562 F. Supp. 876, 894 (S.D. Tex. 2008). In that case, the Court acknowledged that, with respect to electronic surveillance orders, "a temporary sealing order of some duration will almost always be necessary" but should "last only so long as the underlying investigation is alive." *Id.* The Court

---

[3] Plaintiff's other arguments are that the documents are no longer privileged, which he expressly agreed not to do.

noted that the Court should look for the most restrictive alternative, such as redacting, rather than sealing the entire file. *Id.* That is exactly what Defendants have requested—an order preventing disclosure of privileged information that restricts only the publics' access to the privileged documents while offering free access to all other parts of the trial.

Another case cited by Plaintiff, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), held that the Court of Appeals "erred in reversing the District Court's decision not to release the tapes in its custody," even where the tapes had great historical significance. In that case, the Court held that the right of access rests on the public's right to information regarding matters such as "the citizen's desire to keep a watchful eye on the workings of public agencies… and in a newspaper publisher's intention to publish information concerning the operation of government." *Id.* The Court noted that the right of access is not absolute but rather:

> has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case.' *In re Caswell*, 18 R.I. 835, 836, 29 A. 259 (1893). Accord, *e. g., C. v. C.*, 320 A.2d 717, 723, 727 (Del.1974). See also *King v. King*, 25 Wyo. 275, 168 P. 730 (1917). Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, *Park v. Detroit Free Press Co.*, 72 Mich. 560, 568, 40 N.W. 731, 734-735 (1888); see *Cowley v. Pulsifer*, 137 Mass. 392, 395 (1884) (per Holmes, J.); *Munzer v. Blaisdell*, 268 App.Div. 9, 11, 48 N.Y.S.2d 355, 356 (1944); see also *Sanford v. Boston Herald-Traveler Corp.*, 318 Mass. 156, 158, 61 N.E.2d 5, 6 (1945), or as sources of business information that might harm a litigant's competitive standing, see, *e. g., Schmedding v. May*, 85 Mich. 1, 5-6, 48 N.W. 201, 202 (1891); *Flexmir, Inc. v. Herman*, 40 A.2d 799, 800 (N.J.Ch.1945).

*Id.* Plaintiff cites to no reason for disclosure of the confidential information at issue other than these very uses. Indeed, Plaintiff has all but admitted that it is seeking to obliterate the privilege so that the documents may be used in another defamation lawsuit pending in Arkansas (Plaintiff's counsel represents the Plaintiff in that action) so that the plaintiff in that case does not

have to maintain the confidentiality of the documents, so that the documents can be used against Cisco in the ESN case itself, which is still pending, and so that Plaintiff can attempt to use the documents as a smear campaign against Cisco. Not one of these reasons relates to any public concern about the workings of public agencies or the operation of government, or any other public concern. Instead, Plaintiff seeks to gratify private spite or promote public scandal by use of the privileged documents, a use expressly prohibited by the very cases relied on by Plaintiff. *See id.*

Another case cited by Plaintiff holds that there is a presumptive right of access to **criminal** trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). In *Richmond Newspapers*, the Court noted that criminal trials had historically been open and that an open criminal trial has an important community therapeutic value—"When a shocking crime occurs, a community reaction of outrage and public protest often follows." These factors simply don't apply in a civil trial. They certainly don't apply to the limitation of disclosure of privileged information.

Plaintiff cites to no cases showing a right of access to privileged documents. The privileged material does not relate to a criminal trial, or the workings of public agencies, nor the government. Moreover, the countervailing public interest would override any public interest that might exist; the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Courts have protected the privilege "to encourage full and frank communication between attorneys and their clients and ***thereby promote broader public interests*** in the observance of law and administration of justice." *Id.* at 389 (emphasis added). Permitting Plaintiff to use the documents at issue while shielding the privilege strikes a perfect balance in this case. *See Woven*

*Electronics Corp. v. Advance Group, Inc.*, 930 F.2d 913 at *6 (4th Cir. 1991) (holding that closing the courtroom during times when trade secrets were to be exposed would have been proper and that a sealing of only the confidential portions "strikes an appropriate balance between the public's right of access to judicial records and proceedings and the parties' legitimate interest in the protection of sensitive proprietary information.")

For these reasons, Defendants request that the Court grant it Motion for Entry of a Non-Waiver Order and enter the Non-Waiver Order.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ *Charles L. Babcock*
Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE MCWILLIAMS, P.C.

By: /s/ *George L. McWilliams*
*by permission Charles L. Babcock*
George L. McWilliams
Texas Bar No: 13877000
GEORGE L. MCWILLIAMS, P.C.
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
(903) 277-0098
(870) 773-2967—Fax

Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of March, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
Attorney for Defendant Richard Frenkel

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
Attorney for Plaintiff Eric Albritton

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
Attorney for Plaintiff Eric Albritton

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
Attorney for Plaintiff Eric Albritton

/s/ Charles L. Babcock
Charles L. Babcock