# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § | |
| | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | No. 6:08cv00089 |
| | § | |
| **CISCO SYSTEMS, INC. RICHARD** | § | |
| **FRENKEL, MAULLUN YEN and** | § | |
| **JOHN NOH,** | § | |
| | § | |
|     Defendant | § | |

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF NON-WAIVER ORDER

## I. Introduction

The Reply intentionally avoids mentioning the actual relief Cisco seeks from this Court. To be clear, Cisco asks this Court to ***close its courtroom to the public and to seal the record*** so that it is forever shielded from public view. *See* Docket Entry No. 186 (proposed order stating that "Cisco's privileged and/or work-product material not be mentioned in open court nor filed of public record.").

Cisco seeks an extraordinary remedy. Albritton's opposition demonstrated that there is a strong presumption in favor of the public's common law and First Amendment right of access to judicial records and proceedings. To justify sealing the record, Cisco must make a particularized showing that the evidence at issue, if made public, would cause grievous harm to Cisco. Albritton pointed out that Cisco offered ***no evidence*** of harm—let alone severe harm. Cisco has not provided a single affidavit (or any other evidence) concerning the harm that would befall it if the already produced documents are used publicly at trial. In reply, Cisco has chosen to remain silent both as to the demanding burden it must meet and its failure to prove harm. Cisco's silence speaks volumes about the merit (or lack thereof) of its motion.

The Reply evades the central issue altogether, seeking instead to convince the Court that Albritton has already agreed to the relief Cisco seeks. But the factual premise of Cisco's argument is wrong; Albritton never agreed to limit the use of Cisco's documents ***at trial***, let alone agreed to closed court proceedings. Because the factual foundation upon which Cisco's argument is based is mistaken, its entire argument collapses. Even if Cisco's argument had merit (and it doesn't) nothing in the parties' agreements can compensate for Cisco's failure to make the particularized showing required before this Court can close the trial to the public. Cisco utterly fails to justify its request for secret court proceedings and its motion should be denied.

## II. Argument

### A. Cisco Ignores The Strong Showing It Must Make To Close The Courtroom

A closed courtroom and sealed record is an exceptional remedy reserved for cases in which disclosure of evidence would work a significant harm to the disclosing party. Albritton

1

cited cases (ignored in Cisco's reply)[1], holding that a district court's discretion to seal the record of civil judicial proceedings "is to be exercised charily." *Macia v. Aaron Rents, Inc.*, 288 Fed. Appx. 913, 915-916 (5th Cir. 2008); *see also In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d. 220, 230 (5th Cir. 2008)*; Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

Before this Court can grant Cisco's motion, it must make an independent determination of the merits of Cisco's argument regardless of any party agreement or protective order in this case. This Court must find that particular documents Cisco seeks to seal are in fact privileged, that the privilege claimed for those documents is intact and has not been waived, and that Cisco would be severely harmed by public disclosure of the identified documents. The Court must then weigh those considerations against the public's right to open judicial proceedings. Only if this Court makes a specific finding that the harm to Cisco is so severe that it justifies overriding the First Amendment guarantees of access to public judicial proceedings should this Court even consider the relief Cisco seeks in its motion.

The Reply fails to provide the Court with any of the information it needs to evaluate Cisco's exceptional request. Cisco did not identify the exhibits it seeks to place under seal. Nor

