## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **No. 6:08cv00089** |
| | § | |
| **CISCO SYSTEMS, INC. and RICHARD** | § | |
| **FRENKEL** | § | |
| | § | |
| **Defendants** | § | |

## PLAINTIFF'S BRIEFING AND ARGUMENT IN SUPPORT
## OF HIS PROPOSED JURY INSTRUCTIONS

Dockets.Justia.com

**Introduction:**

Per the parties' agreement, Plaintiff submits the following briefing and argument in support of his proposed jury instructions.

**Plaintiff's Contentions**  (page 7 of the parties' joint proposed jury instructions).

Plaintiff's contentions are just that, contentions. They are intended to inform the jury of Plaintiff's view of the case. Defendants' objection is an improper effort to shape and control Albritton's contentions.  Defendants' objection is littered with factual inaccuracies and plainly distorts the record.

First, Mallun Yen and Jon Noh's conduct is relevant to whether and to what extent Defendant Cisco is liable.  The Court ruled that Yen and Noh's actions were not <u>independently</u> actionable under a civil conspiracy theory.  Setting aside Plaintiff's disagreement with that ruling,[1] the Court made no ruling regarding whether Yen and Noh's conduct could be considered by the jury in determining <u>Cisco's</u> liability.  As a corporation, Cisco can only act through its employees.  To determine whether Cisco is liable to Albritton for punitive damages, the jury is entitled to evaluate Cisco's conduct—which necessarily means the conduct of those persons acting on its behalf, including Frenkel, Yen and Noh.  Cisco has admitted that Frenkel, Yen, and Noh were acting within the course and scope of their employment at Cisco when they participated in the dissemination of the Troll Tracker posts.  *See* D.E. 19 at ¶ 38.  Cisco cannot

---

[1]     As discussed in the summary judgment briefing, Plaintiff contended that Yen and Noh are liable to Albritton not under a civil conspiracy theory, but under an aiding and abetting theory and the doctrine that:

> Anyone who commands, directs, advises, encourages, procures, controls, aids, or abets a wrongful act by another, is regarded by the law as being just as responsible for the wrongful act as the one who actually committed it. *Francis v. Kane*, 246 S.W.2d 279, 281 (Tex.Civ.App. -- Amarillo 1951, no writ); *Grandstaff v. City of Borger*, 767 F.2d 161, 168 (5th Cir.1985), cert. denied, 480 U.S. 916, 107 S. Ct. 1369, 94 L. Ed. 2d 686 (1987) (applying Texas law). *See generally* Keeton, Prosser and Keeton on Torts 323 (5th ed. 1984).

*Stein v. Meachum*, 748 S.W.2d 516, 518-519 (Tex. App. Dallas 1988).

now be heard to complain when the conduct of the employees who were working on its behalf to defame Albritton is considered by the jury.

To determine whether Frenkel's malice may be attributed to Cisco for purposes of punitive damages, the jury will also be asked, *inter alia*, whether Cisco's managers or vice principals authorized, ratified or approved his conduct. In this case, Cisco's defamation of Albritton arose as a direct result of Yen and Noh's request that Frenkel publish an article on his Troll Tracker Blog to create a news story about the ESN matter. The posting was subsequently approved and ratified by Yen and Noh. The undeniable facts of this case demand that the jury be instructed that Yen and Noh's conduct is relevant—not to hold them accountable as <u>individual</u> defendants—but as evidence that the jury can consider in determining <u>Cisco's</u> liability.

Second, Defendants continue to intentionally mislead the Court into believing that there was an "October 19th" Troll Tracker Article. No such article exists. Instead the October 18th Troll Tracker Article had two versions, one posted by Frenkel on October 18th and one posted on October 19th—that kept the October 18th date. Albritton's notice pleading identifies the "October 18th" article and discusses statements made in each, including the changes Frenkel made to the Oct. 18th articleon October 19, 2007. Further, Albritton's responses to Cisco's interrogatories clearly identify the Revised October 18th article, as does his Response and Sur-reply to Defendants' Motion for Summary Judgment. Cisco's insistence that Albritton did not plead and did not disclose the Revised October 18, 2007 post during discovery is demonstrably false. Because that article was pleaded, Cisco's belated Statue of Limitations argument is equally without merit. *See* Plaintiff's Response and Sur-reply to Defendants' Motions *in Limine* No. 5 (D.E. 202 at 12-13 and D.E. 229 at 6-7).

Defendants persist in their misguided effort to strike Plaintiff's allegations that the articles at issue are defamatory because they omit material facts and misleadingly juxtapose other facts. Defendants', in keeping with their "we'd rather strike the evidence than address it" theme argue that Albritton should be precluded from making this argument to the jury because (1) he did not plead a defamatory impression theory, (2) the Court entered an Order precluding

this theory, and (3) Albritton's interrogatory responses omitted facts regarding this theory of liability. Defendants are wrong on all fronts.

Albritton's complaint is more than sufficient to allow evidence of the false and defamatory impression of the accused articles. Federal Rule of Civil Procedure 8 requires only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Defamation by omission or juxtaposition is subsumed in the cause of action for defamation. *See Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) ("a plaintiff can bring <u>a claim for defamation</u> when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.") (emphasis added). Cisco would have the Court require more than notice pleading in this case. There is no basis in the law for requiring a heightened pleading standard in a defamation case, and Cisco has cited none.

Cisco also ignores the requirement that "[p]leadings must be construed so as to do justice." *See* Fed. R. Civ. P. 8 (e). In this case, justice requires that evidence of the false defamatory impression created by the accused posts be permitted because that evidence has been the subject of motion practice, summary judgment briefing, deposition testimony and interrogatory responses. Complaints can be amended to conform to evidence of record at any time, even after the close of evidence.

Defendants next seek to prevent the jury from deciding whether the articles at issue create a false and defamatory impression by claiming that Albritton refused to provide discovery, resulting in an order precluding Albritton from raising the issue at trial. Defendants' motion misstates the facts and the Court's ruling. First, Albritton did not refuse to provide discovery. Defendants filed a motion to compel before meeting and conferring with Albritton, not once, but twice. *See* Docket Entry 116 at 2-3. Both times Albritton agreed to provide amended interrogatory responses, but Defendants filed their motion anyway. *Id.* Then, before Albritton had an opportunity to respond to Defendants' first motion to compel, Defendants amended their

motion to drop their demand for amended interrogatory responses, asking instead that the Court limit Albritton's cause of action to the information provided in his complaint. *See* Docket Entry No. 127 at 2 (arguing that Plaintiff should be limited to statements made in his notice-pleading complaint). Although the Court granted Cisco's motion to compel, Judge Bush <u>did not grant</u> Cisco the preclusive relief Cisco sought. Rather, Judge Bush agreed with Albritton that a sanction-type order was not warranted. Judge Bush ordered Albritton to provide amended responses (which would not have been required if Cisco had prevailed on limiting Albritton's case) and then gave Cisco relief in the form of an opportunity to produce additional evidence. *See* Docket Entry No. 104. Albritton served amended responses and Cisco produced additional documents. End of story. Cisco's argument distorts the record. Judge Bush also expressly ruled that no additional briefing on this issue would be permitted. *See* Docket Entry No. 104. Undeterred, this objection asks for the same relief that it sought from Judge Bush, and he denied. Judge Bush's prior Order and his ruling that no additional argument on this issue will be permitted should be respected as law of the case.

