# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **No. 6:08cv00089** |
| | § | |
| **CISCO SYSTEMS, INC. and RICHARD** | § | |
| **FRENKEL** | § | |
| | § | |
| **Defendants** | § | |

## DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND ARGUMENT IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS

TO THE HONORABLE COURT:

Defendants hereby submit the following objections to the Joint Proposed Jury Instructions, Interrogatories and Verdict Form ("JPJI") and argument in support of its proposed jury instructions.

### 1.    THE COMPLAINED-OF ARTICLES ARE ABOUT A MATTER OF PUBLIC CONCERN

One of the most important issues in determining the proper instructions and questions to submit to the jury is the resolution of the legal issue of whether the complained-of articles are about a matter of public concern, as this issue affects the burden of proof as to truth or falsity, the standard for presumed and actual damages, and the fault standard for Plaintiff's case in chief. Although the Court has certainly ruled that Plaintiff is a private figure, the previous ruling was directed only to the issue of public versus private figure to determine the fault requirement for

1

Plaintiff's case in chief. The Court did not determine the character of the speech at issue, although the Court's ruling certainly touched on whether there was a public controversy. (Docket No. 217 at p. 10). However, the issue of public controversy with respect to the status of the plaintiff and whether the character of the speech was of public concern are two separate and distinct issues; the first was decided by the Court and focuses on the plaintiff, and the second was not decided by the Court and focuses on the character of the speech. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) (private plaintiff, public concern).[1]

The U.S. Supreme Court has held that for First Amendment purposes, speech is of public concern if it can "be fairly considered as <u>relating to **any**</u> matter of political, social, or other concern to the community." *Connick v. Myers* 461 U.S. 138, 146 (1983) (emphasis added); *Benningfield*, 157 F.3d at 375. "Relating to" is an extremely broad test; it has been broadly defined by the U.S. Supreme Court as meaning having any "connection with or reference to." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995) ("relating to" defined in Airline Deregulation Act). On the other hand, an issue is not a matter of public concern if it is "<u>solely</u> in the interest of the speaker." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1984) (emphasis added) (holding that a credit report that was made available only to five subscribers was not a matter of public concern).

In determining whether an issue is a matter of concern, courts must take a broad reading; otherwise courts would be called upon to play the role of editor, deciding case-by-case what is newsworthy, a constitutionally suspect function that is not permitted. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346 (1974). Unlike the public controversy element for deciding whether a

---

[1] Indeed, the Court would have no reason to decide this issue because Defendants did not move for summary judgment on the issue, and the Opinion specifically states that it is ruling on Plaintiff's motion only with respect to the issue of whether Plaintiff is a public or private figure. Docket No. 217 at p. 3.[1]

plaintiff is a private figure, which focuses on the <u>plaintiff</u>, whether the speech is about a matter of public concern requires an examination of the speech. *See Connick*, 461 U.S. at 145-46. Hence, the court should take a broad reading and consider the articles themselves to determine whether the speech may be "fairly considered" as <u>relating to</u> or having any connection or reference to any political, social or other concern to the community. *See id.* at 146; *Gertz*, 418 U.S. at 346.

Here, the Articles are a matter of public concern. The Articles at issue addressed a matter of public concern regarding the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas. The articles are also about action taken by litigants and public officials with respect to publicly filed documents in the public court records of the federal judiciary—plainly matters of public concern.

The October 18 and 19 articles, in particular, relate to a litigant convincing a court clerk to change the file date on the Court's official court records in a way that affected a substantive issue in the case—subject-matter jurisdiction. (A true and correct copy of the October 18 article is attached as <u>Exhibit A</u>; A true and correct copy of the October 19 article is attached as <u>Exhibit B</u>.) The October 18 article goes on to state that this is an "example of the abusive nature of litigating patent cases." (<u>Exhibit A</u>). The October 19 article omitted this language and stated that "the proper course of action would have been a motion to correct the docket." (<u>Exhibit B</u>). Plaintiff argues that the articles accuse him of participating in a conspiracy with the court clerk to tamper with government records. On November 7, 2007, when the Patent Troll Tracker published an explanation of the October 18 article, he noted that even if the court clerk and attorneys mentioned in that article were following local custom, "isn't such a 'customary' action

3

detrimental to the credibility of the Court? We have to be able to trust the U.S. courts and their ECF system. How can we trust the courts when date stamps on documents disappear one day and reappear the next day with a different date? All of this could be averted if the Local Rules committee adds a rule that no document shall be replaced without a motion made to correct the docket." (A true and correct copy of the November 7 article is attached as Exhibit C.)

