IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ERIC M. ALBRITTON,** | § § § § | |
| **Plaintiff** | | |
| v. | § § | No. 6:08cv00089 |
| **CISCO SYSTEMS, INC. and RICHARD FRENKEL** | § § § § § | |
| **Defendants** | § | |

**PLAINTIFF ALBRITTON'S RESPONSE TO MOTION TO QUASH TRIAL SUBPOENAS TO NON PARTY WITNESSES BART SHOWALTER, KURT PANKRATZ, AND JILLIAN POWELL**

## I. INTRODUCTION

In an effort to deprive Plaintiff of important fact witnesses at trial, Baker Botts asks the Court to quash Plaintiff's valid trial subpoenas. Tellingly, Baker Botts' motion is completely silent about the importance of each of these witnesses to Plaintiff's case, and for good reason. As discussed below, each of the Baker Botts employees has important testimony to offer the jury. Plaintiff's case will be severely hampered if he is not permitted to question these witnesses live at trial, and have their responses, demeanor and credibility evaluated by the jury.

The subpoenas that Baker Botts seeks to quash meet the requirements of Federal Rule of Civil Procedure 45, and Baker Botts does not contend otherwise. Baker Botts' sole argument is that requiring fact witnesses employed at its law firm to appear at trial is an "unfair hardship" for Powell, "burdensome" for Showalter and "inconvenient" for Pankratz. *See* Motion at ¶¶ 3-5. Baker Botts' motion fails to demonstrate the type of unreasonable and oppressive hardship necessary to deprive Plaintiff of key trial witnesses. Moreover, any hardship to the witnesses is far outweighed by the importance of their testimony at trial. Thus, Baker Botts' motion should be denied.

## II. LEGAL STANDARD

"Upon timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). A movant claiming that a subpoena is unduly burdensome, "has burden of proof and must meet the heavy burden of establishing that compliance with subpoena would be unreasonable and oppressive." *Williams v City of Dallas*, 178 FRD 103, 109 (N.D. Tex. 1998). The Court must evaluate the specific facts of each case to determine whether a subpoena is unduly burdensome.

1

*Id*. As demonstrated below, Baker Botts has not met its heavy burden of showing that having Powell, Showalter and Pankratz testify at trial is unreasonable and oppressive.

### III. ANALYSIS

A. <u>Jillian Powell Is A Key Witnesses In This Case And Any Hardship Caused By Her Appearance At Trial Can Be Reasonably Accommodated</u>

Jillian Powell is a very important witness in this case. While working at Baker Botts, Powell was asked by Kurt Pankratz to investigate the facts concerning the filing of the *ESN* complaint and the change noted on the clerk's docket.[1] Ms. Powell called the court clerk and discovered that that there had been an error in the court's filing software, Albritton's office contacted the court clerk about the error, and from there the court corrected the docket.[2] Ms. Powell understood that there had been no conspiracy between ESN and the court clerk to create subject-matter jurisdiction in the *ESN v. Cisco* case.[3] Powell reported her findings to Mr. Pankratz and Mr. Showalter at Baker Botts.[4] Pankratz passed the information onto either Mallun Yen or Marta Beckwith at Cisco.[5] Yen or Beckwith gave the information to Frenkel. And, yet none of the exculpatory information Powell learned during her investigation made its way into any of Frenkel's posts.

At trial, defendants will argue to the jury that Frenkel's statements were true and were made in good faith because he relied on information provided to him by Baker Botts.[6] Ms. Powell knows Frenkel's accusations are false and are contradicted by the information she obtained from the court clerk. The jury is entitled to hear those important facts directly from Ms.

---

[1] *See* Exh. A (Powell Depo.) at 34:22-35:7.
[2] *See* Exh. A (Powell Depo.) at 88:15-89:2; 96:7-16; 105:6-24.
[3] *See* Exh. A (Powell Depo.) at 100:6-12-19.
[4] *See* Exh. A (Powell Depo.) at 106:15-107:13.
[5] *See* Exh. B (Yen Depo.) at 99:6-101:1; Exh. C(Frenkel Depo.) at 72:13-73:2.
[6] *See* Exh. D (Cisco's Motion for Summary Judgment) at pgs 5, 6, 9 & 26; Exh. E (Frenkel Decl. in support of Cisco's Motion for Summary Judgment) at ¶ 8; Exh. C (Frenkel Depo.) at 63:13-25; 65:5-66:10; 71:22-73:2; 120:6-121:16; 127:3-23; Exh. B (Yen. Depo.) at 91:11-92:4; 94:18-95:21; 100:16-101:4; 179:7-14; 210:20-211:1; Exh. F (Beckwith Depo.) at 14:22-19:25; 30:4-31:15.

