IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON | § | |
| | § | |
| | § | |
| v. | § | |
| | § | C. A. NO. 6:08-CV-00089 |
| CISCO SYSTEMS, INC. AND | § | |
| RICK FRENKEL | § | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT

TO THE HONORABLE COURT:

Defendants Cisco Systems, Inc. ("Cisco") and Richard Frenkel ("Frenkel") file this motion for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure 50(a) as follows:

## I.  GROUNDS FOR JMOL

A judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  FED.R.CIV.P. 50(a)(1). Defendants submit that JMOL is appropriate on each of the following grounds and request that the Court enter judgment that:

1.  Plaintiff has no claim for libel because he has no evidence of, and indeed he does not seek damages for, injury to reputation, which libel protects.

2.  The Articles at issue are non-actionable, on numerous grounds, including substantial truth, rhetoric, hyperbole, opinion, not defamatory, or not "of and concerning" Albritton as a matter of law.

3.  The Articles at issue are not libelous per se as a matter of law.

4.  There is no evidence Plaintiff sustained mental anguish damages, the only element of compensatory damages he seeks.

5.    There is no evidence of fault.

6.    There is no claim for libel by juxtaposition or material omission.

7.    The Articles at issue involve a matter of public concern, that is, they relate to any matter of political, social, or other concern to the community.

8.    Plaintiff cannot recover exemplary damages because there is no clear and convincing evidence of Chapter 41 "malice" or gross negligence as a matter of law.

9.    Plaintiff cannot recover exemplary damages because there is no clear and convincing evidence of Constitutional "actual malice," an additional, essential element of such a claim, as a matter of law.

## II.    ARGUMENT AND AUTHORITIES

**1.    Plaintiff Has No Claim for Libel Because There is No Evidence of, and Plaintiff Does Not Seek Damages for, or Injury to Reputation.**

Albritton has not sought the recovery of actual damages for injury to his reputation. This Court has so held and indeed has, by order, prohibited the introduction of any evidence of injury to reputation. (Docket Nos. 258; 266). Accordingly, Albritton has no claim for libel - - which protects injury to reputation - - as a matter of law.

The Texas libel statute, TEX. CIV. PRAC. & REM. CODE § 73.001 (formerly TEX. REV. CIV. STAT. ANN. ART. 5430) "establishes a cause of action in Texas for libel if there is evidence the writing tended to injure the reputation of the one defamed." Leyendecker & Associates, Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984) (emphasis added). Here, as just stated, there is no such evidence of injury to reputation, nor are reputational damages sought. Thus, Albritton has no cause of action for libel. Id.

In Leyendecker, 683 S.W.2d at 374, the Texas Supreme Court held that in the absence of evidence of injury to reputation, a plaintiff may not recover damages (specifically mental anguish) under the libel statute. Id. at 374. An issue in Leyendecker was whether Mrs. Wechter could recover mental anguish damages caused by a false publication. The Court held Mrs.

Wechter was required to present "evidence of injury to the Wechter's reputation to allow recovery under Texas' libel statute." Id. Because there was no evidence to "demonstrate injury to Mrs. Wechter's reputation," the Texas Supreme Court held the "court of appeals erred in awarding Mrs. Wechter damages for mental anguish." Id. In short, because there was no injury to reputation, there was no libel claim and no right to recover mental anguish damages. Id.

So, here too, there is no evidence of injury to Albritton's reputation (as a matter of law in accordance with the Court's earlier rulings) and therefore Plaintiff has no libel claim as a matter of law.

**2.     The Articles at Issue are Non-Actionable as a Matter of Law, Including Grounds of Truth, Rhetoric, Hyperbole, Opinion or Not "of and Concerning" Albritton as a Matter of Law.**

**A.     The Articles are Substantially True as a Matter of Law.**

Falsity is an element of a libel claim. See Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 768-69 (1985); Burroughs v. FFP Operating Partners, L.P., 28 F.3d 543, 549 (5th Cir. 1994) ("The plaintiff has the burden of proof as to the element of falsity"). JMOL is proper if the undisputed facts show that the Articles are either literally true or substantially true. McIlvain v. Jacobs, 794 S.W.2d 14, 15 (Tex. 1990). Minor inaccuracies do not render an otherwise truthful article actionable. See Brueggemeyer v. Associated Press, 609 F.2d 825 (5th Cir. 1980).

