IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| ERIC M. ALBRITTON, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 6:08cv00089 |
| | § | |
| CISCO SYSTEMS, INC. and RICHARD FRENKEL | § | |
| | § | |
| Defendants | § | |

## DEFENDANTS' REPLY BRIEF REGARDING JMOL

TO THE HONORABLE COURT:

Defendants, Cisco Systems, Inc. ("Cisco") and Richard Frenkel ("Frenkel") submit[1] this reply brief in support of their JMOL and to assist the Court.[2]

1. **PLAINTIFF HAS NO CLAIM FOR LIBEL**

Albritton has no libel claim because he has no claim for injury to his reputation. First, his unamended disclosures reflect he did not claim injury to his reputation. Second, the court precluded Plaintiff from introducing any evidence of injury to reputation. Hence, under the Texas libel statute, there is no claim for libel because there is no injury to reputation. (JMOL, pp. 2-3).

---

[1] Defendants do not undertake to respond to all of Plaintiff's 31 page response, nor by not answering each argument do Defendants waive any grounds for JMOL. Defendants received Plaintiff's response at 10:55 a.m. on September 20, 2009 and were given until 3:00 p.m. on September 20 to file a response. Defendants have done so in the time allotted and are hopeful this reply is helpful to the Court.

[2] Defendants move for JMOL for all of the reasons and grounds set forth herein.

1

Albritton's reliance upon *Time, Inc. v. Firestone*, 424 U.S. 448, 460 (1976) is distinguishable. First, the speech in *Firestone* was libel *per se* – the article accused Mrs. Firestone of adultery, a specific category of *per se*. *Id.* at 462 n.7 ("the Florida court noted that falsely accusing a woman of adultery is libelous *per se* and normally actionable without proof of damages."). Second, *Firestone* noted that "Florida has obviously decided to pursue recovery for other injuries without regard to ... reputation." *Id.* at 460. Texas, the law applied here, is different: it requires proof of injury to reputation in order to recover mental anguish damages in a *per quod* case and because there is no such evidence, Plaintiff's libel claim is foreclosed.[3] *Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984).

## 2. LIBEL *PER SE* IS A LEGAL, NOT JURY, DETERMINATION

Albritton's response asserts that "other courts," have, in Plaintiff's words "submitted the *per* se issue to the jury for resolution." (Response, page 11). Plaintiff cites to the jury charge submitted by U.S. District Judge Schneider of this Court in *Fiber Systems International, Inc., v. Roehrs*, 470 F. 3d 1150 (5th Cir. 2006) but in fact that charge is further support that *per se* is a determination for the court – not the jury. In *Roehrs*, Judge Schneider, not the jury, decided that three specific statements were defamatory *per se*. (*See* p. 15 of *Roehrs* jury charge attached hereto). Specifically, the *Roehrs* charge stated: "In this case, any untrue statement that Defendants have committed theft or other crimes is 'defamation *per se*.'" (*Id.*) Thus, the jury decided whether the already <u>judicially determined</u> *per se* statements about theft were made with actual malice, but the court, not the jury, ruled, as a matter of law, that the three statements were

---

[3] Plaintiff's reliance upon *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) and *Leyendecker* are misplaced. *Roehrs* is a libel *per se* case, and injury to reputation and damages therefore were sought. *Leyendecker* confirms that there is no libel claim absent injury to reputation in a *per quod* case.

*per se*. (*Id.*) Judge Schneider did not ask the jury to decide if the statements themselves were *per se*.

The Fifth Circuit agreed with the trial court's handling of the issue. *Roehrs* 470 F. 3d at 1162 ("calling someone a 'thief' constitutes defamation *per se*" as a matter of law). Moreover, the Fifth Circuit provides guidance on the role of the district court in deciding whether statements are defamatory *per se*:

> ...the district court's role was to construe each statement in light of the surrounding circumstances to determine how the statement would be perceived by a person of ordinary intelligence. If this inquiry shows that a statement falsely and unambiguously imputes criminal conduct, it is defamatory per se. <u>If the statement is ambiguous or cannot be fully understood without the use of extrinsic evidence, the statement is not defamatory *per se*, and extrinsic evidence can be considered only under a defamation *per quod* theory.</u>

*Id.* (emphasis added).