---

[1] Albritton cited over twenty cases in support of his argument. The Reply chooses to address only three. Cisco seeks to turn the holding in *In re Sealing and Non-Disclosure Order*, 562 F. Supp. 2d 876, 894 (S.D. Tex. 2008) to its advantage by arguing that in that case, the Court acknowledge that, with respect to electronic surveillance orders, a temporary sealing order of some duration will almost always be necessary. *See* Reply at 6. It is hard to see how Cisco thinks that case supports its cause. Cisco is not asserting that an electronic surveillance order is implicated in this case. If it were, then the government's need to finish an ongoing investigation may provide proof of harm. But Cisco is not the government, it is not in the process of conducting electronic surveillance that can be compromised by the disclosure of its communications, and it is not seeking an order that is limited in time. Instead, Cisco seeks perpetual protection of stale communications unimportant to any issue in the *ESN v. Cisco* case. Cisco uses Albritton's citation to *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) to argue that Plaintiff cites no reason for disclosure of the confidential information at issue other than for use in a smear campaign against Cisco. Reply at 7-8. Cisco is way off base. First, it is not Albritton's burden to prove that the documents should be disclosed. It is Cisco's burden to prove that the public should be excluded from the courtroom. Second, the issue here is the use of Cisco's documents *at trial*. Albritton has a legitimate need for that evidence for use during the public trial in which he seeks to restore his good name. To the extent that Cisco believes that any "smear campaign" is afoot—and it is not—the Court will be present during the presentation of the evidence and can determine for itself the proper use of Cisco's documents. Cisco's accusation about Albritton's nefarious motives is unwarranted and provides no justification for closing the courtroom to the public. Finally, Cisco distinguishes *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), on the basis that the case concerns the right of access to *criminal* trials. *See* Reply at 8. Cisco entirely ignores that the citation to *Richmond News* is followed by citation to cases holding that the First Amendment guarantees the public's right of access to *civil* trials as well. *See* D.E. 223. at 6. Cisco does not attempt to distinguish the holding in those cases. Nor does Cisco attempt to distinguish the holdings in the controlling Supreme Court and Fifth Circuit authority cited in Albritton's Response.

2

did Cisco identify expected testimony that it believes will necessitate closed proceedings. Cisco's invitation to provide that information upon the Court's request misses the mark. As the moving party, Cisco bears the burden of specifically identifying the documents it claims must be sealed along with an explanation of why those documents contain information that, if disclosed, would cause Cisco severe harm. Cisco's reference to "all documents it has designated as privileged" is insufficient, not narrowly tailored, and prevents this Court from balancing any alleged harm to Cisco against the public's right of access.

Moreover, Cisco has offered no explanation of harm. Instead, Cisco offers the Court a quote that the attorney-client privilege is "the oldest of privileges." *See* Reply at 1 and 8. With all due respect, the longevity of the attorney-client privilege is not a sufficient basis upon which to shut the public out of these proceedings. If that were the case, there would be a significant number of closed trials every year, as most cases implicate some claim of privilege. Yet, it is undeniable that closed trials are exceedingly rare. If a claim of privilege provided sufficient justification to close court proceedings, as Cisco insinuates, it should have had no difficulty in citing authority for that proposition—authority that is conspicuously absent from Cisco's briefs.

Cisco has asked the Court to grant it an exceptional remedy denied other litigants, even when the request has been agreed to by both parties. *See* D.E. 223, Attachment G (recent order by Judge Folsom refusing to close the courtroom to the public despite the parties' agreement to do so); *Prater v. Commerce Equities Mgmt. Co.*, 2008 U.S. Dist. LEXIS 98795 (S.D. Tex. Dec. 8, 2008) (the fact that an agreement contains a confidentially provision is an insufficient interest to overcome the presumption that a judicial record should be open to the public). Cisco has asked the Court for that remedy without making any showing that it is entitled to the relief it seeks. Cisco's request that the Court grant its motion on this record invites legal error. *See In Sealing &Non-Disclosure*, 562 F. Supp. 2d 876, 894 (S.D. Tex. 2008), citing *In re High Sulfur*, 517 F.3d at 230. For that reason alone, the Court should deny Cisco's motion.

B. The Parties' Discovery Agreement Does Not Cover The Use Of Cisco's Documents At Trial

Because Cisco cannot meet its burden of demonstrating that the courtroom should be sealed whenever one of its designated documents is used in evidence, the reply attempts to reframe the issue, arguing that the Court should enter an order "effectuating" the parties' agreement. Reply at 2. The Reply ignores a very important fact about the scope of the parties' agreement--***Albritton <u>never</u> agreed to limit the use of Cisco's documents at trial.*** The Reply quotes the agreement, but then, unexplainably, fails to acknowledge that the language quoted is limited to "documents produced" and was drafted to prevent Albritton from seeking to compel the production of other unproduced Cisco documents. The agreement reads:

> "The parties agree that their ***production of documents*** does not constitute a subject matter or other waiver of privilege or work product protection ***as to other documents or information***, and further the parties agree that they will not argue waiver of privilege or work product protection ***of other documents*** or information ***based on documents produced***."