Finally, Cisco argues that the jury should not be instructed on *per se* defamatory impression because Albritton failed to plead or disclose a viable claim of defamation by omission or juxtaposition. The baselessness of Cisco's argument can easily be shown by review of Albritton's Complaint and his interrogatory responses. Albritton took Judge Bush's admonishment to fully respond to Cisco's interrogatories to heart, and he provided a detailed thirty-page response to Cisco's interrogatories. Although Cisco's interrogatories can be literally read to require only that Albritton identify Cisco's affirmative false and defamatory statements, Albritton also included facts that were omitted and misleading. The following are some examples from Albritton's interrogatory responses:

- The October 18, 2007 post is titled "ESN convinces EDTX Court Clerk to Alter Documents To Try to Manufacture Subject Matter Jurisdiction Where None Existed.". . . "That statement [] gives the **defamatory impression** that Albritton engaged in criminal, unethical or improper conduct in his business and profession to create subject matter jurisdiction where none existed to benefit his client at Cisco's expense." *See* Exh. 5 (Albritton's Rog Responses) at 3-4

- The use of the words "conspiracy," "tons of proof" and allegations that "witnesses" and "subpoenas" would be necessary give the **false and defamatory impression** of criminal activity. *See* Exh. 5 ( Albritton's Rog Responses) at 4.

- "The October 18, 2007 post also stated that 'You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction.' That statement is false. That statement [] gives the **defamatory impression** that Albritton engaged in criminal, unethical or improper conduct in his business and profession to . . . perpetrate a fraud on the unsuspecting clerk's office to achieve his nefarious purpose." *See* Exh. 5 ( Albritton's Rog Responses) at 5.

- "The revised October 18, 2007 post also added the following statement: 'Even if this was a 'mistake,' which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing this case, the proper course of action should be a motion to correct the docket.' The statement creates the **defamatory impression** that the correction of the docket in the ESN case could not have been as a result of an error or an honest mistake, but was as previously stated, part of a conspiracy, unethical conduct, or improper conduct undertaken by Albritton. Frenkel omitted from this post the fact that Albritton and ESN claimed that the dated on the docket entry was the result of an error in the court's software. Had Frenkel included that information, the revised Oct. 18th post would have portrayed a far different meaning to the reader than Frenkel's continuing assertions of criminal and unethical conduct." *See* Exh. 5 (Albritton's Rog Responses) at 6.

The examples above are from Albritton's response to Cisco's Interrogatory No. 1. There are twenty-one more pages of responses that identify misleading and omitted facts contained in the accused posts. Cisco's insistence that Albritton failed to provide adequate interrogatory responses lacks credibility. Defendants' objection should be overruled.

**Defendants' Contentions** (page 8 of the parties' joint proposed jury instructions)

Plaintiff objects to some of the contentions Defendants' seek to include in the Court's charge to the jury.

Defendant's contentions improperly suggest to the jury that Frenkel's subjective belief of the truth of his statements is evidence of truth. If the jury determines that the accusations made by Frenkel were false and defamatory, they are actionable irrespective of Frenkel's claim that he believed them to be true. Defendants' contentions also improperly imply a higher degree of fault in this case than is warranted. The standard of fault is, at most, negligence. There jury must

decided whether Defendants took ***objectively*** reasonable steps to ensure that Frenkel's statements were true—not whether Frenkel ***subjectively*** believed them to be. To the extent that Frenkel's "beliefs" are relevant to the issue of malice for exemplary damages, Defendants' contentions should be clarified to state that Defendants' contend that Frenkel and Cisco did not act with the malice necessary to merit the award of punitive damages. Defendants' language should focus on the applicable malice standard, not the "knew at the time or acted with recklessness" standard applicable only to Constitutional "actual" malice.

Finally, as discussed more thoroughly above, Defendants' contention that "Cisco also cannot be liable for the acts of Yen and Noh" because "the Court has ruled as a matter of law that Yen and Noh are not liable to Plaintiff" is neither factually nor legally correct and therefore should not be read to the jury. The Court's summary judgment ruling found that Yen and Noh could not be individually liable under a civil conspiracy theory. From that ruling, Cisco erroneously contends that Cisco is not responsible for the acts of Yen and Noh. This, despite the fact both are admitted to have been employees acting within the course and scope of their employment at Cisco when they encouraged and authorized Frenkel to post on the ESN matter, and then ratified the post. In ruling that Yen and Noh were not liable under a conspiracy theory, the Court did not rule that their actions are not relevant to whether and the extent to which <u>Cisco</u> is liable to Albritton. Beyond that, it is improper for Cisco to inform the jury about legal rulings the Court has made regarding Yen and Noh because of the potential prejudice to Albritton.

**<u>Defendants' Proposed Instruction Regarding Anonymity</u>** (page 14 of the parties' joint proposed jury instructions)

Defendants' argue that the Court should instruct the jury that it cannot consider for any purpose <u>the fact</u> that the articles at issue were written anonymously. Through this instruction, Defendants seek to leverage the Court's credibility with the jury to inoculate Defendants from a relevant fact that Defendants' don't like, but the jury is entitled to

consider. The Court should reject Defendants' invitation to advocate on their behalf and instead simply instruct the jury on the law.

Defendants have offered the Court no Pattern Jury Instruction or any instruction given by any Court directing the jury to disregard the source of the statements at issue in a defamation case. The pattern jury instructions cited by Plaintiff apply to all defamation defendants; newspapers, television stations, and Troll Tracker websites. Defendants have no legitimate basis upon which to give Rick Frenkel his own unique jury instruction.

Defendants insist that because there is a long tradition in this country of protecting anonymous speech, the Court should instruct the jury that it cannot consider Frenkel's anonymity in this case. No one is disputing that anonymous speech, like other forms of speech, is afforded certain protections under the Constitution. Frenkel's statements are afforded the same protection as any other form of speech—no more and no less. Defendants are entitled to argue for the legal protections afforded by the Constitution, and have done so repeatedly throughout this case. The Court has decided the legal issues inherit in the First Amendment analysis, for example, the public/private figure issue and the public/private matter of concern, and Defendants' Motion for Summary Judgment has been denied. The issue is now in the jury's hands. It is not proper to tell the jury it cannot consider the facts simply because Frenkel's tortious conduct was undertaken anonymously. Such an approach would *de facto* give anonymous speech more protection than non-anonymous speech. It would place a higher burden on Plaintiffs seeking redress against anonymous authors. The long history of anonymous speech does not require, nor does it justify, placing a person harmed by an anonymous author in a worse position than a person who was libeled by someone upfront enough to sign his name to his statements.