Under these circumstances, that the subject of the Articles—the integrity of the court's electronic filing system and the clerk's stewardship of that system—is a matter of public concern. Courts addressing similar publications have found them to be on a matter of concern. In *Benningfield*, 157 F.3d at 375, the Fifth Circuit held that even where the speech includes an element of personal interest, speech regarding the mismanagement or tampering with criminal histories was "important to effective law enforcement and certainly a matter of public concern." Similarly, in *In re IBP Confidential Business Documents Litigation*, 797 F.2d 632, 645-47 (8th Cir. 1986), the court held that an investigation into business practices that had the potential to generate new legislation was a matter of public concern. *See also Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 562 (5th Cir. 1997) (holding that a film discussing the dumping of sludge on a ranch in Texas was a matter of public concern).

While Defendants vigorously dispute that the articles accused Plaintiff and the clerks of a crime, the articles at issue are about a matter of public concern even in the absence of such an allegation. *See Doe v. Mobile Video Tapes, Inc.*, 443 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001, no pet.) ("The possible commission of a crime and the resulting consequences are events of legitimate public concern"); *see also Gaylord Broadcasting Co., L.P. v. Francis*, 7 S.W.3d 279, 286 (Tex. App.—Dallas 1999, pet. denied) (holding that a story criticizing work habits of judges was a matter of public concern); *Phil. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776

4

(1986) (holding that article concerning private figure's links to organized crime and allegations regarding influence of the State's government was a matter of public concern). Even a publication involving a personal interest in part may be a matter of public concern. *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 463-65 (5th Cir. 1990) (discussing whether the speech constituted a matter of public concern because the allegations of police misconduct brought attention to matters beyond purely personal interest).

The context of the articles is also instructive. *Connick*, 461 U.S. at 147-48. As Plaintiff has alleged, the Patent Troll Tracker blog was about patent litigation and was advocating for patent reform, an issue that was under consideration by Congress. (Docket No. 17 at ¶¶14, 30). Indeed, one of the responses to the October 18 article noted that he too had noticed that the docket had changed and stating: "Thank you for reporting this. Patent venue reform, anyone?" (A true and correct copy of the email is attached as Exhibit D). The articles at issue also called for the addition of a local rule that would preserve the integrity of the court's filing system: "This all could be averted if the Local Rules committee adds a rule that no document shall be replaced without a motion made to correct the docket." (Exhibit C). These statements advocating for changes in government are the essence of a public concern and of the First Amendment. *See Roth v. U.S.*, 354 U.S. 476, 484 (1957) ("The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.").

Defendants believe that the speech is about a matter of public concern and request an opportunity to discuss and present oral argument with the Court regarding this important issue.

2.    **OBJECTIONS TO PLAINTIFF'S CONTENTIONS[2] (P. 8 OF THE JPJI)**

The Court has ruled as a matter of law that Mallun Yen and John Noh's actions were not actionable and has granted Defendants' Motion for Summary Judgment with respect to Yen and Noh (Docket No. 217 at p. 13). It is therefore improper for Plaintiff to argue or suggest to the jury that Yen or Noh's conduct was actionable. Moreover, because Yen and Noh's conduct was not actionable as a matter of law, it is improper for Plaintiff to argue or suggest to the jury that Yen or Noh's conduct may be attributable to Cisco as a basis of liability. *See Anderson v. City of Dallas*, 2005 WL 1540162 at *6 (Tex. App.—Dallas 2005, no pet.) (holding that employer not vicariously liable where employee not liable for defamation.)

Defendants also object to Plaintiff's reference to the October 19 article. Defendants incorporate by reference their arguments made with respect to Defendants' Motion in Limine No. 5 (Docket No. 191 at p. 5) and its reply in support (Docket No. 221). In summary, Plaintiff should not be permitted to argue that the October 19 article is defamatory because Plaintiff did not plead that the article was defamatory, did not disclose this claim in its discovery, and because the claim is barred by the one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.002(a).

Defendants also object to Plaintiff's contention that the articles "accuse him of criminal and unethical conduct by omitting or juxtaposing material facts, which convey a substantially false and defamatory impression of Albritton" and his claim that the articles "create a false and defamatory impression of him." Defendants object to this instruction because Plaintiff should not be permitted to argue defamatory impression because: (1) Plaintiff did not plead this theory of liability; (2) Plaintiff refused discovery, resulting in an order precluding Plaintiff from

---

[2] All of Defendants' objections are made without prejudice to making further objections, including at the formal charge conference.

advancing a new theory; (3) Plaintiff has never pleaded nor disclosed any viable claim for defamation by omission or juxtaposition; and (4) defamation *per se* by impression has never been recognized under Texas law. Indeed, it is a contradiction in terms. Defendants incorporate by reference the arguments made in Defendants' Motion in Limine No. 6 (Docket No. 191 at p. 7) and reply in support (Docket No. 221).

**3.    ARGUMENT IN SUPPORT OF DEFENDANTS' PROPOSED INSTRUCTION REGARDING ANONYMITY (P. 14 OF THE JPJI)**

Defendants have proposed the following question to ensure that the jury does not improperly consider the fact that the articles were written anonymously to prove Plaintiff's causes of action or in support of Plaintiff's damage claims: "In answering these questions, you may not consider that the Articles at Issue were originally written anonymously."