Powell. The jury is also entitled to evaluate Ms. Powell's demeanor and credibility on the stand, and then weigh her expected testimony against that offered by Frenkel and Cisco. Ms. Powell will be a credible witness for Plaintiff, and that is the real motive behind Baker Botts' efforts to quash her trial subpoena.

Ms. Powell's appearance at trial is also needed to introduce critical documentary evidence into the trial record. After Ms. Powell talked to the court clerk, she drafted an email memorializing their conversation. That email confirms that there was nothing conspiratorial or improper in the way the *ESN* docket entry was handled. That email has been produced in this case but Cisco has objected to its admission at trial, claiming it is hearsay.[7] Cisco's objections to this exhibit (and others) can be overcome by introducing those documents during Powell's testimony at trial. Ms. Powell's testimony and exhibits are important evidence that the jury is entitled to hear.

Baker Botts argues that Powell's trial testimony is unnecessary because Plaintiff can use the deposition of Ms. Powell taken in the *Ward v. Cisco* case in lieu of her live testimony. Aside from the fact that the Plaintiff in this case did not participate in, or have any input into, the deposition taken in the *Ward* case, that deposition is not an adequate substitute for Ms. Powell's live testimony.

In this case, Cisco and Baker Botts produced allegedly privileged documents to Albritton under the terms of a document production non-waiver agreement. No such agreement is in place in the *Ward* case. So, when Ward's counsel deposed Ms. Powell, her attorney, Mr. Cheavens, instructed her not to answer any questions concerning documents produced to Albritton but not produced to Ward.[8] Consequently, the Powell deposition contains no testimony about key

---

[7] *See* Docket Entry 212 at 243 and 284.
[8] *See* Exh. A (Powell Depo.) 71:20-72:3; 80:3-81:19.

3

documents in this case, including her email memorializing her call to the court clerk.[9] Ms. Powell testified that her email discussing the call with the court clerk contains the most factual detail concerning the details she learned during that call, yet there is no testimony in Powell's deposition in the *Ward* case about that key document.[10] Mr. Cheavens also instructed Powell not to testify about conversations she had with Pankratz wherein she reported what she had learned from the court clerk.[11] He also instructed Ms. Powell on numerous occasions not to answer other relevant questions on the basis of privilege, and instruction that would not apply in this case given Cisco's decision to produce that information to Albritton.[12] Mr. Cheavens aggressively asserted privilege after consulting with Cisco's counsel, Mr. Babcock, because Baker Botts and Cisco have a joint defense agreement in this case.[13] Because key testimony is missing from the Powell deposition in the *Ward* case—and is missing at Cisco and Baker Botts' joint insistence— that deposition is not a reasonable substitute for her testimony at trial in this case.[14]

Finally, Baker Botts argues that Powell's appearance at trial should not be compelled because it would be inconvenient for her given that she has a six-month old child at home. *See* Motion at ¶ 3. Plaintiff is not insensitive to Ms. Powell's need to balance her absence from home with the care of her child. But, Plaintiff respectfully submits that Ms. Powell's status as a mother is not a sufficient reason to deny Plaintiff the use of the subpoena power of the Court to vindicate his claims. *See Paul v. Stewart Enters. Inc.*, 2000 U.S. LEXIS 15993, at *4 (E.D. La.

---

[9] *See* Exh. A (Powell Depo.) at 88:15-89:20; 94:15-96:6.
[10] *See* Exh. A (Powell Depo.) at 22:23-23:15.
[11] *See* Exh. A (Powell Depo.) at 69:7-71:21; 76:14-24; 77:10-17; 107:18-21; 108:2-5; 110:1-17.
[12] *See* Exh. A (Powell Depo.) at 40:2-41:19; 100:20-101:11.
[13] *See* Exh. A (Powell Depo.) at 12:6-14:16; 43:10; 45:2-5.
[14] During the Powell deposition, Mr. Cheavens insisted that the cases were two separate cases and objected to Ward's counsel's attempt to ask questions about facts and documents relevant to both cases because the protective orders in the cases differed. Mr. Cheavens now argues to the Court that, although he and Cisco took the position that the cases were entirely separate for purposes of Powell's deposition, the cases should be treated the same when it benefits Baker Botts.