"We look to the 'gist' of a [publication] to determine if it is substantially true." Green v. CBS, Inc., 286 F.3d 281, 283 (5th Cir. 2002). Whether a publication is substantially true presents a question of law "[if] the underlying facts as to the gist of the defamatory charge are undisputed." McIlvain, 794 S.W. 2d at 16. "If the effect on the mind of the recipient would be the same, any variance between the misconduct charged and the misconduct proved should be disregarded." Wehling v. Columbia Broad. Sys., 721 F.2d 506, 509 (5th Cir. 1983). When, as here, the underlying facts as to the gist of the Articles are undisputed, the Court should

"disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law." McIlvain, 794 S.W.2d at 16.

The gist of the October 17, October 18 and October 19 (revision of the October 18, 2007 article) Articles is that "the docket in ESN v. Cisco...had been altered" and "ESN's local counsel called the EDTX court" and "convinced" the district clerk "to change the docket to reflect an October 16 filing date, rather than the October 15 filing date." Only the court clerk "could have made such changes."

The undisputed facts -- from Albritton and David Maland, the District Clerk of the Eastern District of Texas and other witnesses -- establish the substantial truth of the gist of the challenged Articles. Turning to Albritton, he admits that the docket and that the complaint itself originally stated that the ESN case was filed on October 15, 2007 and was later changed to state that the case was filed on October 16, 2007. Albritton also admits that if the ESN complaint had been filed on October 15, the Court would have lacked subject-matter jurisdiction. Indeed, it was so important that McAndrews told Albritton's legal assistant that she needed to get the ECF file stamp changed to show a filing date of 10/16 and not 10/15.[1]

It is undisputed that Albritton did not make a motion to the Court to correct the ESN docket so that Cisco would have had an opportunity to challenge the motion. The U.S. District Clerk David Maland testified that Albritton's legal assistant requested that the official court records be changed to reflect a filing date of October 16.[2] It is further undisputed that Albritton was advised that Mathis was making these calls to the court and thought she had "done good."[3] It is further undisputed that the docket was altered and only the court clerk could have changed

---

[1] Mathis Testimony, Tr. 289:16-290:6.

[2] Maland Testimony, Tr. 402:24-403:21; Mathis Testimony, Tr. 305:19-306:7 (admitting Maland's memo is correct).

[3] Def. Ex. 14.

the docket.[4] We submit that the evidence conclusively proves the substantial truth of the gist of the Article.

Moreover, the evidence from the Clerk of this Court, David Maland, also confirms the substantial truth. As a result of his investigation, Maland confirmed that Amy,[5] "an employee of Mr. Albritton's firm," in fact "contacted the Texarkana clerk's office." Amy "wanted the clerk's office to change the date to October 16th..." Mr. Maland further wrote that "Amy made the same request of the Tyler deputy clerk." Mr. Maland stated that "the Tyler docket clerk agreed to modify the date filed for the complaint on the docket sheet to reflect October 16th as the actual filed date for the complaint. At 4:43 p.m. on October 17th, the Tyler docket clerk changed the date filed for the complaint from October 15th to October 16th..." (Def. Ex. 87) (emphasis added). Finally, Mr. Maland concluded, "Hindsight being 20/20, I should have instructed the Tyler docket clerk to tell Mr. Albritton to file a motion to correct the docket report rather than having the deputy clerk do a correcting entry." (Def. Ex. 87).

Because the underlying facts of the alleged defamatory statements and the gist of the Articles is substantially true as a matter of law, the Articles are not actionable and JMOL should be granted. Green v. CBS, Inc, 286 F.3d 281 (5th Cir. 2002) (affirming summary judgment on basis of substantial truth in private figure plaintiff case); Wehling, 721 F.2d at 509 (granting summary judgment because "the substance of the CBS report was true").[6]

**B.      The word "conspiracy" in context is not actionable.**

Albritton's argument that the Articles at issue are defamatory because they included the word "conspiracy" and allegedly accused him of a crime is without merit. The statement that it

---

[4] Maland Testimony, 413:12-19.

[5] Ms. Mathis spells her first name Amie, but Mr. Maland wrote it as "Amy."