Thus, *Roehrs* teaches that the district court, not the jury, decides whether a statement is of the *per se* variety. And here, the Articles are not libel *per se* because they do not, in the words of the Fifth Circuit, "unambiguously impute[] criminal conduct." *Id.* The written words in a libel *per se* must be "actionable in and of themselves." *Alaniz v. Hoyt*, 105 S.W. 3d 330, 345 (Tex. App.—Corpus Christi 2003, no pet.). Under Your Honor's ruling at summary judgment, there is a fact issue on whether the statements are in fact are even defamatory (that is, capable of injuring reputation at all) -- this Court concluding that the "posts are capable of both innocent hyperbole and defamatory insinuation." (Doc. 217 - Order of February 27, 2009 at p. 8). Moreover, the evidence at trial suggests a dispute as to whether the statements were even defamatory. Thus, Defendants respectfully suggest, the jury should not be charged with a question of defamatory (libel) *per se* because the Court's ruling and the evidence at trial forecloses a holding that the

3

posts "unambiguously impute[] criminal conduct." *Roehrs*, 470 F. 3d at 1166.[4] Therefore, the statements are not libel *per se* under Fifth Circuit law and JMOL is appropriate. *Id.*[5]

The *Waste Management* case is in fact the only case for Plaintiff, but it is not apposite. First, *Waste Management* acknowledges the rule that "whether statements are defamatory *per se* is generally a matter of law to be decided by the court." *Texas Disposal Systems, Inc. v. Waste Management, Inc.*, 219 S.W.3d 563, 581 (Tex.App. – Austin 2007, pet denied). Second, the decision to submit to the jury the legal question of *per se* in that case is without support and the decision is an aberration. Third, the only authority cited by the *Waste Management* court is to the contrary. *See West Texas Utilities Co. v. Wills*, 164 S.W.2d 405 (Tex. Civ. App.–Austin 1942, no writ). In *Wills*, whether the complained of words "conveyed the asserted meaning" may be determined by a jury. However, it is "a question of law whether the words are slander *per se.*" *Wills*, 164 S.W.2d at 405. Thus, the only case upon which *Waste Management* relies confirms that a court decides if statements are *per se* or *per quod*.

The Articles at Issue are only actionable by resort to extrinsic evidence. The court may properly consider the context, surrounding circumstances and the common meaning of the Patent Troll Tracker. But even applying these conventions of construction, the posts remain susceptible to competing interpretations, one actionable and one not. Hence, the Articles are "ambiguous" and "cannot be fully understood without the use of extrinsic evidence" and thus are "not defamatory *per se.*" *Roehrs*, 470 F.3d at 1166.

---

[4] The conduct charged as libelous per se must be "contained in the statement itself" because the "very definition of 'per se' 'in and of itself' precludes the use of innuendo." *Moore v. Waldrop*, 166 S.W. 3d 380, 386 (Tex. App. – Waco 2005, no pet.).

[5] Under the court's earlier ruling, a jury question would likely be submitted simply asking whether the statements are defamatory – but not defamatory *per se*. In other words, the Plaintiff's case would proceed on a *per quod* theory, if at all. The Court should enter judgment as a matter of law that the Articles at Issue are not libel *per se*.