*See* Reply Exh. A (emphasis added). The agreement, by its very terms, states that Albritton will not argue that Cisco's ***production*** of some documents triggered a subject matter waiver requiring the production of other documents. The agreement does not address substantive non-production waivers (like Cisco's use of its own documents as both a sword and shield triggering an implied waiver) nor does it address the use of Cisco's documents *at trial*. Cisco's attempt to masquerade a narrow document production agreement as a pledge by Albritton to forgo public vindication of his good name demonstrates the hopelessness of its cause.

The email cited in Cisco's reply is also inapposite. In that document, Albritton agreed not to move to de-designate Cisco's documents and to treat all of Cisco's designated documents as highly confidential under the protective order. Albritton did not move the Court to de-designate documents, and Cisco's ability to claim its documents were privileged (whether or not its claims were valid) remained unchecked during discovery. Albritton treated Cisco's documents as required under the protective order. But nothing in that document evidences an agreement by Albritton that Cisco is entitled to closed court proceedings. In fact, the protective

4

order in this case expressly states that the order governs "discovery and the pretrial stage of this litigation" and that the use of confidential information *at trial* falls outside of the agreed protective order. *See* D.E. 13 at ¶ 11. The parties added a handwritten provision to the protective order allowing the Court to override the parties' discovery agreement. *See id*. Cisco's opening brief acknowledged this very fact stating "[a] Protective Order has already been entered in this case to deal with privilege and work-product materials, ***but the order expressly reserves the issue of use of confidential and privilege or work-product documents at trial***." *See* D.E. 186 at 1, ¶ 2. The Reply's argument, which is inconsistent with the admission provided in its opening brief, is meritless.

The Reply also takes issue with Albritton's characterization of the protective order in this case as a "blanket protective order." *See* Reply at 4. Cisco argues that because the parties agreed to a protective order that specifically addresses Cisco's "privileged" documents, the protective order is narrowly tailored to provide Cisco with absolute protection from disclosure. Cisco's argument is puzzling. Just because the parties drafted a protective order containing language covering privileged communications doesn't mean that Cisco's designation of documents pursuant that order has been sanctioned by the Court. Here, the opposite is true. Cisco had carte blanche to designate documents under the protective order, without any requirement for court approval before documents were filed under seal, let alone a specific finding by the Court that Cisco's claims of privilege are valid. Because the parties' discovery agreement prevented Albritton from challenging Cisco's designations, in this case Cisco's claims of privilege have not even been policed by Albritton's counsel. The protective order does not address the use of documents *at trial*, let alone dictate that this Court should elevate Cisco's untested designations over the public's (and Albritton's) right to open court proceedings.

The Reply also argues that Cisco has been duped into producing its documents and that it is now unfair that those documents will be used at trial. Cisco's disingenuous cries of foul play and its unprofessional reference to Rule 11 are unnecessary and unwarranted. *See* Reply at 4. Albritton did not falsely "induce" Cisco to produce privileged documents, as Cisco now claims.

5

The discovery agreement at issue was negotiated in good faith after Albritton filed a motion to de-designate documents that Cisco was withholding as privileged. To avoid responding to Albritton's motion, Cisco agreed to produce certain documents. In return, Cisco sought an agreement from Albritton that Cisco's ***production*** would not be used as the basis for arguing that Cisco had waived privilege as to other unproduced documents. The parties' agreement allowed Cisco to avoid a possible ruling by this Court requiring it to produce documents that it couldn't hide from public view via the blanket protective order in this case. Albritton agreed that he would treat Cisco's documents as "highly confidential" under the protective order in return for getting Cisco's documents early in the case. What Albritton did not agree to was to limit his use of Cisco's documents ***at trial***. Nor did Cisco seek protection for the use of its documents at trial, although it surely knew at the time that it would be relying on documents it chose to produce to Albritton to defend itself in this case. Cisco's name calling aside, the fact that the relief Cisco now seeks was not negotiated during discovery and was specifically carved out from the discovery agreement is not evidence of bad faith. It is evidence that the parties never intended the discovery agreement to cover the use of documents at trial.

C. <u>Federal Rule of Evidence 502 Does Not Preclude The Use of Cisco's "Privileged" Documents</u>

Cisco again builds upon the false premise that the parties' discovery agreement covers documents used at trial to argue that Federal Rule of Evidence 502 controls the issues before this Court. Reply at 3. Cisco's reliance on Rule 502 is misplaced because that Rule does not provide the unreasonably broad protection Cisco seeks.