Because there is no legal authority for requiring an anonymity instruction in a defamation case, Defendants rely on inapposite case law addressing different and inapplicable legal issues. The cases Defendants cite concern unconstitutional prior

restraints on speech. Those cases require an entirely different legal analysis, involve issues of law unrelated to jury trials, and require a far greater burden of proof than the degree of fault required in this case. In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341 (1994)—the main case relied on by Defendants—the Court reviewed a governmental regulation of speech (subject to strict scrutiny legal review) and held that a person or organization has a First Amendment right to anonymously publish in support of or opposition to legislation or a candidate. *Id.* at 357. Cisco's reliance on *McIntrye* misses a key distinction; *McIntrye* is not a **defamation** case. It does not apply here because the First Amendment must yield, when necessary, to protect persons from defamation. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974) (discussing the competing interests that must be weighed in defamation cases). The *McIntyre* Court itself rejected the notion that its holding could be used to undermine a Plaintiff's right of redress in a defamation case, noting early in its opinion that, in that case, there was "no suggestion that the text of the message was false, misleading or libelous." *McIntrye*, 514 U.S. at 336; *see also In re Baxter*, 2001 U.S. Dist. LEXIS 26001, at *27-28 (W.D. La. Dec. 19, 2001) (undertaking extensive review of *McIntyre v. Ohio Elections Commission* and distinguishing it on the anonymity issue). The court's holding in *McIntyre* is "very limited," and is not applicable to this case. *See Baxter*, 2001 U.S. Dist. LEXIS 26001, at *32-33. *See also* Plaintiff's Response and Sur-reply to Defendants' Motion in Limine No. 9. (D.E. No. 202 at 19-20 & D.E. No. 229 at 10-14). Moreover, nothing in *McIntrye* even remotely supports instructing the jury in a defamation case that it cannot consider anonymity in resolving the factual disputes presented. Defendants' proposed instruction is an improper attempt to use the Court's authority in a manner that intrudes on the province of the jury.

Other cases relied on by Defendants are equally unpersuasive. Defendants misleadingly rely on *Doe v. Cahill*, 884 A.2d 451, 456 (Del. S. Ct. 2005), for the proposition that the jury cannot consider facts concerning Frenkel's anonymity. In

*Cahill*, and other cases like it, the issue before the Court was whether it should order an anonymous writer's identity be disclosed. In those cases the court must balance the speaker's right to <u>remain</u> anonymous with a Plaintiff's right to recover for harm caused by the anonymous speech. But this case is not a compelled disclosure case, and this Court need not undertake any such analysis. Here, no one is trying to unmask an anonymous source. Frenkel's identity is known; a result of his own voluntary disclosure. *Cahill* and other cases holding that Frenkel may be entitled to protect anonymity he voluntarily waived have nothing to do with the jury instruction Defendants seek in this case.

Defendants also try to argue that Frenkel's anonymity is not relevant. Not so. Frenkel's anonymity is relevant to several issues. First, it is relevant to the truth/falsity issues the jury must decide. As opposing counsel in the *ESN v. Cisco* litigation, Cisco could have filed a motion with the Court appraising it of the criminal and unethical conduct they accused Albritton of engaging in. But, of course, then Cisco would have had to sign its name to the accusations. Defendants' refusal to take ownership of their statements is circumstantial evidence that Defendants lied. Second, Frenkel's anonymity is relevant to punitive damages. In deciding whether Defendants acted with malice, the jury is entitled to consider the totality of the circumstances—including facts demonstrating the speaker's motive, failure to verify facts, overstating the facts, cumulative nature of the evidence, along with appropriate inferences drawn from the evidence. *See generally, Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 US. 657, 668 (1989); *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1170 (5th Cir. 2006); *Bentley v. Bunton*, 94 S.W.3d 561, 590 (Tex. 2002). The fact that Defendants posted anonymous statements about opposing counsel to gain a stealth litigation advantage is compelling evidence of malice supporting punitive damages. Finally, the anonymity of the Troll Tracker blog is relevant to rebut Defendants' one allegation that Albritton failed to mitigate his damages. Defendants' Motion for Summary Judgment argued that Albritton

failed to take steps to mitigate his damages because he didn't log onto the Troll Tracker Blog and present his own side of the story. Albritton is entitled to tell the jury that he didn't try to clear his name on the Troll Tracker Blog because he had just been defamed on that website and he didn't know the source of the statements. Without knowing who was attacking him and why, he couldn't fully address the wrong, nor could he be sure that any statement posted on the Troll Tracker Blog would be posted (the Troll Tracker monitored comments) unedited by the blogger.

Defendants' "relevance" argument is also immaterial to the issue here; whether or not the Court should give the jury an anonymity instruction. Relevance is an evidentiary issue to be resolved in pretrial. If the Court finds that Frenkel's former anonymity is relevant and admissible, that should end the matter because the jury is entitled to consider relevant facts in reaching its verdict. If Defendants were to prevail in demonstrating that the evidence is not relevant (and they can't on this record), then the evidence would be excluded and no instruction would be necessary.

An anonymous author who disseminates lies is entitled to no First Amendment protection; let alone the heighted protection Defendants seek. There is no public interest in the dissemination of lies. *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 340 (1974) ("Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open debate on public issues."); *See In re Baxter*, 2001 U.S. Dist. LEXIS 26001, at *33 (a right to anonymity "does not exist where the statements made are libelous, misleading, conducive to fraud or defamatory."). Defendants are free to argue the Constitutional value of Frenkel's statements to the jury. Plaintiff will argue to the jury that Defendants published lies unprotected by the Constitution. The jury will resolve the issue. But Defendants are not entitled to have their trial theme encapsulated in the Court's instructions.

**The "Articles at Issue" Instructions**  (page 16 of the parties' joint proposed jury instructions)

Plaintiff's instruction is proper and complete because it accurately informs the jury what the "Articles at Issue" are in the case.  Defendants' concern that the instruction does not instruct the jury not to consider statements that are not "of and concerning" Albritton is a red herring because that issue is addressed in a separate instruction that applies to the defamation questions the jury must answer.  Plaintiff contends that it is unnecessary and prejudicial to repeatedly instruct the jury on what is not defamation, as insisted by Defendants.

As discussed above in connection with Plaintiff's contentions, Albritton is entitled to introduce evidence of the revised October 18th Troll Tracker Blog post because that post was pleaded in his complaint and fully disclosed during discovery.  *See supra* at 4-5.  Albritton's complaint put Defendants on notice that he was claiming the October 17 and 18th articles defamed him.  There are two October 18th articles, including the revised October 18 article which is referenced in ¶20 of Plaintiff's Original Complaint. *See* D.E. 17).  All three articles were included in Plaintiff's interrogatory responses to Cisco. This issue has been fully briefed in the context of Defendants' *motion in limine* number 5.  For the reasons stated in Plaintiff's response and surreply to Defendants' MIL 5, Defendants' attempt to exclude the revised October 18th article from consideration should be rejected.