The United States Supreme Court has recognized that anonymous articles are afforded full Constitutional protection. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341 (1994) (striking down a statute imposing a fine for distributing anonymous leaflets because "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment"). The United States Supreme Court has recognized that "[t]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible" and that "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent." *Id.* at 341, 356.

Anonymous speech has been employed to allow important speech on important matters throughout this nation's history. *Id.*; *see, e.g.*, ANONYMOUS, BEOWULF (Signet Classic 1999 ed.) (circa 700-800) (epic poem written by anonymous author between the eighth and ninth

7

centuries); THE FEDERALIST PAPERS (Penguin 1987 ed.) (1788) (series of 85 anonymously published articles advocating ratification of the U.S. Constitution subsequently revealed to be authored by James Madison, Alexander Hamilton, and John Jay); ANONYMOUS, PRIMARY COLORS: A NOVEL OF POLITICS (Random House 1996) (political novel published anonymously but later revealed to be written by journalist Joe Klein).

The fact that the blog was written anonymously is hardly unusual as "internet speech is often anonymous." *See Doe v. Cahill*, 884 A.2d 451, 456 (Del. S. Ct. 2005). As the Delaware Supreme Court noted: "Many participants in cyberspace discussions employ pseudonymous identities, and, even when a speaker chooses to reveal her real name, she may still be anonymous for all practical purposes. For better or worse, then, 'the audience must evaluate [a] speaker's ideas based on her words alone.' 'This unique feature of [the internet] promises to make public debate in cyberspace less hierarchical and discriminatory' than in the real world because it disguises status indicators such as race, class, and age." *Id.* (citations omitted). "Speech over the internet is afforded no lower level of First Amendment Scrutiny." *In re Does 1-10*, 242 S.W.3d 805, 820 (Tex. App.—Texarkana 2007, no pet.). Indeed, "internet anonymity serves a particularly vital role in the exchange of ideas and robust debate on matters of public concern." *Id.*

Punishing an anonymous author with punitive damages for writing anonymously out of a desire to preserve his privacy is as unconstitutional as imposing a fine for distributing anonymous leaflets. *See McIntyre*, 514 U.S. at 341.

Plaintiff claims that the state has an overriding interest in protecting their citizens from libelous speech, which Plaintiff claims permits the jury to consider anonymity. This is plainly wrong. The jury may consider the questions in light of the evidence; Defendants simply ask the

8

jury not to decide the questions based on the fact that the speech was anonymous. While the U.S. Supreme Court has found that the states have an interest in protecting individuals against the **content** of libelous speech through defamation law, it has not held that the states have an interest in punishing the author **for his or her anonymity**. *Id.* To the contrary, the U.S. Supreme Court has applauded anonymous speech as being an important catalyst of the development of this nation's history. *Id.*

The Plaintiff has admitted that anonymity is "immaterial" because the question the jury must decide is whether the statements are false and defamatory. Defendants agree that the author's anonymity is "immaterial" to an issue the jury must decide and that it would be error for the jury to consider it in deciding any questions submitted to the jury.

4.  **OBJECTION TO PLAINTIFF'S DEFINITION OF THE "ARTICLES AT ISSUE" (P. 16 OF THE JPJI)**

Plaintiff's definition is improper for two reasons. First, it does not limit the jury's consideration to the statements that relate or pertain to Eric Albritton. It is well settled that a Plaintiff may not maintain a libel claim regarding statements that are not of and concerning the plaintiff. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964); *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966) (the plaintiff must show that "the attack was read as specifically directed at the plaintiff.") By omitting language limiting the definition to statement that concern Albritton, Plaintiff's proposed language improperly implies that the jury may consider statements that are not of and concerning Albritton. Second, as set forth above, the October 19 article is not actionable and should therefore not be included.

5.  **OBJECTION TO SUBMITTING THE ISSUE OF LIBEL *PER SE* TO THE JURY (P. 17 OF JPJI)**

The issue of whether the Articles at Issue were libelous *per se* is a question of law for the Court, not a question for the jury. Thus, Defendants object to the instruction and question of

9

libel *per se* to the jury at all; it is a judge, not a jury issue. "It is a question of law, for the court to determine, whether a communication is libelous or slanderous *per se*." *1 Sack on Defamation: Libel, Slander & Related Problems* § 2.8.4 (3d ed. 2007).

Libel *per se* means that challenged statements are "so obviously hurtful to plaintiff's reputation that they require no proof of their injurious character to make them actionable." *Clark v. Jenkins*, 248 S.W. 3d 418, 437 (Tex. App.—Amarillo 2008, pet. denied). In other words, the written words in a libel *per se* "are actionable **in and of themselves**." *Alianz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.—Corpus Christi 2003, no pet.) (emphasis added).