Oct. 26, 2000).[15] Ms. Powell returned to work at Baker Botts in March and presumably has child care in place permitting her to work outside the home. Ms. Powell has managed to care for and nurse her child while working at Baker Botts. When Ms. Powell was deposed during working hours in the *Ward* case, her child was not present at Baker Botts' office and she was using a breast pump. Thus, Baker Botts' over-the-top argument about Ms. Powell bringing her child to the Court and nursing while awaiting her testimony appears to be grossly exaggerated. There is no reason to believe that Ms. Powell cannot rely on the same child care resources she uses for her daily employment at Baker Botts to be present for the one day her testimony will be needed at trial.[16] Plaintiff and the Court can accommodate Ms. Powell's schedule to ensure her testimony is completed in time for her to pick up her child at the end of the work day.

      B.     <u>The Alleged Inconvenience To Baker Botts In Having Two Of Its Lawyers Present At Trial Is An Insufficient Basis Upon Which To Quash Plaintiff's Valid Trial Subpoenas</u>

Baker Botts' motion also fails to address the importance of testimony from Baker Botts Partners Kurt Pankratz and Bart Showalter.[17] As discussed above, both Pankratz and Showalter are important fact witnesses in this case. Frenkel claims to have relied on legal advice that he obtained from Baker Botts in writing his libelous posts.[18] That advice came from Pankratz and Showalter. The record in this case is replete with email correspondence exchanged between Cisco and its employees, Yen, Frenkel and Beckwith, and Pankratz and Showalter at Baker Botts

---

[15] Attached hereto as Exh. G.
[16] Plaintiff served Ms. Powell's subpoena on July 8, 2009—more than two months before trial—giving her ample time to make appropriate arrangements.
[17] Originally, Plaintiff subpoenaed five persons employed at Baker Botts. But in a good-faith effort to reduced that number to those that he believes he needs at trial, he did not reissue trial subpoenas to Baker Botts lawyers, Meeks and Kubehl.
[18] *See* Exh. D (Cisco's Motion for Summary Judgment) at pgs 5, 6, 9 & 26; Exh E (Frenkel Decl. in support of Cisco's Motion for Summary Judgment) at ¶ 8; Exh. C (Frenkel Depo.) at 63:13-25; 65:5-66:10; 71:22-73:2; 120:6-121:16; 127:3-23

5

discussing the filing of the *ESN* Complaint.[19] Cisco has admitted that Baker Botts was working as its agent in connection with the *ESN v. Cisco* litigation.[20] There is little doubt that both Pankratz and Showalter were in the thick of the critical events in this case as they unfolded and have important factual information to offer the jury. Baker Botts does not contend otherwise.

Pankratz and Showalter are also important witnesses through which Plaintiff will introduce documentary evidence. Cisco has objected to the admissibility of documents authored by both Pankratz and Showalter on hearsay grounds.[21] The documents Cisco objects to can be introduced at trial through both Pankratz and Showalter's testimony. Of course, Cisco would prefer that neither the testimony nor the documents be admitted at trial. To this end, Cisco and Baker Botts are truly benefitting from their joint defense agreement; Cisco argues that documents are inadmissible because Baker Botts witnesses are not present at trial, and Baker Botts files a motion trying to make sure that its employees are not present at trial. The Court should not condone Baker Botts' efforts to undermine Plaintiff's case by ensuring that the Baker Botts witnesses don't appear at trial.

Baker Botts argues that Bart Showalter need not appear at trial because Plaintiff decided not to take his deposition before trial. *See* Motion at ¶ 4. Baker Botts appears to argue that unless a deposition is taken of a witness, a party has no right to subpoena them to trial. Baker Botts' argument finds no support in Rule 45 or in the law, which is why Baker Botts cites none. Plaintiff is not required to depose a witness before he is permitted to call that witness at trial. Attorneys are entitled to, and are in fact duty bound, to make strategic decisions on behalf of their client. Sometimes that strategy includes not deposing a witness so as not to educate the witness (especially one who is an attorney) what to expect on cross-examination. The fact that

---

[19] *See* Docket Entry No. 212 at 242-250, 278-323.
[20] *See* Exh. H (Cisco's Amended Answer in Ward v. Cisco) at ¶ 52.
[21] *See e.g.*, Docket Entry No.. 212 at 242-244, 246-248, 249, 281, 284-285, 291, 320.

Showalter's deposition has not been taken makes his appearance at trial is more, not less, important. The Federal Rules give Plaintiff the right to subpoena fact witnesses to testify live at trial and the rule does not make a prior deposition a prerequisite. Baker Botts has offered the Court no compelling reason why the Rules do not apply to Mr. Showalter.