[6] Moreover, a defendant cannot be held liable for presenting a true account of events, regardless of what someone might conclude from the truthful account. Green, 286 F.3d at 285.

is "outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction," is not actionable. To begin with, it is undisputed that the Articles at issue do not specifically include the word "criminal." In context, the statement expresses an opinion that it is "outrageous" that the clerk is "apparently, wittingly or unwittingly," conspiring with a non-practicing entity. This apparent agreement between local counsel's office and the clerk is an opinion based upon a disclosed factual basis, which consists of the undisputed fact that Albritton, ESN's local counsel, requested (or "convinced") the district court clerk to change (alter) the file date of the complaint. Therefore, the reasonable reader will see that the speaker has expressed an opinion from such disclosed facts and the speech is protected as opinion, hyperbole, rhetoric or exaggerated language. It is not actionable. El Paso Times, Inc. v. Kerr, 706 S.W.2d 797, 798-800 (Tex. App. — El Paso 1986, writ ref'd n.r.e) (opinion); A.H. Belo Corp. v. Rayzor, 644 S.W.2d 71, 79-82 (Tex. App. — Fort Worth 1982, writ ref'd n.r.e.) (opinion); Old Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 284 (1974); Greenbelt Coop. Publishing Assoc. v. Bresler, 398 U.S. 6 (1970) (hyperbole, rhetoric or exaggerated language); Curtis Publishing Co. v. Birdsong, 360 F.2d 344, 348 (5th Cir. 1966) (same).

The United States Supreme Court has found comparable statements not to be libelous. Old Dominion, 418 U.S. at 284. In Old Dominion, the Supreme Court reversed a libel judgment against a union newsletter for calling the plaintiff a "scab," which the article defined as being, among other things, a "traitor." Id. The Court reversed judgment because "one of the generally accepted definitions of 'scab' is one who refuses to join a union [...] and it is undisputed that the appellees had in fact refused to join the Branch." Id. at 282-83, (citing to Merriam Webster's Dictionary). Similarly, in this case, at least one of the definitions of "conspire" has nothing to do

with the commission of a crime. Instead, as Merriam Webster's Dictionary states, "conspire" means "to act in harmony toward a common end" (see http://www.merriam-webster.com/dictionary/conspiring). It is undisputed that Albritton acted in harmony with the clerk's office toward a common end, i.e., to change the date of the filing of the complaint in this ESN action.

And because the statement noted that the "conspiracy" may have been "unwittingly," there is no reasonable basis to interpret the statement to be an accusation of a crime. Although Frenkel obviously believed and testified that this change to the docket and filing date without notice to Cisco was improper, the Articles at issue plainly do not accuse Albritton of a crime. Accordingly, the Articles are not actionable as a matter of law. See Old Dominion, 418 U.S. at 282-283; Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler, 398 U.S. 6 (1970).

In Greenbelt, the Supreme Court held under similar circumstances that the use of the word "blackmail" was not actionable because it was rhetorical hyperbole. See Greenbelt at 398 U.S. 6, 13 ("as a matter of constitutional law, the word 'blackmail' in these circumstances was not slander when spoken, and was not libel when reported in the Greenbelt News Review."). The Court noted that readers of the article would have known that the use of the word "blackmail," was no more than rhetorical hyperbole used by those who thought the plaintiff's negotiating position was extremely unreasonable. Id. at 14; see also Maynard v. Daily Gazette Co., 191 W. Va. 601, 607, 447 S.E.2d 293, 299 (W. Va. 1994) (holding that a statement that a college athletic director was part of "the corruption of college athletics" did not actually accuse the director of corruption and thus was not actionable).

Like the use of the words "blackmail" in Greenbelt and "scab" in Old Dominion, the use of word "conspiracy" here was merely used in a loose, figurative sense as an expression of

something Frenkel thought was unfair and therefore is non-actionable rhetorical hyperbole. In fact, Frenkel made it clear that he was not accusing Albritton of a crime when he stated that the Eastern District of Texas was "wittingly or <u>unwittingly</u>, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction." There can be no "unwitting" criminal conspiracies. <u>U.S. v. Ragsdale</u>, 426 F.3d 765, 778 n. 6 (5th Cir. 2005) ("the mens rea for [a criminal] conspiracy requires that the defendant willfully committed an act, or acts, forbidden by the underlying statute"). Indeed, Albritton acknowledges that a conspiracy may be of a "civil" (as opposed to criminal) variety. In context, it is clear that the word was used as rhetorical hyperbole and could not reasonably be interpreted as accusing Albritton of a crime. Such rhetorical hyperbole is constitutionally protected to provide "assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 20 (1990).