Finally, Judge Rosenthal's opinion in *Gateway Logistics Group, Inc. v. Dangerous Goods Mgmt. Aust. Pty., Ltd.*, 2008 WL 1883914 (S.D.Tex. 2008) is further confirmation that the decision on *per se* is a question of law for the court, not jury. "Whether a statement is reasonably capable of the defamatory meaning alleged, and whether it is defamatory *per se* or *per quod*, are questions of law for the court." *Id.* at *7. Thus, Judge Rosenthal's lengthy opinion considered "whether the alleged statements were defamatory *per se* or *per quod*." *Id.* at *8. She then determined, as a matter of law, whether each statement was *per se* or *per quod*. *Id.* at *13. Those statements that were *per quod* left for the jury the simple question of whether the statement was reasonably capable of a defamatory meaning. Those statements that were ruled *per se* obviated the need for a jury question on the defamatory element of a libel claim. In sum, Albritton has only a claim for *per quod*, if at all, but no claim for *per se*.

3. **THERE IS NO EVIDENCE OF MENTAL ANGUISH DAMAGES**

There is no evidence of a substantial disruption in Albritton's daily routine, the test for mental anguish damages. Indeed, he testified:

> Q: (By Mr. Babcock) Mr. Albritton, in an effort to try to shorten this, would it be fair to say, as Mr. Holmes and you and I discussed, that there is not – that the Patent Troll Tracker Articles have not caused a substantial disruption in your daily routine? Would that be fair to say?
>
> A: (By Mr. Albritton) That's right.
>
> Q: Okay. And it hasn't disrupted your ability to take family vacations?
>
> A: No, sir, it hasn't.
>
> Q: Okay. And it hasn't disrupted your ability to take vacations with your friends to go fishing, for example?
>
> A: No, sir.

5

> Q: Okay. And it hasn't disrupted your financial situation, it hasn't put a financial strain on you, has it?
>
> A: It has not.
>
> Q: Okay. The Patent Troll Tracker articles haven't caused you psychological problems, a medical condition, has it?
>
> A: No medical problems, that's correct.
>
> Q: And you've never seen a doctor as a result of these articles?
>
> A: I have not.
>
> ****************************
>
> Q: All right. And you are not taking any medication as a result of these articles?
>
> A: That's correct.
>
> Q: I understand that your wife is a licensed counselor.
>
> A: She's a child therapist.
>
> Q: Okay. And she has never recommended that you seek therapy, has she?
>
> A: She has not been telling me, that's correct, that's right.
>
> Q: And you haven't sought any therapy as a result of the Patent Troll Tracker?
>
> A: I have not.

Trial Tr., 9/17/09 at p. 89-90. These concessions by Albritton bar a reasonable jury from returning a verdict in favor of finding mental anguish damages. (See Defendants' JMOL at pp. 11-13).

As to the law, Albritton's reliance (p. 15) on *Bunton v. Bentley*, 94 S.W.3d 561, 605 (Tex. 2002) is wholly misplaced. In *Bunton*, the facts were different. First, the speech was *per se*. Second, there was proof of, and an affirmed jury verdict on, actual malice. These two findings amounted to at least some evidence of mental anguish. Thus, the plaintiff in *Bunton* met the

6

*Gertz* requirement that "actual malice" be established in order to obtain the presumption of injury to reputation in a *per se* case. This case is different. The speech is not *per se* and, even if it were, the presumption cannot be given effect under *Gertz* absent proof of clear and convincing evidence of "actual malice." And, moreover, as a matter of Texas common law, *Bunton* requires further proof of mental anguish damages. *Bunton* is no help to Albritton.

Under the stringent standard of Texas law, there is no evidence of a substantial disruption in Plaintiff's daily routine. Indeed, Plaintiff's own testimony <u>negates</u> it! JMOL should be granted. (JMOL at pp. 11-13).

4. **THE ARTICLES ARE ABOUT A MATTER OF PUBLIC CONCERN**

One of the most important questions is whether the speech is on a matter of public concern. The answer is yes. The speech specifically concerned actions taken by public officials – the federal court clerks – as part of their public duties in response to Albritton's insistence that the official records of the federal judiciary be changed. It therefore was on a matter of public concern. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). ("The operations of the courts and judicial conduct of judges are matters of utmost public concern.")