First, to the extent that Cisco argues that Rule 502 permits this Court to enforce the parties' agreement, Cisco has admitted that the agreement ***does not apply to the use of documents at trial***. *See* D.E. 186 at 1. Thus, the entry of an order consistent with the parties' agreement would necessarily be limited to the ***production*** of documents during discovery in this case. Cisco argues that Rule 502 "permits the Court to bind other parties to the same agreements that Plaintiff and Defendant have already agreed to." *See* Reply at 3. Again, any such order

6

would necessarily be limited to preventing a waiver of privilege based on Cisco's ***production of documents in this case*** because that is the scope of the parties' agreement.

Second, Cisco's insistence that this Court can enter an order that would forever cloak its documents with an impermeable shield of privilege evidences a clear misreading of Rule 502. Rule 502 does not permit the Court to enter an order dictating that Cisco's claims of privilege can never be challenged. When a party makes disclosures in separate proceedings, as Cisco has done in the Ward and ESN cases, Rule 502 provides no protection for waivers triggered by those disclosures. As the drafters of that Rule noted, FRE 502(d) "does not allow the federal court to enter an order determining the waiver effects of a separate disclosure of the same information in other proceedings, state or federal." *See* Committee Notes to FRE 502(d).

Here, Cisco seeks an order from this Court directing Judge Hendren in the Western District of Arkansas, who is presiding over the *Ward v. Cisco* litigation, that documents Cisco produced in this case are privileged. Cisco's request cannot be supported by Rule 502, which permits Judge Hendren to decide for himself whether Cisco's documents are privileged and, if so, whether there has been a substantive waiver. Moreover, no such order is necessary. Just yesterday, Judge Hendren ruled that because Cisco has argued that Frenkel acted in good faith, in part, by relying on communications with counsel, Cisco's claims of privilege have been waived. *See Ward v. Cisco*, Western District of Arkansas, case number 4:08-cv-04022-JLH, D.E. #60, at 7-8. Judge Hendren's Order means that the exceptional relief that Cisco seeks in this case is unnecessary because Cisco's documents will be produced in the *Ward v. Cisco* case.

Nor is a non-waiver order necessary to protect Cisco against the disclosure of documents in the *ESN v. Cisco* litigation pending before Judge Folsom. As Albritton argued in his Response, the documents at issue in this case concern a venue matter that has long been resolved. *See* D.E. 223 at 9, citing *In re Sealing & Non-Disclosure*, 562 F. Supp. 2d at 895 (publicity will not threaten the integrity of a proceeding that is no longer active.). The Reply makes no legitimate attempt to refute Albritton's argument that the venue issue in the *ESN* case is stale, and that documents concerning that issue do not threaten the integrity of the *ESN v. Cisco*

7

proceedings where Cisco has long since stipulated to venue in the Eastern District of Texas. Cisco's feeble reliance on the ESN case to manufacture a need to protect its documents from disclosure doesn't come close to overriding the strong presumption in favor of open judicial proceedings.

Third, Cisco's insistence that Rule 502 mandates that no disclosure of Cisco's privilege documents be had in this case for any reason is an improper reading of the Rule. Cisco argues that because Albritton agreed not to seek a subject matter waiver based on Cisco's ***production*** of documents, he is forever precluded from arguing any kind of ***substantive*** waiver. Cisco's argument fails to make an important analytical distinction between the waiver that can occur during ***discovery*** when privileged documents are produced (covered by Rule 502) and the ***substantive*** law of waiver, which prevents Cisco from using its claims of privilege as both a sword and a shield (expressly excluded from Rule 502).

The two waiver arguments that Cisco lumps together are separate and distinct. The parties' non-waiver agreement is limited to Cisco's ***production*** of documents. Albritton agreed to forgo arguing that Cisco's ***production*** of documents triggered a subject matter waiver as to other unproduced Cisco documents. That discovery agreement is subject to Rule 502. Albritton has complied with the parties' discovery agreement and has dutifully filed all pleadings citing Cisco's privileged documents under seal. There is no need for this Court to enter an order directing Albritton to comply with an agreement that he has honored.