**Libel Per Se Instructions:**  (pages 17-19 of the parties' joint proposed jury instructions)

*Placement of the libel per se instruction*

Plaintiff contends that the first issue for the jury is whether the articles at issue are defamatory *per se*.  Plaintiff's primary theory of the case is that the articles at issue are defamatory per se.  If the jury finds that they are, it would not be required to take up the defamatory meaning instruction/question as that is subsumed by the defamatory *per se* instruction.  If the instructions were to read as Defendants argue, the jury will definitely have to

answer both interrogatories even if its answer to the defamatory meaning question is not necessary because it found the statements to be per se defamatory.

<u>*Defendants' insistence that the jury not be instructed on libel per se*</u>

Plaintiff agrees that whether the articles at issue are libelous *per se* is generally an issue of law that courts decide. However, the issue is properly presented to a jury if the issue cannot be declared as a matter of law. *See Texas Disposal Landfill, Inc. v. Waste Mgmt Holdings, Inc.*, 219 S.W.3d 563, 580, 581 (Tex.App.—Austin, 2007, pet. denied) ("The issue of whether statements are defamatory per se is generally a matter of law to be decided by the court…." The court may, however, pass the inquiry to the jury if it determines that an ambiguity exists about the meaning and effect of the words or that a predicate fact question remains about whether the statements were published or were false.").

Because the *per se* issue is generally a legal issue, Plaintiff moved the Court for a ruling as a matter of law in the context of the parties' summary judgment briefing. *See* D.E. 115 at 7 (statement of issue number 2). Defendants moved to strike Plaintiff's request. *See* D.E. No. 122 at 2. It is therefore surprising that Defendants insist on a legal ruling now, despite the Court's decision that the issue must go to the jury. *See* D.E. 217 at 8.

Contrary to Defendants' contention, by denying Albritton's motion for summary judgment on the *per se* issue, the Court did <u>not</u> find that the articles were not libelous *per se*. This same argument was rejected in *Texas Disposal*. 219 S.W.3d at 581 ("By these rulings [denying summary judgment and directed verdict on per se issue], however, the trial court did not affirmatively rule that the statements were not defamatory per se. Rather, these rulings merely demonstrate that, prior to the conclusion of the trial, the court was not convinced as a matter of law that no ambiguities remained on the issue.") As in *Texas Disposal*, this Court simply declined to label the articles defamatory *per se **as a matter of law*** for purposes of summary judgment and, instead, determined that the jury must resolve the question. *Id.*

Defendants also wrongly contend that the jury cannot decide whether the articles are libelous *per se*. In Texas Disposal, the trial court's judgment was reversed, in part, because the court refused to instruct and query the jury on *per se* defamation. *Id* at 563, 580- 84 ("Because there was some evidence in the record upon which a reasonable juror could find the statements in the Action Alert were false and understood by the recipient to injure Texas Disposal's business reputation, the trial court erred in refusing to submit Texas Disposal's requested questions and instructions."). In fact, based on this Court's summary judgment ruling, it would be error not to submit the *per se* question to the jury. *See id*.

If Defendants insist on a ruling from the Court as a matter of law, the Court can easily resolve that issue in Albritton's favor. When the actionable statements injure the plaintiff in his office, profession or occupation, *Knox v. Taylor,* 992 S.W.2d 40, 50 (Tex. App. – Houston [14th Dist.] 1999, no pet.), or charge him with the commission of a crime, *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369,374 (Tex. 1984), they are defamatory *per se*. *See e.g., Texas Disposal Sys. Landfill, Inc. v.Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581(Tex. App – Austin 2007, pet. denied). The libelous statements made about Albritton accuse him of conspiring to alter governmental records—a crime—of being an unethical lawyer, and of engaging in dishonest acts to benefit his client at Cisco's detriment. The false statement that Albritton had "conspired" with the clerk of the court to falsify official documents is so outrageous and undeniably harmful that Texas law presumes that Albritton has suffered damage, making the statements *per se* defamatory. *See Fiber Sys. Int'l Inc., v. Roehrs*, 470 F.3d 1150, 1163 (5th Cir. 2006); *Gateway Logistics Group, Inc. v. Dangerous Goods Mgmt. Australia*, Civ. No. H-05-2742, 2008 U.S. Dist. LEXIS 34246, at *34 (S.D. Tex. Apr. 25, 2008); *Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 339-340 (Tex. App. Beaumont [9th Dist] 2004) (chronicling Texas defamation *per se* cases); *Dewald v. Home Depot*, No. 05-98-00013-CV, 2000 Tex. App. LEXIS 5757, at *12 (Dallas [Fifth Dist.] 2000. The case law cited by Plaintiff throughout this case demonstrates that a per se finding in this case is warranted. *See* D.E. 74 at 4-5, D.E. 78 at 1-5, D.E. 115 at 19-23, D.E. 130 at 10-15; D.E. 184 at 5-7.

*Plaintiff's libel per se instruction*

During the parties' exchange of competing jury instructions, Defendants' failed to set forth any basis for their objection to Albritton's proposed libel per se instruction—which was adapted from an instruction issued by this *Court in Fiber Sys Int'l v. Roehrs*, 4:04cv355, D.E. 144 at 15-16—other than to object to the word "accusations." However that is exactly what the evidence will show, that Defendants accused Albritton of conspiring to alter court documents to manufacture subject matter jurisdiction. Plaintiff's proposal adheres to Texas law on defamation *per se* and tracks the evidence that the jury will hear. It should be used to instruct the jury.

*Plaintiff's objection to Defendants' libel per se instruction*

Defendants' instruction states that, in order to be defamatory *per se*, the defamatory nature of the words used by Frenkel must be "*apparent from the face of the written words in and of themselves.*" Defendants' instruction misstates the law. In deciding whether Defendants' statements are defamatory *per se*, the jury is entitled to consider the surrounding circumstances of the articles at issue, including the setting in which the defamatory statements were made, the context of the statements, and the common meaning attached to the Defendants' statement. *See Fiber Sys.*, 470 F.3d at 1163.; *Moore v. Waldrop*, 166 S.W.3d 380, 385-386 (Tex. App. Waco 2005). The jury's consideration of that wide breadth of information does not eliminate the accused statements from the *per se* category, and certainly doesn't limit the jury to the words in the accused articles as stated in Defendants' instruction. *See Fiber Sys.*, 470 F.3d at 1163 ("[c]onsidering the surrounding circumstances does not necessarily require the use of extrinsic evidence," as courts must consider the context in which the statement was made and the common meaning of the statement."); *Moore*, 166 S.W.3d at 385-386 (considering statements in light of the circumstances and context).