This Court at summary judgment noted that the "posts are capable of both innocent hyperbole and defamatory insinuation." *See* Court's Order dated Feb. 27, 2009 at p. 8. Accordingly, this Court held that "a genuine issue of material fact exists as to whether the posts are defamatory per se." *Id.* Because the decision of whether the statement is libel *per se* is a question for the court, and this Court found that the posts are apparently ambiguous, then such statements are not *per se* libelous. Accordingly, no question should be submitted to the jury concerning libel *per se*. *Montgomery Ward & Co. v. Peaster*, 178 S.W.2d 302, 305 (Tex. App.—Eastland 1944, no writ) ("words which need an innuendo are not libelous per se"); *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.) (once extrinsic evidence and innuendo are "considered, the statement has moved beyond the analysis of slander *per se* and into that of slander *per quod*...") If the alleged defamation is not apparent from the face of the Articles at Issue, if the "meaning and effect" of the Articles at Issue are uncertain, then, by

definition, the articles are not libelous *per se. Id.* Accordingly, Defendants contend that the submission of libel *per se* issue to the jury would be error.[3]

There is no Texas Pattern Jury Charge instruction or question for libel *per se* because it is <u>not</u> a question for the jury, but rather for the Court.

6. **OBJECTION TO THE ORDER OF QUESTIONS: DEFAMATION INSTRUCTION AND QUESTION SHOULD BE PLACED BEFORE LIBEL *PER SE* IF IT IS GIVEN AT ALL**

Defendants contend that the question for defamation (No. 2 in the JPJI) should be submitted to the jury first. In the unlikely event the Court submits libel *per se* to the jury, it should follow the first question regarding whether the articles at issue were defamatory (i.e. injurious to reputation). A finding that the complained-of statements are defamatory (i.e. injurious to reputation at all) is a predicate to finding that they are defamatory in and of themselves, and therefore defamatory *per se. See id.* For this reason, the defamatory instruction and question should precede any *per se* instruction and question, and if the *per se* question is submitted to the jury, it should be submitted only after the defamation question. *See id.*

7. **OBJECTIONS TO PLAINTIFF'S PROPOSED INSTRUCTION ON LIBEL *PER SE* (PP. 17-19 OF THE JPJI)**

Nevertheless, in the unlikely event the Court submits a libel *per se* question, it should adhere to Texas law on that issue. There are two components to libel *per se*. First, libel *per se* (Latin for "by itself")[4] statements must be so obviously and unambiguously hurtful to reputation and apparent from the face of the written words. *Fiber Syst. Int'l v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (to be libel *per se*, a statement must "unambiguously" be "obviously hurtful" to reputation); *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.)

---

[3] Indeed, Defendants request that the Court enter judgment as a matter of law that the Articles at Issue are not libel *per se.*
[4] Libel *per quod* means "requiring reference to additional facts." *Moore*, 166 S.W.3d at n. 1.

11

("statement [must] unambiguously and falsely impute criminal conduct to plaintiff") (emphasis added); *Knox v. Taylor,* 992 S.W.2d 40, 50 (Tex. App.—Houston [14th Dist] 1999, no pet.); *Columbia Valley Regional Medical Cntr., v. Bannert,* 112 S.W.3d 193, 199 (Tex. App. – Corpus Christi 2003, no pet.). The conduct charged as libelous *per se* must be "contained in the statement itself" because "the very definition of '*per se*' 'in and of itself' precludes the use of innuendo." *Moore,* 166 S.W.3d at 386. Innuendo is "extrinsic evidence used to prove a statement's defamatory nature" and "includes the aid of inducements, colloquialisms, and explanatory circumstances." *Id.* at 385. It has long been the law in Texas that "words which are libelous *per se* do not need an innuendo, and conversely, words which need an innuendo are not libelous *per se.*"[5] *Montgomery Ward & Co. v. Peaster,* 178 S.W.2d 302, 305 (Tex. App.-- Eastland, 1944, no writ). "Consequently, innuendo should never be considered when interpreting slander *per se.*" *Moore,* 166 3d at 386. The Fifth Circuit agrees: "If the statement is ambiguous or cannot be fully understood without the use of extrinsic evidence, the statement is not defamatory *per se,* and extrinsic evidence can be considered only under a defamatory *per quod* theory." *Roehrs,* 470 F.3d at 1166.

Second, an additional requirement for libel *per se* is that the articles at issue be within a special category, that is, the statements must "unambiguously and falsely" charge Albritton with a crime or injure him in his profession or occupation. *Roehrs,* 470 F.3d at 1166. Plaintiff definition of libel *per se* fails to set forth the proper standard, and the proper definition is set forth in Defendants' instruction. The definition of defamation *per se* as an "untrue statement that tends to affect a person injuriously in his business, occupation, or office; **or** imputes to that person illegal or immoral conduct" is plainly wrong and incomplete. Such an instruction would

---

[5] *Montgomery Ward & Co. v. Peaster,* 178 S.W.2d 302, 305 (Tex. App.--Eastland, 1944, no writ).