Baker Botts also argues Plaintiff should be forced to use the prior deposition taken of Kurt Pankratz instead of calling him live at trial. *See* Motion at ¶ 5. Again, Baker Botts misunderstands the heavy burden it must meet before Mr. Pankratz can be excused. "Busy" and "inconvenience" are not enough. *See* Motion at ¶ 5. Nor does the fact that Pankratz has been deposed in the past change the showing he must make to quash the subpoena. Depositions are a means of discovery; they are not a substitute for live trial testimony. As the Court well knows, the approaches taken to questioning a witness at deposition and on cross-examination at trial are very different. Plaintiff is entitled to question Mr. Pankratz at deposition, obtain key admissions or contradictions, and then quietly hold that evidence for use during cross-examination. If the "Baker Botts Rule," were the law of the land, civil discovery would be completely redefined. Under the Baker Botts Rule, counsel would be compelled to use every discovery deposition as a full cross examination of the witness—rather than discovery in preparation for cross-examination—because a witness could always use his prior deposition as a reason not to testify live. Fortunately, that is not the law. A deposition is not a substitute for vigorous, live, cross-examination. It is not fair to Plaintiff to limit his trial presentation to questions asked during discovery, absent some compelling justification not offered by Baker Botts here.

There is no doubt that live witness testimony is preferred by courts and the Federal Rules. *See* Fed. R. Civ. P. 43(a) (In all trials, the testimony of witnesses shall be taken orally in open court); *Williams*, 178 F.R.D. at 109 ("The federal rules strongly favor the testimony of live

7

witnesses whenever possible, so that the jury may observe the demeanor of the witness to determine the witness's veracity."). Live testimony is certainly preferred by jurors. Live testimony is also needed so that Plaintiff can question the witnesses in context and as part of a larger effort to demonstrate to the jury the merit of his legal claims. *See Paul*, 2000 U.S. LEXIS 15993, at *4. The Federal Rules give Plaintiff the right to subpoena witnesses to testify live. Plaintiff has opted to present Showalter and Pankratz's testimony live because they have valuable information and because their testimony and demeanor need to be evaluated by the jury for the veracity of defendants' claims.

Baker Botts has utterly failed to demonstrate the type of burden and oppression required to quash the Showalter and Pankratz trial subpoenas.[22] All Baker Botts offers the Court is that Showalter is important and it will be burdensome to Baker Botts if he is not at work. *See* Motion at ¶ 4. For Pankratz, Baker Botts argues that he too is a busy lawyer, and that he will be out of town the week *after* trial. *See* Motion at ¶ 5. But Baker Botts' loss of Showalter and Pankratz's billable hours is not unreasonable or oppressive. The goal of Fed. R. Civ. P. 45 is to prevent inconvenience to flesh-and-blood human beings who are asked to testify, not the large law firm who must forfeit a day's worth of billable hours. *See e.g., MGM Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423 (D. Del. 2003).

Baker Botts has cited no authority for the proposition that a person who ranks in the hierarchy of a law firm is immune from civil trial subpoenas. Baker Botts lawyers should be in a better position than most witnesses to testify, both financially, and because presumably they understand the integrity of a trial subpoena and the importance of witness testimony at trial.

---

[22] Plaintiff served Mr. Pankratz's subpoena on July 8, 2009 and Mr. Showalter's subpoena on July 16, 2009—two months before trial—giving them ample time to make appropriate arrangements.

C. Statutory Compensation Is Adequate For Baker Botts' Employees

Baker Botts argues that if its lawyers are called to testify at trial, they should be compensated at their billable hour rate, rather than the statutory allowance applied to non-Baker Botts' witnesses. *See* Motion at 4. There is no support in the law for Baker Botts' request for compensation not enjoyed by other witnesses. All trial witnesses are entitled to compensation in an amount set under 28 U.S.C. § 1821(b). The statutory amount does not differentiate between witnesses who earn no wage, who earn minimum wage, or who earn hundreds of dollars an hour. Expert witnesses may be entitled to greater compensation, but Baker Botts' employees are not expert witnesses; they are fact witnesses. They are not being brought to trial to offer the legal opinions that earn them their billable hour rate. Many of the witnesses in the upcoming trial will miss work and incur expenses to comply with their trial subpoenas. Those witnesses will be compensated as provided in 28 U.S.C. § 1821(b). Baker Botts has no legitimate basis upon which to ask this Court to give the members of its firm its own compensation schedule.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Powell, Showalter and Pankratz's motions to quash be, in all things, DENIED.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510-268-8033

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

This is to certify that on this 6th day of August, 2009, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF electronic filing system upon:

Richard E. Griffin
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney, Suite 1900
Houston, Texas 77010

*Attorneys for Defendant Cisco Systems, Inc.*

Mr. George McWilliams
GEORGE L. McWILLIAMS, PC
P.O. Box 58
Texarkana, Texas 75504

*Attorney for Richard Frenkel*

Nicholas H. Patton