### C. The "Banana Republic" Statement is Not Actionable by Albritton.

The allegation concerning the "banana republic" comment is simply not actionable by Albritton. One of the constitutionally compelled requirements is that a defamatory statement be "of and concerning" the plaintiff. See <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 288 (1964). Texas law requires such proof as well. <u>Baubles & Beads v. Louis Vuitton, S.A.</u>, 766 S.W.2d 377, 381 (Tex. App.-Texarkana 1989, no writ). The plaintiff must produce evidence showing that "the attack was read as specifically directed at the plaintiff." <u>Rosenblatt v. Baer</u>, 383 U.S. 75, 81 (1966). The "banana republic" comment was not directed to Albritton and the evidence is that the banana republic comment was not about him, but the court system. Moreover, Albritton's complaint unequivocally states that the "banana republic" comment refers

to the Court, not him; Albritton pleads that Frenkel "referred to the United States District Court for the Eastern District of Texas as the 'Banana Republic of East Texas.'" (Complaint at ¶26, Docket #17).

Moreover, the term "banana republic" is classic rhetorical hyperbole or opinion and therefore is not actionable. Milkovich, 497 U.S. 1 at 20. "Opinions and beliefs reside in an inner sphere of human personality and subjectivity that lies beyond the reach of the law and is not subject to its sanctions." Presidio Enters., Inc. v. Warner Bros. Distrib. Corp., 784 F.2d 674, 679 (5th Cir. 1986).

**3.      The Articles at Issue are not Libelous per se as a Matter of Law.**

Whether the Articles at Issue were libelous per se is an issue of law for the Court, not a question for the jury. "It is a question of law, for the court to determine, whether a communication is libelous or slanderous per se." 1 Sack on Defamation: Libel, Slander & Related Problems § 2.8.4 (3d ed. 2007). Indeed, there is no Texas Pattern Jury Charge instruction or question for libel per se because it is not a question for the jury. We explain below why the Court should rule, as a matter of law, that the Articles at Issue are not libel per se.

Libel per se (Latin for "by itself")[7] statements must be so obviously and unambiguously hurtful to reputation and apparent from the face of the written words. Fiber Syst. Int'l v. Roehrs, 470 F.3d 1150, 1161 (5th Cir. 2006) (to be libel per se, a statement must "unambiguously" be "obviously hurtful" to reputation). The conduct charged as libelous per se must be "contained in the statement itself" because "the very definition of 'per se' 'in and of itself' precludes the use of innuendo." Moore v. Waldrop, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.). Innuendo is "extrinsic evidence used to prove a statement's defamatory nature" and "includes the aid of inducements, colloquialisms, and explanatory circumstances." Id. at 385. It has long been

---

[7] Libel per quod means "requiring reference to additional facts." Moore, 166 S.W.3d at n. 1.

Texas law that "words which are libelous per se do not need an innuendo, and conversely, words which need an innuendo are not libelous per se." Montgomery Ward & Co. v. Peaster, 178 S.W.2d 302, 305 (Tex. App.--Eastland, 1944, no writ). "Consequently, innuendo should never be considered when interpreting slander per se." Moore, 166 3d at 386. The Fifth Circuit agrees: "If the statement is ambiguous or cannot be fully understood without the use of extrinsic evidence, the statement is not defamatory per se, and extrinsic evidence can be considered only under a defamatory per quod theory." Roehrs, 470 F.3d at 1166 (emphasis added).

In this case, the Court's Order on summary judgment essentially precludes a determination (either by the court and certainly by the jury) that the Articles at Issue are libel per se. Indeed, the Court concluded that the "posts are capable of both innocent hyperbole and defamatory insinuation." See Court's Order dated Feb. 27, 2009 at p. 8. Accordingly, this Court held that "a genuine issue of material fact exists as to whether the posts are defamatory per se." Id. Thus, because this Court found that the posts are capable of two different interpretations (one actionable and one not), then such statements are not, and indeed, cannot be libel per se under settled Fifth Circuit law. Roehers, 470 F. 3d at 1166; Moore, 166 S.W. 3d at 386 (once extrinsic evidence and innuendo are "considered, the statement has moved beyond the analysis of slander per se and into that of slander per quod…"). Accordingly, a JMOL that the Articles at Issue are not libel per se is appropriate.

**4.    Albritton has sustained no mental anguish damages as a matter of law.**

If, somehow, Albritton is not foreclosed from seeking mental anguish damages because he has no libel claim as a matter of law, then JMOL should be rendered because there is no evidence of such damages.

Under this Court's Orders, and his disclosures, Albritton seeks "only an appropriate award of damages for his mental anguish and punitive damages." The Court granted Cisco's motion in Limine, limiting Albritton to only these two elements of damages. Therefore Albritton may not offer any evidence of, or seek to recover for, injury to reputation. (Docket Nos. 258; 266).