Three consequences flow from this legal determination. First, Albritton has the burden of proof on falsity. A plaintiff, even as a private figure, must prove falsity when the speech is one of a matter of public concern. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-77 (1986). *Hepps* was a private figure case and established the Constitutional rule that plaintiff has the burden of proof of falsity (<u>superseding the common law rule that the defendant must prove the defense of truth</u>). The Supreme Court in *Hepps* held:

> Here, as in *Gertz*, the plaintiff is a private figure and the newspaper articles are of public concern. In *Gertz*, as in *New York Times*, the common-law rule was superseded by a constitutional rule. <u>We believe that the common law's rule on falsity - that the defendant</u>

7

> must bear the burden of proving truth- must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.

*Hepps*, 475 U.S. at 776 (emphasis added).

Second, Albritton must prove, by clear and convincing evidence, that Defendants published the Articles at Issue with Constitutional "actual malice" (that is, Defendants knew the speech was false when published; not whether defendants had ill will) in order to recover presumed damages in a libel *per se* case, which here it plainly is not. Third, Albritton must also prove Constitutional "actual malice" in order to recover exemplary damages. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974) (private figure plaintiff, public concern speech).[6]

The Supreme Court held in *Gertz*:

> …we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.

*Gertz*, 418 U.S. at 349.

The Court explained as to presumed damages:

> The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred. the largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a

---

[6] Since the seminal case of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) requiring Constitutional "actual malice" in certain cases, the Supreme Court has explained that the "phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will." Rather, Constitutional "actual malice" is a shorthand to describe the First Amendment protections for speech injurious to reputation. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666 n. 7 (1989).

> false fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.

*Id.*

The Court continued as to punitive damages:

> Like the doctrine of presumed damages, jury discretion to award punitive damages unnecessarily exacerbates the danger of media self-censorship, but, unlike the former rule, punitive damages are wholly irrelevant to the state interest that justifies a negligence standard for private defamation actions. The are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and deter its future occurrence. In short, the private defamation plaintiff who establishes liability under a less demanding standard than that stated in New York Times may recover only such damages as are sufficient to compensate him for actual injury.

Contrary to Albritton's argument, in the Fifth Circuit, the *Gertz* rules and the rights of the First Amendment apply to all Defendants, even persons who are not members of the media. *Church of Scientology v. Cazares*, 455 F. Supp. 420 (M.D. Fla. 1978) aff'd 638 F. 2d 1272 (5th Cir. 1981); *Snead v. Redland Aggregates, Ltd.*, 998 F. 2d 1325, 1333 n. 10 (5th Cir. 1993) ("we do not consider significant the fact that Snead is not a media defendant.").[7] The same is true under Texas law. *Casso v. Brand*, 776 S.W.2d 551, 554 (Tex. 1989). Nevertheless, Defendants as bloggers on the internet are "media defendants" for purposes of this case.[8]

---

[7] Defendants acknowledge Plaintiff's reliance on *Hepps* statement that it is an open issue for the Supreme Court, but the Fifth Circuit extends the First Amendment freedoms to all defendants.

[8] Plaintiff must prove falsity because the speech is a matter of public concern under *Hepps*. Plaintiff must also prove falsity because Defendants are media defendants. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990) (private figure plaintiff must show falsity to recover from media defendant). Media is defined in Webster's Third New International Dictionary as "a channel, method, or system of communication, information, or entertainment." While the word traditionally applied to print media, the term has expanded as the public expanded the outlets from which it seeks information, expanding first into broadcast sources, and now to internet sources. Today, the public is increasingly turning to the internet to get information, often on blogs focused on a particular item of interest or public concern. *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006). Blogs are the editorial pages of today and should be afforded the same protections as traditional media. *See In re Does 1-10*, 242 S.W.3d at 820; *Kaufman v. Islamic Society of Arlington*, 2009 WL 1815641 (Tex.App.-Fort Worth 2009, no pet) (publisher of article on internet held to be media defendant); *Reno v. ACLU*, 521 U.S. 844, 874-85 (1997).