Separate and apart from the parties' discovery agreement, in response to Cisco's insistence on closed courtroom proceedings, Albritton argued that Cisco's ***post-discovery*** actions triggered a ***substantive*** waiver of any privilege that Cisco previously asserted. After discovery closed in this case, Cisco waived any privilege it may have had by affirmatively relying on its privilege documents in its defense. *See* D.E. 223 at 4-5, Attachments C-E. Cisco argues that the parties' discovery agreement can be expanded by Rule 502 to prohibit the finding of ***any*** subject matter waiver, ever. But Rule 502 addresses production waivers only. That Rule expressly states that it is not intended to ***supplant applicable waiver doctrine generally***. *See* Fed. R. Evid.

8

502 committee notes, introductory remarks (emphasis added). Rule 502 provides no protection against the type of shield and sword waiver Cisco has trigged in this case. *See id*. ("The rule governs only certain waivers by disclosure. Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product."), citing *Nguyen v. Excel Corp*., 197 F.3d 200 (5th Cir. 1999) (reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense); *Ryers v. Burleson*, 100 F.R.D. 436 (D.D.C. 1983) (allegation of lawyer malpractice constituted a waiver of confidential communications under the circumstances).

The Reply also unconvincingly argues that the Court should ignore case law cited by Albritton holding that a party cannot use its privileged documents as both a sword and a shield because "none of those cases deal with maintaining confidentiality of documents, which is what Defendants seek to do here." Reply at 5. Cisco's argument is nonsensical. Cisco cannot seriously contend that it can avoid waiver because it only seeks to improperly assert privilege for some of its evidence, but not all. Where a party has sought to use its claims of privilege to shield evidence, but at the same time relies on the same evidence to benefit its case, fairness dictates that claims of privilege give way to permit both parties full access to evidence, ensuring a fair accounting of events. This is the same argument that Judge Hendren found persuasive in the Ward case. That rule applies whether the waived claim of privilege implicates a single document, multiple documents, documents and testimony, or all evidence of record. Not surprisingly, Cisco has provided no case authority for its "documents only" argument.

Cisco also inexplicably argues that its reliance on privilege documents for evidence at trial does not implicate a sword and shield type of waiver where "Cisco did not merely produce documents that supported its position, but also produced documents that supported Albritton's claims of malice." *See* Reply at 5. Cisco's broken logic is apparent. The fact that Cisco is—as it admits—relying on its own privileged documents in its defense is sufficient to trigger a waiver of privilege, irrespective of whether or not Albritton also benefits from the use of those documents. It is ***Cisco's reliance*** that triggers the waiver, not Albritton's. Having put its

9

documents at issue in this case, Cisco cannot now be heard to complain when they are used publicly at trial over its unsupported claims of privilege.

Cisco would have this Court read into Rule 502 a requirement that Cisco's claims of privilege be forever preserved, unchallenged, and untested, despite the fact that the parties' agreement was limited in scope to the production of documents, and despite the fact that Cisco is relying on the same documents to support its case. Rule 502 comes nowhere close to providing the iron clad protection Cisco seeks.

### D. Albritton Will Be Prejudiced If Cisco Succeeds In Closing The Courtroom To The Public

The Reply argues that Albritton will not be harmed by Cisco's request for a non-waiver order because he can still use the documents at trial. Cisco has intentionally omitted the word "public" from its statement. Albritton will be harmed by not having a *public* trial. This is a defamation case, and Albritton seeks to have the truth aired to the very public in which he was defamed. Albritton's counsel anticipates that the documents at issue will be used extensively at trial. Albritton's counsel should not be put to the Hobson's choice of either preparing witness examinations that must proceed in an order dictated by the use of Cisco's documents, or face disruption to the presentation of Plaintiff's case each time Albritton's counsel takes up a new line of questions that impacts the subject matter of one of Cisco's documents. Albritton's counsel should not be forced to stop witness answers mid-sentence in the event that they include a reference to Cisco's documents so that the Courtroom can be closed. Although it is Cisco that bears the burden of showing harm to prevail on its motion—not Albritton—the harm to Albritton strongly counsels against granting Cisco's motion.

### III. Conclusion

For all of the foregoing reasons, and for those stated in Albritton's Opposition Brief (D.E. 223), Albritton respectfully requests that Cisco's motion be DENIED.

Respectfully Submitted,

*/s/ Nicholas H. Patton*
Nicholas H. Patton
TX Bar No. 15631000
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)


Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
Cal Bar No. 206440
5901 Christie Ave., Suite 201
Emeryville, California 94608
Telephone: 510-268-8033

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 31st day of March 2009.

*/s/ Nicholas H. Patton*
Nicholas H. Patton