Only if the jury must resort to *extrinsic evidence* to prove a statement's defamatory meaning is a finding of *per se* defamation compromised. Extrinsic evidence includes the aid of inducements, colloquialisms, and explanatory circumstances. *See,*

*Moore*, 166 S.W.3d at 385. Where, as here, innuendo is not needed to show that Defendants' statements are reasonably capable of a defamatory meaning that accused Albritton of a crime or attacks him in his profession, the jury is permitted to find defamation *per se*—even when that determination is made on more than the "face of the written words." *See Gateway Logistics*, 2008 U.S. Dist. LEXIS 34246, at *34 (citing cases). Defendants' proposed instruction does not offer the circumstances/context v. extrinsic evidence dichotomy. Instead, it tells the jury that it can't consider anything other than the words contained in the accused of posts. It is an improper application of the law and should be overruled.

Finally, Defendants' proposed instruction requires that the jury find that Defendants' statements "unambiguously" falsely accuse Albritton of a crime or injury him in his profession or occupation. The jury is entrusted with construing the Defendants' language, "as it would be understood by the average reasonable person or the general public, not by [its litigation adversary]." *Moore*, 166 S.W.3d at 385-386. The jury is free to find that Defendants' statements as a whole are defamatory *per se* because they tend to harm Albritton in his business and profession or accused him of a crime. *See Gateway Logistics*, 2008 U.S. Dist. LEXIS 34246, at *34; *see also Alaniz v. Hoyt*, 105 S.W.3d 330, 346 (Tex. App. Corpus Christi 2003) (If the court determines that the words are ambiguous or of doubtful import, a fact finder should decide the words' meaning and the effect of the words on an ordinary person).

Defendants' proposed instruction is rife with problems in that is does not fairly and adequately state the law. Defendants' instruction is not an instruction that has previously been given to a jury. Instead, it is a legal argument cobbled together from Defendants' selective and incomplete recitation of the law.

**Defendants' Additional Defamatory Meaning Instruction**   (page 21 of parties joint proposed jury instructions)

Defendants' additional instruction is unnecessary, redundant and inaccurate. First, the additional instruction restates what is not defamation when the jury need only be instructed once (in connection with the libel *per se* question) on what is not defamation. The jury is likely to be unduly influenced if the Court repeatedly instructs it on the opinion, rhetoric, hyperbole, "of and concerning" issues, and repeatedly tells it that those statements are not defamation.  Those instructions, like any other, should issued one time so as not to mislead the jury that they are any more important than any other of the Court's instructions.  The instructions should be given before the libel *per se* question and the jury should be instructed <u>once</u>, that they apply to each of the defamation questions it must answer.  Defendants' insistence on repetitive instructions supporting its claims is not a fair attempt to obtain impartial jury instructions; it is an exercise in advocacy that has no place in the Court's charge.

Second, Defendants' instruction states that, in deciding defamatory meaning, the jury is limited to considering only the "actual words" of the posts.  As discussed above, Defendants' instruction misstates the law.  In deciding whether Defendants' statements are defamatory, the jury is entitled to consider the surrounding circumstances of the articles at issue, including the setting in which the defamatory statements were made, the context of the statements, and the common meaning attached to the Defendants' statement.  *See Fiber Sys.*, 470 F.3d at 1163; *Moore*, 166 S.W.3d at 385-386.


**Affirmative Defense of Truth Instructions:**  (page 23-24 of the parties' joint proposed jury instructions).

*Plaintiff's objection to Defendants' instruction and interrogatory inserting a "material" falsity requirement:*

Defendants' proposed instruction improperly attempts to saddle Albritton with the burden of proving the articles at issue false.  Defendants' accept the burden of proof in

part of its proposed instructions, but then offer the Court an additional proposed instruction that does not correctly place the burden of proof on Defendants. *See* D.E. 247 page 23 and compare to page 24. Defendants' bear the burden of proof on all issues concerning truth because the Court has ruled that Albritton is a private figure and that the articles at issue do not concern a matter of public concern. *See* DE # 217 at 10-11. In such cases, libel defendants must prove truth to establish their affirmative defense. *See* Texas PJC 110.8 and related comments; *Gateway Logistics*, 2008 U.S. Dist. LEXIS 34246, at *16-17.

Defendants seek to avoid the implications of the Court's Summary Judgment Order by arguing that the Court only touched on the public/private controversy issue in passing. The Court did more than that—after rejecting identical arguments made by Defendants in support of its jury instruction—the Court ruled that the accused articles did not addressed a matter of public concern. The Court made that ruling not just once, but twice.

First, in the context of deciding that Albritton was a private figure, the Court expressly found that "[t]he ESN lawsuit was ***not a matter of public concern***." *See* D.E. 217 at 10. The Court's ruling follows controlling Fifth Circuit authority holding that an intellectual property dispute between private litigants is generally a matter of private concern. *See Snead v. Redland Aggregates, Inc.,* 998 F.2d 1325, 1330 (5th Cir. 1993). Cisco's insistence that the private figure issue is entirely separate and distinct from the private concern issue ignores the similarity in the relevant legal analysis and that Cisco relied on the same facts in arguing both the private/public figure and private/public concern issues. The Court was entirely reasonable in addressing Defendants' overlapping arguments together and in finding that the articles at issue do not involve a matter of public concern.

Second, in overruling Defendants' request that the Court find, as a matter of law, that the accused articles were substantially true; the Court again resolved the private/public concern issue

in Albritton's favor. In the Summary Judgment papers, Defendants argued that Albritton had the burden of proving Defendants' accusations were false because the articles at issue are a matter of public concern. *See* D.E. 125 at 14. Defendants specifically argued that "[t]he October 18 article reported on a matter of public concern (the integrity of the court's electronic filing system and the clerk's stewardship of that system)"—the same argument Defendants make in support of its proposed instruction. *See* D.E. 125 at 2.

Plaintiff responded as follows: "Because Albritton is a private figure, Cisco bears the burden of proving truth unless its posts address a matter of public concern. Whether speech addresses a matter of public concern must be determined by the content, form and context of the statement as revealed by the whole record. The speech at issue in this case does not deal with an issue of public concern but rather a dispute between private litigants, one of which happened to have access to a website. The posts do not discuss the need for local rules requiring a motion before a docket entry is corrected. They do not discuss the need for better oversight at the clerk's office. Instead, they launch a covert attack on the reputation of Cisco's opposing counsel. Cisco's attacks are not matter of "public concern" simply because they have some nexus to court proceedings." *See* D.E. 130 at 6-7, and cases cited therein including, *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 690 (N. D. Tex. 2008); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985); *Time Inc. v. Firestone*, 424 U.S. 448, 455-456 ((1976); *Mullen v. Solber*, 952 N.E. 2d 950, 952 (Ill. App. 1998). The public concern issue was squarely before the Court, and the Court resolved the issue in Plaintiff's favor by placing the burden of proof <u>on Defendants</u>. *See* D.E. 217 at 8 (Defendants must establish the truth of the alleged defamatory statements).