12

permit the jury to find that a statement is defamatory *per se* where it does not meet the legal standard under Texas law.

First, the instruction is improper because it would permit the jury to consider extrinsic evidence—evidence other than the articles themselves. A statement cannot be defamatory *per se* if extrinsic evidence such as inducements, colloquialisms and explanatory circumstances are required. *Moore*, 166 S.W.3d at 385; *Roehrs*, 470 F.3d at 1166. If innuendo is required to show the defamatory meaning, the statement is not libelous *per se*. *Id.*

Corollary to the requirement that extrinsic evidence not be used to explain defamation *per se* is the requirement that the statement "unambiguously" accuse the plaintiff of a crime or injure him in his profession or occupation in order to be defamatory *per se*. *Cecil v. Frost*, 14 S.W.3d 414, 417-18 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding as a matter of law that the trial court properly found that the statements at issue were not defamatory *per se* because they "did not unambiguously and falsely impute criminal conduct to appellants."); *Campbell v. Salazar*, 960 S.W.2d 719, 725-26 (Tex. App.—El Paso 1997, pet. denied) ("If a written or oral statement unambiguously and falsely imputes criminal conduct to the plaintiff, it is libelous or slanderous *per se*"); *Roehrs*, 470 F.3d at 1161 (a statement is defamatory *per se* if it "unambiguously and falsely imputes criminal conduct" to the plaintiff.) If one has to resort to extrinsic evidence or innuendo to determine which meaning to apply, the speech cannot be libelous *per se*. *Id; Moore*, 166 S.W.3d at 386. Accordingly, if libel *per se* is submitted, Defendants request that their proposed charge be submitted.

8.    **ARGUMENT IN SUPPORT OF ADDITIONAL INSTRUCTION ON DEFAMATION (P. 21 OF JPJI)**

Defendants contend that whether the language is hyperbole, rhetoric, exaggerated language, opinion or "of and concerning" present questions of law for the Court. However, if the

13

Court submits these issues to the jury, correct instructions are appropriate and necessary. Defendants therefore contend that their additional instructions (p. 21 of the JPJI) should be given. These instructions are necessary because the jury may not consider statements that are opinion or statements that are hyperbole, rhetoric or exaggerated language. *El Paso Times, Inc. v. Kerr*, 706 S.W.2d 797, 798-800 (Tex. App. — El Paso 1986, writ ref'd n.r.e) (opinion); *A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 79-82 (Tex. App. — Fort Worth 1982, writ ref'd n.r.e.) (opinion); *Old Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974); *Greenbelt Coop. Publishing Assoc. v. Bresler*, 398 U.S. 6 (1970) (hyperbole, rhetoric or exaggerated language); *Curtis Publishing Co. v. Birdsong*, 360 F.2d 344, 348 (5th Cir. 1966) (same). It is also well settled that statements must be of and concerning the Plaintiff in order to be actionable by him. *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 381 (Tex. App. — Texarkana 1989, no writ); *Dick v. Allen*, 303 S.W.2d 390 (Tex. App.— Eastland 1957, no writ).

The jury should also be instructed not to consider implied statements but instead to consider the actual words in the "Articles at Issue" and construe them as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive them. *Green v. CBS*, 286 F.3d 281, 284-85 (5th Cir. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582-83 (Tex. 1994).

9.   **DEFENDANTS' OBJECTION TO PLAINTIFF'S PROPOSED INSTRUCTION AND QUESTION ON TRUTH OR FALSITY (P. 23 OF THE JPJI)**

Plaintiff's instruction on truth is improper because falsity is an element of Plaintiff's case in chief for two reasons: the speech is about a matter of public concern and defendants are media defendants.

14

a.  **Plaintiff must prove falsity because the speech at issue is about a matter of public concern**

First, the speech at issue is about a matter of public concern (see pp. 1-6, *infra*) and therefore Plaintiff, even as a private figure, must prove falsity. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-77 (1986); *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 549 (5th Cir. 1994) ("The plaintiff (who was a private figure) has the burden of proof as to the element of falsity"). *Hepps* was a private figure case and established the federal rule regarding burden of proof, applicable in state libel actions (such as *Burroughs*). The *Hepps* Court held that:

> "Here, as in *Gertz*, the plaintiff is a private figure and the newspaper articles are of public concern. In *Gertz*, as in *New York Times*, the common-law rule was superseded by a constitutional rule. We believe that the common law's rule on falsity-that the defendant must bear the burden of proving truth-must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.