The standard for the recovery of mental anguish damages under Texas law is exceedingly severe:

> … an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine.

Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995) (emphasis added). Moreover, there must be sufficient evidence for a reasonable jury to find "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." Id. As it pertains to damages for libel, the substantive law also independently limits the recovery of mental anguish damages to "only such damages as are sufficient to compensate him for actual injury." Gertz, 418 U.S. 323, 349-50 (1976); Bentley v. Benton, 94 S.W.3d 561, 605 (Tex. 2002).

Albritton has presented no such evidence, and therefore Albritton is not entitled to any mental anguish damages and a JMOL is proper. See Vadie v. Mississippi State Univ., 218 F.3d

365, 376 (5th Cir. 2000) (there must be a "specific, discernable injury to the claimant's emotional state, proven with evidence of the nature and extent of the harm, and hurt feelings, anger and frustration are part of life and do not support a mental anguish award"); Brady v. Fort Bend County, 145 F.3d 691, 719 (5th Cir. 1998) (holding that the Plaintiff's testimony, consisting of references to "spending too much time on the couch," "not accepting it mentally," being "highly upset," and experiencing "the worse thing that has ever happened to me" "hardly qualifies as evidence of demonstrable emotional distress" and "is too vague and conclusory to support mental anguish damages"); Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 939 (5th Cir. 1996) (holding that the plaintiff's testimony that he felt "frustrated" and "real bad" for being judged by the color of his skin, that work was "unbearable" and "tearing his self-esteem down," that he felt "hurt," "angry," and "paranoid" for slurs" was insufficient to support anything more than nominal damages, noting that there was no corroborating evidence and that the plaintiff obtained employment at a higher rate). "Hurt feelings, anger and frustration are part of life" and do not justify an award of mental anguish. See id. at 940.[8]

Albritton concedes that he has not received any medical care as a result of the alleged libel and is making no claim for medical expenses. Albritton further concedes that he cannot identify any friend he has "lost" as a result of the Articles. Further, no business associate thinks differently of him now than before the Articles at issue were published. Nor does his family think differently of him as a result of the Articles. Albritton denied that the Articles caused him to be physically sick, although he asserted vaguely the Articles affect how he interacts with family, friends and staff. The Articles did not hurt Albritton's relationship with the judiciary in

---

[8]Moreover, because there is no evidence of actual damages, punitive damages cannot be recovered and a JMOL is also appropriate for this reason. Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).

the Eastern District of Texas. Indeed, after the Articles were published, Albritton was appointed to the Local Rules Committee for the Eastern District. Albritton makes no claim for economic loss in this case and indeed his income from his admittedly busy law practice was greater in 2008 than in 2007, the year the Articles were published. Finally, he can identify no one who has in fact refused to hire him as an attorney as a result of the Articles. Under these circumstances, Albritton has sustained no injury to relationships with friends, family, business associates or the judiciary that potentially could give rise to mental anguish. There is simply no evidence of the nature, duration and severity of any mental anguish allegedly sustained and no evidence of a "substantial disruption" of Albritton's daily routine. Therefore, he plainly has sustained no mental anguish and JMOL should be granted.[9]

5.    **JMOL Should Be Granted Because There is No Evidence of Fault (Either Negligence or Actual Malice)**

There is no evidence that Defendants were negligent in publishing the Articles at Issue. There is no evidence that Defendants failed to act as a reasonably prudent person in publishing the Articles at Issue. Further, there is no evidence that the content of the Articles at Issue would warn a reasonably prudent person of its alleged defamatory potential, essential elements of the libel cause of action. Foster v. Laredo Newspapers, Inc., 541 S.W.2d 809, 819-20 (Tex. 1976); Gertz v. Robert Welch, Inc.

Further, Defendants, with respect, assert that the Constitutional "actual malice" standard should apply and there is no clear and convincing evidence that Defendants knew that the Articles at Issue were false or actually, subjectively entertained substantial doubt as to the truth

---

[9] Nor is the result changed by Albritton's assertions that the Articles were libel per se or that he is entitled to presumed damages. First, as shown above, the Articles at Issue were not libelous per se. Second, even if the Articles were libel per se (or, assuming arguendo, a fact issue was raised on that issue), Albritton is not entitled to presumed damages because there is no clear and convincing evidence of Constitutional "actual malice," an essential element to obtain presumed damages in a suit by a private figure. Gertz, 418 U.S. at 323.

of the Articles, when the Articles were published. <u>Bentley v. Bunton</u>, 94 S.W.3d 561, 596-97 (Tex. 2002). The undisputed evidence is that Mr. Frenkel believed the statements were true when he published, had good grounds for believing so, relied upon public records and reliable information and entertained no serious doubts about the truth. <u>Id.</u> Accordingly, JMOL should be granted.