Albritton's reliance upon *Snead v. Redland Aggregates, Ltd.*, 998 F. 2d 1325 (5th Cir. 1993) is also misplaced. The speech in *Snead* was simply about the subject matter of a lawsuit; it did not involve an important matter of public concern. Here, the speech in the Articles at Issue is not about the merits of the underlying lawsuit between ESN and Cisco. Rather, the Articles concern the official actions taken by public officials to change public, official court records of the federal judiciary, all at Albritton's request, indeed, insistence. Such speech is about a matter of public concern. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). Thus, such important speech about the federal judiciary is entitled to greater First Amendment protection than purely private speech that is "solely in the individual interest of its speaker." *Snead*, 998 F.2d at 1330. Speech on matters of public concern lies "at the heart of the First Amendment's protection." *First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978).

5. **DEFENDANTS' MOTION FOR JMOL ON THE EXEMPLARY DAMAGES CLAIM**

Plaintiff must prove two elements as to each Defendant in order to recover exemplary damages. First, Chapter 41 statutory malice applies to all cases in which a plaintiff seeks exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.002(a) ("This Chapter applies to any action in which a claimant seeks damages relating to a cause of action.") Statutory malice must therefore be shown to recover exemplary damages under Texas law. TEX. CIV. PRAC. & REM. CODE § 41.001(7); 41.003(a).

Second, and in addition to the Texas statutory requirement, the U.S. Constitution and the Texas Constitution require Constitutional "actual malice" be established as to each Defendant because the articles at issue relate to a matter of public concern. *Gertz v. Robert Welch, Inc.*, 418

U.S. 323, 350 (1974) (holding that punitive damages are not permitted upon less than a showing of actual malice).

There is no clear and convincing evidence of actual malice as to either Defendant. Actual malice requires proof that the defendants published the statement "with knowledge that it was false." *New York Times Co.*, 376 U.S. at 280. Or, "with reckless disregard," which here means the defendant actually subjectively "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Because "actual malice" raises important constitutional issues, it is not enough "to determine that a reasonable jury could have found that [defendant] acted with actual malice. Beyond that, we ourselves must conclude that the evidence of [actual] malice is clear and convincing." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000).

"Proving actual malice is a heavy burden. Proof that a defendant broadcast a false statement will not alone show actual malice – the Supreme Court has made clear that there is a significant difference between proof of actual malice and proof of falsity." *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F. 3d 556, 560 (5th Cir. 1997). Further, proof that a defendant spoke out of dislike or ill will does not establish actual malice. *Id.* Nor is negligence or failure to investigate any evidence of actual malice. *Id.*; *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968). And a profit motive does not establish "actual malice." *Id.* Moreover, it has been long settled by the Supreme Court that "failure to retract upon [the plaintiff's] demand…is…not adequate evidence of [actual] malice for constitutional purposes." *New York Times*, 376 U.S. at 286; *Bose Corp v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984); *New York Times Co. v. Connor*, 365 F.2d 567, 577 (5th Cir. 1966); *McFarlane v. Sheridan Square Press*, 91 F.3d 1501, 1515 (D.C. Cir. 1996). In short, "as long as a defendant does not act knowing his

11

statement is false or with reckless disregard of its truth, actual malice will not be present." *Kaufman*, 113 F. 3d at 560.

Further, a speaker may disregard contrary evidence and choose to rely upon his own work, opinions or other conflicting sources without actual malice. *Turner v. KTRK Television*, 38 S.W. 103, 121-125 (Tex. 2000). Indeed, "[w]hen the testimony concerning 'actual malice' has conflicted or could plausibly be interpreted either way, we have concluded that the plaintiff has not met his burden." *National Ass'n of Gov. Employees v. National Federation of Federal Employees*, 844 F. 2d 216, 220 (5th Cir. 1988). A defendant's mistake in interpreting events, documents, or sources is not evidence of actual malice. *Time, Inc. v. Pape*, 401 U.S. 279 (1971) (alleged misinterpretation of government report that "bristled with ambiguities" did not constitute actual malice).