The Court's Order concerning Defendants' substantial truth defense—separate and apart from its finding related to the public/private figure issue—demonstrates that the Court consistently and conclusively found that the articles at issue here involve a matter of private concern. Moreover, the Fifth Circuit's opinion in *Snead*, 998 F.2d at 1330-1332 mirrors this Court's reasoning. *Snead* presents similar facts, relies on the *Connick v. Meyers* case cited by

Defendants, and clearly supports the Court's prior private concern finding. The articles at issue in this case involve speech in the individual interest of the speaker and its business, and were made to further Cisco's financial interests in defeating ESN's patent infringement case. It is not speech addressing a matter of public concern. *See Snead*, 998 F.2d at 1330, citing *Dun & Bradstreet*, 472 U.S. at 762. *See generally*, *Procter & Gamble Co. v. Amway, Corp.,* 242 F.3d 539, 557 (5th Cir. 2001). (economically motivated lies about competitor not afforded First Amendment Protection).

Importantly, the Court's Order concerning Defendants' truth defense is directly tied this jury instruction. Defendants attempt to offer a proposed jury instruction shifting the burden to Albritton to prove truth, when the Court has already ruled that Defendants' bear the burden of proving truth. Defendants' proposed instruction to the contrary should be rejected.

Recognizing that they have an uphill climb in light of the Court's Summary Judgment Order, during the parties' efforts to file a joint jury charge, Defendants now argue that they are "media defendants." Defendants waited until after they lost the issue on summary judgment, and until the eve of trial, to make this argument, and for good reason. It is unconvincing. Defendant Cisco is not a media company; it is a technology company. At the time Defendant Frenkel wrote the accused articles he was acting as Cisco's lawyer. Cisco has admitted that Frenkel was acting in the course and scope of his employment ***at Cisco*** at the time he wrote the accused articles. Frenkel's written work, done at Cisco's behest and paid for by Cisco, does not entitle him or Cisco to lay claim to protections afforded "media defendants."

In *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), the case relied on by Defendants, the Supreme Court held that the plaintiff bears the burden of proving that allegedly defamatory statements are false when the publication involves *a matter of public concern and the action is against a media defendant*. The *Hepps* Court expressly refused to consider what standards would apply in an action against a nonmedia defendant. *Id*. at 1565 n.4. The Texas Supreme Court reads the holding of *Philadelphia News* as being limited to cases involving media defendants. *See Bentley v. Bunton*, 94 S.W.3d 561, 586 (Tex. 2002). Defendants are not media

defendants. But even if *Philadelphia News* applies, it is not controlling here because the posts at issue do not address a matter of public concern.

Defendants' proposed interrogatory also improperly attempts to read a "materiality" requirement in to the test for substantial truth. Defendants rely on *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991), to support for their proposed instruction. In *Masson*, the Supreme Court held that a deliberate alteration of a plaintiff's words by placing quotation marks about words that were not directly stated by the Plaintiff may be proof of ***actual malice*** when it results in a ***material change*** in the statement's meaning. *See Freedom Newspapers v. Cantu*, 168 S.W.3d 847, 854 (Tex. 2005) (finding that the Supreme Court's holding was limited to a finding that "an altered statement could constitute some evidence of actual malice if a reasonable reader could understand the passage as the speaker's actual words (not a paraphrase), ***and the alteration* was material**.") (emphasis added).

The facts in this case do not concern quoted paraphrased language or any minor alterations to language that would justify giving a "material change" instruction. Here, Frenkel's <u>accusations</u>—not the way they were written or quoted—are defamatory. The jury only needs to consider Frenkel's statements to determine if they are false; it need not look to minor changes and decide if they were "material." Defendants attempt to insert a "materiality" requirement into the pattern charge is unnecessary, will mislead the jury into believing more than a showing of falsity is required, places a higher burden of proof on Albritton that is warranted, and is not supported by the law.

The holding in *Masson* cannot be relied upon by Defendants to shoehorn a higher burden of falsity into this case. Courts in this District agree, and have cited *Masson*, without importing the "materiality" language advocated by defendants. *See Sparks v. Reneau Publ., Inc.*, 245 F.R.D. 583, 586 (E.D. Tex. 2007) ("Substantial truth means that if a statement has the same effect on the mind of the average reader as a true statement, then it is not false.) (citing *Masson*). The Pattern Instruction offered by Plaintiff should

be given.

**Defamatory Impression Instructions:**  (page 25-29 of the parties' joint proposed jury instructions)

Because Albritton alleges and will offer evidence that the articles at issue leave both a defamatory and *per se* defamatory impression, he proposes instructions and questions on both issues. As an initial matter, Plaintiff satisfied his pleading and disclosure requirements with regard to his defamatory impression theories. Defendants' arguments to the contrary are plainly disingenuous and contradicted by the record. That issue is fully addressed above and need not be restated here.  *See supra* at 3-5.  *See also* D.E. # 202 at 13-17 & D.E. 229 at 7-9.  That issue is properly before the jury and Defendants' objection should be overruled.

The balance of Defendants' objection regarding Plaintiff's *per se* defamatory impression instruction is premised on the same faulty analysis that underpins their objection to Albritton's libel *per se* instruction. *See supra* at 12-16.  Specifically, Defendants fail to recognize the distinction between defamation that requires consideration of extrinsic evidence such as innuendo—which compromises a claim of per se defamation—and defamation that results from a false impression that may be gleaned from the statements themselves, in light of the surrounding circumstances. If, upon consideration of the articles, the jury contends that their gist leaves an ordinary reader with a false impression that tends to injure Albritton in his profession or occupation or accuses him of criminal or unethical conduct, that impression is defamatory *per se*. Plaintiff's instruction properly instructs and queries the jury on the issue of per se defamatory impression.

Defendants' defamatory impression instruction is both unnecessarily redundant and inaccurate.  First it repeats the instructions on opinion, hyperbole, or rhetoric and "of and concerning." As stated above, those instructions should be given once and no more to ensure that the jury gives them no more consideration than the rest of the Court's instructions.  Second, Defendants' proposal deviates from Texas PJC 110.9. Among other things, their proposal fails to

instruct the jury that it must consider the articles as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive them.  Plaintiff's instructions are warranted and should be given.

**Fault Instructions:**  (page 30-33 of the parties' joint proposed jury instructions)

*Plaintiff's Objection to Defendants' inclusion of a "temporal" requirement.*
Defendants' proposed instruction and interrogatory deviates from Texas PJC 110.5 by including a temporal limitation in the question given the jury. Once again, Defendants additional verbiage is not found in the Texas Pattern Jury Instructions.  This case involves the continuous publication of three related articles.  Plaintiff's instruction, which follows the pattern instruction and is easier for the jury to understand, should be given.  Contrary to Defendants' argument, Texas law does not "require" anything more.