*Hepps*, 475 U.S. at 776. Therefore, the Plaintiff's proposed instruction and question are improper because they improperly instruct the jury that Defendants bear the burden of proving truth.

b.  **Plaintiff must prove falsity because the speech was by a media defendant**

Defendants are media defendants and therefore Plaintiff must prove falsity. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990) (private figure plaintiff must show falsity to recover from media defendant). Media is defined in Webster's Third New International dictionary as "a channel, method, or system of communication, information, or entertainment." While the word traditionally applied to print media, the term has expanded as the public expanded the outlets from which it seeks information, expanding first into broadcast sources, and now to internet

15

sources. Today, the public is increasingly turning to the internet to get information, often on websites or blogs focused on a particular item of interest or public concern. These websites have been called online magazines. *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006). These sources of information, which often combine news and opinion commentary, have become so popular that most major news outlets now have "blogs" that are used to disseminate information and commentary regarding the news. *See, e.g., http://worldblog.msnbc.msn.com/* (MSNBC's World Blog); *http://www.nytimes.com/ref/topnews/blog-index.html* (the home page for the New York Times' various blogs); http://blog.washingtonpost.com/ (The Washington Post's blog directory); http://politicalticker.blogs.cnn.com/ (one of CNN's political blogs). These pages contain not only articles written by traditional journalists, but also articles and comments from the public. Blogs are the editorial pages of today and as such, should be afforded the same protections as traditional media. *See In re Does 1-10*, 242 S.W.3d at 820.

The online magazine Patent Troll Tracker was a popular blog that provided important regarding patent litigation and proposed patent reform to the patent community and others. The blog collected statistical information regarding patent litigation and provided opinion commentary regarding those statistics and other issues. As the name would suggest, its point of view was sometimes critical of non-practicing entities established solely for the purpose of filing patent litigation (colloquially knows as "patent trolls") and thus was a counterpoint to other websites that extolled the virtue of non-practicing entities. The Patent Troll Tracker was authored by Frenkel, who gathered and reported news relating to patent cases and provided his editorial comment on the information he gathered and presented to his reading public. Like any other journalist he relied on "sources," as he quoted in his October 18, 2007 post.

5488642v.1

Because the Patent Troll Tracker was a trusted and well known source of information and opinion regarding patent litigation, it is a media source. Indeed, Patent Troll Tracker was chosen by the Patent Law Center of Lexis Nexis as a Top Blog in 2008.

For these reasons, the publisher of the Patent Troll Tracker is a media defendant, and Albritton bears the burden of proof as to falsity. *McIlvain*, 794 S.W.2d at 15.

**c.      General objections to instruction and question on truth**

Defendants contend that the Texas Pattern Jury Charge 110.8 instruction should be used.

Plaintiff's instruction and question on truth is also improper because it fails to instruct the jury that the statements at issue must be <u>materially</u> false in order to be actionable; minor inaccuracies do not equate to falsity under the substantial truth doctrine. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991). Defendants invoke *Masson* on this issue of material falsity.[6] Plaintiff's instruction (p. 23) is also improper because it fails to instruct the jury that it should only consider the statements that it has found to be defamatory of Albritton. This would certainly be error, as false statements are not actionable unless they are defamatory of Albritton.

Defendants also object to the language in Plaintiff's proposed Question No. 3 (p. 23) that asks whether the articles were substantially true "at the time they were posted" as erroneous. *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993). Truth is truth regardless of when discovered or proven.

**9.      DEFENDANTS' OBJECTION TO ALL REFERENCES TO PER SE DEFAMATORY IMPRESSION, INCLUDING THE INSTRUCTION AND QUESTION (PP. 25-26 OF THE JPJI)**

---

[6] Although *Masson* discussed both material falsity (an analog to substantial truth) and actual malice, our point here has nothing to do with actual malice, and Plaintiff's assertions otherwise are entirely mistaken.

Defendants contend that the issue of *per se* defamatory impression should be removed in its entirety because Texas has not recognized a cause of action for "per se defamatory impression." Second, the use of omission or juxtaposition precludes a theory of libel *per se*, which by definition must be apparent from the face of the words in and of themselves. *See Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.—Corpus Christi 2003. no pet.). In other words, defamatory impression by omission and juxtaposition are mutually exclusive with libel *per se*. *See Clark*, 248 S.W. 3d at 437; *Alianz*, 105 S.W.3d at 345; *Peaster*, 178 S.W.2d at 305; *Moore*, 166 S.W.3d at 386. Third, Defendants also contend that this question is improper because this theory of liability has not been pleaded. Under these circumstances, it would be error to submit this question. Defendants also refer the Court to its earlier objection to libel *per se*. (See pages 10-13, *infra*.)

In the unlikely even the Court submits this unrecognized and unpleaded theory, Defendants request that Defendants' previous instructions regarding what constitutes "per se" libel along with the instructions regarding opinion, hyperbole, rhetoric, and "of and concerning" be used because Plaintiff's instructions are improper. (See Objections and Instructions regarding Question Nos. 1 and 2.)