**6.     JMOL Should Be Granted on the Claim or Theory of Libel by Juxtaposition and Omission of Material Facts**

Defendants move for JMOL on Plaintiff's theory of claims of libel by suggestively juxtaposing facts in a misleading way or omitting material facts in a misleading way, to create a substantially false and defamatory impression of Eric Albritton. <u>See</u> <u>Turner v. KTRK Television, Inc.</u>, 38 S.W.3d 103, 113-14 (Tex. 2000). There is no evidence upon which a reasonable jury could find that Defendants suggestively juxtaposed facts in a misleading way. Further, there is no evidence of Defendants omitting material facts in a misleading way. Indeed, the Fifth Circuit has affirmed a summary judgment disposing of such a novel claim. <u>See</u> <u>Green v. CBS, Inc.</u>, 286 F.3d 281, 285 (5th Cir. 2002).

**7.     The Articles at Issue Involve a Matter of Public Concern.**

JMOL should be entered that the Articles at Issue are about a matter of public concern.[10] The Court ruled at summary judgment that Albritton is a private figure, but that decision was about the plaintiff's <u>status</u>; the ruling did not determine the <u>character</u> of the <u>speech.</u> (Docket No. 217 at p. 10). The Court's ruling did touch on whether there was a public controversy, a different consideration in the public/private figure analysis as to plaintiff's status. However, whether there was a public controversy as a component to deciding plaintiff's status and whether

---

[10] Because the speech is about a matter of public concern, Albritton has the burden of proof on falsity as an element of his libel claim, <u>Phil. Newspapers, Inc. v. Hepps</u>, 475 U.S. 767 (1986), and must also establish Constitutional "actual malice" to recover exemplary damages. <u>Gertz</u>, 418 U.S. at 349-50.

-14-

the speech was on a matter of public concern are separate, distinct issues. The matter of public concern issue was not decided at summary judgment. See Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) (private plaintiff, public concern case).[11]

The Supreme Court has held that under the First Amendment, speech is of a public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983); Benningfield v. City of Houston, 157 F.3d 369, 375 (5th Cir. 1998). This is certainly very broad language; "relating to" means having any "connection with or reference to." American Airlines, Inc. v. Wolens, 513 U.S. 219, 223 (1995) ("relating to" as defined in Airline Deregulation Act). And "any matter" of political, social or other concerns is also expansive. On the other hand, an issue is not a matter of public concern if it is "solely in the interest of the speaker." Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 762 (1984) (emphasis added) (holding that a credit report that was made available only to five subscribers was not a matter of public concern). Courts are cautioned to take a broad reading in deciding "matter of public concern;" otherwise, courts must play the role of editor, deciding case-by-case what is a matter of public concern, a constitutionally suspect function. Gertz, 418 U.S. at 346.

Here, the Articles at issue are a matter of public concern. The Articles at issue addressed the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain jurisdiction and venue here. The Articles are also plainly about official actions taken by public officials – federal court clerks – as part of their public duties with respect to publicly filed documents in the public court

---

[11] Indeed, the Court had no reason to decide this issue because Defendants did not move for summary judgment on the character of the speech, and the Opinion specifically states that it is ruling on Plaintiff's motion only with respect to the issue of whether Plaintiff is a public or private figure. (Docket No. 217 at p. 3).

records of the federal judiciary—certainly matters of public concern, as admitted by Mathis (Tr. 316:5-317:5) and Maland (Tr. 426:20-427:10).

The Articles at issue, in particular, also relate to a litigant convincing federal court clerks to change the file date on the Court's official docket sheet and complaint. The October 18 article further states that this is an "example of the abusive nature of litigating patent cases." On November 7, 2007, when the Patent Troll Tracker published an explanation of the October 18 article, the author noted that even if the federal court clerk and attorneys mentioned in that article were following local custom, "isn't such a 'customary' action detrimental to the credibility of the Court? We have to be able to trust the U.S. courts and their ECF system. How can we trust the courts when date stamps on documents disappear one day and reappear the next day with a different date? All of this could be averted if the Local Rules committee adds a rule that no document shall be replaced without a motion made to correct the docket." These statements patently are about important public issues.