Thus, proof by a plaintiff that even experts endorse plaintiff's version of the facts "does not mean that all reasonable debate on the merits" of an issue is foreclosed. *Id.* "Defendants are not liable for defamation because they refused to corroborate the [plaintiff's] party line. Defamation law should not be used as a threat to force people to muzzle their truthful, reasonable opinions and beliefs. To endorse [plaintiff's] version of defamation law would be to disregard the constitutional protections that allow individuals to hold and express unpopular and unconventional opinions." *Kaufman*, 113 F. 3d at 564.

Accordingly, even if we credit Albritton's marshalling of the evidence in his response, there is simply no evidence that Frenkel believed his posts were not true when he published. (Trial Tr. 9/16/09 at 603-604, 610, 695-698). And his reaffirmation at trial confirms that he believed the statements to be true and entertained no serious doubts otherwise confirms the

12

absence of "known falsity," the essential Constitutional element he cannot prove. *Id.* at 564. JMOL on this ground is compelled.

In addition, Cisco is entitled to JMOL because there is no evidence that any alleged "actual malice" by Richard Frenkel when he published is attributable to Cisco for purposes of imposing exemplary damages, under both Constitutional and Texas law. *See MMAR v. Dow Jones & Co., Inc.*, 987 F. Supp. 535 (S. D. Tex. 1997); *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) (culpable state of mind must be "brought home to the persons in the [publishing] organization having responsibility for the publication.")[9] In *Dow Jones*, a reporter was found to have published with Constitutional "actual malice." She published an article in The Wall Street Journal that was authorized, and indeed edited, by an editor of the newspaper. *Id.* at 543, 547 (Mr. Clements edited and "approved publication of the Article."). But U.S. District Judge Ewing Werlein held that the reporter's "actual malice" was not attributable to the employer/newspaper because no managing agent of Dow Jones "knowingly adopted or ratified for Dow Jones any malicious act of" the reporter. *Id.* at 547. Accordingly, *Dow Jones* lacked "actual malice" and thus JMOL was granted in favor of defendant Dow Jones on plaintiff's claim for exemplary damages. *Id.* at 549.

So, here too, there is no evidence, much less clear and convincing evidence, of either Chapter 41 "malice" (that is, specific intent to injure plaintiff) or Constitutional "actual malice" at all and certainly none that may be attributable to Cisco. The evidence is clear that Cisco did not author, edit or exercise any control over the Articles and no basis exists that: (1) Cisco or a managing agent knowingly authorized Frenkel to publish alleged false statements; (2) Frenkel was unfit and Cisco was reckless in permitting Frenkel to publish the Articles; (3) Frenkel was

---

[9] Chapter 41 malice is also not attributable to Cisco for the same reasons.

working in a managerial capacity; and (4) Cisco knowingly ratified or approved Frenkel's writing of alleged false and defamatory statements. *Dow Jones*, 987 F. Supp. at 548-49 (requiring such proof to attribute reporter's Constitutional "actual malice" to newspaper/employer).

          Respectfully submitted,

          JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

GEORGE MCWILLIAMS, P.C.

By:   /s/ George L. McWilliams
    George L. McWilliams
    Texas Bar No: 13877000

    GEORGE L. MCWILLIAMS, P.C.
    406 Walnut
    P.O. Box 58
    Texarkana, Texas 75504-0058
    (903) 277-0098
    (870) 773-2967—Fax
    Email: glmlawoffice@gmail.com

ATTORNEY FOR DEFENDANT
RICK FRENKEL

## CERTIFICATE OF SERVICE

This is to certify that on this 20th day of September, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398

/s/ Charles L. Babcock
Charles L. Babcock

15
5614065v.1