*Plaintiff's Objection to Defendant's inclusion of a "materiality" requirement.*
Defendants' negligence questions contain the same improper materiality requirement discussed above in Plaintiffs' objections to Defendants' instructions and interrogatories on material falsity.  Including "materiality" language here is an attempt by Defendants to sneak an actual malice standard in front of the jury, after the Court already ruled that Albritton, a private figure, need not prove that Defendants' acted with malice to establish liability.  *See* DE #217 at 10-11.  Defendants rely on *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) for support.  Defendants' reliance on *Masson* is misplaced.  In *Masson*, the Supreme Court held that a deliberate alteration may be proof of ***actual malice*** when it results in a ***material change*** in the statement's meaning.  *See Freedom Newspapers v. Cantu*, 168 S.W.3d 847, 854 (Tex. 2005) (finding that the Supreme Court's holding was limited to a finding that "an altered statement could constitute some evidence of *actual malice* if a reasonable reader could understand the passage as the speaker's actual words (not a paraphrase), and the alteration **was material**.") (emphasis added).  In this case, the Court has already held that Albritton need not prove actual

malice.  Therefore, the heightened showing of a ***material*** difference is simply inapplicable.  The holding in *Masson* cannot be relied upon by Defendants to shoehorn an actual malice standard of fault into the case.  Defendants have offered no justification for deviating from the Pattern Jury Instruction offered by Plaintiff, and it should be given to the jury.

**Compensatory Damages Instructions:**  (page 34-39 of the parties' joint proposed jury instructions)

Defendants' proposal does not accurately set forth the law on presumed damages as set forth in *Texas Disposal Sys Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 584 & n.22 (Tex.App.—Austin 2007, pet denied).  *Texas Disposal* does not hold, as Defendants contend, that it is error to not instruct the jury that it may award $1 in nominal damages. Rather, the case holds, among other things, that upon an affirmative finding of defamation *per se*, the plaintiff is **entitled** to presumed damages in at least a nominal amount. *Id*. The amount, whether nominal or not, is left to the jury's discretion. *Id.* The *Texas Disposal* Court explained that in a *per se* case, the jury may not presume zero damages; the plaintiff is **entitled** to some amount of damages. *Id*. Thus, the jury is to be instructed that though the amount of presumed damage is **within its discretion**, it must award at least nominal presumed damages upon an affirmative finding of defamation *per se*. *Id*.

While Defendants are free to argue that a nominal award of $1 in presumed damages is appropriate, it would be incredibly prejudicial for the Court to instruct the jury that it may award $1 or that $1 is an appropriate award.  *Texas Disposal* does not hold otherwise.  There, the court discussed the award of $1 in nominal damages in the context of its discussion concerning the fact that the jury was required to award some amount of nominal damages.  That case does not hold that a Court's instructions to the jury must include an instruction that it can award Plaintiff $1. Texas Disposal does not hold that a court must define "nominal damages" for the jury at all, or otherwise suggest to the jury any dollar amount it "may" award.  Rather, the case teaches that the jury should be instructed (consistent with Plaintiff's proposal) that if it finds the Articles at Issue

to be defamatory *per se*, that Albritton is entitled to presumed damages and that it must award at least nominal damages in addition to any further damages it finds were proximately caused by the Articles at Issue. *Id* (citing 24-2 Texas Court's Charge Rptr No. 99-2-22 (Lexis 2002)). Defendants can no more ask the Court to instruct the jury that $1 may be awarded for nominal damages than it could, at Plaintiff's request, instruct the jury that twenty million dollars may be awarded. The Court's instruction should include neither. It should be objective and not suggest that the amount the jury should award.

Defendants' proposal is largely dedicated to instructing the jury on mitigation. In this regard the instruction is unnecessarily redundant and likely to leave the jury with the impression that the Court has determined that Albritton has unreasonably failed to mitigate his damages. Defendants have neither disclosed nor produced evidence of their failure-to-mitigate theory.[2] Until and unless the Court determines there is evidence to justify the submission of the mitigation issue to the jury, Defendants' proposed mitigation instructions are improper. In the event that a mitigation instruction is warranted, the instruction should track Texas law in this diversity action. If the Court elects to instruct the jury on mitigation, it should adopt Plaintiff's proposal. (Page 35 of the parties' joint proposed jury instructions).

Defendants' proposal also includes language from the Texas Civil Practice and Remedies Code. The statute permits the presentation of evidence of the matters enumerated in the statute "*if* they have been specially pleaded." Tex. Civ Prac. & Rem Code Ann § 73.003(a). However, although Defendants' Answer cites the Statute, they have not  specially pleaded any matters enumerated in the statute. For instance, Defendants have not specially pleaded "all facts of circumstances surrounding the claim for damages and defenses to the claim" or "all facts and circumstances under which the libelous publication was made" or "any public apology,

---

[2]  In the context of the public figure issue at summary judgment, Defendants suggest that Albritton failed to mitigate his damages by not logging on to the Troll Tracker site to answer his accuser. Under Texas law, that theory is not available as a defense or in mitigation of damages. *See Chandler Times Pub. Co. v. Chandler*, 122 S.W.2d 249, 253 (Tex.App.—San Antonio 1938) *aff'd by* 130 S.W.2d 853.

correction or retraction of the libelous matter made and published by the defendant. Defendants' generic pleading of the statute is not sufficient. D.E. 19 at ¶51. Even if they had, the statute allows for the presentation of evidence; it does not provide a jury instruction.

**Malice And Punitive Damages Instructions:**  (page 40-47 of the parties' joint proposed jury instructions)

**Malice Instructions:**  (page 40-44 of the parties' joint proposed jury instructions)

*Tex. Civ. Prac. Rem. Code Ann §41.001(7) Instructions*

Plaintiff's and Defendants' proposed Interrogatory 9 both use the definition of malice provided in Tex. Civ. Prac. Rem. Code Ann §41.001(7).  Defendants, however, attempt to add additional language to the instruction which would have the Judge argue Defendants' case in the Court's charge.  Defendants ask the Court to instruct the jury that the fact that the libelous posts were written anonymously must be ignored.  For the reasons stated above, Defendants' request is inappropriate, invades the province of the jury, and is not supported by the law Defendants' cite. *See supra* at 7-11.  In determining malice, the jury is entitled to consider all of the evidence and all inferences there from.  Defendants cannot inoculate themselves from a relevant fact by having the Court tell the jury to disregard relevant evidence.