## 10. DEFENDANTS' OBJECTION TO PLAINTIFF'S DEFAMATORY IMPRESSION INSTRUCTION AND QUESTION

Plaintiff should not be permitted to submit this issue to the jury because this theory of liability has not been pleaded. Plaintiff's Complaint does not allege any facts to support such a theory and indeed the Complaint does not purport to plead any such theory. In the event the Court permits Plaintiff to allege this cause of action, Defendants contend that Plaintiff's proposed question improperly states the law and offer the Texas Pattern Jury Charge instructions. First, Plaintiff's question is improper because it suggests the meanings Albritton alleges to the

18

articles by including the words "that Eric Albritton engaged in criminal conduct, unethical conduct, or conduct that would tend to injure Albritton in his office, profession or occupation." *See A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 82 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e) (holding that it was improper to refer to "alleged threat" and "possible threat" in the jury charge because it "suggested these meanings to the jury.")

Plaintiff's question would also impermissibly permit the jury to consider opinion, hyperbole, rhetoric or exaggerated language or statements that are not of and concerning Albritton. (See Objection to Instruction and Question Nos. 1 and 2).

## 11.  DEFENDANTS' OBJECTION TO PLAINTIFF'S QUESTIONS ON NEGLIGENCE (QUESTION 6 AND 7, PP. 30-32 OF THE JPJI)

Defendants contend that the question on negligence (unlike truth) should have the temporal requirement as set forth in Defendants' proposed question. *See Scripps Texas Newspapers, L.P. v. Belelcazar*, 99 S.W.3d 829, 837 (Tex. App.--Corpus Christi 2003, pet. denied) ("Negligent conduct is determined by asking 'whether the defendant acted reasonably in checking the truth or falsity or defamatory character of the communication **before publishing it**.'") (citing Restatement (Second of Torts § 580B cmnt. g. (1977)). Defendants' conduct, i.e. whether Defendants were negligent or not, is to be judged at the time of publication. *Id.* The temporal limitation concerns when the jury is to judge Defendants' conduct and has nothing to do with actual malice, contrary to Plaintiff's position. The proposed charge correctly guides the jury in this determination.

The question should also require material falsity because minor inaccuracies do not satisfy the falsity requirement. *Masson*, 501 U.S. at 517. In addition, in order to satisfy the negligence requirement, the statement must be such that it would warn a reasonable person of its defamatory potential. *Foster*, 541 S.W.2d at 819-20; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

19

348-50 (1974); *A. H. Belo Corp.* v. Rayzor, 644 S.W.2d 71, 83 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) (holding that it was error not to include this in the jury question). Therefore, Defendants request this language as a modification to PJC 110.5 and 110.10, which has unhelpful and inaccurate language about "had the potential to be defamatory." *See* PJC 110.5 and 110.10.

## 12. DEFENDANTS' OBJECTIONS TO PLAINTIFF'S INSTRUCTION

Defendants object to the Plaintiff's instruction because it fails to instruct the jury regarding what "nominal damages" are. (See Defendants' Instruction, JPJI at p. 36). Indeed, a plaintiff alleging libel *per se* may be entitled to only one dollar in nominal damages. *Waste Management*, 219 S.W.3d at 584. Moreover, the Fifth Circuit has held that a jury may choose to award no damages, even in a libel *per se* case. *Snead*, 998 F.2d at 1225. The *Waste Management* case reversed the trial court because it refused to instruct the jury that it may award nominal damages, and these nominal damages may be only $1. *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt Holdgs., Inc.*, 219 S.W.3d 563, 584 n.22 (Tex. App.—Austin 2007, pet denied).

Defendants further object because the instruction fails to limit presumed damages to damages for injury in the past. *See* Comments to Texas PJC 115.33, p. 328; *Express Publishing Co. v. Hormuth*, 5 S.W.2d 1025, 1027 (Tex. App.—El Paso 1928, writ ref'd).

Defendants further object because the instruction fails to instruct the jury that it may not award damages for anything other than mental anguish. Plaintiff should not be permitted to recover damages to his reputation because Plaintiff failed to disclose reputational damages and refused discovery on reputational damages, as set forth in its Motion in Limine and supporting Reply. Even if the Court permits Plaintiff to submit a question on reputational damages, the

20

instruction fails to instruct the jury that Plaintiff may not recover damages that he has disclaimed in this case, such as lost profits, incurred costs, lost time value and medical or health care expenses. *See Peshak v. Greer,* 13 S.W.3d 421, 427 (Tex.App.-Corpus Christi 2000, no pet.); *Ryder Truck Rentals, Inc. v. Latham,* 593 S.W.2d 334, 337 (Tex. App.-El Paso 1979, writ ref'd n.r.e.); *see also Fox v. Parker,* 98 S.W.3d 713, 726-27 (Tex.App.-Waco 2003, pet. denied) (recovery of special damages requires jury to determine that defamatory statement proximately caused injury); *Knox v. Taylor,* 992 S.W.2d 40, 60-63 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (although damages for injury to reputation were presumed based on defamation per se, proof of actual lost profits was required); Restatement (Second) of Torts § 622 (1977); TEX. CIV. PRAC. & REM. § 41.0105. Plaintiff has not plead or proved any such damages and indeed has specifically disclaimed them.