The context of the articles is also instructive. Connick, 461 U.S. at 147-48. As Albritton has alleged, the Patent Troll Tracker blog was about patent litigation and also advocated for patent reform, an issue that was under consideration by Congress. (Docket No. 17 at ¶¶14, 30). Indeed, one of the persons responding to the October 18 article noted that he also noticed that the ESN v. Cisco docket had changed and stated: "Thank you for reporting this. Patent venue reform, anyone?" One Article also called for the addition of a local rule that would preserve the integrity of the court's filing system: "This all could be averted if the Local Rules committee adds a rule that no document shall be replaced without a motion made to correct the docket." These statements advocating for changes in government are the essence of a public concern and of the First Amendment. See Roth v. U.S., 354 U.S. 476, 484 (1957) ("The First Amendment

was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.").

A unanimous United States Supreme Court has held that "The operations of the courts and judicial conduct of judges are matters of utmost public concern." Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839 (1978). Freedom of speech "guards against the miscarriage of justice by subjecting the police, prosecutors and judicial processes to extensive public scrutiny and criticism." Id. quoting Sheppard v. Maxwell, 384 U.S. 333, 350 (1966). Indeed, "the operation of the judicial system itself," the Supreme Court wrote, "is a matter of public interest…" Id. at 839.

Similarly, the Fifth Circuit, adhering to and quoting Landmark's holding that the operation of the judicial system is a matter of public interest, has declared that:

> The judiciary, like the legislative and judicial branches, is an agency of democratic government. The public has no less a right under the first amendment to receive information about the operation of the nation's courts than it has to know about other governmental agencies to receive other ideas and information.

In re Express News Corp., 695 F. 2d 808-809 (5th Cir. 1982).

The Articles plainly concern the operations and integrity of the court's electronic filing system and the clerk's stewardship of that system and thus are matters of public concern. Id.; See e.g., Walters v. Cooper, 1982 WL 172374 (Wis. Ct. App.) (defamation action involving juvenile court administrator whose actions "are clearly matters of public interest"); Cooper v. Rockford Newspapers, Inc., 365 N.E.2d 744 (Ill. App. Ct. 1977) (deputy court clerk was public official). The speech here is about a matter of public concern.

In Benningfield v. City of Houston, 157 F.3d 369, 375 (5th Cir. 1998), the Fifth Circuit held that speech regarding the alleged mismanagement or tampering with criminal histories (in

that case, records kept by the police) was "important to effective law enforcement and certainly a matter of public concern."  This was true notwithstanding that the speaker also had a personal interest in the speech.  Id.; Thompson v. City of Starkville, Miss., 901 F.2d 456, 463-65 (5th Cir. 1990).  Similarly, the Fifth Circuit has held that the "disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department."  Brauner v. City of Richardson, Texas, 855 F.2d 187, 191-92 (5th Cir. 1988).  We submit that no less Constitutional protection adheres to speech about the operation of the clerk's office of the federal judiciary and indeed Landmark and Express News command it.

Moreover, while Defendants vigorously dispute Plaintiff's assertion (not to be found in the language of the Articles at issue) that the articles accused Albritton of a crime, the Articles at issue are about a matter of public concern, even in the absence of such an allegation.  See Doe v. Mobile Video Tapes, Inc., 43 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001, no pet.) (holding in a defamation action that "the possible commission of a crime and the resulting consequences are events of legitimate public concern"); see also Gaylord Broadcasting Co., L.P. v. Francis, 7 S.W.3d 279, 286 (Tex. App.—Dallas 1999, pet. denied) (defamation action about newscast criticizing work habits of district judges was a matter of public concern); Phil. Newspapers, Inc. v. Hepps, 475 U.S. 767, 776 (1986) (holding that article concerning private figure's links to organized crime and allegations regarding influence of State government was a matter of public concern).

Finally, although it is a question of law, there was undisputed evidence confirming that the speech in question was about a matter of public concern.[12] Accordingly, the Court should so hold, as a matter of law.