*Attributing Malice to Cisco Instructions*

The portion of Defendants' instruction regarding attributing malice to Cisco is improper to the extent it purports to limit the jury's consideration to Frenkel's conduct as opposed to other Cisco employees.  This action has been brought against Cisco and Frenkel.  Cisco is independently liable to Albritton.  Cisco, a corporation, acts through its officers and employees. Cisco is responsible for its employees' acts or failures to act.  It is undisputed that Yen, Noh, and Frenkel were employees of Cisco acting within the scope of their employment.  Therefore,

anything that Frenkel, Yen, and Noh did, or failed to do, is an act by Cisco. Cisco's instruction seeks to tell the jury that can only be liable for Frenkel's conduct, and only if Cisco authorized, ratified or approved Frenkel's acts. At the same time Cisco insists that the Court instruct the jury that the conduct of Yen and Noh—Cisco employees, who expressly authorized, ratified and approved Frenkel's conduct—cannot be considered by the jury. Cisco's gamesmanship is apparent. This Court should not instruct the jury that it must disregard facts showing Cisco's own tortious conduct and instead focus exclusively on Frenkel. Plaintiff's instruction which is directed to <u>Cisco's</u> conduct should be given.

*Result of Finding Malice Instructions (page 44 of proposed jury charge).*

If the jury finds malice by clear and convincing evidence, it need only find by a preponderance of the evidence that the malice is attributable to Cisco by virtue of authorization, approval or ratification of the malicious act. Plaintiff's proposed question simplifies and focuses the jury's factual inquiry to whether Cisco (through its employees) authorized, approved or ratified the conduct that underpins the finding of malice. The jury should not be overwhelmed with volumes of repetitive instructions that pose a threat of confusion. Plaintiff's proposal eliminates that threat and adheres to Texas law on attributing malice to employers.

*Defendants' Proposed Constitutional "Actual Malice" Instruction*

The Court has already ruled that Albritton need not prove actual malice. *See* D.E. # 217 at 11. The Court has also already ruled that the articles at issue do not involve a matter of public concern. *See* D.E. # 217 at 10 ("the ESN lawsuit was not a matter of public concern.") As discussed above, the Court's summary judgment order is clear and consistent on those issues. *See supra* at 17-21. The Court's ruling is well reasoned, right, and in line with controlling authority. *See Snead v. Redland Aggregates*, 998 F.2d 1325, 1333 (5th Cir. Tex. 1993) (private intellectual property dispute between private litigants generally a matter of private concern); *Time Inc. v. Firestone*, 424 U.S. 448, 454 (1976) (publicized court proceedings of private litigants are not the sort of "public controversy" referred to in *Gertz*). Other courts concur. *See Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1096 (Ala. 1988) (When defamatory speech

27

does not involve matters of public concern, the State interest outweighs the First Amendment and actual malice need not be shown); *Connolly v. Labowitz*, 519 A.2d 138, 141 (Del. Super. Ct. 1986) (actual malice standard did not apply to statements made about a doctor which were matters of private concern); *Mullen v. Solber*, 271 Ill. App. 3d 442, 445 (Ill. App. Ct. 1st Dist. 1995) ("when the defamatory statement involves a matter of purely private concern, the constitutional limitations established in *New York Times* and adopted by *Gertz* for punitive damages do not apply.")

Ignoring the Court's Summary Judgment Order, Defendants include a "constitutional malice" question for use in determining punitive damages. Because this case involves a private figure and an issue of private concern, the First Amendment does not require that Albritton prove "actual malice" to recover punitive damages. *See Snead*, 998 F.2d at 1333 ("in private/private cases, the plaintiff is not constitutionally required to prove actual malice to recover presumed or punitive damages.").

While Texas law requires a showing of "malice" for punitive damages, the showing required is the malice standard provided by Tex. Civ. Prac. Rem. Code Ann §41.001(7); not the idiosyncratic "constitutional" or "actual" malice applied in public figure cases. *See Snead*, 998 F.2d at 1335 and 1333, n. 9 ("Although the Constitution imposes no standard of fault in private/private cases, Texas law requires the defendant to act with *common law* malice to justify a punitive damage award.")("The term 'actual malice' is somewhat misleading, as it is a term of art crafted in *New York Times v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), that has nothing to do with 'malice' as the term ordinarily is used.").

Defendants' proposed "constitutional malice" jury instruction is foreclosed by the Court's Summary Judgment Order and is inconsistent with the law. The jury should be instructed as to Chapter 41 statutory malice, and only for the limited purpose of resolving the issue of exemplary damages.

**Exemplary Damages Instructions:** (page 44-46 of the parties' joint proposed jury instructions)

*Defendants' omission of relevant factors from the Fifth Circuit's Pattern Jury Instruction*

The parties' agree that Fifth Circuit Pattern Jury Instruction regarding exemplary damages should be given. Defendants, however, ask the Court to drop from the factors the jury is to consider those that are harmful to Defendants. Defendants don't want the jury to be instructed on two factors that are listed in the pattern instruction: "the extent to which Defendants have engaged in this type of conduct before" and "the net worth of defendants." During the parties' meet and confer discussions, Defendants admitted that the case law supports instructing the jury on those factors but, without offering any legal justification, stated that it was Cisco's position that those factors should not be considered. Case law supports giving the jury the complete pattern instruction. The jury is entitled to consider whether Cisco has engaged in similar conduct in the past. *See BWM of N. Am. v. Gore*, 517 U.S. 559, 557 (1996). There is also no question that the jury is entitled to consider the corporate size and net worth of Defendants in assessing the amount of punitive damages necessary to deter Defendants from future misconduct. *See Eichenseer v. Reserve Life Ins. Co*., 934 F.2d 1377, 1383 (5th Cir. 1991); Fifth Circuit Pattern Instruction 15.13. Defendants' argument to the contrary is not based on the law. Instead, it is an exercise in advocacy designed to deprive Plaintiff of relevant evidence. The Court should follow the law, and give the Pattern Instruction. Defendants' request that the Court do otherwise invites legal error.

*Exemplary Damages Interrogatory*

Plaintiff objects to Defendants' question on exemplary damages. Defendants' question is improper because it conditions an award on an affirmative finding to both questions 9 and 11. The jury need only find that the harm to Albritton resulted from malice (Question 9) in order to consider awarding exemplary damages against Defendants. If the jury answers "yes" to Question 9, it is instructed in Question 11 that it may award exemplary damages against each Defendant it determines acted with malice.

Plaintiff's Question 10 serves a different function. Question 10 seeks a factual finding from the jury that is necessary to hold Cisco vicariously liable for any punitive damages that the jury assesses against Frenkel. It is not necessary for Plaintiff to secure an affirmative answer to Question 10 for the jury to enter an award of punitive damages in Question 11. That predicate is satisfied with an affirmative answer to Question 9. With an affirmative finding of malice, the jury may enter an award of punitive damages regardless of its answer to Question 10.

Respectfully submitted,

Nicholas H. Patton
SBN: 15631000
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080        (903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local on this 17th day of April, 2009.

Nicholas H. Patton