Plaintiff's instruction also fails to instruct the jury regarding circumstances that the Texas libel statute permits the jury to consider, including:

(a) all material facts and circumstances surrounding the claim for damages and the defenses to the claim;

(b) all facts and circumstances under which the libelous publication was made; and

(c) any public apology, correction, or retraction of the libelous matter made and published by the defendant(s).

TEX. CIV. PRAC. & REM. CODE § 73.003(a). Defendants specifically pleaded these matters and therefore are entitled to this instruction. (See Docket No. 8 at p. 8; Docket no. 19 at p. 11-12.)

## 13. DEFENDANTS' OBJECTION TO PLAINTIFF'S PROPOSED QUESTION 9 (P. 40 OF THE JPJI)

If Plaintiff intends to argue to the jury that Cisco is liable for exemplary damages based on the conduct of Frenkel, the instruction must contain a proper instruction regarding attributing such conduct to Cisco as set forth in Defendants' proposal. The jury cannot properly assess

21

Cisco's alleged malice without this instruction. Defendants' proposed change tracks the Texas PJC (115.38A). Moreover, the jury should be instructed not to attribute any act by Mallun Yen or John Noh to Cisco because the Court has found that their conduct is not actionable as a matter of law. (*See* p. 6, *infra*).

Defendants also contend that Plaintiff's instruction is incorrect because it would permit the jury to improperly consider that the articles were written anonymously. (*See* pp. 7-9, *infra*).

14. **DEFENDANTS' OBJECTION TO PLAINTIFF'S PROPOSED QUESTION 10 (P. 42 OF THE JPJI)**

Plaintiff's attempt to break up the malice and vice-principal theories into two questions would be error because it could make it unclear whether the jury found malice as to Cisco, Frenkel or both. For instance, if the jury answers "Yes" to both Plaintiff's questions 9 and 10, there would be no way to determine whether the jury had found that Frenkel acted with malice. By placing the instruction regarding the vice-principal theory within the malice question, this ambiguity is resolved.

Defendants further object to Plaintiff's failure to exclude the conduct of Mallun Yen or John Noh to Cisco because the Court has found that their conduct is not actionable as a matter of law. (*See* p. 6, *infra*).

Also, the Plaintiff's proposed question fails to instruct the jury by clear and convincing evidence, which is the correct burden of proof in order to determine whether to award exemplary damages against Cisco. Tex. Prac. & Rem. Code § 41.003 ("clear and convincing evidence.")

15. **DEFENDANTS' ARGUMENT IN SUPPORT OF ITS QUESTION NO. 11 (PP. 42-43 OF THE JPJI)**

Plaintiff must prove two elements in order to recover exemplary damages. First, Chapter 41 statutory malice under Texas Civil Practices and Remedies Code applies to all cases in which plaintiffs seek exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.002(a) ("This Chapter

applies to any action in which a claimant seeks damages relating to a cause of action.") Statutory malice must therefore be shown to recover exemplary damages under Texas law. TEX. CIV. PRAC. & REM. § 41.001(7); 41.003(a).

Second, and in addition to the Texas statutory requirement, the U.S. Constitution and the Texas Constitution require Constitutional "actual malice" to be established if the articles at issue relate to, as here, a matter of public concern. Because the Articles at Issue involve a matter of public concern, the Court must include a Constitutional "actual malice" instruction in order for Plaintiff to recover exemplary damages. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (holding that punitive damages are not permitted upon less than a showing of actual malice).

Accordingly, Defendants propose that the Texas Pattern Jury Charge question on Constitutional "actual malice" be used.

16. **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EXEMPLARY DAMAGES INSTRUCTION (P. 44 OF THE JPJI)**
Defendants object to the instruction that the jury may consider the extent to which Defendants have engaged in this type of conduct before. Defendants also object to the instruction concerning the net worth of the Defendants.

17. **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S QUESTION NO. 11 (P. 47 OF THE JPJI)**

Defendants object to Plaintiff's question because it fails to instruct the jury that they are not required to assess any punitive damages. Defendants propose the Texas Pattern Jury Charge instruction, which clarifies that the jury may but is not required to assess any damages.

23

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney, Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE MCWILLIAMS, P.C.

By:   /s/ George L. McWilliams
      George L. McWilliams
      Texas Bar No: 13877000

      GEORGE L. MCWILLIAMS, P.C.
      406 Walnut
      P.O. Box 58
      Texarkana, Texas 75504-0058
      (903) 277-0098
      (870) 773-2967—Fax
      Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF CONFERENCE

Defendants attempted to come to an agreement with respect to these issues while preparing the Proposed Joint Jury Charge. The parties had several phone conversations regarding the issues presented herein but were not able to come to an agreement on these issues.

/s/ *Charles L. Babcock*
Charles L. Babcock

5488642v.1