8.    **A JMOL Should be Granted on the Exemplary Damages Claim Because There is No Clear and Convincing Evidence of Chapter 41 Malice or Gross Negligence.**

Albritton must prove malice or gross negligence as defined by Chapter 41 by the Texas Civil Practices and Remedies Code because it applies to all cases in which a plaintiff seeks exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.002(a) ("This Chapter applies to any action in which a claimant seeks damages relating to a cause of action."). Chapter 41 malice or gross negligence must therefore be proven to recover exemplary damages under Texas law. TEX. CIV. PRAC. & REM. CODE §§ 41.001(7); 41.003(a). There is no such evidence here – much less of the quantum of "clear and convincing." Id. § 41.003(a). There is no clear and convincing evidence that Defendants published the Articles with a specific intent to cause substantial injury or harm to Albritton. Id. Indeed, Frenkel testified to the contrary and believed the statements were true. Nor is there evidence of gross negligence. Id. § 41.001(11). There was no act or omission by Defendants which when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk considering the probability and magnitude of the potential harm to others. Id. Further, there is no evidence of an act or omission of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Id. Once again, the testimony is that Frenkel believed (and had good grounds to believe) the statements were true.

Thus, JMOL should be granted.

---

[12] See e.g. Maland Testimony, Tr. 426:20-427:10.

**9.    Albritton cannot recover exemplary damages because there is no clear and convincing evidence of Constitutional "actual malice".**

In addition to the Texas law requirement that Chapter 41 malice or gross negligence be proven, the Constitution requires that a plaintiff complaining about speech on a matter of public concern must prove Constitutional "actual malice." Gertz, 418 U.S. at 342. And it must be proven by "clear and convincing evidence" at the JMOL stage. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). There is no such evidence here. Of course, Constitutional "actual malice" does not mean ill will or spite, but rather means that the defendant published the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 279-280; Freedom Newspapers of Texas v. Cantu, 168 S.W.3d 847, 858 (Tex. 2005). The plaintiff must prove that the publisher "entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Hearst Corp. v. Skeen, 159 S.W.3d 633, 637 (Tex. 2005). When the defendant's words lend themselves to more than one interpretation, the plaintiff bears the enormous burden of proving that the defendant either knew that the words would convey a defamatory message or had reckless disregard for their effect. New Times, Inc. v. Isaacks, 146 S.W.3d 144, 162 (Tex. 2004).

The actual malice standard's purpose is to protect innocent but erroneous speech on public issues, while deterring "calculated falsehoods." Garrison v. Louisiana, 379 U.S. 64, 75, (1964). The purpose of this standard is to protect the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." See New York Times, 376 U.S. at 270.

In this case, there is no clear and convincing evidence of Constitutional "actual malice." Frenkel investigated the truth of the statements in the Articles and believed them to be true. He reviewed the docket sheet, complaint and civil cover sheet -- which were official, public documents posted on the federal judiciary's website -- which indicated that the case was "filed" on October 15, 2007. He also viewed the docket sheet, complaints, and civil cover sheet; he learned of the change to reflect a filing date of October 16, 2007. In addition, he researched case law regarding subject-matter jurisdiction, which he quoted in the Oct. 17 Article. He received information from other sources which he found credible. Frenkel testified that he believed his reports accurately reflected the facts surrounding both Albritton's filing of the complaint in the ESN Lawsuit and Albritton's subsequent efforts to have the date changed. This evidence is sufficient to negate actual malice. See id. at 574 (holding that "Williams' beliefs and the basis for them was sufficient for WFAA to meet its burden of negating actual malice"); Skeen, 159 S.W.3d at 637 (holding that summary judgment was proper when defendant believed the article was true and accurate based on his extensive research").

Accordingly, Albritton has no clear and convincing evidence of Constitutional "actual malice" and a JMOL that Albritton take nothing on his exemplary damages claim should be rendered.

### III.   PRAYER

Cisco and Frenkel respectfully request that this Court grant it judgment as a matter of law on all of Plaintiff's causes of action, that Albritton take nothing and for such other and further relief to which they are justly entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Charles L. Babcock*
   Charles L. Babcock
   Federal Bar No.: 10982
   Email: cbabcock@jw.com
   Crystal J. Parker
   Federal Bar No.: 621142
   Email: cparker@jw.com
   1401 McKinney, Suite 1900
   Houston, Texas 77010
   (713) 752-4200
   (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE MCWILLIAMS, P.C.

   */s/ George L. McWilliams with*
By: *permission by Charles L. Babcock*
   George L. McWilliams
   Texas Bar No: 13877000
   GEORGE L. MCWILLIAMS, P.C.
   406 Walnut
   P.O. Box 58
   Texarkana, Texas 75504-0058
   (903) 277-0098
   (870) 773-2967—Fax
   Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 17th day of September, 2009, a true and correct copy of the foregoing was served via electronic mail and hand delivery upon:

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398

/s/ Charles L. Babcock
Charles L. Babcock

5490845v.7